# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | |
|---|---|
| In re | Chapter 11 |
| WESTWIND MANOR RESORT ASSOCIATION, INC., *et al.*,[1] | Case No. 19-50026 (DRJ) |
| Debtors. | Jointly Administered |

## PLAN SUPPLEMENT FOR THE DEBTORS' AND COMMITTEE'S FIRST AMENDED JOINT PLAN OF REORGANIZATION

### TABLE OF CONTENTS

| **Exhibit** | **Description** | **Plan Ref.** |
|---|---|---|
| A | Creditor Trust Agreement | 1.02(49) |
| B | Excluded Avoidance Actions | 1.02(80) |
| C | Excluded Parties – Ex. A to Disclosure Statement | 1.02(81) |
| D | Exit Facility | 1.02(83) |
| E | Oversight Board & Compensation | 1.02(57) |
| F | Schedule of Real Property, Leasehold, Fixtures | 1.02(131) |
| G | Revised Treatment of Class 3C (CBB) | 4.03 |
| H | Amended and Restated Bylaws for Custom Golf | 5.19 |
| I | LLC Membership Agreement – Op.Co. | 5.19 |
| J | LLC Membership Agreement – Prop.Co. | 5.19 |
| K | Schedule of Executory Contracts to be Assumed | 8.01 |
| L | Discussion of the Impact of Covid - 19 | |
| M | Projections for Custom Golf | |
| N | Trust Contribution Funds | 1.02(146) |

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Westwind Manor Resort Association, Inc. (7533); Warrior ATV Golf, LLC (3420); Warrior Acquisitions, LLC (9919); Warrior Golf Development, LLC (5741); Warrior Golf Management, LLC (7882); Warrior Golf Assets, LLC (1639); Warrior Golf Venture, LLC (7752); Warrior Premium Properties, LLC (0220); Warrior Golf, LLC, a Delaware limited liability company (4207); Warrior Custom Golf, Inc. (2941); Warrior Golf Equities, LLC (9803); Warrior Golf Capital, LLC (5713); Warrior Golf Resources, LLC (6619); Warrior Golf Legends, LLC (3099); Warrior Golf Holdings, LLC (2892); and Warrior Capital Management, LLC (8233).  The address of the Debtors' corporate headquarters is 15 Mason, Suite A, Irvine, California 92618.

Certain documents, or portions thereof, contained in this Plan Supplement[2] remain subject to continuing negotiations among the Debtors and other interested parties with respect thereto. The Debtors reserve all rights to amend, revise, or supplement the Plan Supplement, and any of the documents and designations contained herein, at any time before the Plan Effective Date, or any such other date in accordance with the Plan, the Confirmation Order or any other order of the Bankruptcy Court.

Dated: May 18, 2020

/s/ Michael D. Warner
Michael D. Warner, Esq. (TX Bar No. 00792304)
**COLE SCHOTZ, P.C.**
301 Commerce Street, Suite 1700
Fort Worth, Texas 76102
Telephone:  (817) 810-5250
Facsimile: (817) 810-5255
mwarner@coleschotz.com

*Counsel for the Debtors*

---

[2] Capitalized terms used but not otherwise defined in this Plan Supplement shall have the meanings ascribed to such terms in the *Debtors' and Committee's First Amended Joint Plan of Reorganization* [Docket No. 787], as it may be amended, modified, or supplemented from time to time.

# **EXHIBIT A**

(Draft) Creditor Trust Agreement

**Draft, Subject to Change at or Prior to the Confirmation Hearing**

## CREDITOR TRUST AGREEMENT

This Creditor Trust Agreement (the "Creditor Trust Agreement") is made this day of _____, 2020, by and among: (i) Westwind Manor Resort Association, Inc.; (ii) Warrior ATV Golf, LLC; (iii) Warrior Acquisitions, LLC; (iv) Warrior Golf Development, LLC; (v) Warrior Golf Management, LLC; (vi) Warrior Golf Assets, LLC; (vii) Warrior Golf Venture, LLC; (viii) Warrior Premium Properties, LLC; (ix) Warrior Golf, LLC; (x) Warrior Custom Golf, Inc.; (xi) Warrior Golf Equities, LLC; (xii) Warrior Golf Capital, LLC; (xiii) Warrior Golf Resources, LLC; (xiv) Warrior Golf Legends, LLC; (xv) Warrior Golf Holdings, LLC; and (xvi) Warrior Capital Management, LLC (each a "Debtor" and, collectively, the "Debtors"), and Force 10 Agency Services LLC as trustee (the "Creditor Trustee") and executed in connection with the *Debtors' and Committee's First Amended Joint Chapter 11 Plan of Reorganization*, dated March 20, 2020 (as the same has been or may be amended, the "Plan")[1] filed in the United States Bankruptcy Court for the Southern District of Texas – Houston Division (the "Bankruptcy Court") [Docket No. 787].

## RECITALS

**WHEREAS**, on March 4, 2019, April 4, 2019 and May 30, 2019 (collectively, the "Petition Date"), certain of the Debtors each filed a voluntary bankruptcy petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") with the Bankruptcy Court (collectively, the "Chapter 11 Cases");

**WHEREAS**, on March 19, 2019, the Office of the United States Trustee (the "United States Trustee") appointed the official committee of unsecured creditors in the Debtors' chapter 11 cases [Docket No. 67] (the "Committee");

**WHEREAS**, since the Petition Date, the Debtors have been operating their estates as Debtors in Possession; and

**WHEREAS**, on March 20, 2020, the Debtors and the Committee filed the Plan;

**WHEREAS**, on June __, 2020, the Bankruptcy Court entered an order confirming the Plan (the "Confirmation Order") (Docket No. [ _]);

**WHEREAS**, the Effective Date of the Plan occurred on [ __], 2020;

**WHEREAS**, the Plan and Confirmation Order contemplate, on the Effective Date, (a) the creation of a creditor trust (the "Creditor Trust") and the creation of the beneficial interests in the Creditor Trust solely for the benefit of Creditor Trust beneficiaries (collectively, the "Beneficiaries" and each, individually, a "Beneficiary"), and (b) the Creditor Trust Assets (defined supra) will be vested with the Creditor Trust as set forth in the Plan, including, without limitation, (a) the Assigned Estate Claims and the proceeds thereof; (b) the New Custom Golf Stock; (c) the Op.Co. Membership Interests; (d) the Prop.Co. Membership Interests; (e) the Trust Contribution Funds; (f) the WGP Causes of Action, assigned pursuant to the WGP Causes of Action Assignment and the proceeds thereof; (g) the WGP Investments, assigned pursuant to the WGP Investment

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings given in the Plan.

Assignment and the proceeds thereof; and (h) the Direct Causes of Action of LLC Investors and Convertible Noteholders, that do not exercise the Direct Opt Out Right. (collectively, the "Creditor Trust Assets");

**WHEREAS**, the Plan contemplates that, the Creditor Trust shall be structured to qualify as a "liquidating trust" within the meaning of Treasury Regulations Section 301.7701-4(d) and in compliance with Revenue Procedure 94-45, 1994-2 C.B. 684, and, thus, as a "grantor trust" within the meaning of Sections 671 through 679 of the Tax Code to the holders of General Unsecured Claims, Investment Claims and/or Convertible Note Claims, consistent with the terms of the Plan; *provided, however*, that the Creditor Trustee shall elect under Treasury Regulations Section 1.468B-9(c)(2)(ii) to treat the Creditor Trust Disputed Claims Reserve as a "disputed ownership fund." Accordingly, other than the portion of the Creditor Trust Assets comprising the Creditor Trust Disputed Claims Reserve, holders of Allowed Investment Claims, Allowed Convertible Note Claims and/or Allowed General Unsecured Claims, shall be treated for U.S. federal income tax purposes, (i) as direct recipients of an undivided interest in the assets transferred to the Creditor Trust and as having immediately contributed such assets to the Creditor Trust, and (ii) thereafter, as the grantors and deemed owners of the Creditor Trust, and thus, the direct owners of an undivided interest in the assets held by the Creditor Trust. All parties (including the Creditor Trustee and holders of Allowed Investment Claims, Allowed Convertible Note Claims and Allowed General Unsecured Claims) shall report consistent with the valuation of the assets transferred to the Creditor Trust as established by the Reorganized Debtors or their designee. The Creditor Trustee shall be responsible for filing information on behalf of the Creditor Trust as grantor trust pursuant to Treasury Regulation Section 1.671-4(a) or as a disputed ownership fund (as applicable); and

**NOW, THEREFORE**, pursuant to the Plan and the Confirmation Order, in consideration of the promises, the mutual agreements of the parties contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and affirmed, the parties hereby agree as follows:

## ARTICLE I
## DECLARATION OF TRUST

Section 1.1    Creation and Purpose of the Creditor Trust. The Debtors and the Creditor Trustee hereby create the Creditor Trust for the primary purpose of (a) pursuing the Assigned Estate Claims, (b) maximizing the value of and monetizing Reorganized Custom Golf's equity, (c) maximizing the value of and monetizing the Real Property and personal property held by Prop.Co., and (d) distributing the net proceeds of (a), (b) and (c) to the Creditor Trust Beneficiaries pursuant to this Plan and the Creditor Trust Agreement with no objective to continue or engage in the conduct of a trade or business.

Section 1.2    Declaration of Trust. In order to declare the terms and conditions hereof, and in consideration of the confirmation of the Plan, the Debtors and the Creditor Trustee have executed this Creditor Trust Agreement and, effective on the Effective Date, all of the right, title, and interests in the Creditor Trust Assets shall vest in the Creditor Trust, to have and to hold unto the Creditor Trust and its successors and assigns forever, under and subject to the terms of the Plan

and the Confirmation Order for the benefit of the Beneficiaries and their successors and assigns as provided for in this Creditor Trust Agreement and in the Plan and Confirmation Order.

Section 1.3    <u>Vesting and Transfer of Assets to the Creditor Trust</u>. On the Effective Date, pursuant to Bankruptcy Code section 1141(b), the Creditor Trust Assets shall vest in the Creditor Trust (including, but not limited, to any and all rights and powers vested in the Committee pursuant to any Final Order granting investigative authority pursuant to Bankruptcy Rule 2004), free and clear of all Liens, Claims and Interests, except as otherwise specifically provided in the Plan or in the Confirmation Order; *provided, however,* that the Creditor Trustee may abandon or otherwise not accept any non-Cash Assets that the Creditor Trustee believes, in good faith, have no value to the Creditor Trust.  Any non-Cash Assets that the Creditor Trustee so abandons or otherwise does not accept shall not be property of the Creditor Trust.  The Creditor Trustee shall have no duty to arrange for any of the transfers contemplated hereunder or by the Plan or to ensure their compliance with the terms of the Plan and the Confirmation Order, and shall be conclusively entitled to rely on the legality and validity of such transfers. Moreover, subject to the Confirmation Order or another prior Court Order to be entered in the Chapter 11 Cases upon prior notice to creditors and other parties in interest, on the Effective Date, all privileges with respect to any Creditor Trust Assets, including without limitation the attorney/client privilege, work product protection, or other privilege or immunity attaching to any documents or communications, to which the Debtors are entitled shall be automatically vested in, and available for assertion by or waiver by the Creditor Trustee on behalf of the Creditor Trust. The vesting of the attorney/client privilege, work product protection, or other privilege or immunity attaching to any documents or communications in the Creditor Trustee is not intended as, and will not constitute or affect, a waiver of any such privilege, protection or immunity in favor of any creditor, party in interest or other third party. However, nothing herein shall preclude the Debtors or any other creditor or party in interest from contesting the scope or applicability of any such privilege, vesting, assertion or waiver.  To the extent any of the foregoing does not automatically occur on the Effective Date or is not effectuated through the Confirmation Order or this Agreement, the Debtors shall, to the extent practicable, execute such other and further documents as are reasonably necessary to effectuate all of the foregoing and shall reasonably cooperate with the Creditor Trustee in transitioning the administration of the Creditor Trust Assets to the Creditor Trust. To the extent any law or regulation prohibits the transfer of ownership of any of the Creditor Trust Assets to the Creditor Trust and such law is not superseded by the Bankruptcy Code, the Creditor Trust's interest shall be a lien upon and security interest in such Creditor Trust Assets, in trust for the sole use and purposes set forth in this Creditor Trust Agreement, Plan and Confirmation Order, which shall be deemed a security agreement granting such interest thereon without need to file financing statements or mortgages.

Section 1.4    <u>Funding of the Trust</u>. The Creditor Trust shall be funded, on the Effective Date, with the Creditor Trust Assets and the Creditor Trust Funds, to the extent provided for in the Plan and in the Confirmation Order.

Section 1.5    <u>Acceptance by Creditor Trustee</u>. The Creditor Trustee hereby accepts the trust imposed upon it by this Creditor Trust Agreement and agrees to observe and perform that trust on and subject to the terms and conditions set forth in this Creditor Trust Agreement, the Plan, and the Confirmation Order.  In connection with and in furtherance of the purposes of the Creditor Trust, the Creditor Trustee hereby accepts the transfer of the Creditor Trust Assets and the Creditor Trust Funds.

Section 1.6    Name of the Creditor Trust. The creditor trust established hereby shall be known as the "Creditor Trust."

Section 1.7    Capacity of Trust. To the fullest extent permitted by applicable law and notwithstanding anything herein to the contrary, the Creditor Trust shall itself have the capacity to act or refrain from acting, on its own behalf, including the capacity to sue and be sued.  The Creditor Trustee, in his sole capacity as Creditor Trustee, may alone be the named movant, respondent, party plaintiff or defendant, or the like in all adversary proceedings, contested matters, and other state and federal proceedings brought by or against it, and may settle and compromise all such matters in its own name.

Section 1.8    Oversight Committee.   On the Effective Date and without further Bankruptcy Court approval,  all Creditor Trust governance issues shall be determined in accordance with Article III below by three (3) representatives appointed by the Committee and three (3) representatives appointed by the Debtors (the "Oversight Committee").

## ARTICLE II
## THE CREDITOR TRUSTEE

Section 2.1    Appointment. The Creditor Trustee shall be Force 10 Agency Services LLC as provided for in the Confirmation Order.  The Creditor Trustee's appointment shall continue until the earlier of (a) the termination of the Creditor Trust or (b) the Creditor Trustee's resignation, death, dissolution or removal.

Section 2.2    General Powers. Except as otherwise provided in this Creditor Trust Agreement, the Plan, or the Confirmation Order, the Creditor Trustee may control and exercise authority over the Creditor Trust Assets and the Creditor Trust Funds, over the acquisition, management, and disposition thereof, and over the management and conduct of the affairs of the Creditor Trust. Nothing in this Creditor Trust Agreement shall be deemed to prevent the Creditor Trustee from taking, or failing to take, any action that, based upon the advice of counsel or other professionals, it determines it is obligated to take (or fail to take) in the performance of any fiduciary or similar duty which the Creditor Trustee owes to the Beneficiaries or any other person or Entity.  No person dealing with the Creditor Trust shall be obligated to inquire into the Creditor Trustee's authority in connection with the acquisition, management, or disposition of Creditor Trust Assets; provided, however, that the members of the Oversight Committee are entitled to make such inquiries in connection with the exercise of their rights pursuant Section 3.3 of this Creditor Trust Agreement.  Without limiting the foregoing, and unless specifically limited, restricted, waived, or released by the Plan, the Confirmation Order, or other provisions of this Creditor Trust Agreement, the Creditor Trustee shall be expressly authorized to, with respect to the Creditor Trust and the Creditor Trust Assets, and may cause the Creditor Trust to:

(a)    Exercise all power and authority that may be or could have been exercised, commence all proceedings that may be or could have been commenced, and take all actions that may be or could have been taken with respect to the Creditor Trust Assets by any officer, director, member, or other party acting in the name of the Debtors or their Estates with like effect as if duly authorized, exercised, and taken by action of such officers, directors, members, or other party.

(b)     Open and maintain bank accounts on behalf of or in the name of the Creditor Trust, calculate and make distributions, and take other actions consistent with the Plan and the implementation thereof, including the establishment, re-evaluation, adjustment, and maintenance of appropriate reserves, in the name of the Creditor Trust, provided that, the Creditor Trustee need not maintain the Creditor Trust's reserves in segregated bank accounts and may pool funds in the reserves with each other and other funds of the Creditor Trust.

(c)     Receive, manage, invest, supervise, and protect the Creditor Trust Assets, subject to the limitations provided herein and in the Plan.

(d)     Hold legal title to any and all Creditor Trust Assets and to any and all rights of the Debtors in or arising out of the Creditor Trust Assets.

(e)     Subject to the applicable provisions of the Plan and this Creditor Trust Agreement, collect, operate and/or liquidate the Creditor Trust Assets pursuant to the Plan.

(f)     Review, and where appropriate and in consultation with the Oversight Committee, object to Claims, and supervise and administer the commencement, prosecution, settlement, compromise, withdrawal or resolution of all Claims.

(g)     Investigate any Causes of Action and any objections to Claims, and cause the Creditor Trust to seek authority for the examination of any Person pursuant to Federal Rule of Bankruptcy Procedure 2004.

(h)     Subject to Article IV of this Creditor Trust Agreement, commence, prosecute, compromise, settle, withdraw, abandon, or resolve all Causes of Action.

(i)     If necessary or appropriate, (1) seek a determination of tax liability or refund under Section 505 of the Bankruptcy Code; (2) file any and all tax and information returns required with respect to the Creditor Trust (to the extent required by the Plan); (3) make tax elections for and on behalf of the Creditor Trust (to the extent required by the Plan); (4) pay taxes, if any, payable for and on behalf of the Creditor Trust (to the extent required by the Plan); and (5) file and prosecute claims for tax refunds to which the Creditor Trust may be entitled.

(j)     Pay all lawful expenses, debts, charges, taxes and liabilities of the Creditor Trust and make all payments relating to the Creditor Trust Assets.

(k)     Make distributions to the Beneficiaries, and to creditors of the Creditor Trust as provided for, or contemplated by, the Plan, the Confirmation Order, and this Creditor Trust Agreement.

(l)     Withhold from the amount distributable to any person or Entity such amount as may be sufficient to pay any tax or other charge which the Creditor Trustee has determined, based upon the advice of its agents and/or professionals, may be required to be withheld therefrom under the income tax laws of the United States or of any state or political subdivision thereof.

(m)     Enter into any agreement or execute any document or instrument required by or consistent with the Plan, the Confirmation Order or this Creditor Trust Agreement and perform all obligations thereunder.

(n)     If any of the Creditor Trust Assets are situated in any state or other jurisdiction in which the Creditor Trustee is not qualified to act as trustee, nominate and appoint a person, in consultation with the Oversight Committee, duly qualified to act as trustee in such state or jurisdiction and require from each such trustee such security as may be designated by the Creditor Trustee in its discretion; confer upon such trustee all the rights, powers, privileges, and duties of the Creditor Trustee hereunder, subject to the conditions and limitations of this Creditor Trust Agreement, except as modified or limited by the Creditor Trustee and except where the conditions and limitations may be modified by the laws of such state or other jurisdiction (in which case, the laws of the state or other jurisdiction in which such trustee is acting shall prevail to the extent necessary); require such trustee to be answerable to the Creditor Trustee for all monies, assets and other property that may be received in connection with the administration of all property; and, in consultation with the Oversight Committee, remove such trustee, with or without cause, and appoint a successor trustee at any time by the execution by the Creditor Trustee of a written instrument declaring such trustee removed from office, and specifying the effective date and time of removal.

(o)     Subject to Section 5.6 of this Creditor Trust Agreement, purchase and carry all insurance policies and pay all insurance premiums and costs it deems reasonably necessary or advisable.

(p)     Implement, enforce, or discharge all of the terms, conditions, and all other provisions of, and all duties and obligations under, the Plan, the Confirmation Order, and this Creditor Trust Agreement.

(q)     Employ and compensate attorneys, financial advisors and other professionals to assist in their duties on such terms (including on a contingency or hourly basis) as they deem reasonable and appropriate without Bankruptcy Court approval. Representation of the Creditor Trustee by such professionals shall not be deemed to be a conflict of interest, make such professionals have an interest adverse to the Estates or the Debtors or otherwise not be disinterested.

(r)     Undertake all administrative functions remaining in the Chapter 11 Cases, including the ultimate closing of the Chapter 11 Cases.

(s)     Undertake all administrative functions of the Creditor Trust, including overseeing the winding down and termination of the Creditor Trust.

(t)     Invest in demand and time deposits in banks or savings institutions, or temporary investments such as short term certificates of deposit or Treasury bills or other investments that a "Creditor Trust" within the meaning of Treasury Regulation Section 301.7701-4(d) may be permitted to hold, pursuant to the Treasury Regulations or any modification in the Internal Revenue Services ("IRS") guidelines, whether set forth in IRS rulings, revenue procedures, other IRS pronouncements or otherwise.

(u)      Hire former employees of the Debtors to the extent their services are needed to assist in the wind down of the estates.

(v)      Abandon under applicable federal and state laws, any Creditor Trust Assets that the Creditor Trustee, in consultation with the Oversight Committee, determines to be too impractical to distribute to Beneficiaries or of inconsequential value to the Creditor Trust and Beneficiaries.

(w)      Cause the Creditor Trust to send annually to known Beneficiaries, in accordance with the tax laws, a separate statement stating a Beneficiary's interest in the Creditor Trust and its share of the Creditor Trust's income, gain, loss, deduction or credit, and to instruct all such Beneficiaries to report such items on their federal tax returns.

(x)      Take all other actions consistent with the provisions of the Plan, the Confirmation Order and this Creditor Trust Agreement that the Creditor Trustee deems reasonably necessary or desirable to administer the Creditor Trust.

Section 2.3      <u>Safekeeping and Investment of Trust Assets</u>.  All monies and other assets received by the Creditor Trustee shall, until distributed or paid over as provided herein and in the Plan, be held in trust for the benefit of the Beneficiaries, but need not be segregated in separate accounts from other Creditor Trust Assets, unless and to the extent required by law or the Plan or this Creditor Trust Agreement.  The Creditor Trustee shall not be under any obligation to invest Creditor Trust Assets.  Neither the Creditor Trust nor the Creditor Trustee shall have any liability for interest or producing income on any monies received by them and held for distribution or payment to the Beneficiaries, except as such interest shall actually be received by the Creditor Trust or Creditor Trustee, which shall be distributed as provided in the Plan. The powers of the Creditor Trustee to invest any monies held by the Creditor Trust, other than those powers reasonably necessary to maintain the value of the Creditor Trust Assets and to further the Creditor Trust's purpose, shall be limited to powers to invest in demand and time deposits, such as short-term certificates of deposit, in banks or other savings institutions, or other temporary liquid investments, such as treasury bills; provided, however, that the scope of permissible investments shall be limited to include only those investments that a Creditor Trust, within the meaning of Treasury Regulation section 3.01.7701-4(d), may be permitted to hold pursuant to the Treasury Regulations, or any modification of the IRS guidelines, whether set forth in IRS rulings, IRS pronouncements or otherwise. Notwithstanding the foregoing, the Creditor Trustee shall not be prohibited from engaging in any trade or business on its own account, provided that such activity does not interfere or conflict with the Creditor Trustee's administration of the Creditor Trust.

Section 2.4      <u>Compensation of Creditor Trustee and its Agents and Professionals</u>.

(a)      The Creditor Trustee shall be entitled to receive reasonable compensation for the performance of its duties after the Effective Date as set forth on **Exhibit A** plus the reimbursement of reasonable out-of-pocket expenses.  Any successor to the Creditor Trustee shall also be entitled to reasonable compensation in connection with the performance of its duties, which compensation may be different from the terms provided herein and shall be approved by the Oversight Committee, plus the reimbursement of reasonable out-of-pocket expenses.

(b)    Each of the Creditor Trustee's agents and professionals (unless any such agents or professionals, the Creditor Trustee and the Oversight Committee agree to different treatment) seeking compensation or reimbursement shall serve a statement on the Creditor Trustee and the Oversight Committee. The Creditor Trustee and the Oversight Committee will have ten (10) days from the date such statement is received to review the statement and object to such statement by serving an objection on the party seeking compensation setting forth the precise nature of the objection and the amount at issue.  At the expiration of the ten (10) day period, and without further order of the Bankruptcy Court (except as provided herein), the Creditor Trustee may pay from the Creditor Trust Assets, or the proceeds or income thereof, 100% of the amounts requested, except for the portion of such fees and expenses to which any objection has been made. The parties shall attempt to consensually resolve objections, if any, to any statement. If the parties are unable to reach a consensual resolution of any such objection, the party who received an objection to its fees and expenses may seek payment of such fees and expenses by filing a motion with and obtaining an order from the Bankruptcy Court and providing notice to the Creditor Trustee and the Oversight Committee. If any agent or professional fails to submit a statement, it shall be ineligible to receive payment of fees and expenses therefore as provided in this Creditor Trust Agreement until the statement is submitted.

Section 2.5    <u>Abandonment; Donation</u>.  If, in the Creditor Trustee's reasonable judgment, any Creditor Trust Assets cannot be sold or distributed in a commercially reasonable manner or the Creditor Trustee believes in good faith that such property has inconsequential value to the Creditor Trust or its Beneficiaries or is insufficient to render a further distribution practicable, the Creditor Trustee shall have the right to cause the Creditor Trust to abandon, donate or otherwise dispose of such property.

Section 2.6    <u>Responsibility for Administration of Claims</u>. As of the Effective Date, the Creditor Trustee shall become responsible for administering and paying distributions to Beneficiaries of the Creditor Trust in accordance with the Plan. The Creditor Trustee shall have the exclusive right to object to the allowance of any Claim on any ground and shall be entitled to assert all defenses of the Debtors and their Estates. The Creditor Trustee shall also be entitled to assert all of the Estates' rights under, without limitation, section 558 of the Bankruptcy Code. The Creditor Trustee may also seek estimation of any Disputed Claim under and subject to section 502(c) of the Bankruptcy Code.

Section 2.7    <u>No Implied Obligations</u>. No implied covenants or obligations shall be read into this Creditor Trust Agreement against the Creditor Trustee.

Section 2.8    <u>Administrative Expense Claim Reserve</u>. The Creditor Trustee shall administer the Administrative Expense Claim Reserve that shall consist, if available, of Cash necessary for the Creditor Trustee to make distributions under the Plan and the Creditor Trust Agreement on account of all Allowed and Disputed Administrative Expense Claims incurred or accruing as of the Effective Date in accordance with the requirements of section 1129(a)(9)(A) of the Bankruptcy Code.  The Creditor Trustee shall be authorized to make distributions from the Administrative Expense Claim Reserve in satisfaction of such Allowed Claims in accordance with this Creditor Trust Agreement, the Plan, and the Confirmation Order.

Section 2.9    <u>Priority Claim Reserve</u>. The Creditor Trustee shall administer the Priority Claim Reserve that shall consist, if available, of Cash necessary for the Creditor Trustee to make distributions under the Plan and the Creditor Trust Agreement on account of all Allowed and Disputed Priority Claims as of the Effective Date in accordance with Section 1129(a)(9) of the Bankruptcy Code. The Creditor Trustee shall be authorized to make distributions from the Priority Claim Reserve in satisfaction of such Allowed Claims in accordance with this Creditor Trust Agreement, the Plan, and the Confirmation Order.

Section 2.10    <u>Disputed Claims Reserve</u>. The Creditor Trustee shall administer the Disputed Claims Reserve that shall consist of Cash necessary for the Creditor Trustee to make distributions under the Plan and the Creditor Trust Agreement on account of all Disputed Claims that have not been Allowed as of the date for any distribution on account of such Claims under the Plan if such Disputed Claims were to become Allowed Claims. The Disputed Claims Reserve is a separate and distinct reserve which is not a Claims Reserve or Professional Fee Escrow. The Creditor Trustee shall be authorized to make distributions from the Disputed Claims Reserve in satisfaction of such Allowed General Unsecured Claims in accordance with this Creditor Trust Agreement, the Plan, and the Confirmation Order.

Section 2.11    <u>Replacement of the Creditor Trustee</u>. The Creditor Trustee may resign at any time upon thirty (30) days' written notice filed with the Bankruptcy Court and served upon the Oversight Committee, <u>provided</u> that such resignation shall only become effective upon the appointment of a permanent or interim successor Creditor Trustee. A majority of the Oversight Committee may remove the Creditor Trustee for cause, upon prior written notice to the Creditor Trustee. The Creditor Trustee may also be removed by the Bankruptcy Court upon motion and after notice and a hearing, which motion may be brought by any party in interest (including any members of the Oversight Committee). In the event of the resignation or removal, death or incapacity of the Creditor Trustee, the Oversight Committee shall designate another Person or Entity to serve as Creditor Trustee and thereupon the successor Creditor Trustee, without any further act or need for an order of the Bankruptcy Court, shall become fully vested with all of the rights, powers, duties and obligations of the predecessor; *provided, however*, that the Creditor Trustee shall be deemed removed on the date the Chapter 11 Cases are closed, and no successor thereto shall be designated. The Creditor Trustee and its professionals shall be entitled to compensation payable from the Assets of the Trust.  Upon its appointment, the successor Creditor Trustee, without any further act, shall become fully vested with all of the rights, powers, duties, and obligations of its predecessor and all responsibilities of the predecessor Creditor Trustee relating to the Creditor Trust shall be terminated.  The provisions of Article V of this Creditor Trust Agreement shall survive the resignation or removal of any Creditor Trustee.

Section 2.12    <u>Creditor Trust Continuance</u>. The death, dissolution, resignation, or removal of the Creditor Trustee shall not terminate the Creditor Trust or revoke any existing agency created by the Creditor Trustee pursuant to this Creditor Trust Agreement or invalidate any action theretofore taken by the Creditor Trustee, and the provisions of this Creditor Trust Agreement shall be binding upon and inure to the benefit of the successor Creditor Trustee and all its successors or assigns.

**ARTICLE III**
**ARTICLE III OVERSIGHT COMMITTEE**

Section 3.1     Oversight Committee. On the Effective Date and without further Bankruptcy Court approval,  all Creditor Trust governance issues shall be determined by three (3) representatives appointed by the Committee and three (3) representatives appointed by the Debtors (the "Committee Members").  The Oversight Committee may authorize its own dissolution by filing with the Bankruptcy Court an appropriate notice that its responsibilities hereunder have concluded. Unless earlier dissolved, the Oversight Committee shall be dissolved on the date the Chapter 11 Cases are closed.  The Oversight Committee shall review fees of the Creditor Trustee and the Creditor Trustee's professionals, consult with Creditor Trustee in connection with the administration of the Creditor Trust, make non-binding recommendations to the Creditor Trustee, and submit questions to the Creditor Trustee concerning administration of the Debtors' Estates.

Section 3.2     Governance of the Oversight Committee.  Notice of the time and place of each meeting of the Oversight Committee shall be given to each Committee Member reasonably in advance, considering the circumstances, of such meeting.  The presence of two thirds (2/3rds) of the Committee Members in person or via telephone shall constitute a quorum for the transaction of business at any Oversight Committee meeting.  Action of the Oversight Committee shall be authorized by the vote of a majority of the members present in person or by telephone, if there is a quorum.  Committee members may be removed or replaced by a two third (2/3rd) majority unless it is due to death or disability.  The number of members of the Oversight Committee may be reduced by a two thirds (2/3rds) majority to no fewer than three (3) members.  The Oversight Committee shall have the ability to amend the Creditor Trust Agreement upon a two third (2/3rd) majority vote.

Section 3.3     Reports to Oversight Committee. Notwithstanding any other provision of this Creditor Trust Agreement, the Creditor Trustee shall report to the Oversight Committee on a regular basis, not less than two (2) times per year. The Oversight Committee shall keep all such information strictly confidential, except to the extent the Oversight Committee deems it reasonably necessary to disclose such information to the Bankruptcy Court (in which case, a good faith effort shall be made to file such information under seal).

Section 3.4     Actions Requiring Consultation with the Oversight Committee. The Creditor Trustee shall consult with the Oversight Committee prior to taking any action regarding any of the following matters:

(a)     The sale, transfer, assignment, or other disposition of any non-Cash Creditor Trust Assets having a valuation in excess of $100,000;

(b)     The abandonment of any non-Cash Creditor Trust Assets having a valuation of at least $100,000;

(c)     The borrowing of any funds by the Creditor Trust or pledge of any portion of the Creditor Trust Assets;

(d)     Any matter which could reasonably be expected to have a material adverse effect on the amount of distributions to be made by the Creditor Trust;

10

(e)      The exercise of any right or action set forth in this Creditor Trust Agreement that expressly requires consultation with the Oversight Committee, unless the applicable provision expressly requires unanimous approval of the Oversight Committee for the exercise of any such right or action; or

(f)      All investments authorized to be made by the Creditor Trustee under this Creditor Trust Agreement.

Notwithstanding the foregoing, the Creditor Trustee may take any action deemed necessary for the benefit of the Beneficiaries or the Creditor Trust without consultation with the Oversight Committee if such action requires prompt consideration that will not allow the Creditor Trustee to consult, in the Creditor Trustee's reasonable judgment, to consult with the Oversight Committee before such action takes place, *provided, however*, that the Creditor Trustee shall inform the Oversight Committee of any action taken without consultation promptly after the fact with a reasonable explanation as to why such action was taken without consultation.

Section 3.5    Creditor Trustee's Conflict of Interest. The Creditor Trustee shall disclose to the Oversight Committee any conflicts of interest that the Creditor Trustee has with respect to any matter arising during administration of the Creditor Trust.  In the event that the Creditor Trustee cannot take any action, including without limitation the prosecution of any Assigned Estate Claim or the objection to any Claim, by reason of an actual or potential conflict of interest, the Oversight Committee acting by majority shall be authorized to take any such action(s) in the Creditor Trustee's place and stead, including without limitation the retention of professionals (which may include professionals retained by the Creditor Trustee) for the purpose of taking such actions.  It is anticipated that affiliates of the Creditor Trustee may be Beneficiaries of the Creditor Trust and/or creditors of operating businesses owned by the Creditor Trust on account of allowed claims in the Bankruptcy Case or work performed after the creation of the Creditor Trust.   Their status as Beneficiaries and/or creditors shall not be deemed a conflict pursuant to this section.

Section 3.6    Reimbursement of Oversight Committee Expenses. Each member of the Oversight Committee shall be entitled to reimbursement of reasonable out-of-pocket expenses, which expenses shall be subject to the Creditor Trustee's review.

## ARTICLE IV
## PROSECUTION AND RESOLUTION OF CAUSES OF ACTION

Section 4.1    The Creditor Trustee's Exclusive Authority to Pursue, Settle, or Abandon Causes of Action. Pursuant to Section 5 of the Plan, from and after the Effective Date, the Creditor Trustee shall have exclusive rights, powers, and interests of the Debtors' Estates to pursue, settle or abandon any and all Assigned Estate Claims transferred to the Creditors Trust under the terms of the Plan as a representative of the Debtors' Estates pursuant to Bankruptcy Code section 1123(b)(3).

Section 4.2    Nothing herein shall preclude the Creditor Trustee from seeking Bankruptcy Court approval of any settlement or compromise of any Assigned Estate Claims or disputed Claim, nor shall any provision hereof be construed as limiting the jurisdiction of the Bankruptcy Court to hear and determine any such request for relief.

## ARTICLE V
## LIABILITY OF CREDITOR TRUSTEE
## AND THE OVERSIGHT COMMITTEE

**Section 5.1** **Standard of Care; Exculpation.** **Neither the Creditor Trustee, the members of the Oversight Committee, nor any director, officer, member, affiliate, owner, parent, advisor, employee, employer, professional, successor, assign, agent, or representative of the Creditor Trust, the Creditor Trustee, or any member of the Oversight Committee (each, an "Exculpated Party" and collectively, the "Exculpated Parties") shall be liable for any losses, claims, damages, liabilities, obligations, settlements, proceedings, suits, judgments, causes of action, litigation, actions, or investigations (whether civil or administrative and whether sounding in tort, contract or otherwise), penalties, costs, and expenses, including reasonable fees and disbursements (collectively referred to herein as "Losses"), whether or not in connection with litigation in which any Exculpated Party is a party, or enforcing this Creditor Trust Agreement (including these exculpation provisions), as and when imposed on an Exculpated Party, incurred, caused by, relating to, based upon or arising out of (directly or indirectly) the Creditor Trustee's or Oversight Committee's execution, delivery, and acceptance of or the performance or nonperformance of its powers, duties and obligations under this Creditor Trust Agreement, the Plan, or the Confirmation Order or as may arise by reason of any action, omission or error of an Exculpated Party; *provided, however*, that the foregoing limitation shall not apply to any Losses found in a final judgment by a court of competent jurisdiction (not subject to further appeal or review) to have resulted primarily and directly from the fraud, gross negligence, or willful misconduct of such Exculpated Party. Every act taken or omitted, power exercised or obligation assumed by the Creditor Trustee or any Exculpated Party pursuant to the provisions of this Creditor Trust Agreement shall be held to be taken or omitted, exercised, or assumed, as the case may be, by the Creditor Trustee or any Exculpated Party acting for and on behalf of the Creditor Trust and not otherwise; *provided, however*, that none of the foregoing Entities or persons are deemed to be responsible for any other such Entities' or persons' actions or inactions. Except as provided in the first proviso of the first sentence of this Section 5.1, every person, firm, corporation, or other Entity contracting or otherwise dealing with or having any relationship with the Creditor Trust or any Exculpated Party shall have recourse only to the Creditor Trust Assets for payment of any liabilities or other obligations arising in connection with such contracts, dealings or relationships, and the Creditor Trust and the Exculpated Parties shall not be individually liable therefore. In no event shall an Exculpated Party be liable for indirect, punitive, special, incidental, or consequential damage or loss (including but not limited to lost profits) whatsoever, even if the Exculpated Party had been informed of the likelihood of such loss or damages and regardless of the form of action. Except as provided in the first proviso of the first sentence of this Section 5.1, any liability of the Creditor Trustee under this Creditor Trust Agreement will be limited to the amount of annual fees paid to the Creditor Trustee. Without limiting the foregoing, the members of the Oversight Committee and the Creditor Trustee shall be entitled to the benefits of the limitation of liability and exculpation provisions set forth in the Plan and Confirmation Order.**

Section 5.2      Indemnification.

(a)     The Creditor Trustee, the members of the Oversight Committee, and any director, officer, member, affiliate, owner, parent, advisor, employee, employer, professional, successor, assign, agent, or representative of the Creditor Trust, the Creditor Trustee, or the members of the Oversight Committee (each, an "Indemnified Party" and collectively, the "Indemnified Parties") shall be defended, held harmless, and indemnified from time to time by the Creditor Trust against any and all Losses, including, without limitation, the costs for counsel or others in investigating, preparing, defending, or settling any action or claim, whether or not in connection with litigation in which any Indemnified Party is a party, or enforcing this Creditor Trust Agreement (including these indemnity provisions), as and when imposed on the Indemnified Party, incurred, caused by, relating to, based upon or arising out of (directly or indirectly) the Creditor Trustee's or Oversight Committee's execution, delivery, and acceptance of or the performance or nonperformance of its powers, duties, and obligations under this Creditor Trust Agreement, the Plan, or the Confirmation Order or as may arise by reason of any action, omission, or error of an Indemnified Party; *provided, however*, such indemnity shall not apply to any such Losses to the extent it is found in a final judgment by a court of competent jurisdiction (not subject to further appeal or review) to have resulted primarily and directly from the fraud, gross negligence, or willful misconduct of such Indemnified Party.  Satisfaction of any obligation of the Creditor Trust arising pursuant to the terms of this Section shall be payable only from the Creditor Trust Assets but shall be junior to Allowed Administrative Expense Claims (including Professional Fee Claims of the Debtors' and the Committee's Professionals, Secured Claims, Other Secured Claims, Priority Tax Claims and Other Priority Claims), but the right to such payment shall be superior to any other rights of Beneficiaries to receive a distribution of the Creditor Trust Assets.

(b)     The Creditor Trust shall promptly pay to the Indemnified Party the expenses set forth in subparagraph (a) above upon submission of invoices therefore on a current basis. Each Indemnified Party hereby undertakes, and the Creditor Trust hereby accepts its undertaking, to repay any and all such amounts so paid by the Creditor Trust if it shall ultimately be determined that such Indemnified Party is not entitled to be indemnified therefore under this Creditor Trust Agreement.

Section 5.3     No Liability for Acts of Successor/Predecessor Creditor Trustees. Upon the appointment of a successor Creditor Trustee and the delivery of the Creditor Trust Assets to the successor Creditor Trustee, the predecessor Creditor Trustee and any director, officer, affiliate, employee, employer, professional, agent, or representative of the predecessor Creditor Trustee shall have no further liability or responsibility with respect thereto. A successor Creditor Trustee shall have no duty to examine or inquire into the acts or omissions of its immediate or remote predecessor and no successor Creditor Trustee shall be in any way liable for the acts or omissions of any predecessor Creditor Trustee unless a successor Creditor Trustee expressly assumes such responsibility. A predecessor Creditor Trustee shall have no liability for the acts or omissions of any immediate or subsequent successor Creditor Trustee for any events or occurrences subsequent to the cessation of its role as Creditor Trustee.

Section 5.4     Reliance by Creditor Trustee and the Oversight Committee on Documents or Advice of Counsel or Other Professionals. Except as otherwise provided in this Creditor Trust Agreement, the Creditor Trustee, the members of the Oversight Committee, any director, officer, member, affiliate, owner, parent, advisor, employee, employer, professional, agent, or representative of the Creditor Trustee or the members of the Oversight Committee may rely, and

shall be protected from liability for acting or failing to act, upon any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, or other paper or document reasonably believed by the Creditor Trustee and/or members of the Oversight Committee to be genuine and to have been presented by an authorized party.  Neither the Creditor Trustee nor the Oversight Committee shall be liable for any action taken or omitted or suffered by the Creditor Trustee or the Oversight Committee, as applicable, in reasonable reliance upon the advice of counsel or other professionals engaged by the Creditor Trustee or the Oversight Committee, as applicable, in accordance with this Creditor Trust Agreement. The Creditor Trustee and the members of the Oversight Committee, as applicable, shall be fully indemnified by the Creditor Trust for or in respect of any action taken, suffered or omitted by it and in accordance with such advice or opinion.

Section 5.5    Conflicts of Interest. Conflicts of interest of the Creditor Trustee will be addressed by the Oversight Committee as set forth above in Article III.  If no Oversight Committee is serving, the Creditor Trustee will appoint a disinterested person to handle any matter where the Creditor Trustee has identified a conflict of interest or the Bankruptcy Court, on motion of a party in interest, determines one exists. In the event the Creditor Trustee is unwilling or unable to appoint a disinterested person to handle any such matter, the Bankruptcy Court, on notice and hearing, may do so.

Section 5.6    Insurance. The Creditor Trustee, in consultation with the Oversight Committee, may purchase, using the Creditor Trust Assets, and carry all insurance policies and pay all insurance premiums and costs the Creditor Trustee deem reasonably necessary or advisable, including, without limitation, purchasing any errors and omissions insurance with regard to any Losses it may incur, arising out of or due to its actions or omissions, or consequences of such actions or omissions, other than as a result of fraud or willful misconduct, with respect to the implementation and administration of the Plan or this Creditor Trust Agreement.

Section 5.7    No Liability for Good Faith Error of Judgment. The Creditor Trustee and members of the Oversight Committee shall not be liable for any error of judgment made in good faith, unless it shall be finally determined by a final judgment of a court of competent jurisdiction (not subject to further appeal or review) that the Creditor Trustee or member of the Oversight Committee was grossly negligent in ascertaining the pertinent facts.

Section 5.8    Survival. The provisions of this Article V shall survive the termination of this Creditor Trust Agreement and the death, resignation, removal, dissolution, or replacement of the Creditor Trustee, a member of the Oversight Committee or the dissolution of the Oversight Committee.

**ARTICLE VI**
**GENERAL PROVISIONS CONCERNING**
**ADMINISTRATION OF THE CREDITOR TRUST**

Section 6.1    Creditor Trust Reserve. The Creditor Trustee may, at its discretion, establish the Creditor Trust Reserve as set forth in Section 9.2 of this Creditor Trust Agreement.

Section 6.2     Register of Beneficiaries. The Creditor Trustee shall maintain at all times a register of the names, distribution addresses, amounts of Allowed Claims, and the ratable interests in the Creditor Trust of the Beneficiaries (the "Claims Register"). The initial Claims Register shall be delivered to the Creditor Trustee by the Debtors and shall be based on the list of holders of Claims maintained by Donlin Recano ("DC") as of the Effective Date and prepared in accordance with the provisions of the Plan and the Confirmation Order. The Creditor Trustee may retain DC (or another claims agent) to update and maintain such list throughout the administration of the Creditor Trust Assets and the Claims required to be administered by the Creditor Trustee, and such list may serve as the Claims Register.  All references in this Creditor Trust Agreement to holders of beneficial interests in the Creditor Trust shall be read to mean holders of record as set forth in the Claims Register maintained by the Creditor Trustee and the administrative creditors that elect to hold beneficial interests in the Creditor Trust as provided in the Plan or Confirmation Order and shall exclude any beneficial owner not recorded on such Claims Register.  The Creditor Trustee shall cause the Claims Register to be kept at its office or at such other place or places as may be designated by the Creditor Trustee from time to time.

Section 6.3     Books and Records.

(a)     On the Effective Date and pursuant to the Confirmation Order the Reorganize Debtors shall provide the Creditor Trustee access to all relevant books and records of the Debtors to allow them access to information necessary to administer the Creditor Trust. For the purpose of this Section 6.3, books and records include computer generated or computer maintained books and records and computer data, as well as electronically generated or maintained books and records or data, along with books and records of the Debtors maintained by or in possession of third parties and all of the claims and rights of the Debtors in and to their books and records, wherever located.

(b)     The Creditor Trustee also shall maintain in respect of the Creditor Trust and the Beneficiaries books and records relating to the Creditor Trust Assets and any income or proceeds realized therefrom and the payment of expenses of and claims against or assumed by the Creditor Trust in such detail and for such period of time as may be necessary to enable it to make full and proper reports in respect thereof. Except as expressly provided in this Creditor Trust Agreement, the Plan, or the Confirmation Order, or as may be required by applicable law (including securities law), nothing in this Creditor Trust Agreement is intended to require the Creditor Trustee to file any accounting or seek approval of any court with respect to the administration of the Creditor Trust, or as a condition for making any payment or distribution out of the Creditor Trust Assets. The Oversight Committee shall have the right to inspect the books and records of the Creditor Trust at any time upon reasonable notice to the Creditor Trustee. Beneficiaries shall have the right upon thirty (30) days' prior written notice delivered to the Creditor Trustee to inspect the Creditor Trust's books and records, including the Claims Register, provided such Beneficiary shall have (i) entered into a confidentiality agreement in form and substance reasonably satisfactory to the Creditor Trustee and (ii) agreed to pay all reasonable costs related to such inspection. Satisfaction of the foregoing condition notwithstanding, if (a) the Creditor Trustee and the Oversight Committee determine in good faith that the inspection of the Creditor Trust's books and records, including the Claims Register, by any Beneficiary would be detrimental to the Creditor Trust or (b) such Beneficiary is a defendant (or potential defendant) in a pending (or potential) action brought by the Creditor Trust, including any Claim objection, the

Creditor Trust may deny such request for inspection. The Bankruptcy Court shall resolve any dispute between any Beneficiary and the Creditor Trustee under this Section 6.3.

(c)     The books and records maintained by the Creditor Trustee may be disposed of by the Creditor Trustee at the later of (i) such time as the Creditor Trustee determines that the continued possession or maintenance of such books and records is no longer necessary for the benefit of the Creditor Trust or its Beneficiaries or (ii) upon the termination and completion of the winding down of the Creditor Trust.

Section 6.4     <u>Filing of Interim Reports</u>. The Creditor Trust shall file with the Bankruptcy Court quarterly reports regarding the administration of the Creditor Trust Assets. Such reports may, in the discretion of the Creditor Trustee, be subsumed by, or combined with, any quarterly post-confirmation reports required by the Office of the United States Trustee.

Section 6.5     <u>Final Accounting of Creditor Trustee</u>. The Creditor Trustee (or any such successor Creditor Trustee) shall within thirty (30) days after the termination of the Creditor Trust or the death, dissolution, resignation, or removal of the Creditor Trustee, render an accounting containing the following information:

(a)     A description of the Creditor Trust Assets;

(b)     A summarized accounting in sufficient detail of all gains, losses, receipts, disbursements and other transactions in connection with the Creditor Trust and the Creditor Trust Assets during the Creditor Trustee's term of service, including their source and nature;

(c)     Separate entries for all receipts of principal and income;

(d)     The ending balance of all Creditor Trust Assets as of the date of the accounting, including the Cash balance on hand and the name(s) and location(s) of the depository or depositories where the Cash is kept;

(e)     All known liabilities of the Creditor Trust; and

(f)     All pending actions.

Section 6.6     <u>Filing of Accounting</u>. The final accounting described in Section 6.5 shall be filed with the Bankruptcy Court.

## ARTICLE VII
## BENEFICIAL INTERESTS AND BENEFICIARIES

Section 7.1     <u>Trust Beneficial Interests</u>. Each holder of an Allowed Claim, shall be entitled to receive beneficial interests in accordance with the treatment of such Claim under the Plan and this Creditor Trust Agreement, and shall be entitled to distributions as set forth in the Plan.

Section 7.2   Interest Beneficial Only.  Ownership of a beneficial interest in the Creditor Trust shall not entitle any Beneficiary to any title in or to the Creditor Trust Assets or to any right to call for a partition or division of the Creditor Trust Assets or to require an accounting.

Section 7.3   Evidence of Beneficial Interest. Ownership of a beneficial interest in the Creditor Trust shall not be evidenced by any certificate, security, or receipt or in any other form or manner whatsoever, except as maintained on the books and records of the Creditor Trust by the Creditor Trustee, which may be the Claims Register.

Section 7.4   Exemption from Registration. The parties hereto intend that the rights of the holders of the beneficial interests arising under this Creditor Trust Agreement shall not be "securities" under applicable laws, but none of the parties hereto represents or warrants that such rights shall not be securities or shall be entitled to exemption from registration under applicable securities laws.  If such rights constitute securities, the parties hereto intend for the exemption from registration provided by Section 1145 of the Bankruptcy Code and by other applicable law to apply to their issuance under the Plan.

Section 7.5   Transfers of Beneficial Interests. Beneficial interests in the Creditor Trust shall be nontransferable except upon death of the interest holder or by operation of law. The Creditor Trust shall not have any obligation to recognize any transfer of Claims occurring after the Confirmation Date.  Only those holders of Claims of record stated on the transfer ledgers as of the close of business on the Confirmation Date, to the extent applicable, shall be entitled to be recognized for all purposes hereunder.

Section 7.6   Absolute Owners. The Creditor Trustee may deem and treat the Beneficiary reflected as the owner of a beneficial interest on the Claims Register as the absolute owner thereof for the purposes of receiving distributions and payments on account thereof for federal and state income tax purposes and for all other purposes whatsoever. In no event shall the Debtors be deemed to have any ownership interest in the Creditor Trust for federal or state income tax purposes.

Section 7.7   Change of Address. A Beneficiary may, after the Effective Date, select an alternative distribution address by filing a notice with the Bankruptcy Court (copy served on the Creditor Trustee) identifying such alternative distribution address.  Absent such notice, the Creditor Trustee shall not recognize any such change of distribution address. Such notification shall be effective only upon receipt by the Creditor Trustee.

Section 7.8   Effect of Death, Dissolution, Incapacity, or Bankruptcy of Beneficiary.  The death, dissolution, incapacity, or bankruptcy of a Beneficiary during the term of the Creditor Trust shall not operate to terminate the Creditor Trust during the term of the Creditor Trust nor shall it entitle the representative or creditors of the deceased, incapacitated or bankrupt Beneficiary to an accounting or to take any action in any court or elsewhere for the distribution of the Creditor Trust Assets or for a partition thereof nor shall it otherwise affect the rights and obligations of the Beneficiary under this Creditor Trust Agreement or in the Creditor Trust.

Section 7.9   Standing. Except as expressly provided in this Creditor Trust Agreement, the Plan or the Confirmation Order, a Beneficiary does not have standing to direct the Creditor

Trustee to do or not to do any act or to institute any action or proceeding at law or in equity against any party upon or with respect to the Creditor Trust Assets.

## ARTICLE VIII
## PROCEDURES FOR RESOLVING AND TREATING DISPUTED CLAIMS

Section 8.1    Incorporation of Plan Provisions. As of the Effective Date, the Creditor Trustee shall have the exclusive right and authority to (a) make and file objections to all Claims and (b) compromise, settle, otherwise resolve or withdraw any objections to Claims without approval of the Bankruptcy Court.  The Creditor Trustee shall have one (1) year after the Effective Date to file all objections to Claims (except for Professional Fee Claims) and serve such objections upon the holders of the affected Claims.  The Creditor Trustee shall, for good cause, have the right to seek authority from the Bankruptcy Court to extend the dates for filing and serving the objections to the holders of such Claims.

## ARTICLE IX
## DISTRIBUTIONS

Section 9.1    Distributions to Beneficiaries from Creditor Trust Assets. All payments to be made by the Creditor Trust to any Beneficiary shall be made only in accordance with the Plan, the Confirmation Order and this Creditor Trust Agreement and from the Creditor Trust Assets (or from the income and proceeds realized from the Creditor Trust Assets) net of the Creditor Trust Reserve (defined below), the Claim reserves and other reserves established by the Creditor Trustee, if any, and only to the extent that the Creditor Trust has sufficient Creditor Trust Assets (or income and proceeds realized from the Creditor Trust Assets) to make such payments in accordance with and to the extent provided for in the Plan, the Confirmation Order, and this Creditor Trust Agreement. Before any distribution can be made, the Creditor Trustee shall, in its reasonable discretion, establish, supplement, and maintain reserves in an amount sufficient to meet any and all expenses and liabilities of the Creditor Trust, including fees and expenses of the Creditor Trustee, fees and expenses of professionals retained by the Creditor Trust or the Creditor Trustee, the fees and expenses of other professionals, and fees owed the United States Trustee.

Section 9.2    Distributions; Withholding. The Creditor Trustee shall make distributions to Beneficiaries as provided in the Plan on quarterly distribution dates, to the extent possible; *provided, however*, that the Creditor Trustee may retain and supplement from time to time a reserve (the "Creditor Trust Reserve") in such amount (a) as is reasonably necessary to meet contingent liabilities and to maintain the value of the Creditor Trust Assets during the term of the Creditor Trust; and (b) to pay the Creditor Trust's incurred and projected expenses including, without limitation, the compensation and the reimbursement of reasonable, actual and necessary costs, fees, and expenses (including attorneys' fees and expenses, financial advisor fees and expenses, and disbursing agent fees and expenses) of the Creditor Trustee in connection with the performance of their duties in connection with this Creditor Trust Agreement.  The funding of the Creditor Trust Reserve may preclude or reduce distributions to Beneficiaries.  All such distributions shall be made as provided, and subject to any withholding or reserve, in this Creditor Trust Agreement, the Plan or the Confirmation Order. Additionally, the Creditor Trustee may withhold from amounts distributable to any Beneficiary any and all amounts, determined in the Creditor Trustee's sole discretion, to be required by any law, regulation, rule, ruling, directive, or other governmental

requirement. In addition, all distributions under this Creditor Trust Agreement shall be net of the actual and reasonable costs of making such distributions.  Prior to the making of any distributions contemplated hereunder, the Creditor Trustee shall provide the Oversight Committee with five business day's written notice of any such distribution, which notice shall include a summary of the aggregate amounts to be distributed.

Section 9.3    No Distribution Pending Allowance. No payment or distribution shall be made with respect to any Claim to the extent it is a Disputed Claim unless and until such Disputed Claim becomes an Allowed Claim, except for distributions into a Disputed Claims Reserve. For the avoidance of doubt, (i) nothing herein or in the Plan shall preclude the Creditor Trustee from making distributions on account of the undisputed portions of Disputed Claims in the discretion of the Creditor Trustee and (ii) the Creditor Trustee may withhold any distribution pending determination of whether to object to a Claim and amounts so withheld will be included in the Disputed Claims Reserve.

Section 9.4    Distributions after Allowance. Distributions to each holder of a Disputed Claim, to the extent that such Claim ultimately becomes an Allowed Claim, shall be made in accordance with the provisions of the Plan, Confirmation Order, and this Creditor Trust Agreement.

Section 9.5    Non-Cash Property. Any non-Cash Creditor Trust Assets may be sold, transferred, donated or abandoned by the Creditor Trustee.  If, in the Creditor Trustee's reasonable judgment, such property cannot be sold in a commercially reasonable manner, or the Creditor Trustee believes, in good faith, such property has no value to the Creditor Trust, the Creditor Trustee shall have the right, in consultation with the Oversight Committee, to abandon, donate or otherwise dispose of such property. Except in the case of a fraud, willful misconduct, or gross negligence finally determined by a final judgment of a court of competent jurisdiction, neither the Creditor Trustee nor any director, officer, employee, owner, parent advisor, consultant, or professional of the Creditor Trustee, the Oversight Committee, or of any of its members or professionals, shall have any liability arising from or related to the disposition of non-Cash Creditor Trust Assets in accordance with this Section.

Section 9.6    Undeliverable Distributions and Unclaimed Distributions. Subject to the terms of this section, distributions returned to the Creditor Trustee or otherwise undeliverable will remain in the possession of the Creditor Trustee, until such time as a distribution becomes deliverable. Undeliverable Cash will be held by the Creditor Trustee for the benefit of the Beneficiary of such Cash, subject to the terms of the Plan. If any distribution is returned as undeliverable, the Creditor Trustee may, but shall not be required to, take reasonable steps to attempt to deliver the distribution. Any holder of an Allowed Claim that does not advise the Creditor Trustee that it has not received its distribution within sixty (60) days after the date of attempted distribution will have its Claim for such undeliverable distribution discharged and will be forever barred from asserting any such Claim against the Creditor Trust, the Debtors, or the Assets. In such cases, undeliverable distributions will be distributed in accordance with the Creditor Trust Agreement. Distributions must be negotiated within sixty (60) days of the date of distribution.

Section 9.7   <u>Unclaimed Property</u>.   Except with respect to property not distributed because it is being held in a Disputed Claims Reserve, Unclaimed Property as that term is defined in Section 7.03 of the Plan and shall vest or revest in the Creditor Trust, and the Claims with respect to which those distributions are made shall be automatically canceled.  All funds or other property that vests or revests in the Creditor Trust pursuant to the Plan and this Section 9.7 shall be distributed by the Creditor Trustee to the other Beneficiaries in accordance with the provisions of the Plan and this Creditor Trust Agreement.  A Claim, and the Unclaimed Property distributed on account of such Claim, shall not escheat to any federal, state, or local government or other entity by reason of the failure of its holder to claim a distribution in respect of such Claim.

Section 9.8   <u>Time Bar to Cash Payments by Check</u>. Checks issued by the Creditor Trust to Beneficiaries shall be null and void if not negotiated within 60 days after the date of issuance thereof. The reissuance of checks shall be made in writing to the Creditor Trustee and may be reissued in the discretion of the Creditor Trustee.

Section 9.9   <u>Withholding Taxes and Expenses of Distribution</u>. Any federal, state or local withholding taxes or other amounts required to be withheld under applicable law shall be deducted from distributions pursuant to the Plan. The Creditor Trustee may withhold from amounts distributable pursuant to the Plan to any Person or Entity any and all amounts, determined in the sole and reasonable discretion of the Creditor Trustee, required to be withheld by any law, regulation, rule, ruling, directive, or other governmental requirement.  All holders of Claims shall be required to provide the Creditor Trustee with any information necessary to effect the withholding of such taxes. In addition, all distributions under the Plan shall be net of the actual and reasonable costs of making such distributions.  If such information is not provided within one hundred and twenty days (120) days of being requested, all distributions to which such holders are or become entitled shall be treated as Unclaimed Property, unless determined otherwise in the discretion of the Creditor Trustee.

Section 9.10   <u>Conflicting Claims</u>. If any conflicting claims or demands are made or asserted with respect to the beneficial interest of a Beneficiary under this Creditor Trust Agreement, or if there is any disagreement between the assignees, transferees, heirs, representatives or legatees succeeding to all or a part of such an interest resulting in adverse claims or demands being made in connection with such interest, then, in any of such events, the Creditor Trustee shall be entitled, in its sole discretion, to refuse to comply with any such conflicting claims or demands.

(a)   In so refusing, the Creditor Trustee may elect to cause the Creditor Trust to make no payment or distribution with respect to the beneficial interest subject to the conflicting claims or demand, or any part thereof, and to refer such conflicting claims or demands to the Bankruptcy Court, which shall have exclusive jurisdiction over resolution of such conflicting claims or demands. In so doing, neither the Creditor Trust nor the Creditor Trustee shall be or become liable to any of such parties for their refusal to comply with any such conflicting claims or demands, nor shall the Creditor Trust or Creditor Trustee be liable for interest on any funds which may be so withheld.

(b)   The Creditor Trustee shall be entitled to refuse to act until either (i) the rights of the adverse claimants have been adjudicated by a final order of the Bankruptcy Court or

(ii) all differences have been resolved by a valid written agreement among all such parties to the satisfaction of the Creditor Trustee, which agreement shall include a complete release of the Creditor Trust and Creditor Trustee. Until the Creditor Trustee receives written notice that one of the conditions of the preceding sentence is met, the Creditor Trustee may deem and treat as the absolute owner under this Creditor Trust Agreement of the beneficial interest in the Creditor Trust the Beneficiary identified as the owner of that interest in the books and records maintained by the Creditor Trustee. The Creditor Trustee may deem and treat such Beneficiary as the absolute owner for purposes of receiving distributions and any payments on account thereof for federal and state income tax purposes, and for all other purposes whatsoever.

(c)     In acting or refraining from acting under and in accordance with this Section 9.10 of the Creditor Trust Agreement, the Creditor Trustee shall be fully protected and incur no liability to any purported claimant or any other Person pursuant to Article V of this Agreement.

Section 9.11   <u>Distributions on Non-Business Days</u>. Any payment or distribution due on a day other than a Business Day shall be made, without interest, on the next Business Day.

Section 9.12   <u>No Distribution in Excess of Allowed Amount of Claim</u>. Notwithstanding anything to the contrary herein, no Holder of an Allowed Claim shall receive in respect of such Claim any distribution in excess of the Allowed amount of such Claim.

Section 9.13   <u>Disallowance of General Unsecured Claims; Cancellation of Corresponding Beneficial Interests</u>. All Claims in respect of undeliverable or unclaimed distributions that have become Unclaimed Property shall be deemed disallowed and expunged. The holder of any such disallowed Claim shall no longer have any right, claim, or interest in or to any distributions in respect of such disallowed Claim, and is forever barred, estopped, and enjoined from receiving any distributions under the Plan, the Confirmation Order and this Creditor Trust Agreement. Notwithstanding the foregoing, upon the request of a party whose distribution was deemed Unclaimed Property, the Creditor Trustee may, in its discretion, reinstate the Allowed Claim (and corresponding beneficial interest in the Creditor Trust) and make a replacement distribution.

Section 9.14   <u>Setoff</u>. The Creditor Trustee may, but shall not be required to, setoff against any Claim (for purposes of determining the Allowed amount of such Claim in respect of which distribution shall be made), any claims of any nature whatsoever that the Debtors may have or had against the holder of such Claim.

Section 9.15   <u>De Minimis Amounts</u>. The Creditor Trustee shall not be obligated to make any distributions on account of any Claim if the aggregate distribution to such holder on account of such Allowed Claim does not exceed $50.

Section 9.16   <u>Priority of Expenses of Trust</u>. The Creditor Trust must pay or reserve for payment all of its expenses before making Distributions other than those distributions on Allowed Claims required to receive payment at specific times in specific amounts as set forth in the Plan or the Confirmation Order

## ARTICLE X
## TAXES

Section 10.1    <u>Income Tax Status</u>. For federal income tax purposes, it is intended that the Creditor Trust be classified as a Creditor trust under section 301.7701-4 of the Treasury Regulations and that such trust be owned by its beneficiaries. Accordingly, for federal income tax purposes, it is intended that the beneficiaries be treated as if they had received a distribution from the Debtors' Estates of an undivided interest in each of the Assets (to the extent of the value of their respective share in the applicable Assets) and then contributed such interests to the Creditor Trust, and the Creditor Trust's beneficiaries will be treated as the grantors and owners thereof.

Section 10.2    <u>Tax Returns</u>. The Creditor Trustee shall file tax returns for the Creditor Trust as a grantor trust pursuant to Treasury Regulation section 1.671-4(a) and in accordance with this Plan. The Creditor Trust also shall annually (for tax years in which distributions from the Creditor Trust are made) send to each beneficiary a separate statement setting forth the beneficiary's share of items of income, gain, loss, deduction or credit and all such holders shall report such items on their federal income tax returns; *provided, however*, that no such statement need be sent to any Class that is not expected to receive any distribution from the Creditor Trust. The Creditor Trust's taxable income, gain, loss, deduction or credit will be allocated to the Creditor Trust's beneficiaries in accordance with their relative beneficial interests in the Creditor Trust. The Creditor Trustee may request an expedited determination of taxes of the Creditor Trust under Bankruptcy Code section 505(b) for all tax returns filed for, or on behalf of, the Creditor Trust for all taxable periods through the dissolution of the Creditor Trust. The Creditor Trustee shall be responsible for filing all federal, state, and local tax returns for the Creditor Trust. The Creditor Trust shall comply with all withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all distributions made by the Creditor Trustee shall be subject to any such withholding and reporting requirements.

Section 10.3    <u>Withholding of Taxes and Reporting Related to Creditor Trust Operations</u>. The Creditor Trustee may withhold and pay to the appropriate taxing authority all amounts required to be withheld pursuant to the Tax Code or any provision of any foreign, state or local tax law with respect to any payment or distribution. All such amounts withheld and paid to the appropriate taxing authority shall be treated as amounts distributed to such holders of the Claims or equity Interests. The Creditor Trustee shall be authorized to collect such tax information from the holders of Claims or equity Interests (including social security numbers or other tax identification numbers) as it in its sole discretion deems necessary to effectuate the Plan. In order to receive distributions under the Plan, all holders of Claims and equity Interests will need to identify themselves to the Creditor Trustee and provide all tax information the Creditor Trustee deems appropriate (including completing the appropriate Form W-8 or Form W-9, as applicable to each holder). The Creditor Trustee may refuse to make a distribution to any holder of a Claim or equity Interests that fails to furnish such information within the time period specified by the Creditor Trustee and such distribution shall be deemed an unclaimed distribution under the Plan, and, provided further that, if the Creditor Trustee fails to withhold in respect of amounts received or distributable with respect to any such holder and the Creditor Trustee is later held liable for the amount of such withholding, such holder shall reimburse the Creditor Trustee for such liability. Notwithstanding any other provision of the Plan, (a) each holder of an Allowed Claim or equity Interest that is to receive a distribution under the Plan shall have the sole and exclusive

responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, and (b) no distributions shall be required to be made to or on behalf of such holder pursuant to the Plan unless and until such holder has made arrangements satisfactory to the Creditor Trustee for the payment and satisfaction of such tax obligations or has, to the Creditor Trustee's satisfaction, established an exemption therefrom.

Section 10.4   <u>Valuations</u>. Pursuant to Section 4.7(f) of the Plan, except to the extent definitive guidance from the IRS or a court of competent jurisdiction (including the issuance of applicable Treasury Regulations, the receipt by the Creditor Trustee of a private letter ruling if the Creditor Trustee so requests one) indicates that such valuation is not necessary to maintain the treatment of the Creditor Trust as a Creditor Trust for purposes of the internal revenue code and applicable Treasury Regulations, as soon as possible after the Effective Date, the Creditor Trust shall make a good faith valuation of assets of the Creditor Trust, and such valuation shall be used consistently by all parties for all federal income tax purposes. The Creditor Trustee also shall file (or cause to be filed) any other statements, returns, or disclosures relating to the Creditor Trust that are required by any governmental unit for taxing purposes.

Section 10.5   <u>Treatment of Claims Reserves</u>. Notwithstanding any other provision of this Creditor Trust Agreement to the contrary, subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary, the Creditor Trust may, in its sole discretion, determine the best way to report any Disputed Claims Reserve. Accordingly, the Creditor Trustee may, in its discretion, elect to (i) treat any Creditor Trust Assets allocable to, or retained on account of, a Claims Reserve in accordance with Section 8.2 of this Creditor Trust Agreement as held by one or more discrete trusts for federal income tax purposes, consisting of separate and independent shares to be established in respect of each Disputed Claim, in accordance with the trust provisions of the IRC (Sections 641 et seq.), (ii) treat as taxable income or loss of each Disputed Claims Reserve, with respect to any given taxable year, the portion of the taxable income or loss of the Creditor Trust that would have been allocated to the holders of Disputed Claims had such Claims been Allowed on the Effective Date (but only for the portion of the taxable year with respect to which such Claims are unresolved), (iii) treat as a distribution from the Disputed Claims Reserve any increased amounts distributed by the Creditor Trust as a result of any Disputed Claims resolved earlier in the taxable year, to the extent such distributions relate to taxable income or loss of the Disputed Claims Reserve determined in accordance with the provisions hereof, (iv) file a tax election to treat any and all reserves for Disputed General Unsecured Claims as a "Disputed Ownership Fund" within the meaning of Treasury Regulation section 1.468B-9 for federal income tax purposes rather than to tax such reserve as a part of the Creditor Trust, and (v) to the extent permitted by applicable law, report consistent with the foregoing for state and local income tax purposes. All Beneficiaries shall report, for income tax purposes, consistent with the election of the Creditor Trustee. In the event, and to the extent, any Cash retained on account of Disputed Claims in the Disputed Claims Reserve is insufficient to pay the portion of any such taxes attributable to the taxable income arising from the assets allocable to, or retained on account of, Disputed Claims, such taxes shall be (i) reimbursed from any subsequent Cash amounts retained on account of Disputed Claims, or (ii) to the extent such Disputed Claims have subsequently been resolved, deducted from any amounts distributable by the Creditor Trustee as a result of the resolutions of such Disputed Claims.

Section 10.6    Expedited Determination of Taxes. The Creditor Trust may request an expedited determination of taxes or tax refund rights of the Creditor Trust, including the Disputed Claims Reserve, under Section 505(b) of the Bankruptcy Code for all returns or claims filed for the Creditor Trust for all taxable periods through the termination of the Creditor Trust.

## ARTICLE XI
## TERMINATION OF CREDITOR TRUST

Section 11.1    Termination of Creditor Trust. The Creditor Trustee shall be discharged and the Creditor Trust shall be terminated, at such time as (i) all Disputed Claims have been resolved, (ii) all of the Assets have been liquidated, (iii) all duties and obligations of the Creditor Trustee under the Creditor Trust Agreement have been fulfilled, (iv) all distributions required to be made under this Plan and the Creditor Trust Agreement have been made, and (v) the Debtors' Chapter 11 Cases have been closed.

Section 11.2    Events Upon Termination. At the conclusion of the term of the Creditor Trust, the Creditor Trustee shall distribute the remaining Creditor Trust Assets (subject to a reserve for expenses incurred in winding up the affairs of the Creditor Trust), if any, to the Beneficiaries, in accordance with the Plan, the Confirmation Order, and this Creditor Trust Agreement.

Section 11.3    Winding Up, Discharge, and Release of the Creditor Trustee. For the purposes of winding up the affairs of the Creditor Trust at the conclusion of its term, the Creditor Trustee shall continue to act as Creditor Trustee until its duties under this Creditor Trust Agreement have been fully discharged or its role as Creditor Trustee is otherwise terminated under this Creditor Trust Agreement and the Plan. Upon a motion by the Creditor Trustee, the Bankruptcy Court may enter an order relieving the Creditor Trustee, its agents and employees of any further duties, discharging, and releasing the Creditor Trustee and its bond, if any.

## ARTICLE XII
## MISCELLANEOUS PROVISIONS

Section 12.1    Amendments. The Creditor Trust Agreement may be modified, supplemented, or amended by the Creditor Trustee as long as it is not inconsistent with the Plan or the Confirmation Order and such proposed modification, supplement or amendment is approved by a majority vote of the Oversight Committee.  Any modified or amended Creditor Trust Agreement shall be filed with the Bankruptcy Court.

Section 12.2    Waiver. No failure by the Creditor Trustee or the Oversight Committee to exercise or delay in exercising any right, power, or privilege hereunder shall operate as a waiver, nor shall any single or partial exercise of any right, power, or privilege hereunder preclude any further exercise thereof, or of any other right, power, or privilege.

Section 12.3    Cumulative Rights and Remedies. The rights and remedies provided in this Creditor Trust Agreement are cumulative and are not exclusive of any rights under law or in equity.

Section 12.4    No Bond Required. Notwithstanding any state law to the contrary, the Creditor Trustee (including any successor Creditor Trustee) shall be exempt from giving any bond or other security in any jurisdiction.

Section 12.5    <u>Irrevocability</u>. This Creditor Trust Agreement and the Creditor Trust created hereunder shall be irrevocable, except as otherwise expressly provided in this Creditor Trust Agreement.

Section 12.6    <u>Tax Identification Numbers</u>. The Creditor Trustee shall require any Beneficiary to furnish to the Creditor Trustee its social security number or employer or taxpayer identification number as assigned by the internal revenue service and the Creditor Trustee may condition any distribution to any Beneficiary upon the receipt of such identification number.  No distribution shall be made to or on behalf of a Beneficiary unless and until such holder has provided the Creditor Trustee with any information, records, or documents necessary to satisfy the Creditor Trustee's tax reporting obligations, including, but not limited to, completed internal revenue service form W9, or, where applicable, a completed form W-8 or certificate of non- foreign status. If such information is not provided within sixty (60) days and a second request of the Creditor Trustee to be made thirty (30) days after the first request, all distributions to which such holders are or become entitled may be treated as Unclaimed Property.

Section 12.7    <u>Relationship to the Plan</u>. The principal purpose of this Creditor Trust Agreement is to aid in the implementation of the Plan and, therefore, this Creditor Trust Agreement incorporates and is subject to the provisions of the Plan and the Confirmation Order. In the event that any provision of this Creditor Trust Agreement is found to be inconsistent with a provision of the Plan, the provisions of this Creditor Trust Agreement, as applicable, shall control. In the event that any provision of the Creditor Trust Agreement is found to be inconsistent with a provision of the Confirmation Order, the Confirmation Order shall control.

Section 12.8    <u>Division of Creditor Trust</u>. Under no circumstances shall the Creditor Trustee have the right or power to divide the Creditor Trust unless authorized to do so by the Bankruptcy Court.

Section 12.9    <u>Applicable Law</u>. This Creditor Trust shall be governed by and construed in accordance with the laws of the State of Texas, without giving effect to rules governing the conflict of laws.

Section 12.10    <u>Retention of Jurisdiction</u>. Notwithstanding the Effective Date, and to the fullest extent permitted by law, the Bankruptcy Court shall retain exclusive jurisdiction over the Creditor Trust after the Effective Date, including, without limitation, jurisdiction to resolve any and all controversies, suits and issues that may arise in connection therewith, as set forth in Section 12 of the Plan. Each party to this Creditor Trust Agreement hereby irrevocably consents to the exclusive jurisdiction and venue of the Bankruptcy Court in any action to enforce, interpret or construe any provision of this Creditor Trust Agreement or of any other agreement or document delivered in connection with this Creditor Trust Agreement, and also hereby irrevocably waives any defense of improper venue, forum *non conveniens* or lack of personal jurisdiction to any such action brought in the Bankruptcy Court.  Each party further irrevocably agrees that any action to enforce, interpret, or construe any provision of this Creditor Trust Agreement will be brought only in the Bankruptcy Court.  Each party hereby irrevocably consents to the service by certified or registered mail, return receipt requested, of any process in any action to enforce, interpret or construe any provision of this Creditor Trust Agreement.

Section 12.11  <u>Severability</u>. In the event that the Bankruptcy Court determines, prior to the Confirmation Date, that any provision in the Plan is invalid, void or unenforceable, such provision shall be invalid, void or unenforceable with respect to the holder or holders of such Claims or Equity Interests as to which the provision is determined to be invalid, void or unenforceable. The invalidity, voidness or unenforceability of any such provision shall in no way limit or affect the enforceability and operative effect of any other provision of the Plan and shall not require the resolicitation of any acceptance or rejection of the Plan unless otherwise ordered by the Bankruptcy Court.

Section 12.12  <u>Limitation of Benefits</u>. Except as otherwise specifically provided in this Creditor Trust Agreement, the Plan or the Confirmation Order, nothing herein is intended or shall be construed to confer upon or to give any person other than the parties hereto and the Beneficiaries any rights or remedies under or by reason of this Creditor Trust Agreement.

Section 12.13  <u>Notices</u>. Except as provided in Section 12.10 of this Creditor Trust Agreement, all notices, requests and demands to be effective shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows::

If to the Creditor Trustee:

with a copy to:

Warrior Creditor Trustee
c/o  Force 10 Partners
20341 SW Birch St., Suite 220
Newport Beach, CA  92660

If to a Beneficiary:

To the name and distribution address set forth in the Claims Register with respect to such Beneficiary.

The parties may designate in writing from time to time other and additional places to which notices may be sent.

Section 12.14  <u>Further Assurances</u>. From and after the Effective Date, the parties hereto covenant and agree to execute and deliver all such documents and notices and to take all such further actions as may reasonably be required from time to time to carry out the intent and purposes of this Creditor Trust Agreement, and to consummate the transactions contemplated hereby.

Section 12.15  <u>Integration</u>. This Creditor Trust Agreement, the Plan, and the Confirmation Order constitute the entire agreement with, by and among the parties thereto, and there are no representations, warranties, covenants, or obligations except as set forth herein, in the Plan and in the Confirmation Order. This Creditor Trust Agreement, together with the Plan and the Confirmation Order, supersede all prior and contemporaneous agreements, understandings, negotiations, and discussions, written or oral, of the parties hereto, relating to any transaction

contemplated hereunder. Except as otherwise provided in this Creditor Trust Agreement, the Plan or Confirmation Order, nothing herein is intended or shall be construed to confer upon or give any person other than the parties hereto and the Beneficiaries any rights or remedies under or by reason of this Creditor Trust Agreement.

Section 12.16 <u>Interpretation</u>. The enumeration and Section headings contained in this Creditor Trust Agreement are solely for convenience of reference and shall not affect the meaning or interpretation of this Creditor Trust Agreement or of any term or provision hereof. Unless context otherwise requires, whenever used in this Creditor Trust Agreement the singular shall include the plural and the plural shall include the singular, and words importing the masculine gender shall include the feminine and the neuter, if appropriate, and vice versa, and words importing persons shall include partnerships, associations, and corporations. The words herein, hereby, and hereunder and words with similar import, refer to this Creditor Trust Agreement as a whole and not to any particular section or subsection hereof unless the context requires otherwise. Any reference to the "Creditor Trustee" shall be deemed to include a reference to the "Creditor Trust" and any reference to the "Creditor Trust" shall be deemed to include a reference to the "Creditor Trustee" except for the references in Sections 5.1 and 5.2, and such other provisions in which the context otherwise requires.

Section 12.17 <u>Counterparts</u>. This Creditor Trust Agreement may be signed by the parties hereto in counterparts, which, when taken together, shall constitute one and the same document. Delivery of an executed counterpart this Creditor Trust Agreement by facsimile or email in pdf format shall be equally effective as delivery of a manually executed counterpart.

IN WITNESS WHEREOF, the parties hereto have either executed and acknowledged this Creditor Trust Agreement, or caused it to be executed and acknowledged on their behalf by their duly authorized officers or representatives, all as of the date first above written.

Dated: July __, 2020

## Exhibit A

### Liquidating Trustee Compensation

Pursuant to Section 2.4 of this Agreement, this Exhibit sets forth the terms of the Trustee's compensation.

The Trustee shall be compensated for its services as Creditor Trustee at a fixed monthly rate as outlined below:

| | |
|---|---|
| **Force 10 Agency Services, LLC** | **$5,000** |
| | |
| | |
| | |

The Trustee will also be entitled to reimbursement of actual and necessary expenses incurred, including those of its attorneys, advisors, employees and agents.

20453382v1

# **EXHIBIT B**

EXCLUDED AVOIDANCE ACTIONS

None, but subject to further amendment prior to the Effective Date

# **EXHIBIT C**

(Additional) Excluded Parties

**EXHIBIT "A"**

**(ADDITIONAL) EXCLUDED PARTIES**[1]

The following is a non-exclusive list of the Excluded Parties, as such term is defined in the Plan.

The Excluded Parties are subject to claims for, *inter alia*, Causes of Action and Avoidance Actions, as defined in the Plan.

With respect to Persons identified herein, Excluded Parties includes, *inter alia*: (i) any entity directly or indirectly owned or controlled by such Person, and (ii) any current or former spouse, partner, or any other relative of any such Person.

With respect to Entities identified herein, Excluded Parties includes all past and present, shareholders, members, partners, general partners, limited partners, officers, directors, employees, professionals, affiliates, subsidiaries, and successors of any such Entity.

1)      Brendan M. Flaherty
2)      Dillon Flaherty
3)      Devin Flaherty
4)      Destiny Flaherty
5)      Toni Flaherty
6)      Dwight Bickerstaff
7)      Aaron Mun
8)      Wayne Deloney
9)      Ryan Rodney
10)     Trevor Tam
11)     Katie Sanchez
12)     Henry Peter Wheelhan, Jr.
13)     Tom Porter
14)     R.E. Alexander
15)     Eric Taylor
16)     Howard Farber
17)     Russell Theisen
18)     Sean McDonald
19)     John Fitzmartin
20)     Douglas White
21)     Daniel Davis
22)     Sandra Davis
23)     Thomas Dean
24)     Bonnie Dean
25)     Brenda Severson
26)     Walter Curtis Hunt
27)     Leon Engelking

---

[1] Capitalized terms used herein are as defined in the Plan to which this Exhibit A is attached.

59217/0001-17846478v3
59217/0001-20443717v1

28)   Elvira Engelking
29)   Rick Falaschetti
30)   Stephen Thomas
31)   Cecil Mellinger
32)   Jessie Miller
33)   Mark Bauman
34)   Dwight Beckstrand
35)   Anthony Ivankovich
36)   A and O Family Trust
37)   A and O Family LLC
38)   Zavatkay Holdings, LLC
39)   WGP Related Persons
40)   Dot Com Asset Management, Ltd.
41)   BMF Properties, LLC
42)   Sterling and Marx, Inc.
43)   Wholesale Golf Supply & Services, Inc.
44)   Sports Collectables International, Inc.
45)   Warrior Table Soccer, LLC
46)   Warrior Extreme Sports, LLC
47)   Warrior Golf Properties, LLC
48)   Warrior Golf, LLC, a California limited liability company
49)   Warrior Development, Inc.
50)   IRA Resources, Inc.
51)   Equity Trust Company
52)   ColeyDocter, Inc.
53)   Runaway Bay Golf Club, LLC
54)   Alpha Adventure Ranch at Nocona, LLC
55)   City of Boonville, Indiana
56)   Marcus & Millichap, Inc.
57)   Stepp Law Corporation
58)   Morgan Lewis & Bockius LLP
59)   Wunderlich Securities, Inc.
60)   Marcum LLP
61)   Beckstrand Law Offices, P.C.
62)   Warrior Custom Storage RV, LP
63)   Riverbound Storage Management, LLC
64)   John Combs
65)   Laura Vannessen
66)   Kimberly Porter
67)   TMA 17, Inc.
68)   Any and all Persons or Entities that, in any fashion, participated in, *inter alia*, the marketing, sale, solicitation of Investments or the Convertible Notes

2

69) Any and all Persons or Entities that, in any fashion participated in, *inter alia*, provided advice, guidance, legal or financial consultation, with respect to the marketing, sale, solicitation of Investments, or the Convertible Notes

70) Any and all Persons or Entities that, in any fashion participated in, *inter alia*, provided advice, guidance, legal or financial consultation, with respect to, *inter alia*, the transactions, events and documents involved in the Failed 2017 Restructuring, including, the Senior Notes and the Pro Rata Notes

71) Any and all Persons and Entities that were Investors in Warrior Capital Management, LLC

72) Any and all Person and Entities that received a transfer of property of the Debtors, within the applicable statutes of limitations for avoidable transfers pursuant to, *inter alia*, Bankruptcy Code Sections 506(c), 510, 542, 543, 544, 545, 547, 548, 549, 550, 551, 552(b), 553, and/or 724

73) Any and all Persons and Entities that participated, in any fashion, in the transactions identified in the Disclosure Statement or the Plan as being subject to potential investigation, recovery or litigation

74) Any and all Persons or Entities that, in any fashion, participated in, *inter alia*, what are defined in the Disclosure Statement as *the internal flips*, wherein, property was acquired by an entity and subsequently transferred or intended to be transferred to a Debtor

75) Any and all Persons or Entities that, in any fashion, received, causes to be transferred, or otherwise participated in, *inter alia*, property transfers by the Debtors as inducements or incentives to cause Investments

76) Any and all Persons or Entities that, in any fashion participated in, *inter alia*, provided advice, guidance, legal or financial consultation, with respect to, *inter alia*, the transactions, events and documents involved in the Debtors efforts to, and considerations of *going public*

Specifically, **not** Excluded Parties are:[2]

A) Professionals retained by the Debtors, in connection with the Chapter 11 Cases
B) Professionals retained by the Committee, in connection with the Chapter 11 Cases
C) The CRO
D) The CFO
E) Persons and Entities specifically identified in the Plan as being released or exculpated.

---

[2] The following list is not exhaustive.

# **EXHIBIT D**

## Exit Facility

The Debtors are still addressing the Exit Facility with the DIP Lender, and will supplement this filing with additional details prior to the Confirmation Hearing, including what may be a separate motion seeking approval.

## EXHIBIT E

### Custom Golf Board

In consultation with the Official Committee of Unsecured Creditors (the "Committee"), the Custom Golf Board, as referenced in Section 1.02(57) of the *Debtors' and Committee's First Amended Joint Plan of Reorganization* [Docket No. 787] (the "Plan") and Section 7.04 of the *Debtors' First Amended Disclosure Statement for the First Amended Joint Plan of Reorganization Proposed by the Debtors and the Committee Pursuant to Section 1125 of the Bankruptcy Code* [Docket No. 786] (the "Disclosure Statement"), are hereby modified to mean that the anticipated membership of the Custom Golf Board is as follows:

(i)     Jeremy Rosenthal – the Creditor Trustee;

(ii)    Russell F. Nelms – a current member of the Independent Board of Directors;

(iii)   Kevin Lantry – a current member of the Independent Board of Directors;

(iv)    David Gordon – a current member of the Independent Board of Directors;

(v)     Ray Kiefer – a current member of the Committee;

(vi)    Carla Synatschk – a current member of the Committee; and

(vii)   Susan Winchell – a current member of the Committee.

The foregoing designation of the members of the Custom Golf Board, is subject to revision in every respect prior to the Effective Date, including with respect to, *inter alia*, the number of members of the Custom Golf Board and the designation of any of the foregoing individuals to act as a member of the Custom Golf Board.  Furthermore, the compensation for each member of the Custom Golf Board is subject to a final determination in advance of the Effective Date but is anticipated to be between $25,000 and $75,000 per annuum per member.

# **EXHIBIT F**

Schedule of Real Property, Leasehold, Fixtures



## Statement of Real Estate Owned

| Debtor | Property |
| --- | --- |
| Warrior Golf, LLC, a limited liability company | **Baneberry Golf & Resort**<br>704 Harrison Ferry Rd<br>Baneberry TN 37890 |
| Warrior Golf Management, LLC | **Broadmoor Golf Links**<br>101 French Broad Lane<br>Fletcher NC 28732 |
| Warrior Golf, LLC, a Delaware limited liability company | **Cimarron Golf Resort**<br>67-603 30th St<br>Cathedral City, CA 92234 |
| Warrior Golf, LLC, a limited liability company | **Heddles Hideaway Golf Course**<br>5451 S Pine Street<br>Spartanburg, SC 29302 |
| Warrior Golf, LLC, a limited liability company | **Kings Creek Golf Club**<br>3901 Kedron Rd<br>Spring Hill TN 37174 |
| Warrior Golf Assets, LLC | **Lakota Canyon Ranch & Golf Club**<br>1000 Clubhouse Drive<br>New Castle, CO 81647 |
| Warrior Golf, LLC, a Delaware limited liability company | **Ole Still Golf Club**<br>1157 Players Ridge Road<br>Hickory, NC 28601 |
| Warrior Golf, LLC, a limited liability company | **Royal St Augustine Golf & Country Club**<br>301 Royal St Augustine Parkway<br>St Augustine, FL 32064 |
| Warrior Golf, LLC, a limited liability company | **Whispering Woods Golf Club**<br>26 Sandpiper Drive<br>Whispering Pines, NC 28327 |

| | |
|---|---|
| Warrior Golf, LLC, a limited liability company | **Wolf Creek Golf Club**<br>3000 Union Rd<br>Atlanta, GA 30331 |

Warrior Golf Resources, LLC

**Lots At Quail Crossing**

Boonville, IN 47601

Description
Build Ready Lots:
18 Quail Crossing Golf Community Phase 1
19 Qual Crossing Golf Community Phase 1
20 Quail Crossing Golf Community Phase 1
26 Quail Crossing Golf Community Phase 1
34 Quail Crossing Golf Community Phase 1
37 Quail Crossing Golf Community Phase 1
169 Quail Crossing Golf Community Phase 1A
Raw, unimproved land:
Parcel 1 Bob White Minor Sub 7.84 acres

Warrior ATV Golf, LLC

**Warrior ATV**

0000 Smiley Blvd at Petitt Rd
Moreno Valley, CA 92555

Decription
320 Acres of Development Land

## **EXHIBIT G**

### Revised Treatment of Class 3C (CBB)

The treatment of Class 3C and the treatment of CBB is as provided in that certain Stipulation filed at Docket No. 901 (the "**CBB Stipulation**"), and the terms of the treatment of Class 3C as provided in the Plan is superseded by CBB Stipulation.  In addition the defined term Cimarron Surcharge Amount as provided in Section 1.01(28) of the Plan is no longer required under the Plan.

# **EXHIBIT H**

(Draft) Amended and Restated Bylaws for Custom Golf

**DRAFT – SUBJECT TO CHANGE PRIOR TO CONFIRMATION HEARING**

## SECOND AMENDED AND RESTATED BY-LAWS

## OF

## WARRIOR CUSTOM GOLF, INC.

### ARTICLE I

### OFFICES

Section 1. <u>Principal Office</u>.   The principal office of the corporation shall be at

_____.

Section 2. <u>Other Offices</u>.   The corporation may also have an office or offices at such other place or places, within or without the State of California, as the Board of Directors may from time to time designate or as the business of the corporation requires.

### ARTICLE II

### STOCKHOLDERS' MEETINGS

Section 1. <u>Annual Meetings</u>.   The annual meeting of the stockholders of the corporation shall be held at the principal office of the corporation or at such other place within or without the State of California as may be determined by the Board of Directors and as shall be designated in the notice of said meeting, on the first day of April 1 of each year (or if said day be a legal holiday, then on the next succeeding day not a legal holiday) or such other date as the Board of Directors shall designate, at ten o'clock in the forenoon for the purpose of electing directors and for the transaction of such other business as may properly be brought before the meeting.

If the election of directors shall not be held on the day designated herein for any annual meeting or at any adjournment thereof, the Board of Directors shall cause the election to be held at a special meeting of the stockholders as soon thereafter as is practicable.   At such special meeting the stockholders may elect the directors and transact such other business with the same force and effect as at an annual meeting duly called and held.

Section 2.  <u>Special Meetings</u>.  Special meetings of the stockholders, for any purpose or purposes, other than those prescribed by statute or by the Articles of Incorporation, may be called by the President, Chief Executive Officer, Vice President, Secretary or Assistant Secretary at the request of a majority of the Board of Directors, or at the request of stockholders owning at least twenty-five percent (25%) of the issued and outstanding capital stock of the corporation entitled to vote.  Such requests shall state the purpose or purposes of the proposed special meeting.

Section 3.  <u>Notice and Purpose of Meetings</u>.  Written notice of every meeting shall be given, stating the time, place, and purpose or purposes of the meeting.  If any action is proposed to be taken which would, if taken, entitle shareholders to dissent and to receive payment for their shares, the notice shall include a statement of that purpose and to that effect.  The notice of every meeting shall be given, personally or by mail, and, except as otherwise provided by the California General Corporate Law, not less than ten (10) days nor more than sixty (60) days before the date of the meeting, unless the lapse of the prescribed period of time shall have been waived before or after the taking of any action, to each shareholder at his record address or at such other address which he may have furnished by request in writing to the Secretary of the Corporation.  Notice by mail shall be deemed to be given when deposited, with postage thereon prepaid, in a post office or official depository under the exclusive care and custody of the United States post office department.  When a meeting is adjourned to another time or place, it shall not be necessary to give notice of the adjourned meeting if the time and place to which the meeting is adjourned are announced at the meeting at which the adjournment is taken and at the adjourned meeting only such business is transacted as might have been transacted at the original meeting.  However, if after the adjournment the directors fix a new record date for the adjourned

2

meeting, a notice of the adjourned meeting shall be given to each shareholder on the new record date.  Notice of a meeting need not be given to any shareholder who submits a signed waiver of notice before or after the meeting.  The attendance of a shareholder at a meeting without protesting prior to the conclusion of the meeting the lack of notice of such meeting shall constitute a waiver of notice by him.

Section 4. Quorum.  A quorum at all meetings of stockholders shall consist of the holders of record of a majority of the shares of the capital stock of the corporation, issued and outstanding, entitled to vote at the meeting, present in person or by proxy.  In the absence of a quorum at any meeting or any adjournment thereof, a majority of those present in person or by proxy and entitled to vote may adjourn such meeting from time to time.

Section 5. Organization.  Meetings of the stockholders shall be presided over by the President or Chief Executive Officer, or if he is not present, by a Vice-President, or if none of the President, Chief Executive Officer or a Vice-President is present by a Chairman to be chosen by a majority of the stockholders entitled to vote who are present in person or by proxy at the meeting.  The Secretary of the corporation, or in his absence an Assistant Secretary, or in all of their absences, any other person chosen by a majority of the stockholders present and entitled to vote at the meeting, shall act as Secretary of the meeting.

At the annual meeting of the stockholders, the order of business shall be as follows:

1. Calling meeting to order.

2. Proof of proper notice of meeting or presentation of waiver.

3. Reading of minutes of last previous annual meetings.

4. Reports of officers.

5. Reports of committees.

3

6.      Election of directors.

7.      Miscellaneous business.

8.      Adjournment.

Section 6. <u>Voting</u>.   Except as otherwise provided in these By-laws, the Articles of Incorporation, or in the laws of the State of California, at every meeting of the stockholders, each stockholder of the corporation entitled to vote at such meeting shall have one (1) vote in person or by proxy for each share of stock having voting rights held by him and registered in his name on the books of the corporation at the time of such meeting.  Any vote of stock of the corporation may be given by the stockholder entitled thereto in person or by his proxy appointed by an instrument in writing, subscribed by such stockholder or by his attorney thereunto authorized and delivered to the Secretary of the meeting; provided, however, that no revocable proxy shall be voted on after three (3) years from its date.  The attendance at any meeting of a stockholder who may theretofore have given a proxy shall not have the effect of revoking the proxy unless the stockholder so attending shall, in writing, so notify the Secretary at any time prior to the voting of the proxy.

When a quorum is present or represented at any meeting, the vote of the holders of a majority of the common stock having voting powers, present in person or represented by proxy, shall decide any question brought before such meeting, unless the question is one upon which by express provision of the statutes or of the Articles of Incorporation or of these By-laws, a different vote is required, in which case such express provision shall govern and control the decision of such question.

Section 7. <u>List of Stockholders</u>.   The directors shall cause the Secretary or such other officer designated by him, to make and certify a full, true and complete list, in alphabetical order,

4

of all the stockholders entitled to vote at any stockholders' meeting, and the address and the number of shares held by each. Such list shall at all times during the stockholders' meetings be open to the examination of any stockholder. Such books shall be the only evidence as to who are the stockholders entitled to examine such books or list, and to vote at the meetings.

Section 8. <u>Action Without a Meeting</u>. Any action required or permitted to be taken at a meeting of stockholders, other than the annual election of directors, may be taken without a meeting, without prior notice and without a vote, upon the written consent of stockholders who would have been entitled to cast the minimum number of votes which would be necessary to authorize such action at a meeting at which all shareholders entitled to vote thereon were present and voting. Whenever any action is taken without a meeting, the written consents of the stockholders consenting thereto or the written report of the inspectors appointed to tabulate such consents shall be filed with the minutes of proceedings of stockholders. Any action taken without a meeting shall have the same effect for all purposes as if such action had been taken at a meeting of the stockholders. If any shareholder shall have the right to dissent from the proposed action pursuant to any California statute, the Board shall fix a date on which written consents are to be tabulated and shall in all respects comply with all California statutory requirements.

<u>ARTICLE III</u>

<u>DIRECTORS</u>

Section 1. <u>Powers, Number, Qualification, Term, Quorum and Vacancies</u>. The property, affairs and business of the corporation shall be managed by its Board of Directors, consisting of five (5) persons. Except as hereinafter provided, directors shall be chosen at the annual meeting of the stockholders and each director shall be chosen to serve for one (1) year and until his successor is chosen and qualifies. The directors shall have the power from time to time, and at

5

any time, when the stockholders as such are not assembled in a meeting, regular or special, to increase or decrease their own number by an amendment to these By-laws.  If the number of directors be increased, the additional directors may be chosen by a majority of the directors in office at the time of the increase, or if not so chosen prior to the next annual meeting of the stockholders, they shall be chosen by the stockholders.

A majority of the directors of the corporation shall be necessary and sufficient to constitute a quorum for the transaction of business, except when otherwise expressly provided by statute, by the Articles of Incorporation or by these By-laws, but a majority of those present may adjourn the time and place of any special or regular meeting if less than a quorum be present. Any corporate act required to be taken by the Board of Directors shall require the affirmative vote of a majority of the directors, and any act so taken shall be the act of the Board of Directors, except as may be otherwise provided by law, the Articles of Incorporation or by these By-laws. Any action required or permitted to be taken pursuant to authorization voted at a meeting of the Board of Directors may be taken without a meeting, if, prior or subsequent to such action, a majority of the members of the Board of Directors consent thereto in writing and such written consents are filed with the minutes of the corporation.  Such consent shall have the same effect as a vote of the Board of Directors for all purposes and may be stated as such in any certificate or other document filed with the Secretary of State.

In case one or more vacancies shall occur in the Board of Directors by reason of death, resignation or otherwise, except insofar as otherwise provided in the case of a vacancy or vacancies occurring by reason of removal by the stockholders, the remaining directors, although less than a quorum, may, by a unanimous vote, choose a successor or successors for the unexpired term or terms.

6

Section 2.  Meetings.  Meetings of the Board of Directors shall be held at such place within or outside the State of California as may from time to time be fixed by resolution of the Board of Directors, or as may be specified in the notice of the meeting.  Regular meetings of the Board of Directors shall be held at such times as may from time to time be fixed by resolution of the Board of Directors, and special meetings may be held at any time upon the call of the President, Chief Executive Officer or any Vice-President or the Secretary or any director, by oral, telegraphic or written notice duly served on or sent or mailed to each director not less than two (2) days before such meeting.  A meeting of the Board of Directors may be held without notice immediately after the annual meeting of stockholders.  Notice need not be given of regular meetings of the Board of Directors held at times fixed by resolution of the Board of Directors. Meetings may be held at any time without notice if all the directors are present or if at any time before or after the meeting those not present waive notice of the meeting in writing.  The attendance of any director at a meeting without protesting prior to the conclusion of the meeting the lack of notice of such meeting shall constitute a waiver of notice by him.

Directors may participate in meetings of the Board of Directors by means of conference telephone or other communications equipment so long as all directors participating in any such meeting can hear one another, and such participation shall constitute presence in person at any such meeting.

Section 3.  Organization.  Meetings of the Board of Directors shall be presided over by the Chairman of the Board, or if he is not present, by the President or the Chief Executive Officer, or if he is not present, by a Vice-President, or if none of the Chairman, President, Chief Executive Officer or a Vice-President is present, by a person chosen by a majority of the directors entitled to vote who are present in person or by proxy at the meeting.  The Secretary of

7

the corporation, or in his absence an Assistant Secretary, or in his absence any other person chosen by a majority of the directors present and entitled to vote at the meeting, shall act as Secretary of the meeting.

Section 4.  Executive Committee.  The Board of Directors may, in its discretion, appoint an Executive Committee from among its members, consisting of no more than five (5) members, which shall have and may exercise such powers as shall be conferred or authorized by the resolutions appointing it.  A majority of the members of any such committee may determine its action and fix the time and place of its meetings, unless the Board of Directors shall otherwise provide.  The Board of Directors shall have the power at any time to fill vacancies in, to change the membership of, remove any director from, or abolish, such committee.  The designation of the Executive Committee and the delegation thereto of authority shall not operate to relieve the Board of Directors or any member thereof, of any responsibility imposed by law.

Section 5.  Removal of Directors.  At any special meeting of the stockholders, duly called as provided in these By-laws, any director or directors may, by the affirmative vote of the holders of a majority of all the shares of stock outstanding and entitled to vote for the election of directors, be removed from office, either with or without cause, and his successor or their successors may be elected at such meeting; or the remaining directors may, to the extent vacancies are not filled by such election, fill any vacancy or vacancies created by such removal.

Section 6.  Indemnification of Directors and Officers.  To the fullest extent permitted by applicable law, in the event that any officer or director, or any of its direct or indirect partners, members, managers, trustees, directors, officers, shareholders, employees, incorporators, agents, affiliates or controlling persons (collectively, the "Indemnified Persons"; each, including the officers and the members of the Board of Directors, an "Indemnified Person"), becomes

8

involved, in any capacity, in any threatened, pending or completed action, proceeding or investigation, in connection with any matter arising out of or relating to the corporation's business or affairs, the corporation will periodically reimburse or advance to such Indemnified Person for his, her or its legal and other expenses (including the cost of any investigation and preparation) incurred in connection therewith, provided that such Indemnified Person shall promptly repay to the corporation the amount of any such reimbursed expenses paid to such Indemnified Person if it shall ultimately be determined by a court of competent jurisdiction that such Indemnified Person is not entitled to be indemnified by the corporation in connection with such action, proceeding or investigation as provided in the exception contained in the next succeeding sentence.  To the fullest extent permitted under the law of the State of California as the same exists or may hereafter be amended (but, in the case of any such amendment, only to the extent that such amendment permits the corporation to provide broader indemnification rights than said law permitted the corporation to provide prior to such amendment), the corporation also will indemnify and hold harmless each Indemnified Person against any losses, claims, damages, liabilities, obligations, penalties, actions, judgments, suits, proceedings, costs, expenses and disbursements of any kind or nature whatsoever (collectively, "Costs"), to which such Indemnified Person may become subject in connection with any matter arising out of or in connection with the corporation's business or affairs, except to the extent that any such Costs result solely from the willful misfeasance or gross negligence of such Indemnified Person.  If for any reason (other than the willful misfeasance or bad faith of such Indemnified Person) the foregoing indemnification is unavailable to such Indemnified Person, or insufficient to hold it harmless, then the corporation shall contribute to the amount paid or payable by such Indemnified Person as a result of such Costs in such proportion as is appropriate to reflect not

only the relative benefits received by the corporation on the one hand and such Indemnified Person on the other hand but also the relative fault of the corporation and such Indemnified Person, as well as any relevant equitable considerations.  The reimbursement, indemnity and contribution obligations of the corporation under this Section 6 shall be in addition to any liability which the corporation may otherwise have to any Indemnified Person and shall be binding upon and inure to the benefit of any successors, assigns, heirs and personal representatives of the corporation and any Indemnified Person.  The reimbursement, indemnity and contribution obligations of the corporation under this Section 6 shall be limited to the corporation's assets, and no shareholder shall have any personal liability on account thereof. Any amendment or repeal of this Section 6 shall not adversely affect any right or protection existing hereunder immediately prior to such amendment or repeal.  The foregoing provisions shall survive any termination of these Bylaws.

Section 7. <u>Compensation of Directors</u>.   In an amount determined by the Board of Directors, directors shall receive a monthly fixed sum for their services as well as reimbursement of any costs and expenses incurred by a director in performing said services; provided nothing herein contained shall be construed to preclude any director from serving the corporation in any other capacity and receiving compensation therefor.  Members of the Executive Committee may be allowed like compensation.

<u>ARTICLE IV</u>

<u>OFFICERS</u>

Section 1. <u>Elections</u>.   The Board of Directors, at their first meeting, shall choose a President and/or Chief Executive Officer who shall hold office for one (1) year and until his

59217/0001-20446325v1

successor is chosen and qualifies.  The Board of Directors shall also choose a Secretary and a Treasurer who shall hold office for one (1) year and until their successors are chosen and qualify.

The Board of Directors may also appoint such other officers and agents as they may deem proper for such periods as the Board of Directors deems best.  Any officers and agents elected or appointed may be removed at any time, with or without cause, by the Board of Directors.  Officers do not need to be a member of the Board of Directors.

Section 2.  <u>Salaries of Officers</u>.  Salaries of all officers and agents of the company shall be fixed by the Board of Directors.

Section 3.  <u>General Powers of Officers</u>.  All of the officers chosen or appointed by the Board of Directors shall have such powers and perform such duties in the management of the property and affairs of the corporation, subject to the control of the directors, as may be prescribed by them by these By-laws.  The officers of the company chosen or appointed by the Board of Directors shall hold office until their successors are elected and qualify as aforesaid.

<u>Chief Executive Officer</u>:      The Chief Executive Officer shall perform such duties and shall have such authority as from time to time may be delegated to him by the Board of Directors.

<u>President</u>:  The President shall preside at all meetings of the stockholders and directors at which he is present; he shall have general and active management of the business of the company, and he shall perform such other duties as may from time to time be assigned to him by the Board of Directors.

<u>Vice President</u>:   The Vice President shall perform such duties and shall have such authority as from time to time may be delegated to him by the President or by the Board of

Directors. In the absence of the President or in the event of his death, inability or refusal to act, the Vice President shall perform the duties and be vested with the authority of the President.

<u>Treasurer</u>: The Treasurer shall have the care and custody of all the funds and securities of the corporation, and shall deposit the same in the name of the corporation in such bank or banks as the Board of Directors may designate, and shall perform such other duties as the Board of Directors may from time to time prescribe. The Treasurer shall keep full and accurate accounts of receipts and disbursements in books belonging to the corporation and shall render to the President and the Board of Directors, at regular meetings thereof, or whenever they may require it, an account of all his transactions as Treasurer and of the financial condition of the corporation and shall also make a full report of the financial condition of the corporation at each annual meeting of the stockholders. The Treasurer shall give bond in such sum, and with such sureties, as shall be required by resolution of the Board of Directors for the faithful discharge of his duty.

<u>Secretary</u>: The Secretary shall keep the minutes of all proceedings of the Board of Directors and the minutes of all meetings of the stockholders in books provided for that purpose, of which he shall be the custodian; he shall attend to the giving and serving of all notices for the company; he shall have charge of the seal of the company, of the stock certificate book and such other books and papers as the Board of Directors may direct, all of which shall, at all reasonable times, be open to the inspection of any director upon application at the office of the company during business hours; he shall in general perform all of the duties incident to the office, and such other duties as may be assigned to him by the Board of Directors.

The officers of the corporation shall each have such powers and duties as generally pertains to their respective offices, as well as such powers and duties as from time to time may

12

be conferred by the Board of Directors.  The Vice-President(s), the Assistant Secretary(s) and the Assistant Treasurer(s) shall, in the order of their respective seniorities, in the absence or disability of the President, Secretary or Treasurer, respectively, perform the duties of such officer and shall generally assist the President, Secretary and Treasurer, respectively.

Section 4.  <u>Vacancies of Officers</u>.  All vacancies among the officers arising from any cause whatsoever, shall be filled by the Board of Directors.

ARTICLE V

CERTIFICATES OF STOCK

Section 1.  <u>Form and Transfers</u>.  The interest of each stockholder of the corporation shall be evidenced by certificates for shares of stock, certifying the number and kind of shares represented thereby and in such form not inconsistent with the Articles of Incorporation as the Board of Directors may from time to time prescribe.

Transfers of shares of the capital stock of the corporation shall be made only on the books of the corporation by the registered holder thereof, or by his attorney thereunto authorized by power of attorney duly executed and filed with the Secretary of the corporation, or with a transfer clerk or a transfer agent appointed as provided in Section 3 of this Article V, and on surrender of the certificate or certificates for such shares properly endorsed.  The person in whose name shares of stock stand on the books of the corporation shall be deemed the owner thereof for all purposes as regards the corporation; provided that whenever any transfer of shares shall be made for collateral security, and not absolutely, such fact, if known to the Secretary of the corporation, shall be so expressed in the entry of transfer.  The Board of Directors may, from time to time, make such additional rules and regulations as it may deem expedient, not

13

inconsistent with these By-laws, concerning the issue, transfer and registration of certificates for shares of the capital stock of the corporation.

The certificates of stock shall be signed by the President, Chief Executive Officer or a Vice-President, and by the Treasurer or an Assistant Treasurer, or the Secretary or an Assistant Secretary, and sealed with the seal of the corporation or a facsimile thereof.  Where any such certificate is signed by a transfer agent or by a transfer clerk on behalf of the corporation and by a registrar, the signatures of the President, Chief Executive Officer, Vice-President, Treasurer, Assistant Treasurer, Secretary or Assistant Secretary upon such certificate, may be facsimiles, engraved or printed.  In case any such officer who has signed or whose facsimile has been placed on such certificate shall have ceased to be such before such certificate is issued, it may be issued by the corporation with the same effect as if such officer had not ceased to be such at the time of its issue.

Section 2.  Lost, Stolen, Destroyed or Mutilated Certificates.  No certificate for shares of stock in the corporation shall be issued in place of any certificate alleged to have been lost, destroyed or stolen, except on production of such affidavit or evidence as the Board of Directors shall require, or a bond of indemnity in such amount (not exceeding twice the value of the shares represented by such certificate), upon such terms and secured by such surety as the Board of Directors may in its discretion require.

Section 3.  Transfer Agent and Registrar.  The Board of Directors may appoint one or more Transfer Clerks or one or more Transfer Agents or Assistant Transfer Agents and one (1) or more Registrars, and may require all certificates of stock to bear the signature or signatures of any of them.

59217/0001-20446325v1

## ARTICLE VI

## DIVIDENDS AND WORKING CAPITAL

Subject always to the provisions of the law and the Articles of Incorporation, the Board of Directors shall have full power to determine whether any, and if any, what part of any, funds legally available for the payment of dividends shall be declared in dividends and paid to stockholders; the division of the whole or any part of such funds of the corporation shall rest wholly within the lawful discretion of the Board of Directors, and it shall not be required at any time, against such discretion, to divide or pay any part of such funds among or to the stockholders as dividends or otherwise; and the Board of Directors may fix a sum which may be set aside or reserved over and above the capital paid in of the corporation as working capital for the corporation or as a reserve for any proper purpose, and from time to time may increase, diminish and vary the same in its absolute judgment and discretion.

## ARTICLE VII

## BOOKS AND RECORDS

The corporation shall keep at its registered office, or at the office of its transfer agent in this State, a record or records containing the names and addresses of all shareholders, the number, class and series of shares held by each and the dates when they respectively became the owners of record thereof.  The directors may keep all other books of the corporation within or without the State of California.  The corporation shall keep books and records of account and minutes of the proceedings of its shareholders, directors and executive committee, if any.  Any of the foregoing books, minutes or records may be in written form or in any other form capable of being converted into written form within a reasonable time.

15

## ARTICLE VIII

## FISCAL YEAR

The fiscal year of the corporation shall as determined by the Board of Directors.

## ARTICLE IX

## CORPORATE SEAL

The Board of Directors may provide a suitable seal containing the name of the company, the year of its incorporation and the words "Corporate Seal-California", or other appropriate words.

## ARTICLE X

## FUNDS, WRITTEN CONTRACTS, ETC.

Section 1. <u>Depository of Funds</u>.   The Board of Directors may from time to time designate a bank or trust company as a depository of the funds of the corporation, subject to withdrawal by check.

Section 2. <u>Funds - How Drawn</u>.  All checks, notes, drafts or other orders for the payment of money of the company shall be signed, endorsed or accepted in the name of the company in such manner as the Board of Directors of the corporation may from time to time direct.

Section 3. <u>Written Contracts</u>.  All written contracts and written obligations to which the company may be a party, shall be signed by the President, Chief Executive Officer or Vice-President, or by such other officers as the Board of Directors may direct.

## ARTICLE XI

## AMENDMENTS

The By-laws of the corporation shall be subject to alteration, amendment or repeal and new By-laws not inconsistent with any provision of the Articles of Incorporation or statute may

16

be made, either by the affirmative vote of the holders of a majority in interest of the stockholders of the corporation present in person, or by proxy, at any annual or special meeting of the stockholders, a quorum being present, or by the affirmative vote of a majority of the whole Board of Directors, given at any regular or special meeting of the Board of Directors, provided that notice of the proposal so to make, alter, amend or repeal such By-laws be included in the notice of such meeting of the Board of Directors or the stockholders, as the case may be. By-laws made, altered or amended by the Board of Directors may be altered, amended or repealed by the stockholders.

These Amended and Restated By-laws amend and restate, in their entirety, any existing By-laws of the corporation.

DRAFT – SUBJECT TO CHANGE PRIOR TO THE CONFIRMATION HEARING

## UNANIMOUS WRITTEN CONSENT OF
## THE BOARD OF DIRECTORS OF
## WARRIOR CUSTOM GOLF, INC.

The undersigned, being all the members of the Board of Directors of Warrior Custom Golf, Inc., a California corporation (the "Corporation"), pursuant to California Business Corporation Act, as amended from time to time, DO HEREBY CONSENT to the adoption of, and DO HEREBY ADOPT, the following resolutions:

**WHEREAS**, the Board of Directors wish to document and reflect the following information in the minutes and records of the Corporation through the adoption of the Resolutions set forth below; and

**NOW, THEREFORE, IT IS HEREBY**

**RESOLVED**, that this Unanimous Written Consent shall serve in lieu of the annual meeting of the directors of the Corporation and the undersigned hereby waive all requirements as to notice of such meeting; and be it further

**RESOLVED**, that the election of the following officers shall be for a term of one (1) year, effective as of the date hereof, or until his successor is duly elected and qualified:

Jeremy Rosenthal – Chief Executive Officer
David Cottrell – Chief Financial Officer
_____ - Secretary

and it is further

**RESOLVED,** that all action heretofore taken and all documentation heretofore delivered by the Corporation in furtherance of the foregoing is hereby ratified, adopted, approved and confirmed and declared to be binding and enforceable obligations of the Corporation in accordance with the respective terms and provisions thereof; and it is further

**RESOLVED**,  that this Unanimous Written Consent may be executed in any number of counterparts, each of which shall be deemed an original and all of which taken together shall constitute one and the same instrument.  Telecopier transmission signatures shall be sufficient for execution of this Unanimous Written Consent.

[Remainder of page left intentionally blank.]

**IN WITNESS WHEREOF**, the undersigned has executed this unanimous written consent as of the date first above written.

By:_____
                , Director


By:_____
                , Director


By:_____
                , Director


By:_____
                , Director


By:_____
                , Director

59217/0001-20446641v1

**DRAFT – SUBJECT TO CHANGE PRIOR TO THE CONFIRMATION HEARING**

## UNANIMOUS WRITTEN CONSENT
## OF THE
## DIRECTORS OF WARRIOR CUSTOM GOLF, INC.

The undersigned, being all of the members of the Board of Directors of **WARRIOR CUSTOM GOLF, INC.,** a corporation of the State of California (the "Corporation"), do hereby consent to, authorize and adopt the following resolutions:

**WHEREAS,** the Board of Directors desire to enact and adopt Second Amended and Restated By-Laws of the Corporation through the adoption of the following Resolutions.

NOW, THEREFORE, IT IS HEREBY

**RESOLVED,** that the Second Amended and Restated By-Laws attached hereto as Exhibit A (the "By-laws") are hereby adopted as the By-laws of the Corporation; and it is further

**RESOLVED,** that all action heretofore taken and all documentation heretofore delivered by the Corporation in furtherance of the foregoing is hereby ratified, adopted, approved and confirmed and declared to be binding and enforceable obligations of the Corporation in accordance with the respective terms and provisions thereof; and it is further

**RESOLVED**, that this Unanimous Written Consent may be executed in any number of counterparts, each of which shall be deemed an original and all of which taken together shall constitute one and the same instrument.  Telecopier transmission signatures shall be sufficient for execution of this Unanimous Written Consent.

[remainder of this page intentionally left blank]

**IN WITNESS WHEREOF**, the undersigned has executed this unanimous written consent as of the date first above written.

By:_____
        , Director


By:_____
        , Director


By:_____
        , Director


By:_____
        , Director


By:_____
        , Director

2

**DRAFT – SUBJECT TO CHANGE PRIOR TO THE CONFIRMATION HEARING**

**IN WITNESS WHEREOF,** the undersigned have executed this Unanimous Written Consent of the Board of Directors of Warrior Custom Golf, Inc. as of the ____ day of June, 2020.

_____
David Gordon
Director

_____
Kevin Lantry
Director

_____
Hon. Russell F. Nelms (Ret.)
Director

_____
Jeremy Rosenthal
Director

_____
Director

_____
Director

_____
Director

## **EXHIBIT A**

Second Amended and Restated Bylaws of Corporation

(Attached)

59217/0001-20456981v1

**DRAFT – SUBJECT TO CHANGE PRIOR TO THE CONFIRMATION HEARING**

**WRITTEN CONSENT
OF THE
SOLE SHAREHOLDER OF WARRIOR CUSTOM GOLF, INC.**

The undersigned, being the sole shareholder of **WARRIOR CUSTOM GOLF, INC.,** a corporation of the State of California (the "Corporation"), does hereby consent to, authorizes and adopts the following resolutions:

**WHEREAS**, the shareholder wishes to document and reflect the following information in the minutes and records of the Corporation through the adoption of the Resolutions set forth below; and

**NOW, THEREFORE, IT IS HEREBY**

**RESOLVED**, that this Written Consent shall serve in lieu of the annual meeting of the shareholders of the Corporation and the undersigned hereby waives all requirements as to notice of such meeting; and be it further

**RESOLVED**, that the Corporation shall have the following persons on its Board of Directors, who shall serve a term of one (1) year or until his or her successor is duly elected and qualified in accordance with the Corporation's Second Amended and Restated Bylaws:

_____
_____
_____
_____
_____

and it is further

**RESOLVED,** that all action heretofore taken and all documentation heretofore delivered by the Corporation in furtherance of the foregoing is hereby ratified, adopted, approved and confirmed and declared to be binding and enforceable obligations of the Corporation in accordance with the respective terms and provisions thereof; and it is further

**RESOLVED,**  that this Written Consent may be executed in any number of counterparts, each of which shall be deemed an original and all of which taken together shall constitute one and the same instrument.  Telecopier transmission signatures shall be sufficient for execution of this Written Consent.

[Remainder of page left intentionally blank.]

**IN WITNESS WHEREOF,** the undersigned has executed this Written Consent of the Sole Shareholder of Warrior Custom Golf, Inc. as of the ____ day of June, 2020.

**SHAREHOLDER**:

[CREDITORS TRUST]

By:  Force 10 Agency Services, LLC, Trustee

By: _____
Name:
Title:

2

# **EXHIBIT I**

(Draft) LLC Membership Agreement – Op.Co.

**DRAFT – SUBJECT TO CHANGE PRIOR TO THE CONFIRMATION HEARING**

## OPERATING AGREEMENT

## OF

## [OPCO], LLC

This Operating Agreement (this "Agreement") of **[OPCO], LLC**, a Texas limited liability company (the "Company") is entered into as of the ___ day of June, 2020 by **[CREDITOR TRUST]** as the sole member (the "Member") of the Company.

**WHEREAS**, the Company was formed on _____, 2020, upon the filing of its Certificate of Formation with the Secretary of State of the State of Texas; and

**WHEREAS,** the Member desires to adopt an Operating Agreement containing provisions relating to the business of the Company, the conduct of its affairs and the rights, powers, preferences, limitations and responsibilities of its member.

**NOW, THEREFORE**, the Member does hereby adopt this Agreement as contemplated by the provisions of Texas Statutes, Title 3, Chapter 101, §101.001 et seq. (the "Act").

1.     Name.  The name of the limited liability company governed hereby is [OpCo], LLC.

2.     Purpose.  The Company is formed for the object and purpose of, and the nature of the business to be conducted and promoted by the Company is, taking any action and engaging in any lawful act or activity for which limited liability companies may be formed under the Act, and to enter into any contracts or commitments, assume any obligation, execute any documents, and do any and all other acts and things which may be necessary, incidental or convenient to carry on the business of the Company.

3.     Registered Office.  The address of the registered office of the Company in the State of Texas is _____.

4.     Registered Agent.  The name of the registered agent of the Company for service of process on the Company in the State of Texas is _____.

5.     Member.  The name of the sole Member is as set forth above in the preamble to this Agreement.

6.     Management.

(a)     The Company's business and affairs shall be managed solely by a Board of Managers.  The Board of Managers shall have the power to do any of the following acts (including the signing of any documents on behalf of the Company) necessary or convenient to or in furtherance of the purposes of the Company described herein, including, without limitation: (i) to mortgage, pledge, hypothecate or assign any or all of the assets of the Company, (ii) to incur debt on behalf of the Company, (iii) to acquire or sell any assets of the Company, (iv) to provide indemnities or guaranties in the name and on behalf of the Company, (v) to enter into,

perform and carry out contracts of any kind, including, without limitation, contracts with any person or entity affiliated with the Company, necessary to, in connection with, convenient to or incidental to the accomplishment of the purposes of the Company, and (vi) to take any and all other actions it deems by the Board of Managers to be necessary, desirable, convenient or incidental for the furtherance of the objects and purposes of the Company, and the Board of Managers shall have and may exercise all of the powers and rights conferred upon a limited liability company formed pursuant to the Act.

(b)     If there is more than one (1) Manager designated to serve on the Board of Managers, the Board of Managers shall in all cases act as a group, with a majority vote required at a duly called meeting of the Board of Managers at which a quorum is present to take action. Each member of the Board of Managers shall have one (1) vote.

(c)     The Member hereby appoints _____, _____, _____, _____ and _____ as the initial members of the Board of Managers.

(d)     The number of Managers of the Company shall be fixed at five (5) individuals.  Each Manager shall hold office until his or her successor shall have been elected and qualified or until his or her earlier death, resignation or disability.  Managers need not be residents of the State of Texas.

(e)     Each Manager shall exercise his or her best good faith business judgment in participating in the management of the Company's business, operations and affairs.  Unless fraud, gross negligence, willful misconduct or a wrongful taking shall be found by a nonappealable court order, judgment, decree or decision, no Manager shall be liable or obligated to the Member or the Company for any mistake of fact or judgment or for the doing of any act or the failure to do any act by such Manager in conducting the Company's business, operations and affairs, which may cause or result in any loss or damage to the Company, or the Member.  Each Manager does not, in any way, guarantee the return of the Member's capital contributions or a profit for the Member from the Company's operations.  Unless fraud, gross negligence, willful misconduct or a wrongful taking shall be found by a nonappealable court order, judgment, decree or decision, against a specific Manager, that Manager shall not incur any liability to the Company or to the Member as a result of engaging in any other business or venture.

(f)     Each Manager may have other business interests and may engage in other activities in addition to those relating to the Company.  Neither the Company nor the Member shall have any right, by virtue of this Agreement, to share or participate in such other investments or activities of a Manager, or to the income or proceeds derived therefrom.

(g)     The Board of Managers may open bank accounts in the Company's name. The Company's funds shall be deposited in the Company's name in such bank account or accounts as shall be designated by the Board of Managers.  The Board of Managers shall use such funds solely for the Company's business.  Funds shall be withdrawn from the Company's bank accounts only upon an authorized Manager's or officer's signature.

(h)     A Manager may resign as a member of the Board of Managers at any time by giving at least ten (10) days prior written notice to the Member and the remaining members of

2

the Board of Managers.  A Manager's resignation shall take effect at such time as shall be specified in such notice; and, unless otherwise specified therein, the acceptance of such resignation shall not be necessary to make it effective.

(i)      In the event of a vacancy occurring for any reason in the number of Managers, a substitute Manager may be appointed by the Member.

(j)      No Member, acting alone, shall have any authority to act for, or to undertake or assume, any obligation, debt, duty or responsibility on behalf of any other Member or the Company.  Unless authorized to do so by this Agreement or by the Board of Managers, no Member, agent, or employee of the Company shall have any power or authority to bind the Company in any way, to pledge its credit or to render it liable pecuniarily for any purpose.  Any and all obligations, losses, liabilities, claims, damages and expenses whatsoever created or incurred by any Member on behalf of the Company without the express written consent of the Board of Managers shall solely be the responsibility of such Member.

(k)      The Board of Managers may elect a chairman, chief executive officer, president, chief restructuring officer, treasurer, secretary, and one or more executive or senior vice presidents and other vice presidents as it deems necessary.  The Board of Managers shall establish the duties, authority and limitations applicable to each such officer.  Jeremy Rosenthal is hereby elected as the Chief Executive Officer of the Company and Dave Cottrell is hereby elected as the Chief Financial Officer of the Company.

(l)      Except as the Board of Managers shall otherwise approve, the Company shall not pay any Manager or officer a salary for his or her services hereunder or change any previously approved salary.

7.      <u>Dissolution</u>.  The Company shall dissolve, and its affairs shall be wound up, upon the first to occur of the following: (a) the written consent of the Member, or (b) the entry of a decree of judicial dissolution under the Act.

8.      <u>Admission and Capital Contributions</u>.  The Member is hereby deemed admitted as the Member of the Company as of the effective date of the Company's initial Certificate of Formation.  As of the date hereof, the Member has contributed $100.00 in cash to the Company as its initial capital contribution.

9.      <u>Additional Contributions</u>.  The Member is not required to make any additional capital contribution to the Company.  However, the Member may, in its sole discretion, make additional capital contributions to the Company.

10.     <u>Allocation of Profits and Losses</u>.  The Company's profits and losses shall be allocated to the Member.

11.     <u>Distributions</u>.  Distributions shall be made to the Member at the times and in the aggregate amounts determined by the Board of Managers.

12.     <u>Admission of Additional Members</u>.  One or more additional members of the Company may be admitted to the Company with the consent of the Member.

13.     <u>Limited Liability</u>.  Except as otherwise provided by the Act, the debts, obligations and liabilities of the Company, whether arising in contract, tort or otherwise, shall be solely the debts, obligations and liabilities of the Company, and neither the Member nor any Manager shall be obligated personally for any such debt, obligation or liability of the Company solely by reason of being a Member or Manager of the Company.

14.     <u>Governing Law</u>.  This Agreement shall be governed by, and construed under, the laws of the State of Texas, all rights and remedies being governed by said laws, without regard to principles of conflict of law.

15.     <u>Treatment for Tax Purposes</u>. The Company shall be taxed as the Member elects.

16.     <u>Amendments</u>.  This Agreement may not be modified, altered, supplemented or amended except pursuant to a written agreement executed and delivered by the Member.

17.     <u>Indemnification of Indemnified Persons</u>.   To the fullest extent permitted by applicable law, in the event that any officer, member or manager, or any of its direct or indirect partners, members, managers, trustees, directors, officers, shareholders, employees, incorporators, agents, affiliates or controlling persons (collectively, the "<u>Indemnified Persons</u>"; each, including the Member and the members of the Board of Managers, an "<u>Indemnified Person</u>"), becomes involved, in any capacity, in any threatened, pending or completed action, proceeding or investigation, in connection with any matter arising out of or relating to the Company's business or affairs, the Company will periodically reimburse or advance to such Indemnified Person for its legal and other expenses (including the cost of any investigation and preparation) incurred in connection therewith, provided that such Indemnified Person shall promptly repay to the Company the amount of any such reimbursed expenses paid to such Indemnified Person if it shall ultimately be determined that such Indemnified Person is not entitled to be indemnified by the Company in connection with such action, proceeding or investigation as provided in the exception contained in the next succeeding sentence.  To the fullest extent permitted under the law of the State of Texas as the same exists or may hereafter be amended (but, in the case of any such amendment, only to the extent that such amendment permits the Company to provide broader indemnification rights than said law permitted the Company to provide prior to such amendment), the Company also will indemnify and hold harmless each Indemnified Person against any losses, claims, damages, liabilities, obligations, penalties, actions, judgments, suits, proceedings, costs, expenses and disbursements of any kind or nature whatsoever (collectively, "<u>Costs</u>"), to which such Indemnified Person may become subject in connection with any matter arising out of or in connection with the Company's business or affairs, except to the extent that any such Costs result solely from the willful misfeasance or gross negligence of such Indemnified Person as found by a nonappealable court order, judgment, decree or decision, against such Indemnified Person.  If for any reason (other than the willful misfeasance or bad faith of such Indemnified Person as found by a nonappealable court order, judgment, decree or decision, against such Indemnified Person) the foregoing indemnification is unavailable to such Indemnified Person, or insufficient to hold it harmless, then the Company shall contribute to the amount paid or payable by such Indemnified Person as a result of such Costs in such proportion as is appropriate to reflect not only the relative benefits received by the Company on the one hand and such Indemnified Person on the other hand but also the relative fault of the Company and such Indemnified Person, as well as

4

any relevant equitable considerations.    The reimbursement, indemnity and contribution obligations of the Company under this Section 17 shall be in addition to any liability which the Company may otherwise have to any Indemnified Person and shall be binding upon and inure to the benefit of any successors, assigns, heirs and personal representatives of the Company and any Indemnified Person.    The reimbursement, indemnity and contribution obligations of the Company under this Section 17 shall be limited to the Company's assets, and no Member or Manager all have any personal liability on account thereof.    Any amendment or repeal of this Section 17 shall not adversely affect any right or protection existing hereunder immediately prior to such amendment or repeal.    The foregoing provisions shall survive any termination of this Agreement.

18.    <u>Exculpation</u>.    Notwithstanding any other terms of this Agreement, whether express or implied, or obligation or duty at law or in equity, no Indemnified Person shall be liable to the Company or any Member or Manager for any act or omission (in relation to the Company, this Agreement, any related document or any transaction contemplated hereby or thereby) taken or omitted by an Indemnified Person in the belief that such act or omission is in or is not contrary to the best interests of the Company and is within the scope of authority granted to such Indemnified Person by this Agreement, provided that such act or omission does not constitute willful misfeasance or gross negligence as found by a nonappealable court order, judgment, decree or decision, by such Indemnified Person.

19.    <u>Counterparts</u>.  This Agreement may be executed in one or more counterparts, each of which shall be deemed to be an original, but all of which shall constitute one and the same instrument.

[Remainder of Page Intentionally Left Blank]

5

**IN WITNESS WHEREOF**, the undersigned, intending to be legally bound hereby, has duly executed this Operating Agreement of [OpCo] LLC as of the date first above written.

**MEMBER:**

[CREDITORS TRUST]

By:  Force 10 Agency Services, LLC, Trustee


By: _____
Name:
Title:

6

# **EXHIBIT J**

(Draft) LLC Membership Agreement – Prop.Co.

**DRAFT – SUBJECT TO CHANGE PRIOR TO THE CONFIRMATION HEARING**

## OPERATING AGREEMENT

### OF

### [PROPCO], LLC

This Operating Agreement (this "Agreement") of **[PROPCO], LLC**, a Texas limited liability company **(**the "Company") is entered into as of the ___ day of June, 2020 by **[CREDITOR TRUST]** as the sole member (the "Member") of the Company.

**WHEREAS**, the Company was formed on _____, 2020, upon the filing of its Certificate of Formation with the Secretary of State of the State of Texas; and

**WHEREAS,** the Member desires to adopt an Operating Agreement containing provisions relating to the business of the Company, the conduct of its affairs and the rights, powers, preferences, limitations and responsibilities of its member.

**NOW, THEREFORE**, the Member does hereby adopt this Agreement as contemplated by the provisions of Texas Statutes, Title 3, Chapter 101, §101.001 et seq. (the "Act").

1.      Name.  The name of the limited liability company governed hereby is [PropCo], LLC.

2.      Purpose.  The Company is formed for the object and purpose of, and the nature of the business to be conducted and promoted by the Company is, taking any action and engaging in any lawful act or activity for which limited liability companies may be formed under the Act, and to enter into any contracts or commitments, assume any obligation, execute any documents, and do any and all other acts and things which may be necessary, incidental or convenient to carry on the business of the Company.

3.      Registered Office.  The address of the registered office of the Company in the State of Texas is _____.

4.      Registered Agent.  The name of the registered agent of the Company for service of process on the Company in the State of Texas is _____.

5.      Member.  The name of the sole Member is as set forth above in the preamble to this Agreement.

6.      Management.

(a)      The Company's business and affairs shall be managed solely by a Board of Managers.  The Board of Managers shall have the power to do any of the following acts (including the signing of any documents on behalf of the Company) necessary or convenient to or in furtherance of the purposes of the Company described herein, including, without limitation: (i) to mortgage, pledge, hypothecate or assign any or all of the assets of the Company, (ii) to incur debt on behalf of the Company, (iii) to acquire or sell any assets of the Company, (iv) to provide indemnities or guaranties in the name and on behalf of the Company, (v) to enter into,

perform and carry out contracts of any kind, including, without limitation, contracts with any person or entity affiliated with the Company, necessary to, in connection with, convenient to or incidental to the accomplishment of the purposes of the Company, and (vi) to take any and all other actions it deems by the Board of Managers to be necessary, desirable, convenient or incidental for the furtherance of the objects and purposes of the Company, and the Board of Managers shall have and may exercise all of the powers and rights conferred upon a limited liability company formed pursuant to the Act.

(b)     If there is more than one (1) Manager designated to serve on the Board of Managers, the Board of Managers shall in all cases act as a group, with a majority vote required at a duly called meeting of the Board of Managers at which a quorum is present to take action. Each member of the Board of Managers shall have one (1) vote.

(c)     The Member hereby appoints _____, _____, _____, _____ and _____ as the initial members of the Board of Managers.

(d)     The number of Managers of the Company shall be fixed at five (5) individuals.  Each Manager shall hold office until his or her successor shall have been elected and qualified or until his or her earlier death, resignation or disability.  Managers need not be residents of the State of Texas.

(e)     Each Manager shall exercise his or her best good faith business judgment in participating in the management of the Company's business, operations and affairs.  Unless fraud, gross negligence, willful misconduct or a wrongful taking shall be found by a nonappealable court order, judgment, decree or decision, no Manager shall be liable or obligated to the Member or the Company for any mistake of fact or judgment or for the doing of any act or the failure to do any act by such Manager in conducting the Company's business, operations and affairs, which may cause or result in any loss or damage to the Company, or the Member.  Each Manager does not, in any way, guarantee the return of the Member's capital contributions or a profit for the Member from the Company's operations.  Unless fraud, gross negligence, willful misconduct or a wrongful taking shall be found by a nonappealable court order, judgment, decree or decision, against a specific Manager, that Manager shall not incur any liability to the Company or to the Member as a result of engaging in any other business or venture.

(f)     Each Manager may have other business interests and may engage in other activities in addition to those relating to the Company.  Neither the Company nor the Member shall have any right, by virtue of this Agreement, to share or participate in such other investments or activities of a Manager, or to the income or proceeds derived therefrom.

(g)     The Board of Managers may open bank accounts in the Company's name. The Company's funds shall be deposited in the Company's name in such bank account or accounts as shall be designated by the Board of Managers.  The Board of Managers shall use such funds solely for the Company's business.  Funds shall be withdrawn from the Company's bank accounts only upon an authorized Manager's or officer's signature.

(h)     A Manager may resign as a member of the Board of Managers at any time by giving at least ten (10) days prior written notice to the Member and the remaining members of

2

the Board of Managers.  A Manager's resignation shall take effect at such time as shall be specified in such notice; and, unless otherwise specified therein, the acceptance of such resignation shall not be necessary to make it effective.

(i)     In the event of a vacancy occurring for any reason in the number of Managers, a substitute Manager may be appointed by the Member.

(j)     No Member, acting alone, shall have any authority to act for, or to undertake or assume, any obligation, debt, duty or responsibility on behalf of any other Member or the Company.  Unless authorized to do so by this Agreement or by the Board of Managers, no Member, agent, or employee of the Company shall have any power or authority to bind the Company in any way, to pledge its credit or to render it liable pecuniarily for any purpose.  Any and all obligations, losses, liabilities, claims, damages and expenses whatsoever created or incurred by any Member on behalf of the Company without the express written consent of the Board of Managers shall solely be the responsibility of such Member.

(k)     The Board of Managers may elect a chairman, chief executive officer, president, chief restructuring officer, treasurer, secretary, and one or more executive or senior vice presidents and other vice presidents as it deems necessary.  The Board of Managers shall establish the duties, authority and limitations applicable to each such officer.  Jeremy Rosenthal is hereby elected as the Chief Executive Officer of the Company and Dave Cottrell is hereby elected as the Chief Financial Officer of the Company.

(l)     Except as the Board of Managers shall otherwise approve, the Company shall not pay any Manager or officer a salary for his or her services hereunder or change any previously approved salary.

7.     <u>Dissolution</u>.  The Company shall dissolve, and its affairs shall be wound up, upon the first to occur of the following: (a) the written consent of the Member, or (b) the entry of a decree of judicial dissolution under the Act.

8.     <u>Admission and Capital Contributions</u>.  The Member is hereby deemed admitted as the Member of the Company as of the effective date of the Company's initial Certificate of Formation.  As of the date hereof, the Member has contributed $100.00 in cash to the Company as its initial capital contribution.

9.     <u>Additional Contributions</u>.  The Member is not required to make any additional capital contribution to the Company.  However, the Member may, in its sole discretion, make additional capital contributions to the Company.

10.     <u>Allocation of Profits and Losses</u>.  The Company's profits and losses shall be allocated to the Member.

11.     <u>Distributions</u>.  Distributions shall be made to the Member at the times and in the aggregate amounts determined by the Board of Managers.

12.     <u>Admission of Additional Members</u>.  One or more additional members of the Company may be admitted to the Company with the consent of the Member.

59217/0001-20446179v2

13.     <u>Limited Liability</u>.  Except as otherwise provided by the Act, the debts, obligations and liabilities of the Company, whether arising in contract, tort or otherwise, shall be solely the debts, obligations and liabilities of the Company, and neither the Member nor any Manager shall be obligated personally for any such debt, obligation or liability of the Company solely by reason of being a Member or Manager of the Company.

14.     <u>Governing Law</u>.  This Agreement shall be governed by, and construed under, the laws of the State of Texas, all rights and remedies being governed by said laws, without regard to principles of conflict of law.

15.     <u>Treatment for Tax Purposes</u>. The Company shall be taxed as the Member elects.

16.     <u>Amendments</u>.  This Agreement may not be modified, altered, supplemented or amended except pursuant to a written agreement executed and delivered by the Member.

17.     <u>Indemnification of Indemnified Persons</u>.  To the fullest extent permitted by applicable law, in the event that any officer, member or manager, or any of its direct or indirect partners, members, managers, trustees, directors, officers, shareholders, employees, incorporators, agents, affiliates or controlling persons (collectively, the "<u>Indemnified Persons</u>"; each, including the Member and the members of the Board of Managers, an "<u>Indemnified Person</u>"), becomes involved, in any capacity, in any threatened, pending or completed action, proceeding or investigation, in connection with any matter arising out of or relating to the Company's business or affairs, the Company will periodically reimburse or advance to such Indemnified Person for its legal and other expenses (including the cost of any investigation and preparation) incurred in connection therewith, provided that such Indemnified Person shall promptly repay to the Company the amount of any such reimbursed expenses paid to such Indemnified Person if it shall ultimately be determined that such Indemnified Person is not entitled to be indemnified by the Company in connection with such action, proceeding or investigation as provided in the exception contained in the next succeeding sentence.  To the fullest extent permitted under the law of the State of Texas as the same exists or may hereafter be amended (but, in the case of any such amendment, only to the extent that such amendment permits the Company to provide broader indemnification rights than said law permitted the Company to provide prior to such amendment), the Company also will indemnify and hold harmless each Indemnified Person against any losses, claims, damages, liabilities, obligations, penalties, actions, judgments, suits, proceedings, costs, expenses and disbursements of any kind or nature whatsoever (collectively, "<u>Costs</u>"), to which such Indemnified Person may become subject in connection with any matter arising out of or in connection with the Company's business or affairs, except to the extent that any such Costs result solely from the willful misfeasance or gross negligence of such Indemnified Person as found by a nonappealable court order, judgment, decree or decision, against such Indemnified Person.  If for any reason (other than the willful misfeasance or bad faith of such Indemnified Person as found by a nonappealable court order, judgment, decree or decision, against such Indemnified Person) the foregoing indemnification is unavailable to such Indemnified Person, or insufficient to hold it harmless, then the Company shall contribute to the amount paid or payable by such Indemnified Person as a result of such Costs in such proportion as is appropriate to reflect not only the relative benefits received by the Company on the one hand and such Indemnified Person on the other hand but also the relative fault of the Company and such Indemnified Person, as well as

4

any relevant equitable considerations. The reimbursement, indemnity and contribution obligations of the Company under this Section 17 shall be in addition to any liability which the Company may otherwise have to any Indemnified Person and shall be binding upon and inure to the benefit of any successors, assigns, heirs and personal representatives of the Company and any Indemnified Person. The reimbursement, indemnity and contribution obligations of the Company under this Section 17 shall be limited to the Company's assets, and no Member or Manager all have any personal liability on account thereof. Any amendment or repeal of this Section 17 shall not adversely affect any right or protection existing hereunder immediately prior to such amendment or repeal. The foregoing provisions shall survive any termination of this Agreement.

18. <u>Exculpation</u>. Notwithstanding any other terms of this Agreement, whether express or implied, or obligation or duty at law or in equity, no Indemnified Person shall be liable to the Company or any Member or Manager for any act or omission (in relation to the Company, this Agreement, any related document or any transaction contemplated hereby or thereby) taken or omitted by an Indemnified Person in the belief that such act or omission is in or is not contrary to the best interests of the Company and is within the scope of authority granted to such Indemnified Person by this Agreement, provided that such act or omission does not constitute willful misfeasance or gross negligence as found by a nonappealable court order, judgment, decree or decision, by such Indemnified Person.

19. <u>Counterparts</u>. This Agreement may be executed in one or more counterparts, each of which shall be deemed to be an original, but all of which shall constitute one and the same instrument.

[Remainder of Page Intentionally Left Blank]

59217/0001-20446179v2

**IN WITNESS WHEREOF**, the undersigned, intending to be legally bound hereby, has duly executed this Operating Agreement of [PropCo] LLC as of the date first above written.

**MEMBER:**

[CREDITORS TRUST]

By:  Force 10 Agency Services, LLC, Trustee


By: _____
Name:
Title:

6

# **EXHIBIT K**

Schedule of Executory Contracts to be Assumed

**Debtors Executory Contract List**

At this time, the Debtors propose to assume the following contracts subject to the identified cure amounts.  The Debtors reserve their right to amend the following list to reject certain of the following executory contracts and unexpired leases prior to the effective date.

| Contract | Debtor | Original Date | Contract Number | Cure Amount |
|---|---|---|---|---|
| DLL Finance LLC c/o Jeremiah Barton Hayes Taherzadeh PLLC 5001 Spring Valley Rd, Ste 1020W Dallas, TX 75244 | Warrior Golf Custom Golf, Inc.; Warrior Golf Capital, LLC | 10/5/16 | 101-0417915 | $2,019.00 |
| DLL Finance LLC c/o Jeremiah Barton Hayes Taherzadeh PLLC 5001 Spring Valley Rd, Ste 1020W Dallas, TX 75244 | Warrior Golf Equities, LLC | 6/5/17 | 101-0430190 | $7,720.00 |
| DLL Finance LLC c/o Jeremiah Barton Hayes Taherzadeh PLLC 5001 Spring Valley Rd, Ste 1020W Dallas, TX 75244 | Warrior Golf Management, LLC | 6/17/17 | 101-0431550 | $7,785.00 |
| DLL Finance LLC c/o Jeremiah Barton Hayes Taherzadeh PLLC 5001 Spring Valley Rd, Ste 1020W Dallas, TX 75244 | Warrior Golf Equities, LLC | 7/27/17 | 101-0432999 | $9,079.00 |
| DLL Finance LLC c/o Jeremiah Barton Hayes Taherzadeh PLLC 5001 Spring Valley Rd, Ste 1020W Dallas, TX 75244 | Warrior Golf Assets, LLC | n/a | 101-0429482 | $73,528.00 |
| DLL Finance LLC c/o Jeremiah Barton Hayes Taherzadeh PLLC 5001 Spring Valley Rd, Ste 1020W Dallas, TX 75244 | Warrior Golf Equities, LLC | 4/4/16 | 101-0416051 | $47,948.00 |

| | | | | |
|---|---|---|---|---|
| DLL Finance LLC<br>c/o Jeremiah Barton Hayes<br>Taherzadeh PLLC<br>5001 Spring Valley Rd, Ste 1020W<br>Dallas, TX 75244 | Warrior Golf Equities, LLC | n/a | 101-0397476 | $27,731.00 |
| DLL Finance LLC<br>c/o Jeremiah Barton Hayes<br>Taherzadeh PLLC<br>5001 Spring Valley Rd, Ste 1020W<br>Dallas, TX 75244 | Warrior Custom Golf, Inc. | n/a | 101-0415702 | $20,153.00 |
| Five9 Inc<br>4000 Executive Pkwy, Ste 400<br>San Ramon, CA 94583 | Warrior Custom Golf, Inc. | 12/10/10 | n/a | $0.00 |
| Green Turtle LLC<br>c/o Paul Cliff<br>Gresham Savage Nolan & Tilden<br>550 East Hospitality Lane, Ste 300<br>San Bernardino, CA 92408 | Warrior Custom Golf, Inc. | 5/12/17 | n/a | $0.00 |
| PNC Bank<br>c/o Christopher V. Arisco<br>Padfield & Stout LLP<br>420 Throckmorton Street, Ste 1210<br>Fort Worth, TX 76102 | Warrior  Acquisitions, LLC; Warrior Golf Equities,  LLC | 1/1/16 | 193130000 | $2,997.12 |
| PNC Bank<br>c/o Christopher V. Arisco<br>Padfield & Stout LLP<br>420 Throckmorton Street, Ste 1210<br>Fort Worth, TX 76102 | Warrior Golf Equities, LLC | 11/15/16 | 200873000 | $0.00 |
| PNC Bank<br>c/o Christopher V. Arisco<br>Padfield & Stout LLP<br>420 Throckmorton Street, Ste 1210<br>Fort Worth, TX 76102 | Warrior Custom Golf, Inc.; Warrior Golf Equities, LLC | 11/15/17 | 207879000 | $20,387.80 |

| PNC Bank<br>c/o Christopher V. Arisco<br>Padfield & Stout LLP<br>420 Throckmorton Street, Ste 1210<br>Fort Worth, TX 76102 | Warrior Golf Legends, LLC; Warrior Acquisitions, LLC | 2/28/16 | 196181000 | $11,110.50 |
| TCF Equipment Finance<br>c/o Teri H. Kelley<br>Attorney at Law<br>6750 West Loop South, Ste 920<br>Bellaire, TX 77401 | Warrior Golf Holding , LLC | 3/4/16 | 008-0686418-101 | $22,000.00 |
| TCF Equipment Finance<br>c/o Teri H. Kelley<br>Attorney at Law<br>6750 West Loop South, Ste 920<br>Bellaire, TX 77401 | Warrior Golf Holding , LLC | 2/28/14 | 008-0686418-301 | $10,000.00 |
| VGM Financial Services<br>6750 W Loop S, Ste 920<br>Bellaire, TX 77401 | Warrior Golf Legend , LLC | 8/18/15 | 004-0682444-300 | $1,557.03 |
| VGM Financial Services<br>6750 W Loop S, Ste 920<br>Bellaire, TX 77401 | Warrior Golf Holding , LLC | 7/15/16 | 004-0686418-102 | $7,000.00 |
| VGM Financial Services<br>6750 W Loop S, Ste 920<br>Bellaire, TX 77401 | Warrior Golf Holding , LLC | 7/15/16 | 004-0686418-302 | $8,000.00 |
| Wells Fargo<br>800 Walnut Street<br>MAC F0005 055<br>Des Moines, IA 50309 | Warrior Golf Equities, LLC | 3/25/16 | 2947 | $1,280.00 |
| Wells Fargo<br>800 Walnut Street<br>MAC F0005 055<br>Des Moines, IA 50309 | Warrior Golf Equities, LLC | 3/25/16 | 2589 | $4,788.00 |
| Wells Fargo<br>800 Walnut Street<br>MAC F0005 055<br>Des Moines, IA 50309 | Warrior Golf Resources, LLC | 8/30/14 | 1659 | $565.80 |
| Wells Fargo<br>800 Walnut Street<br>MAC F0005 055<br>Des Moines, IA 50309 | Warrior Golf Resources, LLC | 11/26/18 | 1252 | $11,460.00 |

| | | | | |
|---|---|---|---|---|
| Yamaha Motor Finance<br>c/o Brandon K. Bains<br>Langley LLP<br>1301 Solana Blvd<br>Building 1, Ste 1545<br>Westlake, TX 76262 | Warrior Golf Properties, LLC | 11/1/18 | 18110331 | $49,699.00 |
| Yamaha Motor Finance<br>c/o Brandon K. Bains<br>Langley LLP<br>1301 Solana Blvd<br>Building 1, Ste 1545<br>Westlake, TX 76262 | Warrior Golf Assets LLC | 6/28/18 | 18069095 | $1,483.00 |
| Yamaha Motor Finance<br>c/o Brandon K. Bains<br>Langley LLP<br>1301 Solana Blvd<br>Building 1, Ste 1545<br>Westlake, TX 76262 | Warrior Golf Assets LLC | 6/28/18 | 18069096 | $2,377.00 |
| Yamaha Motor Finance<br>c/o Brandon K. Bains<br>Langley LLP<br>1301 Solana Blvd<br>Building 1, Ste 1545<br>Westlake, TX 76262 | Warrior Golf Management, LLC | 4/15/17 | 17086651 | $44,829.00 |
| Yamaha Motor Finance<br>c/o Brandon K. Bains<br>Langley LLP<br>1301 Solana Blvd<br>Building 1, Ste 1545<br>Westlake, TX 76262 | Warrior Golf Management, LLC | 3/1/18 | 18038705 | $35,623.00 |

Total:        $421,381.25

**For the avoidance of doubt, the Debtors have not listed any executory contracts or unexpired leases the Debtors may have entered into following the Petition Date.

# **EXHIBIT L**

## Impact of the COVID-19 Virus

As identified in the Debtors' Disclosure Statement, due to the unprecedented health and economic risks associated with the Corona Virus - Covid-19 ("Corona Virus") there have been and may continue to be significant business interruptions and golf course closures related to the Corona Virus.

In March 2020, Warrior Custom Golf was required to suspend its manufacturing operations according to orders of state and local government. This resulted in the unfortunate termination of over 60 employees. Only now, in May 2020, is Warrior Custom Golf able to slowly restart its operations and rebuild its sales and custom club manufacturing business. We are currently working to hire back former employees as is appropriate in light of the growth of our custom club business. The long-term ramifications of the Corona Virus on Warrior Custom Golf's operations cannot be predicted at this point. However, Warrior Custom Golf's management team is working to evolve Warrior Custom Golf's business plan to account for the potential health and economic consequences of the Corona Virus and the responses to it, and to position Warrior Custom Golf to thrive in the current economic climate. Corona Virus related changes have impacted Warrior Custom Golf's actual results for the first and second quarters of 2020 and its projections for the calendar year 2020.

From March through May 2020, many of Warrior's golf courses had to limit operations, including no longer serving food or beverages to guests for onsite dining and implementing other social distancing measures to protect the health and safety of our customers and employees. During part of this period, one of our premier courses, the Cimarron Golf Resort, was required to close due to state and local regulations. Corona Virus related changes have impacted Warrior Golf's actual results for the first and second quarters of 2020 and its projections for the calendar year 2020.

Going forward it is likely that the Corona Virus and the response to it are going to have meaningful impacts on the Debtors' business operations. It is possible that Warrior Custom Golf may need to suspend its manufacturing obligations again. It is possible that one or more of our golf courses may have to close for a prolonged period. It is also possible that the United States may enter into a severe recession, impacting the demand for custom golf clubs and golf courses. These potential consequences could, among other things, impact (i) the profitability of the Debtors' businesses, (ii) whether certain businesses can continue as going concerns, (iii) the market value of the Debtors' golf course and (iv) the market value of Warrior Custom Golf. Warrior's management team continues to evaluate the potential risks and opportunities and is working to avoid and/or mitigate the risk and capitalize upon the opportunities.

# **EXHIBIT M**

Projections for Custom Golf



**Warrior Golf Balance Sheet - Consolidated Golf Club Operating Businesses**

As of March 31, 2020 and as of the anticipated July 2020 Effective Date (Assuming Sale of Notes and the Courses
Identified on the Statement of Real Estate Owned)

|  | March 31, 2020 | Effective Date |
|---|---|---|
| **ASSETS** | | |
| **Current Assets** | | |
| Total Checking/Savings | $ 51,583 | $ 88,765 |
| Other Current Assets | | |
| Prepaid Deposits | 34,649 | 34,649 |
| Inventory | 230,635 | 86,000 |
| Total Other Current Assets | 265,285 | 120,649 |
| **Total Current Assets** | **316,867** | **209,414** |
| | | |
| **Fixed Assets** | | |
| Land | 19,665,000 | 10,150,000 |
| Machinery & Equipment | 0 | 100,000 |
| Capital Leases | 3,540,228 | 1,608,903 |
| Accumulated Depreciation | (2,106,281) | (1,215,888) |
| **Total Fixed Assets** | **21,098,947** | **10,643,016** |
| | | |
| **Note Receivable - Lakota Rec Center** | 456,000 | - |
| **Note Receivable - Nocona Hills** | 200,000 | - |
| | | |
| **TOTAL ASSETS** | **22,071,815** | **10,852,430** |
| | | |
| **LIABILITIES & MEMBER'S CAPITAL** | | |
| **Liabilities** | | |
| **Current Liabilities** | | |
| Accounts Payable | | |
| Accounts Payable - Pre Petition | 1,260,407 | - |
| Accounts Payable - Post Petition (1) | 1,402,062 | 4,627,062 |
| Accounts Payable | 2,662,469 | 4,627,062 |
| Other Current Liabilities | | |
| Intercompany Obligation due to Warrior Custom Golf | 2,546,944 | - |
| Total Due to Affiliates | 2,546,944 | - |
| Liability Accrual | 775,771 | - |
| Sales Tax Payable | 98,036 | 80,000 |
| Other Current Liabilities | 3,420,752 | 80,000 |
| **Total Current Liabilities** | **6,083,221** | **4,707,062** |
| **Long Term Liabilities** | | |
| Pre-Petition Notes Payable (Real Property Secured Debt) | 3,629,781 | 1,328,388 |
| Capital Leases | 1,958,693 | 458,693 |
| DIP Loan | 2,413,413 | - |
| **Total Long Term Liabilities** | **8,001,886** | **1,787,081** |
| | | |
| **TOTAL LIABILITIES** | **14,085,107** | **6,494,143** |
| | | |
| **MEMBER'S CAPITAL** | | |
| Membership Interests | | |
| Retained Earnings/Initial Equity | 9,227,268 | 4,358,287 |
| Current Period Earnings | (1,240,561) | - |
| **Total Member's Capital** | **7,986,707** | **4,358,287** |
| | | |
| **TOTAL LIABILITIES & EQUITY** | **$ 22,071,815** | **$ 10,852,430** |

(1) Includes administrative professional fees and trade claims. Certain professional fees anticipated to remain obligations
or the reorganized Golf Company.



**Statement of Real Estate Owned**

If no value is specified the property is assumed to be sold prior to the Effective Date

| Property | Estimated Value | Effective Date Value |
|---|---|---|
| **Baneberry Golf & Resort** | $ 765,000 | $ - |
| 704 Harrison Ferry Rd | | |
| Baneberry TN 37890 | | |
| | | |
| Description | | |
| 18 hole Golf Course with adjacent partially developed platted lots (approx. 135).  Clubhouse, with separate 10 room lodge and 7 villas (condos). | | |
| | | |
| **Broadmoor Golf Links** | $ 2,750,000 | $ - |
| 101 French Broad Lane | | |
| Fletcher NC 28732 | | |
| | | |
| Description | | |
| 18 Hole Golf Course, Clubhouse & Restaurant | | |
| | | |
| **Cimarron Golf Resort** | $ 5,900,000 | $ 5,900,000 |
| 67-603 30th St | | |
| Cathedral City, CA 92234 | | |
| | | |
| Description | | |
| 36 Hole Golf Course, Clubhouse & Restaurant | | |
| | | |
| **Heddles Hideaway Golf Course** | $ 500,000 | $ - |
| 5451 S Pine Street | | |
| Spartanburg, SC 29302 | | |
| | | |
| Description: | | |
| 18 Hole Golf Course, Clubhouse & Restaurant Approximately 39 acres of adjacent undeveloped land for future development | | |
| | | |
| **Kings Creek Golf Club** | $ 1,000,000 | $ 1,000,000 |
| 3901 Kedron Rd | | |
| Spring Hill TN 37174 | | |
| | | |
| Description | | |
| 18 hole golf course.  No clubhouse | | |
| | | |
| **Lakota Canyon Ranch & Golf Club** | $ 1,500,000 | $ - |
| 1000 Clubhouse Drive | | |
| New Castle, CO 81647 | | |
| | | |
| Description | | |
| 18 Hole Golf Course, Clubhouse & Restaurant Approximately 123 acres of adjacent undeveloped land for future development. | | |



**Statement of Real Estate Owned (continued)**

| Property | Estimated Value | Effective Date Value |
|---|---|---|
| **Ole Still Golf Club** <br> 1157 Players Ridge Road <br> Hickory, NC 28601 <br><br> Description <br> 18 Hole Golf Course, Clubhouse & Restaurant <br> Ten Adjacent lots | $ 1,000,000 | $ 1,000,000 |
| **Royal St Augustine Golf & Country Club** <br> 301 Royal St Augustine Parkway <br> St Augustine, FL 32064 <br><br> Description <br> 18 Hole Golf Course, Clubhouse & Restaurant | $ 2,000,000 | $ - |
| **Whispering Woods Golf Club** <br> 26 Sandpiper Drive <br> Whispering Pines, NC 28327 <br><br> Description <br> 18 Hole Golf Course, Clubhouse & Restaurant | $ 1,000,000 | $ 1,000,000 |
| **Wolf Creek Golf Club** <br> 3000 Union Rd <br> Atlanta, GA 30331 <br><br> Description <br> 18 Hole Golf Course, no clubhouse | $ 2,000,000 | $ - |
| **Lots At Quail Crossing** <br> Boonville, IN 47601 <br><br> Description <br> 7 Build Ready Lots and 1 unimproved lot of <br> approximately 7.8 acres | $ 150,000 | $ 150,000 |
| **Warrior ATV** <br> 0000 Smiley Blvd at Petit Rd <br> Moreno Valley, CA 92555 <br><br> Description <br> Approximately 330 acres of adjacent undeveloped <br> land for future development. | $ 1,100,000 | $ 1,100,000 |
| **Total Land** | $ 19,665,000 | $ 10,150,000 |



**Warrior Golf Income Statement - Consolidated Golf Club Operating Businesses**
2020 Actuals from January through March and Projected from April through December.
Assumes Currently Owned Golf Courses  Retained Through 2020

| | JAN | FEB | MAR | APR | MAY | JUN | JUL | AUG | SEP | OCT | NOV | DEC | 2020 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **REVENUES** | $ 778,977 | $ 798,631 | $ 820,114 | $ 747,196 | $ 807,425 | $ 660,106 | $ 915,707 | $ 774,912 | $ 682,423 | $ 684,700 | $ 750,376 | $ 618,929 | $ 9,039,495 |
| **COST OF GOODS SOLD** | 46,353 | 68,866 | 31,853 | 28,789 | 37,147 | 40,727 | 46,787 | 58,726 | 57,664 | 55,110 | 39,926 | 67,523 | 579,469 |
| **GROSS PROFIT** | 732,624 | 729,765 | 788,261 | 718,407 | 770,278 | 619,379 | 868,920 | 716,186 | 624,759 | 629,591 | 710,450 | 551,406 | 8,460,026 |
| **EXPENSES** | | | | | | | | | | | | | |
| Payroll | 373,237 | 304,223 | 351,353 | 236,070 | 229,578 | 245,194 | 391,605 | 302,841 | 242,456 | 254,413 | 234,144 | 222,305 | 3,387,420 |
| Travel & Entertainment | 0 | 21,611 | 0 | 0 | 0 | 0 | 0 | 974 | 0 | 0 | 167 | 0 | 22,752 |
| Operating Expenses | 209,936 | 140,148 | 109,636 | 48,201 | 37,977 | 147,219 | 74,568 | 57,218 | 69,546 | 47,352 | 95,811 | 145,038 | 1,182,648 |
| Advertising | 250 | 510 | 7 | 0 | 30 | 236 | 0 | 668 | 0 | 0 | 36 | 0 | 1,738 |
| Building Maintenance | 3,221 | 3,222 | 1,206 | 9,161 | 13,583 | 8,029 | 11,530 | 13,985 | 8,217 | 15,232 | 10,755 | 9,890 | 108,031 |
| Golf Course Maintenance | 58,532 | 70,624 | 46,710 | 110,063 | 98,418 | 89,012 | 149,674 | 104,591 | 59,294 | 137,446 | 108,588 | 87,987 | 1,120,938 |
| Food & Beverage | 6,917 | (4,532) | (4,387) | 8,692 | 6,489 | 6,558 | 7,807 | 9,122 | 9,740 | 9,672 | 7,950 | 3,568 | 67,595 |
| Golf Operations | (410) | 2,572 | 1,265 | 14,952 | 15,529 | 13,669 | 14,763 | 13,943 | 10,237 | 11,205 | 13,950 | 7,950 | 119,625 |
| Utilities | 75,174 | 47,219 | 69,070 | 101,425 | 72,471 | 66,129 | 121,298 | 103,738 | 81,676 | 98,775 | 126,761 | 100,061 | 1,063,797 |
| **Total Expense** | 726,857 | 563,985 | 574,859 | 551,777 | 503,419 | 607,180 | 823,673 | 648,531 | 517,096 | 609,980 | 623,580 | 601,244 | 7,352,181 |
| **EBITDA** | 5,768 | 165,780 | 213,402 | 166,630 | 266,859 | 12,199 | 45,247 | 67,655 | 107,663 | 19,611 | 86,870 | (49,838) | 1,107,845 |
| Depreciation Expense | 33,850 | 33,850 | 33,850 | 4,456 | 4,456 | 4,456 | 4,456 | 153,517 | 37,006 | 28,877 | 28,877 | 28,877 | 396,530 |
| **NET INCOME** | $ (28,082) | $ 131,930 | $ 179,552 | $ 162,174 | $ 262,403 | $ 7,743 | $ 40,791 | $ (85,862) | $ 70,657 | $ (9,266) | $ 57,993 | $ (78,716) | $ 711,316 |



**Warrior Custom Golf Income Statement - Custom Golf Club Manufacturing Business**
2019 Actuals, 2020 Actuals from January through March and Projected from April through December, 2021 Projections

|  | 2019 | 2020 | 2021 |
|---|---|---|---|
| **REVENUE** | | | |
| **40000 · Revenue** | | | |
| Gross Sales | $ 16,760,941 | $ 13,997,803 | $ 16,345,000 |
| Deposits | - | - | $ - |
| Less Sales Returns & Allowances | (3,751,854) | (3,552,402) | (3,727,900) |
| Contra Revenue - Other (sales tax) | - | - | 34,992 |
| **Total Income** | 13,009,087 | 10,445,402 | 4,590,740 |
| **Total Income** | 13,009,087 | 10,445,402 | $ 12,652,092 |
| | | | |
| **COST OF GOODS SOLD** | | | |
| **Materials** | | | |
| Materials/Freight/Duties | 2,658,727 | 2,593,364 | 2,965,375 |
| Payroll | 556,063 | 598,709 | 627,737 |
| **Total Cost of Goods Sold** | 4,588,431 | 4,237,200 | 4,887,262 |
| | | | |
| **GROSS PROFIT** | 8,420,656 | 6,208,202 | 7,764,830 |
| | | | |
| **SELLING EXPENSE** | | | |
| Payroll | 2,478,512 | 1,687,801 | 1,623,716 |
| Advertising & Promotion | 2,480,235 | 1,509,338 | 1,587,861 |
| **Total Selling Expense** | 4,958,746 | 3,197,139 | 3,211,578 |
| | | | |
| **GENERAL & ADMINISTRATION EXPENSES** | | | |
| Payroll | 1,066,530 | 1,123,160 | 1,091,332 |
| | | - | |
| TOTAL SALARIES AND SELLING EXPENSES | 4,101,105 | 4,320,300 | 3,342,785 |
| | | - | |
| | | - | |
| General & Administrative Expense | 2,671,356 | 2,225,462 | 2,298,027 |
| **Total General & Administration Expense** | 3,737,886 | 3,348,623 | 3,389,358 |
| | | | |
| **TOTAL EXPENSE** | 13,285,063 | 10,782,962 | 11,488,198 |
| | | | |
| **EBITDA** | (275,976) | (337,560) | 1,163,894 |
| | | | |
| Total Other/ Interest/ Restructuring | 4,368,478 | 1,727,228 | - |
| | | - | |
| **INCOME (LOSS) BEFORE TAXES** | $(4,644,454) | $ (2,064,788) | $ 1,163,894 |



**Warrior Custom Golf Balance Sheet - Custom Golf Club Manufacturing Business**
As of December 31, 2019, March 31, 2020, and as of the anticipated July 2020 Effective Date

|  | Dec. 2019 | Mar. 31, 2020 | Effective Date |
|---|---|---|---|
| **ASSETS** | | | |
| **Current Assets** | | | |
| Cash | (26,610.51) | 226,788 | 250,000 |
| Accounts Receivable | 71,307.00 | 71,307 | 71,307 |
| Inventory | 1,580,642.03 | 1,255,812 | 905,812 |
| **Sub Total Current Assets** | $ 1,625,339 | 1,553,907 | 1,227,119 |
| | | | |
| **Fixed Assets, Net** | $    44,780 | $   132,183 | 183,183 |
| | | | |
| **Other Assets** | | | |
| Prepaid Deposits | 47,146 | 46,697 | 46,697 |
| Investment in Precious Metals (1) | 500,000 | 500,000 | 500,000 |
| Due (To)/From Affiliates Pre Petition | (593,352) | (593,352) | |
| Due (To)/From Affiliates Post Petition | 3,384,111 | 2,546,944 | |
| **TOTAL ASSETS** | $ 5,008,024 | $ 4,186,379 | 1,956,999 |
| | | | |
| **LIABILITIES AND EQUITY** | | | |
| | | | |
| **Current Liabilities** | | | |
| Accounts Payable - Pre Petition | 508,767 | 508,767 | - |
| Accounts Payable - Post Petition (2) | 6,031,381 | 7,209,070 | 1,359,070 |
| Other Current Liabilities | 326,293 | 336,721 | |
| **Total Current Liabilities** | $ 6,866,442 | $ 8,054,558 | 1,359,070 |
| | | | |
| **Long Term Liabilities** | | | |
| DIP Loan | 2,679,962 | 2,413,413 | - |
| | | | |
| **Total Long Term Liabilities** | $ 2,679,962 | $ 2,413,413 | $          - |
| | | | |
| **TOTAL LIABILITIES** | 9,546,404 | 10,467,970 | 1,359,070 |
| | | | |
| **SHAREHOLDER'S EQUITY** | | | |
| Common Stock | - | - | - |
| Retained Earnings/Initial Equity | 211,308 | (4,267,717) | 597,929 |
| Current Period Earnings | (4,749,688) | (2,013,874) | - |
| **Total Shareholder's Equity** | $ (4,538,380) | $ (6,281,591) | 597,929 |
| | | | |
| **TOTAL LIABILITIES & EQUITY** | $ 5,008,024 | $ 4,186,379 | $1,956,999 |

(1) There may be a dispute regarding the Debtors' Ownership
(2) Includes aggregate administrative professional fees and Warrior Custom Golf trade claims

# **EXHIBIT N**

## Trust Contribution Funds

The Trust Contribution Funds, as referenced in Section 1.02(146) of the *Debtors' and Committee's First Amended Joint Plan of Reorganization*, shall be $100,000.