ENTERED
06/15/2020

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| WESTWIND MANOR RESORT ASSOCIATION, INC., *et al.*,[1] | Case No. 19-50026 (DRJ) |
| Debtors. | Jointly Administered |

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING THE DEBTORS' JOINT CHAPTER 11 PLAN AS OF MARCH 20, 2020

Each of the above-captioned debtors and debtors in possession (collectively, the "Debtors"),

Filed with this Court a voluntary petition for relief under chapter 11 of Title 11, United States Code,

11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), on March 4, 2019 (the "First Petition Date"),

April 4, 2019, and May 30, 2019 (collectively, the "Petition Dates"). On March 20, 2020, the

Debtors Filed the *First Amended Disclosure Statement with Respect to the Joint Chapter 11 Plan

Dated as of March 20, 2020* [Docket No. 786] (as amended and modified to date, the "Disclosure

Statement"). On March 20, 2020, the Debtors and the Committee (defined below) Filed the *Joint

Chapter 11 Plan* as of March 20, 2020 [Docket No. 787] (as supplemented by the Plan Supplement

(defined below) and as amended and modified to date, the "Plan"), the Plan is attached as Exhibit

1 hereto.[2] On March 18, 2020, the Court entered the *Order Approving: (I) The Disclosure*

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Westwind Manor Resort Association, Inc. (7533); Warrior ATV Golf, LLC (3420); Warrior Acquisitions, LLC (9919); Warrior Golf Development, LLC (5741); Warrior Golf Management, LLC (7882); Warrior Golf Assets, LLC (1639); Warrior Golf Venture, LLC (7752); Warrior Premium Properties, LLC (0220); Warrior Golf, LLC (4207); Warrior Custom Golf, Inc. (2941); Warrior Golf Equities, LLC (9803); Warrior Golf Capital, LLC (5713); Warrior Golf Resources, LLC (6619); Warrior Golf Legends, LLC (3099); Warrior Golf Holdings, LLC (2892); and Warrior Capital Management, LLC (8233).  The address of the Debtors' corporate headquarters is 15 Mason, Suite A, Irvine, California 92618.

[2] Capitalized terms used herein and not defined herein shall have the meaning ascribed thereto in either the Disclosure Statement or the Plan.

*Statement; etc.* [Docket No. 783] (the "Disclosure Statement Approval Order"). The Disclosure Statement Approval Order, among other things: (i) approved the Disclosure Statement as containing "adequate information" pursuant to Section 1125 of the Bankruptcy Code; (ii) approved the solicitation procedures for the solicitation of votes on the Plan; (iii) fixed June 2, 2020, as the date by which all Ballots to accept or reject the Plan must be received (the "Voting Deadline"); (iv) fixed June 5, 2020, as the last day for Creditors and other parties in interest to File objections to Confirmation of the Plan (the "Objection Deadline"); (v) scheduled a hearing to consider Confirmation of the Plan and final approval of the Disclosure Statement for June 15, 2020 (the "Confirmation Hearing"); and (vi) prescribed the form and manner of notice with respect to the foregoing.

The Plan provides for equitable and prompt Distributions to Creditors of the Debtors and preserves the value of the Estates. The Debtors and the Committee believe that the Plan represents the best opportunity to distribute the Estates' assets to Creditors at the earliest possible date.

The Confirmation Hearing was held on June 15, 2020. After having conducted the Confirmation Hearing, reviewed any objections, considered the evidence, exhibits, and records, and considered any remaining objections and arguments of counsel,

**THE COURT HEREBY FINDS AND CONCLUDES AS FOLLOWS**:

A.    Jurisdiction. The Court has jurisdiction over the Chapter 11 Cases and the subject matter of the Confirmation Hearing pursuant to 28 U.S.C. §§ 157 and 1334. Plan Confirmation is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2), and this Court has jurisdiction to enter this Order with respect thereto. The Debtors are eligible for relief under Section 109 of the Bankruptcy Code.

B.      Venue. Venue of the Chapter 11 Cases and the subject matter of the Confirmation Hearing are proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

C.      Judicial Notice. This Court takes judicial notice of the docket of the Chapter 11 Cases maintained by the Clerk of the Court, including all pleadings, all documents Filed, all orders entered, all evidence and arguments made, proffered or adduced at the hearings held before this Court during the pendency of the Chapter 11 Cases, and of the claims register and proofs of claim maintained by Donlin, Recano & Company, Inc. the duly-appointed claims agent in these cases (the "Claims Agent").

D.      Plan Supplement. On May 18, 2020, the Debtors Filed their Plan Supplement [Docket No. 903]. On June 11, 2020, the Debtors Filed an amended Plan Supplement [Docket No. 975] (the "Plan Supplement").

E.      Voting Solicitation. In conformance with Rules 2002 and 3017 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Debtors solicited votes on the Plan by distributing the following documents to Holders of Claims in Classes 3C, 4, 5 and 6: (1) the Confirmation Hearing Notice (as defined in the Disclosure Statement Approval Order); (2) a Ballot for voting on the Plan; (3) a pre-addressed and postage paid return envelope for the Ballot; and (4) the Disclosure Statement Approval Order (as more detailed in the Ballot Declaration, defined herein). In addition, Ballots were supplied to each Person requesting a Ballot who did not otherwise receive a Ballot.

F.      Notice. Notice of the Confirmation Hearing, the Voting Deadline, and the Objection Deadline was issued in conformance with Rules 2002, 3017, and 3020, and the Disclosure Statement Approval Order was issued to creditors and other parties in interest, as evidenced by the affidavits of service [Docket Nos. 785, 832 and 833] Filed with this Court. The

3

Court finds that notice of the Plan and of the Confirmation Hearing has been reasonable, adequate, and sufficient in all respects.

G.      <u>Tabulation of Acceptances</u>. Upon the *Declaration Of John Burlacu On Behalf Of Donlin, Recano & Company, Inc. Regarding Voting And Tabulation Of Ballots Accepting And Rejecting The Debtors And Committees First Amended Joint Plan Of Reorganization* [Docket No. 966] (the "<u>Ballot Declaration</u>"), the Debtors certified that they received the requisite acceptances both in number and amount from certain Classes of Creditors for Confirmation of the Plan as required under Section 1126 of the Bankruptcy Code. As evidenced by the Ballot Declaration and based upon the record before the Court, the solicitation and tabulation of acceptances and rejections of the Plan by the Debtors, their counsel, and the Claims Agent was accomplished in a proper, fair, and lawful manner in accordance with the Disclosure Statement Approval Order, all applicable sections of the Bankruptcy Code, and all applicable sections of the Bankruptcy Rules. Holders of Other Priority Claims in Class 1, Other Secured Claims in Class 2, Prepetition Secured Claims in Class 3A and Class 3B are Unimpaired and are, therefore, deemed to accept the Plan. Holders of Interests in Class 7 and Class 8 were deemed to have rejected the Plan. Ballots were transmitted to Holders of Claims in Classes 3C, 4, 5, and 6 (the "<u>Voting Classes</u>") in accordance with the Disclosure Statement Approval Order. The Debtors solicited votes for the Plan from the Voting Classes in good faith and in a manner consistent with the Bankruptcy Code. As of the date of the Ballot Declaration, Holders of Claims entitled to vote to accept or reject the Plan voted in the numbers and percentages stated in the Ballot Declaration. At least two-thirds in dollar amount and more than one-half in number of the Creditors in Classes 3C, 4, 5 and 6 who voted on the Plan voted to accept the Plan.

H.      <u>Objections</u>. No objections were timely Filed to the Plan.

I.      <u>Reasonable Classification of Claims and Equity Interests (Section 1122 and Section 1123(a)(1), (2) and (3))</u>. The Plan designates Claims and Interests, in compliance with Sections 1122 and 1123(a)(1)–(3) of the Bankruptcy Code, in the following eight Classes: Other Priority Claims (Class 1); Other Secured Lender Claims (Class 2); Prepetition Secured Claims (Classes 3A, 3B and 3C); General Unsecured Claims (Class 4); Investment Claims (Class 5); Convertible Note Claims (Class 6); Custom Golf Interests (Class 7); and LLC Interests (Class 8). The classification of Claims and Interests in <u>Section 3</u> of the Plan is reasonable and necessary, has a rational, justifiable, and good faith basis, and places Claims and Interests in a particular Class where such Claims or Interests are substantially similar to the other Claims or Interests of such Class. Under the Plan, Holders of Other Priority Claims in Class 1, Other Secured Claims in Class 2, and Prepetition Secured Claims in Classes 3A and 3B are Unimpaired, and are, therefore, deemed by law to have accepted the Plan. Holders of Claims in Classes 3C, 4, 5 and 6, and Holders of Custom Golf Interests in Class 7 and LLC Interests in Class 8 are Impaired. Classes 7 and 8 is deemed to have rejected the Plan. In light of the foregoing, the Plan complies with Sections 1122 and 1123(a)(1)–(3) of the Bankruptcy Code.

J.      <u>No Discrimination (Section 1123(a)(4))</u>. <u>Section 4</u> of the Plan provides for all Holders of Claims and Interests within a particular Class to receive identical treatment under the Plan on account of such Claims and Interests unless such a Holder has expressly consented to less favorable treatment. The Plan, therefore, complies with Section 1123(a)(4) of the Bankruptcy Code.

K.      <u>Implementation of the Plan (Section 1123(a)(5))</u>. <u>Section 5</u> and other provisions of the Plan provide adequate means for implementation of the Plan, including: (1) substantive consolidation of the Debtors and their respective Estates for all purposes relating to the Plan,

including for purposes of voting, Confirmation, and Distributions; (2) the appointment of a Creditor Trustee and the designation of the powers of the Creditor Trustee; (3) the liquidation of the Debtors' assets; (4) the appointment of the Creditor Trustee and the designation of the powers of the Creditor Trustee; (5) the authorization of the creation of the Creditor Trust and the administration of the Creditor Trust by the Creditor Trustee; (6) the cancellation of existing securities of the Debtors; (7) the authorization of necessary and appropriate corporate action; and (8) the preservation of certain Causes of Action, Avoidance Actions and Assigned Estate Claims. Section 7 of the Plan specifies the procedures by which Distributions will be made to Holders of Allowed Claims. Accordingly, the Plan provides adequate, proper, and legal means for its implementation. The Plan, therefore, complies with Section 1123(a)(5) of the Bankruptcy Code.

L.     Equity Securities (Section 1123(a)(6)). Section 1.02(111) of the Plan provides that the Organizational Documents of the Debtors shall be amended to prohibit the issuance of nonvoting equity securities (to the extent required by the Bankruptcy Code).

M.     Selection of Officers, Directors and Managers (Section 1123(a)(7)). Section 5.05 of the Plan establishes the procedures for appointing a Creditor Trustee. Jeremy Rosenthal has been selected as the Creditor Trustee by the Debtors, with the agreement of the Committee. Accordingly, to the extent Section 1123(a)(7) of the Bankruptcy Code is applicable, the selection of the Creditor Trustee is consistent with the interests of the Debtors' Creditors and comports with public policy. The Plan, therefore, complies with Section 1123(a)(7) of the Bankruptcy Code.

N.     Payment of Future Income (Section 1123(a)(8)).Section 1123(a)(8) is inapplicable because the Debtors are not individuals.

O.     Impairment or Unimpairment of Claims or Interests (Section 1123(b)(1)). Section 4 of the Plan Impairs or leaves Unimpaired each Class of Claims and the class of Interests in

accordance with Section 1123(b)(1) of the Bankruptcy Code. The Plan, therefore, complies with Section 1123(b)(1) of the Bankruptcy Code.

P.      Assumption or Rejection of Executory Contracts and Unexpired Leases (Section 1123(b)(2)). Pursuant to Section 8 of the Plan, the Debtors have exercised sound business judgment in determining that all executory contracts and unexpired leases of the Debtors shall be deemed rejected by the Debtors as of the Effective Date, except for any executory contract or unexpired lease that: (1) has been previously rejected or assumed by the Debtors pursuant to an order of this Court, or (2) is the subject of a motion to assume Filed by the Debtors which is pending on the Effective Date. The Plan, therefore, complies with Section 1123(b)(2) of the Bankruptcy Code.

Q.      Release of Certain Causes of Action (Section 1123(b)(3)(A)). Sections 6 and 13 of the Plan provides for certain releases. The releases contained in the Plan comply with Section 1123(b)(3)(A) of the Bankruptcy Code.

R.      Pursuit of Causes of Action, Avoidance Actions and Assigned Estate Claims (Section 1123(b)(3)(B)). Section 5 of the Plan and Exhibit "A" to the Plan, as amended and supplemented by the Plan Supplement [Docket No. 975] provides that the Reorganized Debtors and the Creditor Trustee, with respect to Assigned Estate Claims, will retain and may (but are not required to) enforce certain Causes of Action, Avoidance Actions and the Assigned Estates Claims, as applicable. The Plan also provides that after the Effective Date, the Reorganized Debtors and the Creditor Trustee, with respect to Assigned Estate Claims, in their sole and absolute discretion, shall have the right to bring, settle, release, compromise, or enforce such Causes of Action, Avoidance Actions or Assigned Estate Claims, as applicable (or decline to do any of the foregoing), without further approval of this Court. The Reorganized Debtors and the Creditor Trustee (as applicable)

are permitted to pursue such Causes of Action, Avoidance Actions or Assigned Estate Claims so long as it is the best interests of either the Reorganized Debtors or the Creditor Trust, as applicable. Pursuant to <u>Section 5.14</u> of the Plan, the failure of the Debtors to specifically list any claim, right of action, suit, proceeding or other Cause of Action, or Assigned Estate Claim in the Plan does not, and will not be deemed to, constitute a waiver or release by the Estates, the Creditor Trustee, or the Debtors of such claim, right of action, suit, proceeding or other Cause of Action, Avoidance Actions or Assigned Estate Claim, and the Creditor Trustee (on behalf of the Debtors, and as applicable, with respect to Direct Causes of Action and/or WGP Causes of Action, assigned pursuant to the Plan) will retain the right to pursue such claims, rights of action, suits, proceedings and other Causes of Action, Avoidance Actions and, Assigned Estate Claims, therefore, no preclusion doctrine, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches will apply to such claim, right of action, suit, proceeding or other Cause of Action, Avoidance Actions, Assigned Estate Claims, Direct Causes of Action and/or WGP Causes of Action, upon or after the Confirmation or consummation of the Plan. The provisions of <u>Section 5</u> of the Plan comply with and are consistent with Section 1123(b)(3)(B) of the Bankruptcy Code. The retention and enforcement of Causes of Action, Avoidance Actions and Assigned Estate Claims (1) are an essential means of implementing the Plan, (2) are integral elements of the settlements and compromises incorporated in the Plan, and (3) confer material benefits on, and are in the best interests of, the Debtors, their Estates, their stakeholders and other parties in interest.

S.    <u>Plan Compliance With Provisions of the Bankruptcy Code (Section 1129(a)(1))</u>. The Plan complies with all applicable provisions of the Bankruptcy Code, including Sections 1122 and 1123 of the Bankruptcy Code. The Plan, therefore, complies with Section 1129(a)(1) of the Bankruptcy Code.

T.     Proponent's Compliance With Applicable Provisions of the Bankruptcy Code (Section 1129(a)(2)). The Debtors and the Committee have fully complied with the provisions of Sections 1125 and 1126 of the Bankruptcy Code and with Bankruptcy Rules 3017 and 3018 regarding disclosure and notice. The Debtors solicited acceptances of the Plan from Class 3C (Prepetition Secured Claim) Class 4 (General Unsecured Claims), Class 5 (Investment Claims), and Class 6 (Convertible Note Claims). Class 1 (Other Priority Claims), Class 2 (Other Secured Claims), and Classes 3A and 3B (Prepetition Secured Claims) are Unimpaired under the Plan and, as a result, pursuant to Section 1126(f), Holders of Claims in those Classes are conclusively presumed to have accepted the Plan. Holders of Custom Golf Interests in Class 7 and LLC Interests in Class 8  are Impaired and deemed to have rejected the Plan, and the Debtors did not solicit votes from these Classes. The Debtors, therefore, have satisfied the applicable requirements of Section 1129(a)(2) of the Bankruptcy Code.

U.     Plan Proposed in Good Faith (Section 1129(a)(3)). The Plan has been proposed in good faith and not by any means forbidden by law. The Plan was proposed by the Debtors and the Committee with the intent to realize the maximum benefit for the Debtors' stakeholders. The Plan was the product of arms-length negotiations among the Debtors and the Committee, and the Plan is consistent with the interests of all the Estates' constituencies. In determining that the Plan has been proposed in good faith, the Court has examined the totality of the circumstances surrounding the filing of the Chapter 11 Cases and the formulation of the Plan and has concluded that there is a reasonable likelihood that the Plan will achieve a result consistent with the objectives and purposes of the Bankruptcy Code. The Debtors, therefore, have satisfied the requirements of Section 1129(a)(3) of the Bankruptcy Code.

59217/0001-20635569v3

V.     <u>Payment of Costs and Expenses (Section 1129(a)(4))</u>. Any payments made or to be made by the Debtors or by a person issuing securities or acquiring property under the Plan, for services or for costs and expenses in or in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, have, to the extent required by the Bankruptcy Code, the Bankruptcy Rules, or the various orders of this Court, been approved by, or are subject to the approval of, this Court as reasonable. The Plan, therefore, complies with Section 1129(a)(4) of the Bankruptcy Code.

W.     <u>Disclosure of Identities of Officers, Directors, Members and Insiders (Section 1129(a)(5))</u>. The Debtors and the Committee have agreed to the designation, as set forth in the Plan and the Plan Supplement, of Jeremey Rosenthal, as the Creditor Trustee. The Plan, therefore, complies with Section 1129(a)(5) of the Bankruptcy Code.

X.     <u>No Rate Change (Section 1129(a)(6))</u>. The Plan does not provide for any rate change over which a governmental regulatory commission will have jurisdiction. Therefore, Section 1129(a)(6) of the Bankruptcy Code is not applicable to the Plan.

Y.     <u>Best Interest of Creditors (Section 1129(a)(7))</u>. With respect to each Class of Impaired Claims against and Interests in the Debtors, each Holder of a Claim or Interest of such Class either (1) has accepted (or is deemed to have accepted) the Plan, or (2) will receive or retain under the Plan on account of such Claim or Interest, property of a value, as of the Effective Date of the Plan, that is not less than the amount that such Holder would so receive or retain if the Debtors were liquidated on such date under Chapter 7 of the Bankruptcy Code. The Plan, therefore, complies with Section 1129(a)(7) of the Bankruptcy Code.

Z.     <u>Plan Acceptance (Section 1129(a)(8))</u>. Classes 7 and 8 are Impaired and deemed to have rejected the Plan. Therefore, the Plan does not satisfy the requirements of Section 1129(a)(8)

of the Bankruptcy Code. However, as shown below, the Plan meets the requirements of Section 1129(b) of the Bankruptcy Code.

AA.    <u>Plan Treatment of Administrative Claims, Other Priority Claims, and Priority Tax Claims (Section 1129(a)(9))</u>. The Plan satisfies the requirements of Section 1129(a)(9) of the Bankruptcy Code because, except to the extent that the Holder of a particular Claim has agreed to different treatment of such Claim, <u>Section 2</u> of the Plan provide that Administrative Claims, DIP Facility Claims, and Priority Tax Claims shall be treated in accordance with Section 1129(a)(9) of the Bankruptcy Code.

BB.    <u>Acceptance by at Least One Impaired Class (Section 1129(a)(10))</u>. The Plan has been accepted by Classes 3C, 4, 5 and 6, therefore, has been accepted by all Classes of Impaired Claims under the Plan (which acceptance has been determined without including any vote by any insider). The Plan, therefore, complies with Section 1129(a)(10) of the Bankruptcy Code.

CC.    <u>Feasibility (Section 1129(a)(11))</u>. Except for the liquidation provided for in the Plan, Confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtors or any successor to the Debtors under the Plan. The Plan, therefore, complies with Section 1129(a)(11) of the Bankruptcy Code.

DD.    <u>Payment of Fees (Section 1129(a)(12))</u>. Section 1129(a)(12) of the Bankruptcy Code requires the payment of all fees payable under 28 U.S.C. § 1930. <u>Section 2.05</u> of the Plan provides that the Debtors shall pay all fees required by the Bankruptcy Code, Bankruptcy Rules, United States Trustee guidelines, and the rules and orders of the Bankruptcy Court. Moreover, <u>Section 2</u> of the Plan provides for the payment in full of all Allowed Administrative Claims. The Plan defines "Administrative Claim" to include "any fees or charges assessed against the Debtors'

11

respective Estates under section 1930 of title 28 of the United States Code." The Plan, therefore, complies with Section 1129(a)(12) of the Bankruptcy Code.

EE.     <u>Retiree Benefits (Section 1129(a)(13))</u>. Section 1129(a)(13) of the Bankruptcy Code requires that the Plan provide "for the continuation of payment of all retiree benefits, as that term is defined in section 1114 of [the Bankruptcy Code], at the level established pursuant to subsection (e)(1)(B) or (g) of section 1114 [of the Bankruptcy Code], at any time prior to the confirmation of the plan, for the duration of the period the debtor has obligated itself to provide such benefits." The Debtors are not (and, as of the Petition Dates, were not) obligated to provide any retiree benefits as that term is defined pursuant to Section 1114 of the Bankruptcy Code. Accordingly, Section 1129(a)(13) is inapplicable.

FF.     <u>Domestic Support Obligations (Section 1129(a)(14))</u>. The Debtors are not individuals and have no domestic support obligations. Section 1129(a)(14) of the Bankruptcy Code is, therefore, inapplicable.

GG.     <u>Requirements for Debtors that Are Individuals (Section 1129(a)(15))</u>. Section 1129(a)(15) of the Bankruptcy Code only applies to individuals. The Debtors are not individuals, and Section 1129(a)(15) is, therefore, inapplicable.

HH.     <u>Transfer of Property (Section 1129(a)(16))</u>. The Debtors are each moneyed, business, or commercial corporations. Accordingly, Section 1129(a)(16) of the Bankruptcy Code is inapplicable.

II.     <u>The Plan Does Not Discriminate Unfairly and is Fair and Equitable (Section 1129(b))</u>. With respect to the Classes that are Impaired under, and have not accepted, the Plan, the Plan does not discriminate unfairly and is fair and equitable. With respect to Classes 7 and 8, the deemed rejecting Impaired classes, no Holder of any Claim or Interest that is junior to

12

these Classes will receive or retain under the Plan on account of such junior Claim or Interest any property. Accordingly, Section 1129(b) of the Bankruptcy Code is satisfied.

JJ.     <u>No Other Plan (Section 1129(c))</u>. Other than the Plan, no reorganization plan has been Filed with respect to the Debtors' Chapter 11 Cases. Therefore, the requirements of Section 1129(c) of the Bankruptcy Code have been satisfied.

KK.     <u>Avoidance of Taxes or Application of Securities Laws (Section 1129(d))</u>. No party in interest that is a governmental unit (as defined in the Bankruptcy Code) has objected to the Plan on the grounds that the principal purpose of the Plan is the avoidance of taxes or the avoidance of the application of Section 5 of the Securities Act of 1933, and the Court finds this is not the principal purpose of the Plan. The Plan, therefore, satisfies the requirements of Section 1129(d) of the Bankruptcy Code.

LL.     <u>Release, Injunction and Exculpation</u>. The release, injunction, and exculpation provisions set forth in the Plan and this Order: (1) are within the jurisdiction of this Court under 28 U.S.C. § 1334; (2) are each an essential means of implementing the Plan pursuant to Section 1123(a)(5) of the Bankruptcy Code; (3) are integral elements of the settlements and compromises incorporated in the Plan; (4) confer material benefits on, and thus are in the best interests of, the Debtors, their Estates, their stakeholders, and other parties in interest; and (5) are, under the facts and circumstances of the Chapter 11 Cases, consistent with and permitted pursuant to Sections 105, 1123 and 1129 and all other applicable provisions of the Bankruptcy Code. Further, reasonable, adequate, and sufficient notice of and opportunity to be heard with respect to such release, injunction, and exculpation provisions have been provided under the circumstances and such notice and opportunity have complied with all provisions of the Bankruptcy Code,

Bankruptcy Rules, and all other applicable rules and law, including Bankruptcy Rules 2002(c)(3), 3016(c), 3017(f) and 3020.

MM.    <u>Exemption from Transfer Taxes</u>. All transfers and issuances by the Debtors on and subsequent to the Effective Date are transfers under the Plan free from the imposition of taxes of the kind specified in Section 1146(a) of the Bankruptcy Code and are subject to the exemptions of Section 1145 of the Bankruptcy Code.

NN.    <u>Substantive Consolidation</u>. The evidence presented at the Confirmation Hearing supports the Substantive Consolidation of the Debtors. Separating the liabilities and claims of the Debtors would be time consuming, difficult and costly, and there will be considerable savings in administrative costs by having one Disclosure Statement and Plan instead of several. Moreover, no Creditor has objected to the substantive consolidation of the Debtors, and no Creditor can argue that it will be prejudiced by substantive consolidation. The inclusion of the WGP Investors and their Investment Claims (to the extent such WGP Investors have not exercised their respective WPG Opt Out Rights, as provided in the Plan) is reasonable and such Substantive Consolidation of the WGP Investment Claims and the treatment under the Plan is reasonable.

OO.    <u>Good Faith Solicitation</u>. Based upon the record before the Court, the Debtors, the Committee and their counsel have formulated and Filed the Plan, obtained approval of the Disclosure Statement, and solicited votes on the Plan all in good faith and in compliance with the applicable provisions of the Bankruptcy Code and are entitled to the protections afforded by Section 1125(e) of the Bankruptcy Code and the exculpatory, injunctive, and release provisions set forth in the Plan.

PP.    <u>Good Faith</u>. The Debtors and the Committee and each of their respective members, directors, employees, officers, managers, agents, advisors, attorneys, and financial advisors, have

59217/0001-20635569v3

acted in good faith and in compliance with the applicable provisions of the Bankruptcy Code pursuant to Sections 1125(e) and 1129(a)(3) of the Bankruptcy Code, with respect to the administration of the Plan, the solicitation of acceptances with respect thereto, and the property to be distributed thereunder and are entitled to the protections afforded by Section 1125(e) of the Bankruptcy Code and the exculpatory, injunctive, and release provisions set forth in the Plan.

QQ.    <u>Retention of Jurisdiction</u>. The Court may properly, and hereby does, retain jurisdiction over the Debtors with respect to the matters set forth in <u>Section 12</u> of the Plan.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1.    <u>Confirmation</u>. The Plan shall be, and hereby is, Confirmed, having met the requirements of Section 1129 of the Bankruptcy Code. Any and all objections to the Plan not previously withdrawn or resolved under the terms of this Order are hereby overruled in their entirety. The terms of the Plan are incorporated herein and are an integral part of this Order. The provisions of this Order are integrated with each other and are mutually dependent and not severable.

2.    <u>Findings of Fact and Conclusions of Law</u>. The findings of this Court set forth above and the conclusions of law stated herein shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding by Bankruptcy Rule 9014. To the extent any provision designated herein as a finding of fact is more properly characterized to be a conclusion of law, it shall be so deemed, and vice versa.

3.    <u>Compliance with Sections 1122 and 1123 of the Bankruptcy Code</u>. The Plan complies with the requirements of Section 1122 and 1123 of the Bankruptcy Code.

4.    <u>Plan Classification Controlling</u>. The classification of Claims for purposes of Distributions provided for under the Plan shall be governed solely by the terms of the Plan. The

15

classifications and amounts of Claims, if any, set forth in the Ballots tendered or returned by the Debtors' Creditors in connection with voting on the Plan (a) were set forth on the Ballots solely for purposes of voting to accept or reject the Plan, (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of such Claims under the Plan for Distribution purposes, and (c) shall not be binding on the Debtors, or the Creditor Trustee.

5.      <u>Confirmation Hearing Record</u>. The record of the Confirmation Hearing shall be, and hereby is, closed as of June 15, 2020.

6.      <u>Implementation of the Plan</u>. In accordance with Section 1142 of the Bankruptcy Code, the implementation and consummation of the Plan in accordance with its terms shall be, and hereby is, authorized and approved and the Debtors, the Creditor Trustee and any other Person designated pursuant to the Plan shall be, and they hereby are, authorized, empowered, directed, and ordered to execute, deliver, file, and record contracts, instruments, releases, indentures, and other agreements or documents, whether or not such document, agreement, indenture, release, instrument, or contract is specifically referred to in the Plan or the Disclosure Statement, and to take any action necessary, appropriate or desirable to implement, effectuate, and consummate the Plan in accordance with its terms. The Debtors and the Creditor Trustee, are hereby authorized and directed to make all payments and Distributions required under the Plan and to implement the Plan in all respects.

7.      <u>Binding Effect</u>. Pursuant to Section 1141 of the Bankruptcy Code, the Plan and this Order shall be legally binding upon and inure to the benefit of the Debtors, the Estates, the Committee, the Creditor Trustee, the Holders of Claims, the Holders of Investment Claims, the Holders of Convertible Note Claims, the Holders of Custom Golf Interests, the Holders of LLC Interests, the Holders of WCG Investments (save to the extent such Holder has exercised, pursuant

16

to the Plan their respective WCG Opt Out Right, and all other parties in interest in the Chapter 11 Cases, and their respective successors and assigns. Each federal, state, commonwealth, local, or other governmental agency or department is hereby directed and ordered to accept any and all documents and instruments necessary, useful, or appropriate to effectuate, implement, or consummate the transactions contemplated by the Plan or herein.

8.      Effective Date. The Effective Date shall mean the first Business Day following the date on which all conditions to consummation set forth in Section 10 of the Plan have been satisfied or waived (if capable of being duly and expressly waived), provided that no stay of the Confirmation Order is then in effect, which date is specified by the Debtors in the Confirmation Notice (defined below) Filed with this Court as the date on which the Plan shall take effect.

9.      Record Date. The date for determining the identity of Holders of Allowed Claims entitled to receive Distributions under the Plan shall be March 18, 2020 (the "Record Date"). All Distributions on account of Allowed Claims, Allowed Investment Claims, Allowed Convertible Note Claims, and Allowed WCG Investment Claims, shall be made to the Holder of such Claims as of the Record Date. As of the close of business on the Record Date, the Claims register maintained by the Claims Agent shall be closed. The Reorganized Debtor and the Creditor Trustee shall have no obligation to recognize any transfer of any Claims occurring after the Record Date. The Reorganized Debtors and the Creditor Trustee shall instead be entitled to recognize and deal for all purposes under the Plan with the Holders as of the Record Date.

10.     Administrative Bar Date (General). Except as otherwise provided in the Plan, any Person holding an Administrative Claim (other than a claim for Professional Compensation) shall File a request for payment of such Administrative Claim within thirty (30) days following the Effective Date, except as specifically set forth in the Plan or a Final Order. At the same time any

59217/0001-20635569v3

Person Files an Administrative Claim, such Person shall also serve a copy of the Administrative Claim upon counsel for the Debtors. **Any Person who fails to timely File and serve a request for payment of such Administrative Claim shall be forever barred from asserting such Administrative Claim against the Debtors, the Estates, the Reorganized Debtors, the Creditor Trustee, the Creditor Trust or any of their respective properties.**

11.    <u>Administrative Bar Date (Professionals)</u>. Any Person seeking an award by this Court of Professional Compensation shall File a final application with this Court for allowance of Professional Compensation for services rendered and reimbursement of expenses incurred through the Effective Date within thirty (30) days after the Effective Date. The provisions of this paragraph shall not apply to any Professional providing services pursuant to, and subject to the limits contained in, the *Order Authorizing Debtors the Retention and Compensation of Professionals Utilized in the Ordinary Course of Business* entered in the Chapter 11 Cases on June 6, 2019 [Docket No. 290].

12.    <u>Approval of Rejection of Executory Contracts and Unexpired Leases</u>. On the Effective Date, all remaining executory contracts or unexpired leases of the Debtors will be deemed rejected in accordance with the provisions and requirements of Sections 365 and 1123 of the Bankruptcy Code, except those executory contracts or unexpired leases that (a) have been previously rejected or assumed by the Debtors pursuant to an order of this Court, or (b) are the subject of a motion to assume Filed by the Debtors which is pending on the Effective Date. The entry of this Order shall, subject to and upon the occurrence of the Effective Date, constitute the approval, pursuant to Sections 365 and 1123(b)(2) of the Bankruptcy Code, of the rejection of executory contracts and unexpired leases rejected pursuant to <u>Section 8</u> of the Plan.

59217/0001-20635569v3

13.     <u>Bar Date for Rejection Damage Claims</u>. **All proofs of claim with respect to Claims arising from the rejection pursuant to the Plan of any executory contracts or unexpired leases, if any, must be Filed with the Bankruptcy Court no later than the later of (a) thirty (30) days after the Effective Date, and (b) thirty (30) days after the entry of an order rejecting such executory contract or unexpired lease. Any Claims arising from the rejection of executory contracts or unexpired leases that become Allowed Claims are classified and shall be treated as Class 4 in accordance with <u>Section 3</u> of the Plan. Any Claims arising from the rejection of an executory contract or unexpired lease pursuant to the Plan not Filed within the time required by this section will be forever barred from assertion against the Debtors, their Estates, the Reorganized Debtors, the Creditor Trustee, the Creditor Trust or any of their respective properties unless otherwise ordered by this Court or provided in the Plan. Notwithstanding the foregoing, a Claim for damages arising from the rejection of an executory contract or unexpired lease rejected pursuant to a different order of this Court must be Filed prior to any bar date set forth in such order.**

14.     <u>Creditor Trust</u>. On or before the Effective Date: (a) the Creditor Trust shall be established and the relevant agreements shall be executed by the parties thereto; (b) all other necessary steps shall be taken to establish the Creditor Trust; and (c) and the Creditor Trust Assets shall be transferred to the Creditor Trust, in accordance with the provisions of the Plan.

15.     <u>Vesting of the Debtors' Assets</u>. All property of the Debtors and their Estates shall vest automatically in either the Reorganized Debtors or the Creditor Trust, as applicable, pursuant to the terms of the Plan on the Effective Date (without the necessity of executing any instruments of assignment) for the express purpose of allowing the Reorganized Debtors or the Creditor Trustee to make Distributions to Holders of Claims pursuant to the terms and conditions of the

Plan. As of the Effective Date, (a) all property of the Debtors shall be free and clear of all Liens, Claims and Interests, and (b) the rights of Holders of Claims to receive Distributions shall be governed by the Plan; provided that the with respect to the Prepetition Secured Claims in Class 3 shall continue to be subject to the Liens of the Holders of Prepetition Secured Claims.

16.     <u>The Creditor Trustee</u>. Jeremy Rosenthal is approved as the Creditor Trustee under the Plan. The Creditor Trustee shall conduct the final liquidation and distribution of the Estates in each case in accordance with the terms and conditions of this Order and the Plan.

17.     <u>Powers and Duties of the Reorganized Debtors</u>.  The Reorganized Debtors are authorized to operate their respective businesses and administer the Plan under the terms and subject to the conditions set forth in this Order and in the Plan.

18.     <u>Powers and Duties of the Creditor Trustee</u>. The Creditor Trustee shall have the rights, powers and duties as set forth in the Plan and shall be responsible for administering the Plan under the terms and subject to the conditions set forth in this Order and in the Plan.

19.     <u>Substantive Consolidation</u>. The substantive consolidation of all of the Debtors with respect to the treatment of all Claims and Interests, including the WCG Investments (save an except to the extent of a exercised WCG Opt Right) as set forth the Plan is hereby approved. On the Effective Date, (a) all assets and liabilities of the Debtors will be merged or treated as though they were merged; (b) all guarantees of the Debtors of the obligations of any other Debtor and any joint and several liability of any of the Debtors shall be eliminated; (c) each and every Claim of a Debtor held against another Debtor shall be deemed released, cancelled and terminated; and (d) each and every Claim against and Interest in any Debtor, and those of WCG Investors (save an except to the extent of a exercised WCG Opt Right) shall be deemed Filed

20

against the consolidated Debtors and all Claims Filed against more than one Debtor for the same liability shall be deemed one Claim against any obligation of the consolidated Debtors.

20.    <u>Maintenance of Bank Accounts and Distribution of the Proceeds of Assets and Assigned Estate Assets</u>. The Reorganized Debtors or the Creditor Trustee, as applicable, shall have the authority and responsibility to disburse the assets of the Estates to the Holders of Allowed Claims and otherwise in accordance with the terms of the Plan.

21.    <u>Corporate Action</u>. The entry of this Order shall constitute authorization for the Debtors to take or to cause to be taken all corporate and limited liability company actions necessary or appropriate to consummate and implement the provisions of the Plan prior to, on and after the Effective Date, and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court. All such actions shall be deemed to have occurred and shall be in effect pursuant to applicable non-bankruptcy law and the Bankruptcy Code, without any requirement of further action by the stockholders or directors of the Debtors. On the Effective Date, the appropriate officers and managers of the Debtors are authorized and directed to execute and deliver the agreements, documents and instruments contemplated by the Plan and the Plan Supplement in the name and on behalf of the Debtors.

22.    <u>Preservation of Causes of Action, Avoidance Actions and Assigned Estate Claims</u>. Except as otherwise provided in the Plan, the Reorganized Debtors and the Creditor Trustee, (as a representative of the Debtors' Estates), as applicable, will retain and may exclusively enforce any Cause of Action, or Assigned Estate Claim (with respect to the Creditor Trustee),subject only to any express waiver or release thereof in the Plan or in any other contract, instrument, release, indenture or other agreement entered into in connection with the Plan, and this Order's approval of the Plan shall be deemed a res judicata determination of such rights to retain and exclusively

21

enforce such Causes of Actions, Avoidance Actions and Assigned Estate Claims which shall be retained and exclusively enforced by the Reorganized Debtors or the Creditor Trustee, as applicable, and none of such Causes of Action, Avoidance Actions or Assigned Estate Claims is deemed waived, released or determined by virtue of the entry of this Order or the occurrence of the Effective Date, notwithstanding that the specific Causes of Action, Avoidance Action or Assigned Estate Claims are not identified or described. Absent such express waiver or release by the Debtors, the Reorganized Debtors or the Creditor Trustee may pursue Causes of Action, Avoidance Actions or Assigned Estate Claims, as appropriate, in accordance with the best interests of the Reorganized Debtors and/or the Creditor Trust, as applicable. The Reorganized Debtors and the Creditor Trustee may pursue Causes of Action, Avoidance Actions and Assigned Estate Claims, as appropriate, in the Reorganized Debtors' or the Creditor Trustee's, as applicable, sole and absolute discretion, in accordance with the best interests of the Reorganized Debtors or the Creditor Trust.

23.     Effectuating Documents; Further Transactions. The Debtors, their officers, directors, members and designees, and the Creditor Trustee, are authorized to execute, deliver, file, record such contracts, instruments, releases, indentures, and other agreements or documents, and to take such actions, as may be necessary, desirable or appropriate to effectuate and further evidence the terms and conditions of the Plan or to otherwise comply with applicable law. In order to facilitate the distribution of the Estates on the Effective Date, the Reorganized Debtors and the Creditor Trustee, as applicable, shall be deemed, by operation of law and this Order and without need for any action by any person affiliated with the Debtors or any officer, manager, or member of the Debtors, to hold an irrevocable power of attorney on behalf of the Debtors and the Estates

59217/0001-20635569v3

and with respect to all of the Assets and the Creditor Trust Assets, subject in all cases to the continuing Liens of the Prepetition Secured Claims.

24.     <u>Exemption From Certain Transfer Taxes and Recording Fees</u>. Pursuant to Section 1146(a) of the Bankruptcy Code, any transfers from the Debtors to any other Person, including the Reorganized Debtors and the Creditor Trust, pursuant to the Plan, or any agreement regarding the transfer of title to or ownership of any of the Debtors' property, will not be subject to any document recording tax, stamp tax, conveyance fee, sales tax, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment. The appropriate state or local governmental officials or agents are hereby directed to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

25.     <u>Automatic Stay.</u> The automatic stay arising out of Section 362(a) of the Bankruptcy Code shall continue in full force and effect until the Consummation Date and the Debtors, the Reorganized Debtors, the Estates and the Creditor Trust shall be entitled to all of the protections afforded thereby.

26.     <u>Retention of Jurisdiction</u>. Pursuant to <u>Section 12</u> of the Plan, subsequent to the Effective Date, this Court shall have or retain jurisdiction for the purposes provided therein.

27.     <u>Alternative Jurisdiction</u>. To the extent this Court abstains from exercising or declines to exercise jurisdiction over any matter arising under, arising in or related to the Debtors, including with respect to the matters set forth in Section 11.01 of the Plan, this Order shall not prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such subject matter.

28.     <u>Creditors' Committee</u>. On the Effective Date, the Committee shall be automatically dissolved, and all of its members, Professionals and agents shall be deemed released of their duties, responsibilities and obligations, and shall be without further duties, responsibilities and authority in connection with the Debtors, the Chapter 11 Cases, the Plan or its implementation. After the date of dissolution, the Debtors, the Reorganized Debtors and the Creditor Trust shall not be responsible for paying any fees, costs, or expenses incurred by the members of, or professionals or advisors to, the Committee after the Effective Date.

29.     <u>Section 1125 of the Bankruptcy Code</u>. The Debtors have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, and the Debtors and their Affiliates, officers, managers, employees, consultants, agents, advisors, members, attorneys, accountants, financial advisors, other representatives and professionals are not, and on account of such solicitation will not be, liable at any time on account of such solicitation for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan.

30.     <u>Effect of Reference to the Plan in this Order</u>. The failure to reference or discuss any particular provision of the Plan in this Order shall have no effect on the validity, binding effect, and enforceability of such provision, and each provision of the Plan shall have the same validity, binding effect, and enforceability as if fully set forth in this Order.

31.     <u>Substantial Consummation</u>. On the Effective Date, the Plan shall be deemed to be substantially consummated under Sections 1101 and 1127(b) of the Bankruptcy Code.

32.     <u>Notice</u>. The form of the notice of the entry of this Order and occurrence of the Effective Date attached hereto as <u>Exhibit 2</u> (the "<u>Confirmation Notice</u>") is hereby approved. Pursuant to Rule 3020(c), on or before the date that is five (5) days after the occurrence of the

Effective Date, the Debtors shall File the Confirmation Notice with this Court and serve it by first class mail on each of the following at their respective addresses last known to the Debtors: (i) the Office of the United States Trustee for the Southern District of Texas; (ii) counsel to the Committee; (iii) all parties on the Master Service List Filed in the Chapter 11 Cases; (vii) all known Creditors of the Debtors; (viii) all known Holders of Custom Golf Interests; (ix) all know Holders of LLC Interests; and (x) all known Holders of WCG Interests. The Confirmation Notice need not be mailed to any Person if a previous mailing to such Person has been returned as undeliverable by the United States Postal Service, unless the Debtors have been informed in writing of a corrected address for such Person.  The notice described in this paragraph shall constitute good and sufficient notice pursuant to Bankruptcy Rules 2002(f)(7), 2002(i)-(l) and 3020(c) of Confirmation of the Plan, the entry of this Order, and the occurrence of the Effective Date.

33.     <u>Headings</u>. The headings of the paragraphs in this Order have been used for convenience of reference only and shall not limit or otherwise affect the meaning of this Order. Whenever the words "include," "includes" or "including" (or other words of similar import) are used in this Order, they shall be deemed to be followed by the words "without limitation."

34.     <u>Conflicts</u>. The provisions of the Plan and this Order shall be construed in a manner consistent with each other so as to effect the purposes of each; <u>provided</u>, <u>however</u>, that if there is any inconsistency between the provisions of the Plan and this Order, the terms and conditions contained in this Order shall govern and shall be deemed a modification to the Plan and shall control and take precedence.

35.     <u>Final Order/No Rule 3020(e) Stay</u>. This Order is a final order, and the period in which an appeal must be Filed shall commence immediately upon the entry hereof. The stay imposed by Bankruptcy Rule 3020(e) is hereby waived.

59217/0001-20635569v3

36.    <u>Applicable Non-Bankruptcy Law</u>. Pursuant to Sections 1123(a) and 1142 of the Bankruptcy Code, the provisions of this Order and the Plan (including any amendments or modifications thereto) shall apply and be enforceable notwithstanding any otherwise applicable nonbankruptcy law.

37.    <u>Modification to the Plan – Treatment of the DIP Facility Claim</u>.  In conformity with the Plan's treatment provided for in Section 2.02 of the DIP Facility Claim, on or before the Effective Date the balance due under the DIP Facility Claim will be paid in full or the remaining balance may be converted to an Exit Facility subject in all respects to the consent of the DIP Lender.  If the Debtors and the DIP Lender elect to enter into an Exit Facility on the Effective Date, the Debtors will file a notice with the Court summarizing the terms of the Exit Facility and attaching the loan documents related to the Exit Facility.  The notice of the Exit Facility, if any, shall be filed with the Court at least 7 days prior to the Effective Date.

38.    <u>Modification to the Plan – Treatment of Certain Professional Fee Claims</u>.  As may be agreed to in writing by and among the Debtors and any Holders of Allowed Professional Fee Claims, such Allowed Professional Fee Claims shall be paid, after the Effective Date, upon terms deemed reasonable by the Creditor Trustee, and the Holder of such Allowed Professional Fee Claims, from Assets of the Reorganized Debtors and/or the Creditor Trust Assets, prior to any distribution to Holders of Allowed Claims, Holders of Allowed Investment Claims, Holders of Allowed Convertible Note Claims, and Holders of Allowed WCG Investment Claims.

39.    <u>Modification to the Plan – Treatment of the Force Ten Partners' Professional Fees</u>. As may be agreed to in writing by and among the Debtors and the Holder of the Force Ten Partners' Professional Fee Claims, such Allowed Force Ten Partners' Professional Fee Claims, shall be paid, after the Effective Date, upon terms deemed reasonable by the Creditor Trustee, and the Holder of

26

such Allowed Force Ten Partners' Professional Fee Claim, from Assets of the Reorganized

Debtors and/or from the Creditor Trust Assets, prior to any distribution to Holders of Allowed

Claims, Holders of Allowed Investment Claims, Holders of Allowed Convertible Note Claims,

and Holders of Allowed WCG Investment Claims.

40.    <u>Modification to the Plan – Treatment of Class 3B</u>.  The Treatment provided in the

Plan for Class 3B, is hereby deleted in its entirety, and replaced with the following:

> The Holder of an Allowed Claim in Class 3B, on or as soon as practicable after the Effective Date, shall receive from the Reorganized Debtors, in full satisfaction, release, settlement, and discharge of such Claim, as determined in the sole and exclusive discretion of the Reorganized Debtors: (1) payment in full in Cash, plus Post-Petition Interest, costs and attorneys' fees to the extent required under Section 506(b) of the Bankruptcy Code and as provided by that certain Stipulation between the Debtors and ANB Bank (Docket No. 808) (the "**Stipulation**"); (2) be Reinstated or receive such other treatment sufficient to render the Holder of such Claim Unimpaired pursuant to Section 1124 of the Bankruptcy Code and as provided by the Stipulation; or (3) the return of the applicable collateral in satisfaction of the Allowed amount of such Secured Claim.  The terms of the Stipulation of are hereby incorporated into the Plan and any order confirming the Plan.  For the avoidance of doubt, to the extent of any direct conflict between the Plan's treatment of a Holder of an Allowed Claim in Class 3B and the Stipulation, the terms of the Stipulation shall control.

41.    <u>Modification to the Plan – Treatment of Class 3C</u>.  The Treatment provide in the

Plan for Class 3C, is hereby deleted in its entirety, and replaced with the terms of that certain

Stipulation by and between the Debtors and CBB, Docket Number 842.

42.  <u>Service</u>. Counsel for the Debtors is directed to serve a copy of this Order on all parties on the Master Service List within three (3) days of the entry of this Order and to File a certificate of service with the Clerk of Court.

**Signed:  June 15, 2020.**

DAVID R. JONES
UNITED STATES BANKRUPTCY JUDGE

59217/0001-20635569v3

**EXHIBIT 1**
**PLAN**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | |
|---|---|
| In re | Chapter 11 |
| WESTWIND MANOR RESORT ASSOCIATION, INC., *et al.*,[1] | Case No. 19-50026 (DRJ) |
| Debtors. | Jointly Administered |



## DEBTORS' AND COMMITTEE'S FIRST AMENDED
## JOINT PLAN OF REORGANIZATION

The above-referenced Debtors and Debtors in Possession and the Official Committee of

Unsecured Creditors hereby submit this First Amended Joint Plan of Reorganization.

March 20, 2020

By: */s/ Michael D. Warner*
Michael D. Warner (TX Bar No. 00792304)
Benjamin L. Wallen (TX Bar No. 24102623)
COLE SCHOTZ P.C.
301 Commerce Street, Suite 1700
Ft. Worth, TX 76102
(817) 810-5250
(817) 810-5255 (fax)
mwarner@coleschotz.com
bwallen@coleshotz.com

Counsel for the Debtors

By: */s/ Thomas J. Francella, Jr.*
Thomas J. Francella, Jr. (admitted *pro hac vice*)
COZEN O'CONNER, P.C.
1201 N. Market Street, Suite 1001
Wilmington, Delaware 19801
Telephone: (302) 295-2000
Facsimile: (302) 295-2013
Email: tfrancella@cozen.com
tfrancella@cozen.com

Counsel to the Official Committee of
Unsecured Creditors

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Westwind Manor Resort Association, Inc. (7533); Warrior ATV Golf, LLC (3420); Warrior Acquisitions, LLC (9919); Warrior Golf Development, LLC (5741); Warrior Golf Management, LLC (7882); Warrior Golf Assets, LLC (1639); Warrior Golf Venture, LLC (7752); Warrior Premium Properties, LLC (0220); Warrior Golf, LLC, a Delaware limited liability company (4207); Warrior Custom Golf, Inc. (2941); Warrior Golf Equities, LLC (9803); Warrior Golf Capital, LLC (5713); Warrior Golf Resources, LLC (6619); Warrior Golf Legends, LLC (3099); Warrior Golf Holdings, LLC (2892); and Warrior Capital Management, LLC (8233). The address of the Debtors' corporate headquarters is 15 Mason, Suite A, Irvine, California 92618.

# **TABLE OF CONTENTS**

**Page**

**SECTION 1** DEFINED TERMS, RULES OF INTERPRETATION, AND COMPUTATION OF TIME.......................................................................................................................... 1

1.01 Scope of Defined Terms; Rules of Construction ............................................... 1

1.02 Defined Terms ................................................................................................... 1

1.03 Rules of Interpretation ..................................................................................... 17

1.04 Computation of Time ....................................................................................... 18

1.05 Reference to Monetary Figures ....................................................................... 18

1.06 Reference to the Debtors or the Reorganized Debtors..................................... 18

1.07 Exhibits and Plan Supplement ........................................................................ 18

1.08 Deemed Acts ................................................................................................... 18

**SECTION 2** UNCLASSIFIED CLAIMS (NOT ENTITLED TO VOTE ON THIS PLAN)...... 19

2.01 Administrative Expense Claims....................................................................... 19

2.02 DIP Facility Claim .......................................................................................... 19

2.03 Priority Tax Claims.......................................................................................... 19

2.04 Bar Dates for Certain Claims .......................................................................... 20

2.05 Payment of Statutory Fees .............................................................................. 21

**SECTION 3** CLASSIFICATION OF CLAIMS AND INTERESTS AND ACCEPTANCE REQUIREMENTS.................................................................................................... 21

3.01 Introduction ..................................................................................................... 21

3.02 Voting; Presumptions....................................................................................... 22

3.03 Cram Down – Nonconsensual Confirmation................................................... 22

3.04 Identification of Claims and Interests ............................................................. 22

**SECTION 4** TREATMENT OF CLAIMS AND INTERESTS ................................................. 23

4.01 Other Priority Claims (exclusive of Priority Tax Claims)............................... 23

4.02 Other Secured Claims (exclusive of Class 3 Secured Claims) ....................... 24

4.03 Prepetition Secured Claims............................................................................. 24

4.04 General Unsecured Claims .............................................................................. 25

4.05 Investment Claims ........................................................................................... 25

4.06 Convertible Note Claims.................................................................................. 26

4.07 Custom Golf Interests ..................................................................................... 27

4.08 LLC Interests ................................................................................................... 27

4.09 WGP Investors ................................................................................................ 27

**SECTION 5** MEANS FOR IMPLEMENTATION OF THe PLAN AND POST EFFECTIVE DATE GOVERNANCE .................................................................................................. 28

5.01 Date of Plan Distributions on Account of Allowed Claims .............................. 28

5.02 Sources of Cash for Plan Distributions ............................................................ 28

5.03 Operations Prior to the Effective Date ............................................................. 28

5.04 Issuance of New Custom Golf Stock ................................................................ 29

5.05 Formation of and Issuance of Membership Interests in Op.Co. and Prop.Co. ... 29

5.06 Exemption from Registration ............................................................................ 30

5.07 Real Property Title Records .............................................................................. 30

5.08 Restructuring Transactions ............................................................................... 30

5.09 Exit Facility ...................................................................................................... 31

5.10 Cancellation of Certain Indebtedness, Agreements, and Existing Securities ..... 32

5.11 Intercompany Claims, Custom Golf Guaranty, and Other Guaranty Claims ..... 33

5.12 Dissolution of LLCs and Westwind, Continued Corporate Existence, and Vesting of Assets ............................................................................................................... 33

5.13 Retention and Assignment of Causes of Action ............................................... 34

5.14 Preservation of Causes of Action ..................................................................... 34

5.15 Creditor Trust .................................................................................................... 35

5.16 Distributions to Creditor Trust Beneficiaries ................................................... 37

5.17 Claims Incurred After the Effective Date ......................................................... 38

5.18 Corporate Action ............................................................................................... 38

5.19 Organizational Documents ................................................................................ 39

5.20 Board of Directors / Managers of Reorganized Debtors ................................... 39

5.21 Effectuating Documents .................................................................................... 39

5.22 Exemption from Certain Transfer Taxes ........................................................... 39

5.23 Dissolution of Committee ................................................................................. 40

5.24 Withholding and Reporting Requirements ........................................................ 40

5.25 Determination of Tax Filings and Taxes ........................................................... 40

**SECTION 6** PLAN SETTLEMENT & CONSOLIDATED TREATMENT ............................ 41

**SECTION 7** PROVISIONS GOVERNING DISTRIBUTIONS GENERALLY ...................... 42

7.01 Disbursing Agent .............................................................................................. 42

7.02 Method of Cash Distributions ........................................................................... 43

7.03 Delivery of Distributions .................................................................................. 43

7.04 Failure to Negotiate Checks .............................................................................. 43

7.05 Allocation of Payments ..................................................................................... 43

iii

7.06 De Minimis Distributions ................................................................................. 44

7.07 Setoffs .............................................................................................................. 44

**SECTION 8** EXECUTORY CONTRACTS, UNEXPIRED LEASES, AND OTHER
AGREEMENTS ........................................................................................................ 44

8.01 Assumption/Rejection ...................................................................................... 44

8.02 Cure Costs ........................................................................................................ 45

8.03 Assumed Executory Contracts and Unexpired Leases & Assignment ............. 46

8.04 Insurance Policies ............................................................................................ 46

8.05 Officers' and Directors' Indemnification Rights ............................................. 47

8.06 Claims Based on Rejection of Executory Contracts and Unexpired Leases .... 47

8.07 Reservation of Rights ....................................................................................... 48

8.08 Assignment ...................................................................................................... 48

8.09 Nonoccurrence of Effective Date .................................................................... 48

**SECTION 9** PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT, AND
UNLIQUIDATED CLAIMS ..................................................................................... 48

9.01 Expunging of Certain Claims .......................................................................... 48

9.02 Objections to Claims ....................................................................................... 49

9.03 Estimation of Claims ....................................................................................... 49

9.04 No Distributions Pending Allowance .............................................................. 50

9.05 Distributions After Allowance ........................................................................ 50

9.06 Reduction of Claims ........................................................................................ 50

**SECTION 10** CONDITIONS PRECEDENT TO CONFIRMATION AND  CONSUMMATION
OF THIS PLAN ........................................................................................................ 50

10.01 Conditions Precedent to Confirmation........................................................... 50

10.02 Conditions Precedent to the Effective Date of the Plan ................................. 51

10.03 Substantial Consummation ............................................................................ 51

10.04 Waiver of Conditions ..................................................................................... 51

10.05 Revocation, Withdrawal, or Non-Consummation .......................................... 51

**SECTION 11** AMENDMENTS AND MODIFICATIONS ........................................ 52

**SECTION 12** RETENTION OF JURISDICTION .................................................... 52

**SECTION 13** EFFECT OF THIS PLAN ON CLAIMS AND INTERESTS .............. 54

13.01 Compromise and Settlements ......................................................................... 54

13.02 Satisfaction of Claims .................................................................................... 54

13.03 Term of Injunction or Stays ........................................................................... 55

13.04 Discharge of Liabilities .................................................................................. 55

iv

13.05 Releases by the Debtors, their Estates and the Reorganized Debtors ............................ 56

13.06 Exculpation ......................................................................................................... 57

13.07 Recoupment ........................................................................................................ 57

13.08 Release of Liens .................................................................................................. 57

13.09 Good Faith .......................................................................................................... 58

13.10 Protection against Discriminatory Treatment ..................................................... 58

13.11 Rights of Defendants and Avoidance Actions ..................................................... 58

**SECTION 14** MISCELLANEOUS PROVISIONS ........................................................... 58

14.01 Severability of Plan Provisions ........................................................................... 58

14.02 Successors and Assigns ....................................................................................... 59

14.03 Binding Effect ..................................................................................................... 59

14.04 Notices ................................................................................................................ 59

14.05 Term of Injunctions or Stay ................................................................................ 60

14.06 No Admissions ..................................................................................................... 60

14.07 Notice of the Effective Date ............................................................................... 60

14.08 Governing Law .................................................................................................... 60

14.09 Plan Documents ................................................................................................... 61

14.10 Prior Orders of the Bankruptcy Court ................................................................. 61

14.11 Conflicts among Documents ................................................................................ 61

14.12 Entire Agreement ................................................................................................ 61

**SECTION 15** CONFIRMATION REQUEST .................................................................. 61

59217/0001-19561041v3

## INTRODUCTION

The Warrior Family of Debtors filed for bankruptcy protection commencing in March 2019. The Debtors and the Official Committee of Unsecured Creditors together propose the following First Amended Joint Plan of Reorganization for the resolution of outstanding creditor Claims against, and Interest in, the Debtors. The Debtors and the Committee are the proponents of the Plan within the meaning of Bankruptcy Code Section 1129. The Plan results in the consolidation of the Debtors into two business units: the golf club manufacturing and sales business and the golf course ownership and operation business. Pursuant to the Plan, a Creditor Trust is created for the benefit of certain classes of creditors and the Creditor Trust will hold all the equity of both business units. The Debtors seek to consummate the restructuring on the Effective Date of the Plan.

Reference is made to the Disclosure Statement (as hereinafter defined) for a discussion of the Debtors' history, business, property, results of operations and projections of future operations, as well as a summary and description of this Plan and certain related matters. No materials other than the Disclosure Statement and this Plan including any exhibits and schedules attached or referenced therein are authorized by the Debtors or the Committee for use in soliciting acceptances or rejections of this Plan.

**ALL HOLDERS OF CLAIMS OR INTERESTS ARE ENCOURAGED TO READ THIS PLAN AND THE DISCLOSURE STATEMENT CAREFULLY AND IN THEIR ENTIRETY BEFORE VOTING ON THIS PLAN.**

## SECTION 1
## DEFINED TERMS, RULES OF INTERPRETATION,
## AND COMPUTATION OF TIME

### 1.01  Scope of Defined Terms; Rules of Construction

For purposes of this Plan, except as expressly defined elsewhere in this Plan or unless the context otherwise requires, all capitalized terms used herein shall have the meanings ascribed to them in Section 1. Any term used but not defined herein that is defined in the Bankruptcy Code or the Bankruptcy Rules, as the case may be, shall have the meaning ascribed in the Bankruptcy Code or the Bankruptcy Rules. Whenever the context requires, such terms shall include the plural as well as the singular. The masculine gender shall include the feminine, and the feminine gender shall include the masculine.

### 1.02  Defined Terms

(1)  **Acquisitions** means Debtor Warrior Acquisitions, LLC, a California limited liability company.

(2)  **Administrative Expense Claim(s)** means a Claim(s) for costs and expenses of administration pursuant to Bankruptcy Code Sections 503(b), 507(a)(2), 507(b), or 1114(e)(2), including: (a) the actual and necessary costs and expenses incurred after the First Petition Date and through the Effective Date of preserving the Estates and operating the businesses of the Debtors (such as wages, salaries, or commissions for services, and payments for goods and other services and leased premises); (b) all fees and charges assessed against the Estates pursuant to Section 1930

1

of chapter 123 of Title 28 of the United States Code; (c) all Allowed Professional Fee Claims; (d) any Cure Costs; and (e) all Allowed Claims for compensation or expense reimbursement for making a substantial contribution in these Chapter 11 Cases pursuant to Bankruptcy Code Sections 503(b)(3), (4), and (5) approved by the Bankruptcy Court.

(3)     **Administrative Expense Claims Bar Date** has the meaning set forth in Section 2.04(1), unless the Bankruptcy Court orders otherwise.

(4)     **Affiliate** has the meaning set forth in Bankruptcy Code Section 101(2); *provided, however*, the term Affiliate does not include Excluded Parties. For purposes of this Plan and the definition of Related Person, an Affiliate of a Person shall also include another Person controlling, controlled by or under common control with such first Person. For the purposes of this definition, "control" means, when used with respect to any Person, the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of such Person, whether through the ownership of voting securities, by contract, or otherwise, and the terms "controlling" and "controlled" have correlative meanings.

(5)     **Allowed** means with reference to any Claim or Interest: any Claim or Interest or any portion thereof; (a) as to which no objection to allowance has been interposed on or before the latter of (i) the Claims Objection Deadline or (ii) the expiration of such other applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or is listed on the Bankruptcy Schedules as liquidated, non-contingent and undisputed; (b) as to which any objection to its allowance has been settled, waived through payment or withdrawn, as permitted herein, or denied by a Final Order; (c) as to which liability of the Debtors and the amount thereof have been determined and expressly allowed by a Final Order; (d) as to which the liability of the Debtors and the amount thereof are determined and expressly allowed by Final Order of a court of competent jurisdiction other than the Bankruptcy Court; or (e) that is expressly deemed allowed in a liquidated amount in this Plan; *provided, however*, that with respect to an Administrative Expense Claim, "**Allowed Administrative Expense Claim**" means an Administrative Expense Claim as to which a timely request for payment has been made in accordance with Section 2.04 (if such written request is required) or other Administrative Expense Claim, in each case as to which the Debtors (1) have not interposed a timely objection or (2) have interposed a timely objection and such objection has been settled, waived through payment or withdrawn, as permitted herein, or denied by a Final Order: *provided, however*, that an "Allowed Claim" shall not include any Claim subject to disallowance in accordance with Bankruptcy Code Section 502(d).

(6)     **Assigned Estate Claims** means (a) Avoidance Actions and (b) any and all of the Estates' direct or derivative claims or Causes of Action against any Excluded Party, including, for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, bad faith, willful misconduct, Securities Violations, or for Commercial Tort Claims.  Assigned Estate Claims include, the Direct Causes of Action assigned pursuant to the Direct Causes of Action Assignment, WGP Causes of Action assigned pursuant to the WGP Causes of Action Assignment, and any and all Causes of Action arising under WGP Investments, assigned pursuant to the WGP Investment Assignments.

(7)     **Assumption Dispute** has the meaning set forth in Section 8.02.

2

(8)     **Avoidance Actions** means any and all actual or potential claims or Causes of Action to avoid a transfer of property or an obligation incurred by the Debtors pursuant to any applicable Section of the Bankruptcy Code, including Sections 506(c), 510, 542, 543, 544, 545, 547, 548, 549, 550, 551, 552(b), 553, and/or 724, other than Excluded Avoidance Actions.

(9)     **Ballot** means the document for accepting or rejecting this Plan, in the form approved by the Bankruptcy Court.

(10)    **Balloting Agent** means Donlin, Recano & Company, Inc., employed and retained by the Debtors pursuant to Orders of the Bankruptcy Court [Docket Nos. 36 & 87].

(11)    **Bankruptcy Code** means the Bankruptcy Reform Act of 1978, as codified in Title 11 of the United States Code, 11 U.S.C. Sections 101-1532, as in effect on the First Petition Date as heretofore or hereafter amended.

(12)    **Bankruptcy Court** means the United States Bankruptcy Court for the Southern District of Texas, Houston Division.

(13)    **Bankruptcy Rules** means, collectively, the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended, the Federal Rules of Civil Procedure, as amended, as applicable to these Chapter 11 Cases or proceedings therein, and the Local Rules of the Bankruptcy Court, as applicable to these Chapter 11 Cases or proceedings therein, as the case may be.

(14)    **Bankruptcy Schedules** means the schedules of assets and liabilities, lists of executory contracts and unexpired leases, and related information filed by the Debtors pursuant to Bankruptcy Code Section 521 and Bankruptcy Rule 1007(b), as such schedules may be amended or supplemented from time to time as permitted hereunder in accordance with Bankruptcy Rule 1009 or orders of the Bankruptcy Court.

(15)    **Bankruptcy SOFA** means the statements of financial affairs and related financial information filed by the Debtors pursuant to Bankruptcy Code Section 521 and Bankruptcy Rule 1007(b), as such statements may be amended or supplemented from time to time as permitted in accordance with Bankruptcy Rule 1009 or orders of the Bankruptcy Court.

(16)    **Bar Dates** means the applicable date(s) designated by the Bankruptcy Court, in the First Bar Date Order, the Second Bar Date Order or otherwise, as the last date for filing Proofs of Claim and Proofs of Interest in these Chapter 11 Cases.

(17)    **Business Day** means any day, excluding Saturdays, Sundays or "legal holidays" (as defined in Bankruptcy Rule 9006(a)), on which commercial banks are open for business in Texas.

(18)    **Cash** means legal currency of the United States of America or equivalents thereof, including bank deposits and checks.

59217/0001-19561041v3

(19) **Cash Equivalents** means any item or asset of the Debtors readily converted to Cash, such as bank accounts, marketable securities, treasury bills, certificate of deposit, commercial paper maturing less than one year from date of issue, or other liquid investments.

(20) **Cash Purchase Price** means, with respect to the purchase of LLC Interests by LLC Investors, the actual Cash amount paid to the Debtors to acquire LLC Interests, less, the fair market value of any Investment Benefits received by the LLC Investor, as may be determined by the Creditor Trustee or Order of the Bankruptcy Court.

(21) **Causes of Action** means all actions, causes of action, liabilities, obligations, rights, suits, damages, judgments, remedies, demands, setoffs, defenses, recoupments, crossclaims, counterclaims, third-party claims, indemnity claims, contribution claims, or any other claims whatsoever, whether known or unknown, matured or unmatured, fixed or contingent, liquidated or unliquidated, disputed or undisputed, suspected or unsuspected, foreseen or unforeseen, direct or indirect, choate or inchoate, existing or hereafter arising, in law, equity, or otherwise, based in whole or in part upon any act or omission or other event occurring before the First Petition Date or during the course of these Chapter 11 Cases, including through the Effective Date. Causes of Action include, but are not limited to, Avoidance Actions, claims of breach of fiduciary duty, aiding and abetting breach of fiduciary duty, bad faith, willful misconduct, Securities Violations, Commercial Tort Claims, fraudulent transfer, preferential transfer, unauthorized post-petition transfer under Section 549 of the Bankruptcy Code, turnover under Sections 542 and/or 543 of the Bankruptcy Code, subordination, recharacterization of debt to equity, malpractice, constructive trust, disgorgement, counterclaims, claims to determine extent and validity of liens under Section 506 of the Bankruptcy Code, breach of contract, breach of the implied covenant of good faith and fair dealing, common law and statutory conspiracy, civil remedies against racketeer influenced and corrupt organizations under Chapter 96 of Title 18 of the United States Code, overpayment, unjust enrichment, fraud, negligent misrepresentation, tortious interference with contract or prospective economic advantage, civil conspiracy, whether under feral law or the laws of any state, equitable subordination, including under Bankruptcy Code Section 510(c), aiding and abetting any act or omission of any Person or Entity, objections to fees, and interest or other charges paid by the Debtors.

(22) **CBB** means Citizens Business Bank, a California banking corporation.

(23) **CBB Mortgage Loan** means the loan agreement dated as of March 12, 2016, between Citizens Business Bank, as Lender, and Warrior Golf Equities, LLC, as borrower, which is secured by a mortgage on the Cimarron Golf Resort Property.

(24) **CFO** means David Cottrell, in his official capacity only, as Chief Financial Officer of the Debtors.

(25) **Chapter 11 Cases** means the voluntary cases that are jointly administered as case number 19-50026 (DRJ) under chapter 11 of Title 11 of the United States Code in the Bankruptcy Court.

(26)    **Cimarron Golf Resort Property** means the Real Property commonly known as the Cimarron Golf Resort (Cathedral City, CA), to the extent the same is the collateral for the obligations owed to CBB under the CBB Mortgage Loan.

(27)    **Cimarron Petition Date Value** means the value of the Cimarron Golf Resort Property as of First Petition Date.

(28)    **Cimarron Surcharge Amount** means the amount by which the outstanding balance owed to CBB under CBB Mortgage Loan as of the Effective Date exceeds the Cimarron Petition Date Value but shall not be greater than the value of the reasonable and necessary costs and expenses incurred by the Debtors in preserving or disposing of CBB's collateral to the extent of any benefit to CBB.

(29)    **Claim** means a claim, whether or not asserted or Allowed, as defined in Bankruptcy Code Section 101(5), including, the Convertible Note Claims and Investment Claims.

(30)    **Claim Objection Deadline** means the first Business Day, which is at least 120 calendar days after the Effective Date, or such later date as may be established by the Bankruptcy Court in accordance with Section 9.02(3).

(31)    **Class** means a category of Claims or Interests as set forth in Section 3 pursuant to Bankruptcy Code Section 1122.

(32)    **Class A Interests** means the Class A Interests in the Creditor Trust to be distributed *pro rata* among Holders of Allowed General Unsecured Claims.

(33)    **Class B Interests** means the Class B Interests in the Creditor Trust to be distributed *pro rata* among Holders of Allowed Investment Claims.

(34)    **Class C Interests** means the Class C Interests in the Creditor Trust to be distributed *pro rata* among Holders of Allowed Convertible Note Claims.

(35)    **Collateral** means any property or interest in property of the Debtors' Estates subject to a Lien to secure the payment or performance of a Claim, which Lien is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable state law.

(36)    **Commercial Tort Claim** has the meaning set forth in Section 9-102(a)(13) of the Uniform Commercial Code, of the state applicable to such claim.

(37)    **Committee** means the Official Committee of Unsecured Creditors appointed in these Chapter 11 Cases.

(38)    **Confirmation** means entry by the Bankruptcy Court of the Confirmation Order on the docket of these Chapter 11 Cases.

(39)    **Confirmation Date** means the date on which the Confirmation Order is entered on the docket in these Chapter 11 Cases within the meaning of Bankruptcy Rules 5003 and 9021.

(40)     **Confirmation Hearing** means the hearing(s) held by the Bankruptcy Court to consider Confirmation of this Plan pursuant to Bankruptcy Code Section 1129, as such hearing may be continued from time to time.

(41)     **Confirmation Order** means the order entered by the Bankruptcy Court confirming this Plan pursuant to Bankruptcy Code Section 1129.

(42)     **Consummation** means the occurrence of the Effective Date.

(43)     **Conversion Right** means the sole and exclusive right held by Acquisitions pursuant to the Convertible Notes, to convert a Convertible Note in and to equity of Acquisitions, which right has been extended by Bankruptcy Court Order [Docket No. 253].

(44)     **Convertible Notes** means those certain Convertible Promissory Notes, having an original aggregate principal balances of $5.5 million, issued by Acquisitions in 2016, and guaranteed by Custom Golf.

(45)     **Convertible Note Claim** means any Claim arising out of or related to the Convertible Notes, less Investment Benefits.

(46)     **Convertible Noteholders** means those Persons holding, as of the First Petition Date, a Convertible Note.

(47)     **Creditor** means any Person who holds a Claim against the Debtors.

(48)     **Creditor Trust** means the trust established under Section 5.15.

(49)     **Creditor Trust Agreement** means that certain agreement setting forth the terms and conditions governing the Creditor Trust, in substantially the form included in the Plan Supplement and in form and substance acceptable to the Debtors and the Committee.

(50)     **Creditor Trust Assets** means, collectively: (a) the Assigned Estate Claims and the proceeds thereof; (b) the New Custom Golf Stock; (c) the Op.Co. Membership Interests; (d) the Prop.Co. Membership Interests; (e) the Trust Contribution Funds; (f) the WGP Causes of Action, assigned pursuant to the WGP Causes of Action Assignment and the proceeds thereof; (g) the WGP Investments, assigned pursuant to the WGP Investment Assignment and the proceeds thereof; and (h) the Direct Causes of Action of LLC Investors and Convertible Noteholders, that do not exercise the Direct Opt Out Right.

(51)     **Creditor Trust Beneficiaries** means collectively, Holders of Allowed Priority Tax Claims (other than Allowed Priority Tax Claims arising pursuant to Bankruptcy Code Section 507(a)(8)(B)) and General Unsecured Trust Beneficiaries.

(52)     **Creditor Trust Expenses** means all actual and necessary fees, costs, expenses and obligations reasonably incurred by or owed to the Creditor Trustee and its agents, employees, attorneys, advisors and other professionals in administering the Creditor Trust.

(53)  **Creditor Trustee** means Force 10 Agency Services LLC (an affiliate of Force Ten Partners, LLC) the entity to be designated in the Creditor Trust Agreement to administer the Creditor Trust upon the Effective Date.

(54)  **CRO** means Jeremy Rosenthal, in his official capacity only, as Chief Restructuring Officer of the Debtors.

(55)  **Cure Costs** means all costs required of the Debtors to cure any and all monetary defaults including pecuniary losses, pursuant to Bankruptcy Code Section 365, arising under any executory contract and unexpired lease to be assumed by the Debtors and vested in the Reorganized Debtors.

(56)  **Custom Golf** means Debtor Warrior Custom Golf, Inc., a California corporation.

(57)  **Custom Golf Board** means the board of directors, on and after the Effective Date, consistent with the Organizational Documents, for Custom Golf, composed of seven (7) members, consisting of: (a) the Independent Board of Directors (3 members); (b) the members of the Oversight Board (3 members); and (c) a representative of the Creditor Trustee, holding the position of Chairman of the Board.

(58)  **Custom Golf Interests** means all Interests in Custom Golf, before the Effective Date.

(59)  **Custom Golf Guaranty** means the Guaranty dated September 1, 2017, executed by Custom Golf and issued in connection with the Pro Rata Notes.

(60)  **Debtors** mean collectively, the above-reference debtors and debtors in possession.

(61)  **Determined Distribution Amount** means that amount determined by the Creditor Trustee, in accordance with the terms of the Creditor Trust Agreement, to be distributed to General Unsecured Trust Beneficiaries.

(62)  **DIP Credit Agreement** means that certain *Senior Secured, Super-Priority Debtor-in-Possession Loan and Security Agreement*, dated as of April 2, 2019, approved by the DIP Order, as amended, supplemented and restated.

(63)  **DIP Documents** means the DIP Credit Agreement, DIP Orders or other "Loan Documents" (as defined in the DIP Credit Agreement), and any related agreements, instruments, documents, certificates and schedules delivered from time to time in connection therewith, as amended, supplemented, restated or otherwise modified from time to time in accordance with the terms thereof.

(64)  **DIP Facility** means that certain postpetition debtor in possession loan facility pursuant to (i) the DIP Credit Agreement and any and all documents, instruments or agreements executed or delivered in connection therewith and (ii) the DIP Orders.

(65)  **DIP Facility Claim** means any and all of the Claims, held by the DIP Lender derived from, based upon relating to or arising under or in connection with the DIP Documents,

including Claims for all accrued and unpaid principal, interest, fees, expenses, costs and other charges and amounts constituting "Obligations" (as defined in the DIP Credit Agreement and the DIP Orders).

(66)    **DIP Lender** means the lender party to the DIP Facility.

(67)    **DIP Orders** mean collectively, that certain Order of the Bankruptcy Court dated March 6, 2019 [Docket No. 38], approving the DIP Facility, on an interim basis, that certain Order of the Bankruptcy Court dated April 2, 2019 [Docket No. 125], approving the DIP Facility on a final basis, and that certain Order of the Bankruptcy Court dated October 24, 2019 [Docket No. 529] approving amendments to the DIP Facility.

(68)    **Direct Causes of Action** means all actions, causes of action, liabilities, obligations, rights, suits, damages, judgments, remedies, demands, setoffs, defenses, recoupments, crossclaims, counterclaims, third-party claims, indemnity claims, contribution claims, or any other claims whatsoever, whether known or unknown, matured or unmatured, fixed or contingent, liquidated or unliquidated, disputed or undisputed, asserted or unasserted, suspected or unsuspected, foreseen or unforeseen, direct or indirect, choate or inchoate, existing or hereafter arising, in law, equity, or otherwise, based in whole or in part upon any act or omission or other event occurring through the Effective Date relating to any of the Debtors, or the actions or omissions of any of the Debtors' present or former employees, officers or directors or any of the Debtor's present or former advisors, attorneys, accountants, investment bankers, brokers, consultants, agents or other professionals, held directly by Investors and/or Convertible Noteholders that have not, as of the Voting Deadline, exercised the Direct Opt Out Right. Direct Causes of Action include, but are not limited to, claims of breach of fiduciary duty, aiding and abetting breach of fiduciary duty, bad faith, willful misconduct, Securities Violations, Commercial Tort Claims, fraudulent transfer, preferential transfer, subordination, recharacterization of debt to equity, malpractice, constructive trust, disgorgement and counterclaims, breach of contract, breach of the implied covenant of good faith and fair dealing, common law and statutory conspiracy, civil remedies against racketeer influenced and corrupt organizations under Chapter 96 of Title 18 of the United States Code, overpayment, unjust enrichment, fraud, negligent misrepresentation, tortious interference with contract or prospective economic advantage, civil conspiracy, whether under feral law or the laws of any state, equitable subordination, including under Bankruptcy Code Section 510(c), aiding and abetting any act or omission of any Person or Entity, objections to fees, and interest or other charges paid by the Debtors. Notwithstanding the forgoing definition of Direct Causes of Action, nothing herein is intended to or shall be construed to confirm that the Debtors, the Reorganized Debtors, the Creditor Trust or the Creditor Trustee takes the position that a type, structure or nature of claim listed herein is a Direct Cause of Action of an Investor or Convertible Noteholder.

(69)    **Direct Causes of Action Assignment** means the absolute and unconditional assignment on the Effective Date to the Creditor Trust, of all Direct Causes of Action held by LLC Investors and/or Convertible Noteholders, that have not validly exercised the Direct Opt Out Right.

(70)    **Direct Opt Out Right** means the right of LLC Investors and/or Convertible Noteholders to opt out of the Direct Causes of Action Assignment.

(71)   **Disallowed** means all or such part of a Claim (a) that is disallowed by a Final Order of the Bankruptcy Court or other court of competent jurisdiction or (b) proof of which was required to be filed but as to which a Proof of Claim was not timely or properly filed; unless Allowed by the Final Order of the Bankruptcy Court or other court of competent jurisdiction.

(72)   **Disbursing Agent** means the Reorganized Debtors, the Creditor Trust or the Entity or Entities selected by the Debtors or the Creditor Trustee to make or facilitate Plan Distributions pursuant to the Plan.

(73)   **Disclosure Statement** means the *First Amended Disclosure Statement Pursuant to Section 1125 of the Bankruptcy Code* dated as of March 17, 2020, as the same may be amended, modified or supplemented from time to time, including all exhibits and schedules thereto, that is prepared and distributed in accordance with the Bankruptcy Code, the Bankruptcy Rules, and any other applicable law.

(74)   **Disputed** means, in reference to a Claim or Interest, any Claim or Interest not otherwise Allowed or Disallowed pursuant to this Plan or an order of the Bankruptcy Court: (a) which has been Scheduled, or hereafter is listed on the Bankruptcy Schedules as unliquidated, contingent, or disputed, and which has not been resolved by written agreement of the parties; (b) proof of which was timely and properly filed and which has been or hereafter is listed on the Bankruptcy Schedules as unliquidated, disputed, or contingent; (c) that is disputed in accordance with the provisions of this Plan; or (d) as to which the Debtors, the Reorganized Debtors or the Creditor Trustee, as applicable, have interposed a timely objection in accordance with the Bankruptcy Code, the Bankruptcy Rules, and any orders of the Bankruptcy Court, or is otherwise disputed by the Debtors, the Reorganized Debtors, or the Creditor Trustee, as applicable in accordance with applicable law, which objection or dispute has not been withdrawn or determined by a Final Order; *provided, however*, that for purposes of determining whether a particular Claim is a Disputed Claim before the expiration of any period of limitation fixed for the interposition by the Debtors, the Reorganized Debtors or the Creditor Trustee, as applicable of objections to the allowance of Claims, any Claim that is not an Allowed Claim shall be deemed Disputed.

(75)   **Distribution Date** means the date(s), occurring as soon as practicable after the Effective Date, upon which Plan Distributions are made pursuant to the terms of this Plan to Holders of Allowed Administrative Expenses Claims, DIP Facility Claim, and Allowed Claim in Class 1 (other Priority Claims); *provided, however*, that should such Allowed Claims be paid in the ordinary course of business, the Distribution Date shall be the date such Allowed Claim becomes payable under the terms of any contract or agreement or applicable non-bankruptcy law; provided further that Plan Distributions to indefeasibly satisfy the DIP Facility Claim shall be made no later than the Effective Date.

(76)   **Effective Date** means the first Business Day on which all conditions precedent set forth in Section 10.02 have been satisfied or waived as permitted hereunder.

(77)   **Entity** has the meaning set forth in Bankruptcy Code Section 101(15).

(78)   **Estates** mean collectively, the estates created for the Debtors in their Chapter 11 Cases pursuant to Bankruptcy Code Section 541.

9

(79) **Exchange Act** means the Securities Exchange Act of 1934, as amended.

(80) **Excluded Avoidance Actions** means those Avoidance Actions that are forever released, settled, resolved or, by agreement of the Debtors pursuant to this Plan, will not be pursued, as detailed in the Plan Supplement.

(81) **Excluded Parties** means those Entities and Persons, listed on **Exhibit A**, hereto; and as may be supplemented or modified in the Plan Supplement.

(82) **Exhibit** means an exhibit annexed either to this Plan, the Plan Documents, or the Disclosure Statement or filed as part of the Plan Supplement.

(83) **Exit Facility** means that certain loan transaction to take effect on the Effective Date of the Plan, pursuant to terms and the Exit Facility Documentation to be detailed in and attached to the Plan Supplement.

(84) **Exit Facility Documentation** means, collectively, the Exit Facility and each other agreement, security agreement, pledge agreement, collateral assignment, mortgage, control agreement, guarantee, certificate, document or instrument executed and/or delivered in connection with the foregoing, whether or not specifically mentioned herein or therein, as the same may be modified, supplemented or replaced from time to time, and which shall be in form and substance consistent with this Plan, and otherwise satisfactory to the Debtors, the Committee, and the Exit Facility Lender.

(85) **Exit Facility Lender** means any lenders party to the Exit Facility on the Effective Date, as detailed in the Plan Supplement.

(86) **Final Order** means an order or judgment of a court of competent jurisdiction that has been entered on the docket maintained by the clerk of such court, which has not been reversed, vacated or stayed and as to which; (a) the time to appeal, petition for certiorari, or move for a new trial, reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for a new trial, reargument or rehearing shall then be pending; or (b) if an appeal, writ of certiorari, new trial, reargument or rehearing thereof has been sought, such order or judgment shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied, or a new trial, reargument or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari or move for a new trial, reargument or rehearing shall have expired; or (c) as to which an appeal, writ of certiorari, motion for re-argument or rehearing has been filed or sought and such order shall not have been stayed *provided, however*, that no order or judgment shall fail to be a "Final Order" solely because of the possibility that a motion pursuant to Bankruptcy Code Sections 502(j) or 1144 or under Rule 60 of the Federal Rules of Civil Procedure or Bankruptcy Rule 9024 has been or may be filed with respect to such order or judgment.

(87) **First Bar Date Order** means that Order entered March 19, 2019 [Docket No. 66] setting the Bar Date for filing proofs of Claim or Interest.

(88) **First Petition Date** means March 4, 2019, the date on which certain of the Debtors filed their voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

59217/0001-19561041v3

(89)   **General Unsecured Claim** means any Claim that is not an Administrative Expense Claim, Claims pursuant to Bankruptcy Code Section 503(b)(9), Priority Tax Claim, Other Priority Claim, Other Secured Claim, Prepetition Secured Claim, Convertible Note Claim, Investment Claim, Intercompany Claim, or Guaranty Claims.

(90)   **General Unsecured Trust Beneficiaries** means collectively, the Holders of: (a) Allowed Convertible Note Claims; (b) Allowed Investment Claims; and (c) Allowed General Unsecured Claims.

(91)   **Guaranty Claims** means the Claims of Holders of Pro Rata Notes against Custom Golf arising pursuant to the Custom Golf Guaranty.

(92)   **Holder** means the beneficial holder of any Claim or Interest.

(93)   **Impaired** means, when used with reference to a Claim or Interest, a Claim or Interest that is impaired within the meaning of Bankruptcy Code Section 1124.

(94)   **Independent Board of Directors** means the Board of Directors for Custom Golf, and other Debtors, whose retention was approved by Order of the Bankruptcy Court [Docket No. 128], and consisting of Russell F. Nelms, Kevin Lantry, and David Gordon.

(95)   **Individualized Proof of Claim Form** means, collectively, those certain proof of claim/interest forms issued to or filed by either (i) Holders of an Investor Claim or a Convertible Note Claim or (ii) to a creditor pursuant to the Second Bar Date Order.

(96)   **Initial Request** has the meaning set forth in Section 5.24.

(97)   **Intercompany Claims** means any Claim by a Debtor against another Debtor.

(98)   **Intercompany Interests** means any Interest held by any Debtor in any other Debtor.

(99)   **Interests** means the interest of any Holder of equity securities in the Debtors represented by any issued and outstanding common stock or interests, preferred stock or interests, membership interest, or other instrument evidencing a present ownership interest in the Debtors before the Effective Date, whether or not transferable, any restricted stock units, calls, rights, puts, awards, commitments, repurchase rights, unvested or unexercised options, warrants, unvested common interests, unvested preferred interests or any other agreements of any character related to the common stock, preferred stock or membership interests of the Debtors, obligating the Debtors to issue, transfer, purchase, redeem, or sell any interests or other equity securities, any rights under any equity incentive plans, voting agreements and registration rights agreements regarding equity securities of the Debtors, any claims arising from the rescission of a purchase, sale or other acquisition of any outstanding common stock interests or preferred stock interests, membership interests, or other equity securities (or any right, claim, or interest in and to any common stock interests, preferred stock interests, membership interests, or other equity securities) of the Debtors, any claims for the payment of any distributions with respect to any common stock, preferred stock or membership interests of the Debtors, and any claims for damages or any other relief arising

11

from the purchase, sale, or other acquisition of the Debtors' outstanding common stock interests, preferred stock interests, membership interests, or other equity securities, however evidenced.

(100) **Investment Benefits** means assets of any nature, received by the holders of Convertible Notes or LLC Investors, including interest payments, distributions, or other transfers, made by or on behalf of any Debtor on account of such Claim or Interest; *provided, however*, Investment Benefits exclude any free or reduced rate use of golf courses, free, or reduced price, golf equipment, and any non-monetary benefits incidental to Investor trips or events.

(101) **Investment Claims** means, collectively and without duplication, the Claims and Interests held by the LLC Investors against the LLCs, based upon an Interest in the LLCs, and the Claims held by the Pro Rata Note Holders based upon the Pro Rata Notes, less Investment Benefits; *provided, however*, Investment Claims does not include Intercompany Claims, Intercompany Interests, or Claims or Interests in the LLCs held by Excluded Parties or Debtors. Investment Claims does not include claims held by WGP Investors who have exercised the WGP Opt Out Right.

(102) **Lien** means a charge against or interest in property, whether by mortgage, deed of trust, or otherwise, to secure payment of a debt or performance of an obligation.

(103) **LLCs** means: (i) the Debtors, Warrior ATV Golf, LLC; Acquisitions; Warrior Golf Development, LLC; Warrior Golf Management, LLC; Warrior Golf Assets, LLC; Warrior Golf Venture, LLC; Warrior Premium Properties, LLC; Warrior Golf, LLC, a Delaware limited liability company; Warrior Golf Equities, LLC; Warrior Golf Capital, LLC; Warrior Golf Resources, LLC; Warrior Golf Legends, LLC; Warrior Golf Holdings, LLC; Warrior Capital Management, LLC; and (ii) non-Debtor WGP.

(104) **LLC Interests** means the Interests received by the LLC Investors in any of the LLCs and not transferred, assigned, or redeemed prior to the issuance of the Pro Rata Notes.

(105) **LLC Investors** means a Person that holds or held an LLC Interest.

(106) **New CEO** means Jeremy Rosenthal, who shall on the Effective Date assume the role of Chief Executive Officer of the Reorganized Debtors.

(107) **New Custom Golf Stock** means the authorized, issued and outstanding shares of common stock of Custom Golf to be issued to the Creditor Trust.

(108) **Nocona Note** means that certain secured Promissory Note dated September 11, 2017, made by Alpha Adventure Ranch At Nocona, LLC, and in favor of Debtor Warrior Golf Management, LLC.

(109) **Op.Co.** means the operating company to be formed on or as soon as practical after the Effective Date, as a limited liability company under the laws of the State of Texas.

(110) **Op.Co. Membership Interests** means the Membership Interests in Op.Co. to be issued, on or as soon as practical after the Effective Date, to the Creditor Trust.

59217/0001-19561041v3

(111) **Organizational Documents** means the new company governance documents related to the Reorganized Debtors including, articles of organization, limited liability company agreements, operating agreements, shareholders agreement, or other organizational documents which shall be consistent with the provisions of this Plan and the Bankruptcy Code and shall include, among other things (and only to the extent required by Bankruptcy Code Section 1123(a)(6)), provisions prohibiting the issuance of non-voting equity securities. The Organizational Documents shall be in form and substance acceptable to the Debtors and the Committee.

(112) **Other Priority Claim** means any Claim other than an Administrative Expense Claim or a Priority Tax Claim entitled to priority in payment as specified in Bankruptcy Code Section 507(a).

(113) **Other Secured Claim** means any Secured Claim against the Debtors, other than the DIP Facility Claims and Senior Statutory Lien Claims.

(114) **Oversight Board** means the three (3) member oversight board having oversight over the Creditor Trust and the Creditor Trustee. The Oversight Board will be formed with members selected by the Committee and shall be disclosed in the Plan Supplement.

(115) **Person** means an individual, corporation, general or limited partnership, limited liability company, trust, liquidating trust, incorporated or unincorporated association, joint venture, joint stock company, government (or an agency or political subdivision thereof) or other Entity of any kind.

(116) **Petition Dates** means, collectively and respectively, March 4, 2019, April 4, 2019, and May 30, 2019, the date on which the Debtors filed their respective voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

(117) **Plan** means this First Amended Plan of Reorganization, including any Exhibits and all supplements, appendices and schedules thereto, including the Plan Supplement, either in its present form or as the same may be altered, amended, modified or supplemented from time to time as permitted herein and in accordance with the provisions of the Bankruptcy Code and the terms hereof.

(118) **Plan Distribution** means the payment or distribution under this Plan of Cash, assets, securities or instruments evidencing an obligation under this Plan, a beneficial interest in the Creditor Trust, or other property of any nature to any Holder of an Allowed Claim.

(119) **Plan Documents** means all documents, forms, lists and agreements contemplated under this Plan (including the Plan Supplement) to effectuate the terms and conditions hereof.

(120) **Plan Supplement** means any supplement to this Plan and the compilation of Plan Documents and forms of documents and Exhibits to this Plan, as amended, modified or supplemented from time to time, to be collectively filed by the Debtors and the Committee, as permitted herein on or before the Plan Supplement Filing Date.

(121) **Plan Supplement Filing Date** means the date not later than fourteen (14) calendar days before the Voting Deadline.

(122) **Priority Tax Claim** means a Claim that is entitled to priority pursuant to Bankruptcy Code Section 507(a)(8).

(123) **Privilege** means all attorney-client privileges, work product protections and other immunities or protections from disclosure held by the Debtors.

(124) **Professional** means any professional: (a) employed in these Chapter 11 Cases pursuant to Bankruptcy Code Sections 327, 328 or 1103 and to be compensated for services rendered pursuant to Bankruptcy Code Sections 327, 328, 329, 330 or 331; (b) retained pursuant to Bankruptcy Code Section 363; or (c) seeking compensation and reimbursement pursuant to Bankruptcy Code Section 503(b)(4).

(125) **Professional Fee Claim** means a Claim of a Professional for compensation or reimbursement of expenses relating to services after the First Petition Date through the Effective Date.

(126) **Proof of Claim/Interest** means the proof of claim or interest that must be filed by a Holder of a Claim or Interest by the date(s) designated by the Bankruptcy Court as the Bar Dates.

(127) **Prop.Co.** means the holding company to be formed on or as soon as practical after the Effective Date, as a limited liability company under the laws of the State of Texas.

(128) **Prop.Co. Membership Interests** means the Membership Interests in Prop.Co. to be issued, on or as soon as practical after the Effective Date, to the Creditor Trust.

(129) **Pro Rata Notes** means those Pro Rata Promissory Notes issued by Debtor Warrior Golf, LLC, a Delaware limited liability company, and/or non-Debtor Warrior Golf, LLC, a California limited liability company, to LLC Investors, and dated September 1, 2017. Confirmation of the Plan shall constitute a finding of the Court that the Pro Rata Notes were an obligation as of the First Petition Date of, *inter alia*, Warrior Golf, LLC, a Delaware limited liability company.

(130) **Pro Rata Note Holders** means the Holders of the Pro Rata Notes.

(131) **Real Property** means the real property, leasehold interests, and fixtures generally detailed in the Plan Supplement, and shall include all Real Property (a) titled in the name of any of the Debtors, as of the First Petition Date, and (b) titled and/or recorded in official records of any and all state and/or local agencies, in the name of "Warrior Golf, LLC" (with or without an identification as a *Delaware limited liability company*).

(132) **Reinstated** means, with respect to Claims and Interests, the treatment provided for in Bankruptcy Code Section 1124.

(133) **Related Persons** means, with respect to any Person, such Person's predecessors, successors and assigns (whether by operation of law or otherwise) and their respective present and

former Affiliates, and each of their respective current and former members, partners, equity-holders, officers, directors, employees, managers, shareholders, partners, financial advisors, attorneys, accountants, investment bankers, consultants, agents and professionals, each acting in such capacity, and any Person claiming by or through any of them (including their respective officers, directors, managers, shareholders, partners, employees, members and professionals); provided, that the Related Person shall not include any Excluded Party.

(134)  **Released Persons** means the CRO, the CFO, the Independent Board of Directors, the Committee and its respective members in their capacity as such, the DIP Lender, and the Exit Facility Lender and any of such Person's or Entities' Related Persons (each solely in their capacity as such), including the Debtors' and the Committee's Professionals, unless expressly defined as an Excluded Party.

(135)  **Reorganized Custom Golf** means Custom Golf from and after the Effective Date.

(136)  **Reorganized Debtors** means collectively, Reorganized Custom Golf, Op.Co. and Prop.Co., from and after the Effective Date.

(137)  **Restructuring Transactions** means one or more transactions pursuant to Section 1123(a)(5)(D) of the Bankruptcy Code to occur on or before the Effective Date or as soon as reasonably practicable thereafter, that may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate this Plan, as further described in Section 5.08.

(138)  **Scheduled** means, with respect to any Claim or Interest, the status and amount, if any, of such Claim or Interest as set forth in the Bankruptcy Schedules.

(139)  **Second Bar Date Order** means that Order entered June 27, 2019 [Docket No. 333], setting the Bar Date for Claims and Interests that arose against the Debtors prior to the Petition Date for each of the Debtors.

(140)  **Secured** means, when referring to a Claim: (a) secured by a Lien on property in which the Estates have an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to Bankruptcy Code Section 553, to the extent of the value of the Creditor's interest in the Estates' interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to Bankruptcy Code Section 506(a); or (b) Allowed pursuant to this Plan as a Secured Claim.

(141)  **Securities Act** means the Securities Act of 1933, 15 U.S.C. Sections 77a-77aa, as now in effect or hereafter amended.

(142)  **Securities Violations** means Causes of Action that may be asserted by the Debtors, the Reorganized Debtors or the Creditor Trust, as applicable, for violations of the Securities Act, the Exchange Act, all state Blue Sky laws, and the equivalents thereof.

(143)  **Senior Statutory Lien** means any statutory Lien against the Debtors' property that has been perfected: (a) under Bankruptcy Code Section 546; or (b) prior to the Petition Date, under applicable non-bankruptcy law.

(144)  **Senior Statutory Lien Claim** means any Claim secured by a Senior Statutory Lien.

(145)  **Title Records** means any and all records of any and all state or local agencies recording titles and interests in and to the Real Property.

(146)  **Trust Contribution Funds** means the funds transferred by the Debtors to the Creditor Trust on the Effective Date which shall be utilized by the Creditor Trustee to administer the Creditor Trust Assets and pay all Creditor Trust Expenses. The amount of the Trust Contribution Funds will be disclosed either in the Plan Supplement, or prior to the commencement of the Confirmation Hearing.

(147)  **Unclaimed Property** has the meaning set forth in Section 7.03.

(148)  **Unimpaired** means a Claim or Interest that is not Impaired.

(149)  **Voting Deadline** means the date by which a Creditor must deliver a Ballot to accept or reject this Plan as set forth in the order of the Bankruptcy Court approving the instructions and procedures relating to the solicitation of votes with respect to this Plan.

(150)  **Westwind** means Debtor Westwind Manor Resort Association, Inc.

(151)  **WGP** means Warrior Golf Properties, LLC, a non-Debtor entity.

(152)  **WGP Causes of Action** means all actions, causes of action, liabilities, obligations, rights, suits, damages, judgments, remedies, demands, setoffs, defenses, recoupments, crossclaims, counterclaims, third-party claims, indemnity claims, contribution claims, or any other claims whatsoever, whether known or unknown, matured or unmatured, fixed or contingent, liquidated or unliquidated, disputed or undisputed, asserted or unasserted, suspected or unsuspected, foreseen or unforeseen, direct or indirect, choate or inchoate, existing or hereafter arising, in law, equity, or otherwise, based in whole or in part upon any act or omission or other event occurring through the Effective Date against the WGP Entities, held by WGP Investors that have not, as of the Voting Deadline, exercised the WGP Opt Out Right. WGP Causes of Action include, but are not limited to, claims of breach of fiduciary duty, aiding and abetting breach of fiduciary duty, bad faith, willful misconduct, Securities Violations, Commercial Tort Claims, fraudulent transfer, preferential transfer, subordination, recharacterization of debt to equity, malpractice, constructive trust, disgorgement and counterclaims, breach of contract, breach of the implied covenant of good faith and fair dealing, common law and statutory conspiracy, civil remedies against racketeer influenced and corrupt organizations under Chapter 96 of Title 18 of the United States Code, overpayment, unjust enrichment, fraud, negligent misrepresentation, tortious interference with contract or prospective economic advantage, civil conspiracy, whether under feral law or the laws of any state, equitable subordination, including under Bankruptcy Code Section 510(c), aiding and abetting any act or omission of any Person or Entity, objections to fees, and interest or other charges paid by the Debtors. Notwithstanding the forgoing definition of WGP Causes of Action, nothing herein is intended to or shall be construed to confirm that the Debtors,

16

the Reorganized Debtors, the Creditor Trust or the Creditor Trustee takes the position that a type or structure of claim listed herein is a direct claim of a WPG Investor.

(153) **WGP Causes of Action Assignment** means the absolute and unconditional assignment on the Effective Date to the Creditor Trust, of all WGP Causes of Action held by WGP Investors, that have not validly exercised the WGP Opt Out Right.

(154) **WGP Entities** means collectively WGP, and WGP Related Persons.

(155) **WGP Investment** means the Interests of LLC Investors in WGP.

(156) **WGP Investment Assignment** means the absolute and unconditional assignment on the Effective Date to the Creditor Trust, of all the WGP Investment held by WGP Investors, that have not validly exercised the WGP Opt Out Right.

(157) **WGP Investors** means LLC Investors holding Investment Claims arising from an Interest in WGP and/or Pro Rata Notes issued in connection with an Interest in WGP. A WGP Investor that has not validly exercised the WGP Opt Out Right will be deemed a party-in-interest in the Chapter 11 Cases.

(158) **WGP Opt Out Right** means the right of WGP Investors to opt out of the WGP Causes of Action Assignment and the WGP Investment Assignment. The exercise of the WGP Opt Out Right is for the WGP Causes of Action Assignment and the WGP Investment Assignment and cannot be separated or split between the two assignments.

(159) **WGP Related Persons** means all of WGP's affiliates, as set forth in Bankruptcy Code Section 101(2), and all of WGP's predecessors, successors and assigns (whether by operation of law or otherwise) and their respective present and former affiliates (as set forth in Bankruptcy Code Section 101(2)), and each of their respective current and former members, partners, equity-holders, officers, directors, employees, managers, shareholders, partners, financial advisors, attorneys, accountants, investment bankers, consultants, agents and professionals, each acting in such capacity, and any Person claiming by or through any of them (including their respective officers, directors, managers, shareholders, partners, employees, members and professionals). WGP Related Persons does not include the Debtors, the Debtors' Affiliates, and/or the WGP Investors who have not exercised the WGP Opt Out Right.

**1.03  Rules of Interpretation**

For purposes of this Plan: (1) except as provided in Section 11, any reference in this Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions, means that such document shall be substantially in such form or substantially on such terms and conditions; (2) except as provided in Section 11, any reference in this Plan to an existing document or exhibit filed or to be filed with the Bankruptcy Court, means such document or exhibit as it may have been or may be amended, modified, or supplemented as permitted herein; (3) unless otherwise specified, all references in this Plan to Sections, Schedules, and Exhibits are references to Sections, Schedules, and Exhibits of or to this Plan; (4) the words "herein," "hereto," and "hereof" refer to this Plan in its entirety rather than to a particular portion of this Plan; (5) captions and headings to Sections are inserted for convenience

17

of reference only and are not intended to be a part of or to affect the interpretation of this Plan; (6) the singular includes the plural and the plural includes the singular; and (7) the rules of construction set forth in Bankruptcy Code Section 102 and in the Bankruptcy Rules shall apply.

## 1.04  Computation of Time

In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

## 1.05  Reference to Monetary Figures

All references in this Plan to monetary figures shall refer to legal currency of the United States of America.

## 1.06  Reference to the Debtors or the Reorganized Debtors

Except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Debtors or to the Reorganized Debtors shall mean the Debtors and the Reorganized Debtors, as applicable, to the extent the context requires.

## 1.07  Exhibits and Plan Supplement

All Exhibits, all Plan Documents, as well as the Plan Supplement, are incorporated into and are a part of this Plan as if set forth in full herein, and, to the extent not annexed hereto, such Exhibits and Plan Supplement shall be timely filed with the Clerk of the Bankruptcy Court on or before the Plan Supplement Filing Date. Holders of Claims and Interests may obtain a copy of the filed Exhibits and the Plan Supplement upon written request to the Debtors' counsel. Upon their filing, the Exhibits and the Plan Supplement may be inspected in the office of the clerk of the Bankruptcy Court or at the Bankruptcy Court's website or at the Balloting Agent's website for this Case at:

https://www.txs.uscourts.gov/page/bankruptcy-court

https://www.donlinrecano.com/Clients/warrior/index

The documents contained in the Exhibits and Plan Supplement shall be approved by the Bankruptcy Court pursuant to the Confirmation Order. The Debtors and the Committee, collectively, explicitly reserve the right to modify or make additions to or subtractions from any Exhibit to this Plan or the Plan Supplement and to amend, modify or supplement any Exhibit to this Plan before the Confirmation Date.

## 1.08  Deemed Acts

Whenever an act or event is expressed under this Plan to have been deemed done or to have occurred, it shall be deemed to have been done or to have occurred without any further act by any party, by virtue of this Plan and the Confirmation Order.

59217/0001-19561041v3

## SECTION 2
## UNCLASSIFIED CLAIMS
## (NOT ENTITLED TO VOTE ON THIS PLAN)

In accordance with Bankruptcy Code Section 1123(a)(l), Administrative Expense Claims, DIP Facility Claims and Priority Tax Claims have not been classified and thus are excluded from the Classes of Claims and Interests set forth in <u>Section 4</u>. These unclassified Claims are treated as follows:

### 2.01  Administrative Expense Claims

Each Holder of an Allowed Administrative Expense Claim, on or as soon as practicable after the Effective Date, shall receive from the Reorganized Debtors, in full satisfaction, release, settlement, and discharge of such Allowed Administrative Expense Claim: (1) payment in full in Cash; (2) other treatment consistent with Bankruptcy Code Sections 1129(a)(9)(C) and 1129(a)(9)(D); or (3) such other terms as agreed to among the Reorganized Debtors and the Holders thereof.

Notwithstanding the foregoing, Allowed Administrative Expense Claims that arise in the ordinary course of the Debtors' businesses shall be paid in the ordinary course of business in accordance with the terms and subject to the conditions of any agreements governing or other documents relating to such Claims. Professional Fee Claims (as defined herein) shall be paid by the Reorganized Debtors promptly after being approved by the Bankruptcy Court, or in the case of Professional Fee Claims owed pursuant to the DIP Orders, pursuant to the terms of such orders.

### 2.02  DIP Facility Claim

All DIP Facility Claims are and shall be deemed Allowed Secured Claims and superpriority Administrative Claims due and owing under the DIP Documents as of the Effective Date.  The Holder of the Allowed DIP Facility Claim, on the Effective Date, shall receive from the Reorganized Debtors, in full satisfaction, release, settlement, and discharge of such Allowed DIP Facility Claim; (1) payment in full in Cash; or (2) such other terms as agreed to among the Debtors and the DIP Lender.

### 2.03  Priority Tax Claims

      (1)      Each Holder of an Allowed Priority Tax Claim, arising pursuant to Bankruptcy Code Section 507(a)(8), other than pursuant to Bankruptcy Code Section 508(a)(8)(B), against a Debtor, on or as soon as practicable after the Effective Date, shall receive from the Creditor Trust, in full satisfaction, release, and discharge thereof, as determined in the sole discretion of the Creditor Trustee: (a) payment in full in Cash; (b) other treatment consistent with Sections 1129(a)(9)(C) or 1129(a)(9)(D) of the Bankruptcy Code; or (c) such other terms as agreed to among the Debtors and the Holders thereof.

      (2)      Each Holder of an Allowed Priority Tax Claim, arising pursuant to Bankruptcy Code Section 507(a)(8)(B), against a Debtor, on or as soon as practicable after the Effective Date, shall receive from the Reorganized Debtors, in full satisfaction, release, and discharge thereof, as determined in the sole discretion of the Reorganized Debtors: (a) payment in full in Cash; (b) other treatment consistent with Sections 1129(a)(9)(C) or 1129(a)(9)(D) of the Bankruptcy Code; or (c)

19

such other terms as agreed to among the Debtors and the Holders thereof. Notwithstanding subsection (b) herein, upon the sale of the Real Property, pursuant to which an Allowed Priority Tax Claim arose, the Reorganized Debtors shall make payment in full in Cash, plus Post-Petition Interest to the extent required under Bankruptcy Code Section 506(b), of the then balance due of such Allowed Priority Tax Claim.

## 2.04  Bar Dates for Certain Claims

(1)  **Administrative Expense Claims; Substantial Contribution Claims**. The Bar Date for filing of all Administrative Expense Claims, including substantial contribution claims, will be the date that is thirty (30) calendar days after the Effective Date (such date, the "**Administrative Expense Claims Bar Date**"). Holders of asserted Administrative Expense Claims, other than Professional Fee Claims, claims for U.S. Trustee fees under 28 U.S.C. Section 1930 and administrative tax claims must submit proofs of Administrative Expense Claims on or before such Administrative Expense Claims Bar Date or forever be barred from doing so. Within five (5) Business Days of the Effective Date, the Reorganized Debtors shall serve and file on the docket of the Bankruptcy Court, a notice setting forth the Administrative Expense Claims Bar Date. The Reorganized Debtors shall have sixty (60) calendar days (or such longer period as may be allowed by order of the Bankruptcy Court) following the Administrative Expense Claims Bar Date to review and object to such Administrative Expense Claims before a hearing for determination of allowance of such Administrative Expense Claims.

(2)  **Administrative Ordinary Course Liabilities**. Holders of Administrative Expense Claims that are based on liabilities incurred and paid by the Debtors in the ordinary course of the Debtors' businesses (other than Claims of governmental units for taxes) on and after the First Petition Date shall not be required to file any request for payment of such Administrative Expense Claims. For the avoidance of doubt, Holders of Administrative Expense Claims pursuant to Bankruptcy Code Section 503(b)(9) are required to file a Proof of Claim on or before the General Bar Date (as defined in the Second Bar Date Order).

(3)  **Administrative Tax Claims**. All requests for payment of Administrative Expense Claims by a Governmental Unit for taxes for any tax year or period, all or any portion of which occurs or falls within the period from and including the First Petition Date through and including the Effective Date, and for which no bar date has otherwise been previously established, must be filed and served on the Reorganized Debtors and any other party specifically requesting a copy in writing on or before the later of (a) thirty (30) calendar days after the Effective Date; and (b) one hundred and twenty (120) calendar days following the filing of the tax return for such taxes for such tax year or period with the applicable governmental unit. Within five (5) Business Days of the Effective Date, the Reorganized Debtors shall serve, and file on the docket of the Bankruptcy Court, a notice setting forth such applicable Bar Date. Any Holder of any such Claim that is required to file a request for payment of such taxes and does not file and properly serve such a claim by the applicable Bar Date shall be forever barred from asserting any such claim against the Debtors, the Reorganized Debtors, the Disbursing Agent or their property, regardless of whether any such Claim is deemed to arise on or before the Effective Date. Any interested party desiring to object to an Administrative Tax Claim must file and serve its objection on counsel to the Reorganized Debtors and the relevant taxing authority no later than ninety (90) calendar days after the taxing authority files and serves its Claim.

(4)     **Professional Fee Claims**. All final requests for compensation or reimbursement of Professional fees pursuant to Bankruptcy Code Sections 327, 328, 330, 331, 363, 503(b) or 1103 or pursuant to the DIP Orders (the "**Professional Fee Claims**") for services rendered to or on behalf of the Debtors before the Effective Date (other than substantial contribution claims under Bankruptcy Code Sections 503(b)(4)) must be filed with the Bankruptcy Court and served on the Reorganized Debtors and their counsel no later than thirty (30) calendar days after the Effective Date, unless otherwise ordered by the Bankruptcy Court. Objections to applications of such Professionals or other entities for compensation or reimbursement of expenses must be filed with the Bankruptcy Court and served on the Reorganized Debtors and their counsel and the requesting Professional or other entity no later than twenty (20) calendar days (or such longer period as may be allowed by order of the Bankruptcy Court) after the date on which the applicable application for compensation or reimbursement was served.

(5)     **Force Ten Partners' Professional Fees**.  Nothing in the Plan or the Confirmation Order shall modify the terms of the engagement of Force Ten Partners, LLC, as provided in Docket No. 127, and in particular the Success Fee provisions thereof, which provisions shall survive the Effective Date and continue to be applicable thereafter.  Notwithstanding the foregoing, the Reorganized Debtors, the Creditor Trustee, and Force Ten Partners, LLC may agree to a delay in the timing of any Success Fee payments.

## 2.05  Payment of Statutory Fees

On or before the Effective Date (or as soon as reasonably practicable after such fees become due), the Reorganized Debtors shall have paid in full, in Cash, all fees payable pursuant to Section 1930 of Title 28 of the United States Code, in the amount determined by the Bankruptcy Court at the Confirmation Hearing.

**SECTION 3**
**CLASSIFICATION OF CLAIMS AND**
**INTERESTS AND ACCEPTANCE REQUIREMENTS**

## 3.01  Introduction

The categories of Claims and Interests set forth herein classify Claims and Interests for all purposes, including for purposes of voting, confirmation, and distribution pursuant to this Plan and Bankruptcy Code Sections 1122 and 1123(a)(l). A Claim or Interest shall be deemed classified in a particular Class only to the extent that it qualifies within the description of such Class and shall be deemed classified in other Classes to the extent that any portion of such Claim or Interest qualifies within the description of such other Classes. Notwithstanding anything to the contrary in this Plan, a Claim or Interest shall be deemed classified in a Class only to the extent that such Claim or Interest has not been paid, released, or otherwise settled before the Effective Date.

All Claims (except for Administrative Expense Claims, the DIP Facility Claim and Priority Tax Claims, which are not classified pursuant to Bankruptcy Code Section 1123(a)(l)) are classified in Section 4.01 through Section 4.09.

## 3.02 Voting; Presumptions

(1) **Acceptance by Impaired Classes**. Each Impaired Class of Claims that will (or may) receive or retain property or any interest in property under this Plan shall be entitled to vote to accept or reject this Plan. An Impaired Class of Claims shall have accepted this Plan if (i) the Holders (other than any Holder designated under Bankruptcy Code Section 1126(e)) of at least two-thirds in amount of the Allowed Claims actually voting in such Class have voted to accept this Plan and (ii) the Holders (other than any Holder designated under Bankruptcy Code Section 1126(e)) of more than one-half in number of the Allowed Claims actually voting in such Class have voted to accept this Plan.

(2) **Voting Presumptions**. Claims in Unimpaired Classes are conclusively deemed to have accepted this Plan pursuant to Bankruptcy Code Section 1126(f) and, therefore, are not entitled to vote to accept or reject this Plan. Claims and Interests in Classes that do not entitle the Holders thereof to receive or retain any property under this Plan are conclusively deemed to have rejected this Plan pursuant to Bankruptcy Code Section 1126(g) and, therefore, are not entitled to vote to accept or reject this Plan.

(3) **Direct Claim Opt Out – by Convertible Noteholders**.

(a) Convertible Noteholders that validly exercise the Direct Claim Opt Out will be deemed to hold an LLC Interest in Class 8 under this Plan and are conclusively deemed to have rejected this Plan pursuant to Bankruptcy Code Section 1126(g) and, therefore, are not entitled to vote to accept or reject this Plan.

(b) Upon the valid exercise of the Direct Claim Opt Out by a Convertible Noteholder, the Debtors will have, without further action or Bankruptcy Court order, be deemed to have exercised the Conversion Right, immediately prior to the Effective Date, under the Convertible Notes with respect to such Convertible Noteholder.

(4) **WGP Opt Out**. WGP Investors that do not validly exercise the WGP Opt Out Right, shall be deemed to have accepted the Plan. WPG Investors do not have a right to vote on the Plan.

## 3.03 Cram Down – Nonconsensual Confirmation

If any Impaired Class of Claims or Interests entitled to vote shall not accept the Plan by the requisite statutory majority provided in Bankruptcy Code Section 1126(c) or 1126(d), the Debtors and the Committee, jointly, shall request Confirmation of the Plan under Bankruptcy Code Section 1129(b). In that event, the Debtors and the Committee, jointly, reserve the right to modify the Plan to the extent, if any, that Confirmation pursuant to Bankruptcy Code Section 1129(b) requires modification or any other reason in their joint discretion.

## 3.04 Identification of Claims and Interests

The following table designates the Classes of Claims against, and Interests in, the Debtors and specifies which of those Classes and Interests are (a) Impaired or Unimpaired by this Plan; (b)

22

entitled to vote to accept or reject this Plan in accordance with Bankruptcy Code Section 1126; and (c) deemed to accept or reject this Plan.

| Class | Type of Claim or Interest | Impairment | Entitled / Not Entitled to Vote |
|---|---|---|---|
| Unclassified Claims | | | |
| -- | Administrative Expense Claims | Unimpaired | Not entitled to vote on the Plan |
| -- | DIP Facility Claim | Unimpaired | Not entitled to vote on the Plan |
| -- | Priority Tax Claims | Unimpaired | Not entitled to vote on the Plan |
| Classified Claims | | | |
| 1 | Other Priority Claims (exclusive of Priority Tax Claims) | Unimpaired | Not entitled to vote; deemed to accept the Plan |
| 2 | Other Secured Claims (exclusive of Secured Claims in Class 3) | Unimpaired | Not entitled to vote; deemed to accept the Plan |
| 3A & 3B | Prepetition Secured Claims in Class 3A and 3B | Unimpaired | Not entitled to vote; deemed to accept the Plan |
| 3C | Prepetition Secured Claim in Class 3C | Impaired | Entitled to vote on the Plan |
| 4 | General Unsecured Claims | Impaired | Entitled to vote on the Plan |
| 5 | Investment Claims | Impaired | Entitled to vote on the Plan |
| 6 | Convertible Note Claims | Impaired | Entitled to vote on the Plan |
| 7 | Custom Golf Interests | Impaired | Not entitled to vote; deemed to reject the Plan |
| 8 | LLC Interests | Impaired | Not entitled to vote; deemed to reject the Plan |

## SECTION 4
## TREATMENT OF CLAIMS AND INTERESTS

### 4.01  Other Priority Claims (exclusive of Priority Tax Claims)

**Classification**: Class 1 consists of Other Priority Claims against the Debtors. Allowed Claims arising pursuant to Bankruptcy Code Section 503(b)(9) are Other Priority Claims.

**Treatment**: Each holder of an Allowed Claim in Class 1, on or as soon as practicable after the Effective Date, shall receive from the Reorganized Debtors, in full satisfaction, release, settlement, and discharge of such Claims, as determined in the sole and exclusive discretion of the Reorganized Debtors: (1) payment in full in Cash, plus Post-Petition Interest, if applicable; (2) other treatment consistent with Bankruptcy Code Sections 1129(a)(9)(C) and 1129(a)(9)(D); or (3) such other less favorable terms agreed to among the Reorganized Debtors and Holders thereof.

**Voting**: Claims in Class 1 are Unimpaired. Each Holder of an Allowed Other Priority Claim shall be conclusively deemed to have accepted this Plan, pursuant to Bankruptcy Code Section 1126(f), and, therefore, shall not be entitled to vote to accept or reject this Plan.

**4.02  Other Secured Claims (exclusive of Class 3 Secured Claims)**

**Classification**: Class 2 consists of Allowed Other Secured Claims against the Debtors.

**Treatment**:  Each Holder of an Allowed Claim in Class 2, on or as soon as practicable after the Effective Date, shall receive from the Reorganized Debtors, in full satisfaction, release, settlement, and discharge of such Claim, at the option of the Reorganized Debtors, as determined in the sole and exclusive discretion of the Reorganized Debtors: (1) payment in full in Cash, plus Post-Petition Interest to the extent required under Bankruptcy Code Section 506(b); (2) be Reinstated or receive such other treatment sufficient to render the Holder of such Claim Unimpaired pursuant to Bankruptcy Code Section 1124; or (3) the return of the applicable collateral in satisfaction of the Allowed amount of such Secured Claim.

**Voting**: Claims in Class 2 are Unimpaired. Each Holder of an Allowed Other Secured Claim shall be conclusively deemed to have accepted this Plan, pursuant to Bankruptcy Code Section 1126(f), and, therefore, shall not be entitled to vote to accept or reject this Plan.

**4.03  Prepetition Secured Claims**

**Classification**: Class 3, collectively, consists of Prepetition Secured Claims (other than Priority Tax Claims arising pursuant to Bankruptcy Code Section 507(a)(8)(B)), against Real Property of the Debtors, as follows:

**Class 3A**: Broadmoor Group, Inc., Albert Ronald Smoak, and Zoe Anne Smoak, collectively, holders of a secured interest in that certain Real Property commonly known as Broadmoor Golf Links.

**Treatment**:  The Holder of an Allowed Claim in Class 3A, on or as soon as practicable after the Effective Date, shall receive from the Reorganized Debtors, in full satisfaction, release, settlement, and discharge of such Claim, as determined in the sole and exclusive discretion of the Reorganized Debtors: (1) payment in full in Cash, plus Post-Petition Interest to the extent required under Section 506(b) of the Bankruptcy Code; (2) be Reinstated or receive such other treatment sufficient to render the Holder of such Claim Unimpaired pursuant to Section 1124 of the Bankruptcy Code; or (3) the return of the applicable collateral in satisfaction of the Allowed amount of such Secured Claim.

**Voting**: The Claim in Class 3A is Unimpaired. The Holder of an Allowed Class 3A shall be conclusively deemed to have accepted this Plan and, therefore, shall not be entitled to vote to accept or reject this Plan.

**Class 3B**: ANB Bank, holder of a secured interest in that certain Real Property commonly known as Lakota Canyon Ranch Golf Club.

**Treatment**:  The Holder of an Allowed Claim in Class 3B, on or as soon as practicable after the Effective Date, shall receive from the Reorganized Debtors, in full satisfaction, release, settlement, and discharge of such Claim, as determined in the sole and exclusive discretion of the Reorganized Debtors: (1) payment in full in Cash, plus Post-Petition Interest to the extent required under Section 506(b) of the Bankruptcy Code; (2) be Reinstated or receive such other treatment

24

sufficient to render the Holder of such Claim Unimpaired pursuant to Section 1124 of the Bankruptcy Code; or (3) the return of the applicable collateral in satisfaction of the Allowed amount of such Secured Claim.

**Voting**: The Claim in Class 3B is Unimpaired. The Holder of an Allowed Class 3B shall be conclusively deemed to have accepted this Plan and, therefore, shall not be entitled to vote to accept or reject this Plan.

**Class 3C**: CBB, the holder of a secured interest in the Cimarron Golf Resort Property.

**Treatment**: The Holder of the Claim in Class 3C shall have a fully Secured Claim equal to the Allowed amount outstanding under the CBB Mortgage Loan as of the Effective Date. The Claim shall be secured by all of the Holder's existing collateral, to the extent of valid and perfected liens as of the First Petition Date, *except*: (i) any and all proceeds of eminent domain actions against the Holder's collateral, up to an aggregate award or settlement of $1.1 Million; and (ii) the proceeds of all payments arising under or pursuant to a lease or sale of a portion of the Holder's existing collateral, in connection with cell towers on such collateral. The Holder's liens shall be junior in priority to the Cimarron Surcharge Amount. The Class 3C Claim shall be memorialized in a subordinate secured note in form and substance provided in the Plan Supplement.

**Voting**: The Claim in Class 3C is Impaired. The Holder of the Allowed Class 3C Claim shall be entitled to vote to accept or reject this Plan.

## 4.04  General Unsecured Claims

**Classification**: Class 4 consists of all Allowed General Unsecured Claims against the Debtors. General Unsecured Claims do not include Intercompany Claims or Guaranty Claims. On the Effective Date, or as soon as practicable thereafter, all Intercompany Claims and all Guaranty Claims shall be deemed extinguished, released, and discharged, and the Holders thereof shall receive no Distribution based thereon.

**Treatment**: Each Holder of an Allowed Claim in Class 4, on or as soon as practicable after the Effective Date, shall receive, in full satisfaction, release, settlement, and discharge of such Claims, its *pro rata* share of the Class A Interests.

**Voting**: Claims in Class 4 are Impaired. Each Holder of an Allowed General Unsecured Claim shall be entitled to vote to accept or reject this Plan.

## 4.05  Investment Claims

**Classification**: Class 5 consists of the Investment Claims.

**Treatment**: Each Holder of an Allowed Claim in Class 5, on or as soon as practicable after the Effective Date, shall receive, in full satisfaction, release, settlement, and discharge of such Claims, its *pro rata* share of the Class B Interests. The amount of the *pro rata* share of the Class B Interests is as follows:

(i)      To the extent that a Holder of an Investment Claim, has not validly exercised the Direct Claim Opt Out Right, its Claim will be equal to the aggregate amount of such Holders' original Cash Purchase Price of LLC Interests, less, Investment Benefits received by such Holder; and the Allowed Investment Claim shall not include any separate or additional Claim based upon the Pro Rata Notes or the Custom Golf Guaranty.

(ii)      To the extent that a Holder of an Investment Claim, has validly exercised the Direct Claim Opt Out Right, its Claim will be equal to the aggregate amount of such Holders' Pro Rata Notes, less, Investment Benefits received by such Holder; and the Allowed Investment Claim shall not include any separate or additional Claim based upon the aggregate amount of such Holders' original Cash Purchase Price of LLC Interests or the Custom Golf Guaranty.

**Voting**: Claims in Class 5 are Impaired. Each Holder of an Allowed Investment Claim shall be entitled to vote to accept or reject this Plan.

**ALL HOLDERS OF INVESTMENT CLAIMS WHO DO NOT OPT OUT OF THE DIRECT CAUSES OF ACTION ASSIGNMENT, ON A TIMELY SUBMITTED BALLOT, SHALL BE DEEMED TO HAVE EXPRESSLY, UNCONDITIONALLY, IRREVOCABLY, GENERALLY, INDIVIDUALLY, AND COLLECTIVELY CONSENTED TO THE DIRECT CAUSES OF ACTION ASSIGNMENT TO THE CREDITOR TRUST.**

**ALL HOLDERS OF INVESTMENT CLAIMS WHO DO NOT OPT OUT OF THE DIRECT CAUSES OF ACTION ASSIGNMENT, ON A TIMELY SUBMITTED BALLOT, SHALL EXECUTE ALL DOCUMENTS REASONABLE REQUESTED BY THE CREDITOR TRUSTEE TO IMPLEMENT THE DIRECT CAUSES OF ACTION ASSIGNMENT.**

### 4.06  Convertible Note Claims

**Classification**:  Class 6 consists of the Convertible Note Claims against Acquisitions.

**Treatment**:

(i)      Each Holder of an Allowed Claim in Class 6, that has not validly exercised the Direct Claim Opt Out Right, on or as soon as practicable after the Effective Date, shall receive, in full satisfaction, release, settlement, and discharge of such Claims, its *pro rata* share of the Class C Interests;

(ii)      A validly exercised Direct Claim Opt Out Right by a holder of a Convertible Note Claim will automatically and immediately prior to the Effective Date, without further action on the part of the Debtors, or further order of the Bankruptcy Court, cause and effect the exercise of the Conversion Right; and

(iii)      Each Holder of a Convertible Note Claim, that has validly exercised the Direct Claim Opt Out Right, shall be treated as holding an Interest in Class 8.

**Voting**: Claims in Class 6 are Impaired. Each Holder of an Allowed Convertible Note Claim, that has not validly exercised the Direct Claim Opt Out Right, shall be entitled to vote to accept or reject this Plan. Each Holder of an Allowed Convertible Note Claim, that has validly exercised the Direct Claim Opt Out Right, shall not be entitled to vote to accept or reject this Plan.

**ALL HOLDERS OF CONVERTIBLE NOTE CLAIMS WHO DO NOT OPT OUT OF THE DIRECT CAUSES OF ACTION ASSIGNMENT, ON A TIMELY SUBMITTED BALLOT, SHALL BE DEEMED TO HAVE EXPRESSLY, UNCONDITIONALLY, IRREVOCABLY, GENERALLY, INDIVIDUALLY, AND COLLECTIVELY CONSENTED TO THE DIRECT CAUSES OF ACTION ASSIGNMENT TO THE CREDITOR TRUST.**

**ALL HOLDERS OF CONVERTIBLE NOTE CLAIMS WHO DO NOT OPT OUT OF THE DIRECT CAUSES OF ACTION ASSIGNMENT, ON A TIMELY SUBMITTED BALLOT, SHALL EXECUTE ALL DOCUMENTS REASONABLE REQUESTED BY THE CREDITOR TRUSTEE TO IMPLEMENT THE DIRECT CAUSES OF ACTION ASSIGNMENT.**

### 4.07  Custom Golf Interests

**Classification**: Class 7 consists of all Interests in Custom Golf.

**Treatment**: On the Effective Date, all Interests in Custom Golf shall be extinguished, and owners thereof shall receive no distribution on account of such Interests.

**Voting**: Interests in Class 7 are Impaired. Each holder of a Custom Golf Interest shall be deemed to reject the Plan under Bankruptcy Code Section 1126(g) and therefore shall not be entitled to vote to accept or reject the Plan.

### 4.08  LLC Interests

**Classification**: Class 8 consists of all Interests in the LLCs, including those interest of Holders of Convertible Note Claims that have validly exercised the Direct Claim Opt Out Right.

**Treatment**: On the Effective Date, all Interests in the LLCs, other than Interests in WGP, shall be extinguished and owners thereof shall receive no distribution on account of such Interests. Notwithstanding the foregoing, Allowed Investment Claims shall receive the treatment provided in Section 4.05.

**Voting**: Interests in Class 8 are Impaired. Each holder of an Allowed Interest shall be deemed to reject the Plan under Bankruptcy Code Section 1126(g) and therefore shall not be entitled to vote to accept or reject the Plan.

### 4.09  WGP Investors

WGP Investors, that have not validly exercised the WGP Opt Out Right: (a) will be treated pursuant to Section 4.05; and (b) agree that on and after the Effective Date he/she/it will execute

all documents reasonable requested by the Creditor Trustee to implement the WGP Causes of Action Assignment and the WGP Investment Assignment.

**ALL WGP INVESTORS WHO DO NOT OPT OUT OF THE WGP CAUSES OF ACTION ASSIGNMENT AND THE WGP INVESTMENT ASSIGNMENT, ON A TIMELY SUBMITTED BALLOT, SHALL BE DEEMED TO HAVE EXPRESSLY, UNCONDITIONALLY, IRREVOCABLY, GENERALLY, INDIVIDUALLY, AND COLLECTIVELY CONSENTED TO THE WGP CAUSES OF ACTION ASSIGNMENT AND THE WGP INVESTMENT ASSIGNMENT TO THE CREDITOR TRUST.**

**ALL WGP INVESTORS WHO DO NOT OPT OUT OF THE DIRECT CAUSES OF ACTION ASSIGNMENT, ON A TIMELY SUBMITTED BALLOT, SHALL EXECUTE ALL DOCUMENTS REASONABLE REQUESTED BY THE CREDITOR TRUSTEE TO IMPLEMENT THE DIRECT CAUSES OF ACTION ASSIGNMENT.**

WGP Investors, that have validly exercised the WGP Opt Out Right: (a) will not receive any distribution pursuant to the Plan, including Class B Interests; and (b) will be not be entitled to vote on the Plan.

**SECTION 5**
**MEANS FOR IMPLEMENTATION OF THE PLAN AND POST EFFECTIVE DATE GOVERNANCE**

**5.01  Date of Plan Distributions on Account of Allowed Claims**

Except as otherwise specifically provided herein, any Plan Distributions and delivery to be made under this Plan shall be made on the Effective Date or as soon as practicable thereafter.  In the event that any payment or act under this Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day but shall be deemed to have been completed as of the required date.

**5.02  Sources of Cash for Plan Distributions**

Except as otherwise specifically provided herein or in the Confirmation Order, all Cash required for the payments to be made hereunder shall be obtained from the Reorganized Debtors, the Exit Facility, and/or the monetization, by the Reorganized Debtors of their assets, or by the Creditor Trustee of the Trust Assets.

**5.03  Operations Prior to the Effective Date**

During the period from entry of the Confirmation Order until the Effective Date, the Debtors may continue to operate their businesses as debtors in possession, subject to all applicable orders of the Bankruptcy Court, the Bankruptcy Code, and any limitations set forth herein or in the Confirmation Order.

**5.04  Issuance of New Custom Golf Stock**

On or as soon as practicable after the Effective Date, Reorganized Custom Golf is authorized to issue or cause to be issued the New Custom Golf Stock in accordance with the terms of this Plan and the Organizational Documents, without the need for any further corporate action. All of the New Custom Golf Stock issuable under the Plan when so issued, shall be duly authorized, validly issued, fully paid, and non-assessable, and deemed not to have been issued in violation of any preemptive rights, rights of first refusal, or similar rights or any applicable law.

All of the New Custom Golf Stock shall be issued to the Creditor Trust.

Upon issuance, (i) the New Custom Golf Stock shall not be registered under the Securities Act and shall not be listed for public trading on any securities exchange, and (ii) none of the Reorganized Debtors will be a reporting company under the Exchange Act. The distribution of New Custom Golf Stock pursuant to the Plan may be made by delivery of one or more certificates representing such New Custom Golf Stock as described herein, by means of book-entry registration on the books of the transfer agent for shares of New Custom Golf Stock or by means of book-entry exchange through the facilities of a transfer agent satisfactory to the Reorganized Debtors and the Trustee of the Creditor Trust in accordance with the customary practices of such agent, as and to the extent practicable.

**5.05  Formation of and Issuance of Membership Interests in Op.Co. and Prop.Co.**

On or as soon as practicable after the Effective Date, the New CEO, is authorized to form, under the laws of the State of Texas, the limited liability companies of Op.Co. and Prop.Co., and shall issue or cause to be issued the Op.Co. Membership Interests and the Prop.Co. Membership Interests therein, in accordance with the terms of this Plan and the Organizational Documents, without the need for any further corporate or member action. All of the Op.Co. Membership Interests and the Prop.Co. Membership Interests, issuable under the Plan when so issued shall be duly authorized, validly issued, fully paid, and non-assessable, and deemed not to have been issued in violation of any preemptive rights, rights of first refusal, or similar rights or any applicable law.

In accordance with the Organizational Documents of Op.Co. and Prop.Co., each shall be managed by a Board of Managers, consisting of the same individuals that constitute the Custom Golf Board.

All of the Op.Co. Membership Interests and the Prop.Co. Membership Interests shall be issued to the Creditor Trust.

Upon issuance, (i) the Op.Co. Membership Interests and the Prop.Co. Membership Interests shall not be registered under the Securities Act and shall not be listed for public trading on any securities exchange, and (ii) none of the Reorganized Debtors will be a reporting company under the Exchange Act. The distribution of the Op.Co. Membership Interests and the Prop.Co. Membership Interests pursuant to the Plan may be made by delivery of one or more certificates representing such Op.Co. Membership Interests and Prop.Co. Membership Interests as described herein, by means of book-entry registration on the books of the transfer agent for Op.Co. and Prop.Co. or by means of book-entry exchange through the facilities of a transfer agent satisfactory to the Reorganized Debtors and the Trustee of the Creditor Trust in accordance with the customary practices of such agent, as and to the extent practicable.

59217/0001-19561041v3

## 5.06  Exemption from Registration

Pursuant to Bankruptcy Code Section 1145, the issuance of any securities under this Plan, including the New Custom Golf Stock, the Op.Co. Membership Interests and the Prop.Co. Membership Interests, shall be exempt from, among other things, the registration and prospectus delivery requirements of Section 5 of the Securities Act, and any other applicable securities laws under Bankruptcy Code Section 1145, or such other exemption as may be available from any applicable registration requirements.

## 5.07  Real Property Title Records

On or as soon as practicable after the Effective Date, the Reorganized Debtors are authorized, without further order of the Bankruptcy Court, to take all actions as may be necessary or appropriate to effect any transaction necessary to transfer or record the Real Property Title Records so that all such Real Property Title Records confirm that the title owner of the Real Property, as may be subject to Pre-Petition Secured Claims, is Prop.Co.

Pursuant to Bankruptcy Code Section 1146(a), the transfers required effectuating the forgoing paragraph with respect to the Real Property Title Records may not be taxed under any law imposing a stamp tax or similar tax, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

Confirmation of the Plan shall constitute a finding of the Bankruptcy Court that the Real Property was, as of the First Petition Date, property of one of the Debtors.

## 5.08  Restructuring Transactions

On or as soon as practicable after the Effective Date, the Reorganized Debtors are authorized, without further order of the Bankruptcy Court, to take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Restructuring Transactions under and in connection with this Plan and/or the Exit Facility, including, without limitation: the execution and delivery of all appropriate agreements or other documents of merger, consolidation, restructuring, conversion, disposition, transfer, dissolution or liquidation containing terms that are consistent with the terms of this Plan, and that satisfy the requirements of applicable law and any other terms to which the applicable Entities may agree, including, without limitation: (a) the Exit Facility; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of this Plan and having other terms for which the applicable parties agree; (c) the execution and recordation, as necessary, of any and all documents necessary to transfer Title Records to all Real Property, to Prop.Co.; (d) rejection or assumption, as applicable, of executory contracts and unexpired leases; (e) the filing and/or execution of appropriate limited liability company agreements, certificates or articles of incorporation or organization, reincorporation, merger, consolidation, conversion or dissolution pursuant to applicable state law; (f) the issuance of New Custom Golf Stock; (g) the consummation of the transactions contemplated by the Exit Facility Documentation, and the execution thereof;

30

(h) the formation of and the issuance of the Op.Co. Membership Interests and the Prop.Co. Membership Interests; and (i) all other actions that the Reorganized Debtors determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law.

**5.09  Exit Facility**

On or as soon as practicable after the Effective Date, Op.Co. and Prop.Co. are authorized, without the need for any further corporate or limited liability company action, to enter into the Exit Facility and any ancillary documents necessary or appropriate to satisfy the conditions to effectiveness of the Plan. The Exit Facility may be secured by Liens on, up to and including substantially all of the assets of Op.Co. and Prop.Co., junior to the Allowed Prepetition Secured Claims, as applicable.

The Exit Facility Documentation shall constitute legal, valid, binding, and authorized obligations of Op.Co. and Prop.Co., enforceable in accordance with their terms. The financial accommodations to be extended pursuant to the Exit Facility Documentation shall be deemed to have been extended, in good faith, for legitimate business purposes, shall not be subject to avoidance, recharacterization, or subordination (including equitable subordination) for any purposes whatsoever, and shall not constitute preferential transfers, fraudulent conveyances, or other voidable transfers under the Bankruptcy Code or any other applicable non-bankruptcy law. On the Effective Date, all of the Liens and security interests to be granted in accordance with the Exit Facility Documentation: (a) shall be legal, binding, and enforceable Liens on, and security interests in, the collateral granted thereunder in accordance with the terms of the Exit Facility Documentation; (b) shall be deemed automatically perfected on the Effective Date, subject only to such Liens and security interests as may be permitted under the Exit Facility Documentation; and (c) shall not be subject to avoidance, recharacterization, or subordination (including equitable subordination) for any purposes whatsoever and shall not constitute preferential transfers, fraudulent conveyances, or other voidable transfers under the Bankruptcy Code or any applicable non-bankruptcy law. Op.Co. and Prop.Co. and the Persons or Entities granting such Liens and security interests are authorized to make all filings and recordings, and to obtain all governmental approvals and consents necessary to establish and perfect, or to evidence the perfection of, such Liens and security interests under the provisions of the applicable state, provincial, federal, or other law that would be applicable in the absence of the Plan and the Confirmation Order (it being understood that perfection shall occur automatically by virtue of the entry of the Confirmation Order, and any such filings, recordings, approvals, and consents shall not be required), and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such Liens and security interests to third parties. To the extent that any holder of a Secured Claim that has been satisfied or discharged in full pursuant to the Plan, or any agent for such holder, has filed or recorded publicly any Liens and/or security interests to secure such holder's Secured Claim, then as soon as practicable on or after the Effective Date such holder (or the agent for such holder) shall take any and all steps requested by the Debtors or the Reorganized Debtors that are necessary to cancel and/or extinguish such Liens and/or security interests.

**5.10 Cancellation of Certain Indebtedness, Agreements, and Existing Securities**

On or as soon as practicable after the Effective Date, except for the purposes of evidencing a right to a distribution under this Plan, and except as otherwise specifically provided for in the Plan: (a) the Convertible Notes; (b) the Investor Claims; (c) the Pro Rata Notes; (d) the Custom Golf Guaranty; (e) the Custom Golf Interests; (f) the LLC Interests, other than the WGP Interests; (g) all membership interests or stock interests, including warrants and any certificate or other instrument or document directly or indirectly evidencing, convertible into, or creating any warrants, membership interest, stock or other Interest in any of the Debtors as of immediately prior to the Effective Date; (h) all registration rights, preemptive rights, rights of first refusal, rights of first offer, co-sale rights, and other investor rights governing or relating to any of the indebtedness, obligations, membership interests, stock or other items described in any of clauses (a) or (g) above; and (i) all obligations and liabilities arising under, related to, or in connection with, any of the items described in any of clauses (a)-(h) above, in any such case, shall be deemed automatically extinguished, cancelled and of no further force and effect, without any further act, or action under any applicable agreement, law, regulation, order or rule, and the Debtors and the Reorganized Debtors shall not have any continuing obligations thereunder or with respect thereto; and the obligations of any of the Debtors and the Reorganized Debtors pursuant, relating, or pertaining to any agreements, indentures, purchase agreements, certificates of incorporation, certificates of formation, by-laws, limited liability company agreements or similar documents governing or evidencing any of the items described in clauses (a)-(i) above shall be released and discharged; and the holder of or parties to, or beneficiaries of, any of the items described in clauses (a)-(i) above, will have no rights arising from or relating to, and will not be entitled to the benefits of, any such items or the cancellation thereof, except the rights expressly provided for pursuant to this Plan. For the avoidance of doubt, nothing in this <u>Section 5.10</u> shall affect the discharge of or result in any obligation, liability, or expense of the Debtors or the Reorganized Debtors, or affect the discharge of Claims or Interests pursuant to the Bankruptcy Code, the Confirmation Order, or the Plan, or result in any additional obligation, expense, or liability of the Debtors or the Reorganized Debtors; *provided*, *further*, that nothing in this <u>Section 5.10</u> shall effect a cancellation of any New Custom Golf Stock, Op.Co. Membership Interests, or the Prop.Co. Membership Interests.

Upon the payment or other satisfaction of an Allowed Other Secured Claim, the Holder of such Allowed Other Secured Claim shall deliver to the Reorganized Debtors any collateral or other property of the Debtors held by such Holder, and any termination statements, instruments of satisfactions, or releases of all security interests with respect to its Allowed Other Secured Claim that may be required in order to terminate any related financing statements, mortgages, mechanic's liens or *lis pendens*.

**5.11 Intercompany Claims, Custom Golf Guaranty, and Other Guaranty Claims**

On or as soon as practicable after the Effective Date: (a) all Intercompany Claims; (b) all Intercompany Interests; (c) the Custom Golf Guaranty; and (d) any and all Guaranty Claims shall be deemed automatically extinguished, cancelled, and of no further force and effect without any further act or action under any applicable agreement, law, regulation, order or rule, and the Debtors and the Reorganized Debtors shall not have any continuing obligations thereunder or with respect thereto.  The obligations of any of the Debtors and the Reorganized Debtors pursuant, relating, or pertaining to any agreements, indentures, purchase agreements, certificates of incorporation, certificates of formation, by-laws, limited liability company agreements or similar documents governing, or evidencing any of the items described in clauses (a)-(d) above shall be released and discharged. The holder of, parties to, or beneficiaries of, any of the items described in clauses (a)-(d) above, will have no rights arising from or relating to, and will not be entitled to the benefits of, any such items or the cancellation thereof, except the rights expressly provided for pursuant to this Plan.

**5.12 Dissolution of LLCs and Westwind, Continued Corporate Existence, and Vesting of Assets**

The LLCs, other than WGP, and Westwind, shall be deemed dissolved for all purposes as and subject to the occurrence of the Effective Date without the necessity of any other or further actions to be taken by or on behalf of the Debtors or payments to be made in connection therewith; *provided, however*, that the LLCs, other than WGP, and Westwind, will file with the Office of the Secretary of State for their state of formation a certificate of dissolution which may be executed by the New CEO, or the Creditor Trustee, without the need for further order of the Bankruptcy Court or approval of the Members of the LLCs. From and after the Effective Date, the LLCs, other than WGP, and Westwind, shall not be required to file any document, or take any other action, to withdraw the LLCs business operations from any states in which they previously conducted business. All property of LLCs and Westwind, to be retained under the Plan shall be transferred on the Effective Date, without the necessity of any other or further action, to Op.Co., Prop.Co., or Reorganized Custom Golf, as determined by the Creditor Trustee.  Not by limitation, but for clarity, and as to be provided in, *inter alia*, the Operating Documents, on and after the Effective Date: (i) all of the title to all Real Property, and personal property of the LLCs and Westwind, will be in the name of Prop.Co.; (ii) Op.Co. shall manage the operations of the Real Property, and the personal property held by Prop.Co., and will be the counter party to all Assumed Executory Contracts in connection with the operations of the Real Property; (iii) Custom Golf will own and operate the golf club manufacturing and sales business; and (iv) all assets of Westwind and the Nocona Note will be transferred to Prop.Co..

Except as otherwise provided herein, Custom Golf, Op.Co. and Prop.Co., will, as the Reorganized Debtors, continue to exist after the Effective Date as separate legal entities, with all of the powers of such legal entity, in accordance with the applicable laws of the respective jurisdictions in which they are incorporated or organized and pursuant to such Reorganized Debtors' Organizational Documents and without prejudice to any right to alter or terminate such existence (whether by merger, dissolution or otherwise) under applicable law. On or after the Effective Date, each Reorganized Debtor, in its sole and exclusive discretion, may take such action as permitted by applicable law and such Reorganized Debtors' Organizational Documents, as such Reorganized

33

Debtor may determine is reasonable and appropriate, including, causing: (i) a Reorganized Debtor to be merged into another Reorganized Debtor, or its subsidiary and/or Affiliate; (ii) a Reorganized Debtor to be dissolved; (iii) the legal name of a Reorganized Debtor to be changed; (iv) any Reorganized Debtor to transfer any of its assets to a wholly owned and newly created subsidiary; (v) a Reorganized Debtor to reorganize under the laws of another jurisdiction; or (vi) the closure of a Reorganized Debtors' case on the Effective Date or any time thereafter.

Except as otherwise provided herein, on the Effective Date, all property of each Debtor's Estate, including any property held or acquired by each Debtor or Reorganized Debtor under the Plan or otherwise, will vest in such Reorganized Debtors free and clear of all Claims, Liens, charges, other encumbrances, Interests, and other equity interests, except for the Liens and Claims established under the Plan or Liens and Claims that continue; *provided that* nothing in this Section 5 shall limit the ability under the Bankruptcy Code of any party-in-interest to object to any Claim prior to the Claims Objection Deadline unless otherwise ordered by the Bankruptcy Court.

On and after the Effective Date, each Reorganized Debtor may operate its business and may use, acquire, and dispose of property and maintain, prosecute, abandon, compromise, settle or otherwise dispose any Causes of Action, motions, adversary proceedings, or other proceedings commenced prior to or subsequent to the Effective Date, (other than the Assigned Estate Claims) without supervision or approval by the Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, subject only to those restrictions expressly imposed by the Plan or the Confirmation Order as well as the documents and instruments executed and delivered in connection therewith, including the documents, exhibits, instruments, and other materials comprising the Plan Supplement. Without limiting the foregoing, the Reorganized Debtors may pay the charges that they incur from and after the Effective Date for disbursements, expenses, or related support services (including fees relating to the preparation of Professional fee applications) without application to, or the approval of, the Bankruptcy Court.

## 5.13 Retention and Assignment of Causes of Action

As of the Effective Date, all Causes of Action, except the Assigned Estate Claims, shall vest exclusively in the Reorganized Debtors. Notwithstanding the forgoing, the Reorganized Debtors may, without further order of the Bankruptcy Court, assign, in any fashion, any Cause of Action to the Creditor Trust, in which event the Creditor Trust shall be vested with full title to such Cause of Action, as if it was an Assigned Estate Claim, as of the Effective Date.

As of the Effective Date, all Assigned Estate Claims shall vest exclusively in the Creditor Trust.

As of the Effective Date all of Direct Causes of Action (save for those owned by LLC Investors or Convertible Noteholders that have properly exercised the Direct Opt Out Right), and the WGP Causes of Actions (save for those owned by WGP Investors that have properly exercised the WGP Opt Out Right) shall vest exclusively in the Creditor Trust.

## 5.14 Preservation of Causes of Action

In accordance with Bankruptcy Code Section 1123(b), and except as expressly provided in Section 13 herein, the Reorganized Debtors shall retain all Causes of Action (other than the Assigned Estate Claims, which shall vest in and be retained by the Creditor Trust), if any, of the Debtors,

34

including, those provided in the Plan Supplement. Nothing contained in this Plan or the Confirmation Order shall be deemed a waiver or relinquishment of any claim, Cause of Action, Avoidance Action, right of setoff, or other legal, equitable, or remedial defense of any Debtor that is not specifically waived or relinquished by this Plan. The Reorganized Debtors, and, with respect to the Assigned Estate Claims, the Creditor Trustee shall have, retain, reserve, and be entitled to assert, all such claims, Causes of Action, rights of setoff, and other legal or equitable defenses that any Debtor had immediately before the Effective Date as fully as if these Chapter 11 Cases had not been commenced, and all of the Reorganized Debtors' legal and equitable rights respecting any claim that are not specifically waived or relinquished by this Plan may be asserted by any of the Reorganized Debtors or the Creditor Trust (with respect to the Assigned Estate Claims) after the Effective Date to the same extent as if these Chapter 11 Cases had not been commenced. No Person may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Cause of Action against them as any indication that the Debtors, the Reorganized Debtors, or Creditor Trustee, as applicable, will not pursue any and all available Causes of Action against such Person. The Debtors, the Reorganized Debtors, or the Creditor Trustee, as applicable, expressly reserve all rights to prosecute any and all Causes of Action, motion, adversary proceeding or other proceeding, commenced prior to or after the Effective Date, against any Person, subject to the terms of the Plan. From and after the Effective Date, the Reorganized Debtors and, with respect to the Assigned Estate Actions, the Creditor Trustee, shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any Cause of Action and to decline to do any of the foregoing without further notice to or action, order, or approval of the Court. The Reorganized Debtors, and the Creditor Trustee, are each deemed representatives of the Estates for the purpose of prosecuting any claim, Cause of Action, Avoidance Action, and any objections to Claims, if any, pursuant to 11 U.S.C. Section 1123(b)(3)(B).

## 5.15  Creditor Trust

(1)  **Purpose**. The Creditor Trust shall be established pursuant to this Plan and become effective for the benefit of the Creditor Trust Beneficiaries on the Effective Date for the primary purpose of (a) pursuing the Assigned Estate Claims, (b) maximizing the value of and monetizing Reorganized Custom Golf's equity, (c) maximizing the value of and monetizing the Real Property and personal property held by Prop.Co., and (d) distributing the net proceeds of (a), (b) and (c) to the Creditor Trust Beneficiaries pursuant to this Plan and the Creditor Trust Agreement with no objective to continue or engage in the conduct of a trade or business.

(2)  **Governance**. All Creditor Trust governance issues shall be determined by the Committee and the Debtors, and be included in the Creditor Trust Agreement, to be included in the Plan Supplement. The Plan and the Creditor Trust Agreement shall govern the management and administration of the Creditor Trust and the respective rights, powers, and obligations of the Creditor Trustee and the Creditor Trust Beneficiaries, including the Creditor Trustee's power to take the reasonable actions necessary or appropriate to fulfill the purpose of the Plan, including (a) filing, prosecuting, settling, or otherwise resolving any objection to Investor Claims, Convertible Note Claims or Claims of Excluded Parties, as set forth in the Creditor Trust Agreement; (b) retaining and paying professionals as necessary to fulfill its duties under the Plan; (c) evaluating, filing, litigating, settling, or otherwise pursuing any Assigned Estate Claims; (d) abandoning any property of the Creditor Trust that cannot be monetized, sold, or distributed economically; (e)

35

making interim and final distributions of the Creditor Trust Assets; (f) winding up the affairs of the Creditor Trust and dissolving it under applicable law; and (g) such other responsibilities as may be vested in the Creditor Trustee pursuant to the Plan, the Creditor Trust Agreement or a Bankruptcy Court order as may be necessary and proper to carry out the provisions of the Creditor Trust Agreement, but only to the extent consistent with this Plan. The Creditor Trust Agreement will be binding on all Creditor Trust Beneficiaries who shall be deemed to have executed the Creditor Trust Agreement as of the Effective Date.

(3)     **Trust Assets**.  On the Effective Date, the Creditor Trust Assets will be absolutely transferred and assigned to the Creditor Trust free and clear of all Liens, encumbrances, or interests of any kind. The Creditor Trustee, in the exercise of its reasonable discretion and in accordance with the Creditor Trust Agreement, shall not be obligated to pursue any Assigned Estate Claims. On, or as soon as practical after the Effective Date, the Reorganized Debtors, shall collectively, transfer to the Creditor Trust, the Trust Contribution Funds.

(4)     **Right to Enforce & Pursue**.  In accordance with Bankruptcy Code Section 1123(b), the Creditor Trust shall retain and may enforce all of the Debtors' rights to commence and pursue, as appropriate, any and all of the Assigned Estate Claims, and the Creditor Trust's rights to commence, prosecute, or settle such Assigned Estate Claims shall be preserved notwithstanding the occurrence of the Effective Date. The Creditor Trust may pursue such Assigned Estate Claims, as appropriate, in accordance with the Creditor Trust Agreement. No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Assigned Estate Claim as any indication that the Creditor Trust does not hold or will not pursue any and all Assigned Estate Claims. The Creditor Trust expressly reserves all rights to prosecute any and all such Assigned Estate Claims against any Entity.

(5)     **Cooperation among Reorganized Debtors and Creditor Trust**.  The Reorganized Debtors shall provide reasonable and timely cooperation to effectuate the provisions of the Plan as the Creditor Trustee might otherwise reasonably request. To the extent necessary for the Creditor Trustee to act in accordance with the terms of the Plan and Creditor Trust Agreement, all privileges shall be extended to the Creditor Trustee or shall remain with the Reorganized Debtors, as applicable, without waiver or release. The Creditor Trustee shall be the beneficiary of all privileges and be entitled to assert all privileges but only to the extent such privileges relate to the Assigned Estate Claims. No privilege shall be waived by disclosure to the Creditor Trustee of the Debtors' documents, information, or communications subject to attorney-client privileges, work product protections, or immunities or protections from disclosure held by the any of the Debtors, whether collectively or individually. For the avoidance of doubt, the Creditor Trustee shall not have any rights or ability to waive any privilege of the Reorganized Debtors, either intentionally or inadvertently.  In any and all litigation pursued by the Creditor Trust, the Creditor Trust and the Creditor Trustee shall be presumed to hold authentic documents, to the extent such documents are received from the Debtors or the Reorganized Debtors.

(6)     **Creditor Trustee and Professionals**.  As of the Effective Date and thereafter, and to the fullest extent permitted by applicable law, the Creditor Trustee and its professionals, acting in such capacity, shall not have, nor incur any liability for, any claim, cause of action, or other liability solely for any act taken or omitted in connection with, related to, or arising out of the performance of any act, duty, responsibility, or omission arising under the Plan; *provided,*

36

*however*, that the foregoing shall not affect the liability of the Creditor Trustee or its professionals that otherwise would result from any act or omission, to the extent that such act or omission is determined by a Final Order to have constituted actual fraud, willful misconduct, or gross negligence.

(7)    **Tax Structure**.  The Creditor Trust shall be structured to qualify as a "liquidating trust" within the meaning of Treasury Regulations Section 301.7701-4(d) and in compliance with Revenue Procedure 94-45, 1994-2 C.B. 684, and, thus, as a "grantor trust" within the meaning of Sections 671 through 679 of the Tax Code to the holders of General Unsecured Claims, Investment Claims and/or Convertible Note Claims, consistent with the terms of the Plan; *provided, however*, that the Creditor Trustee shall elect under Treasury Regulations Section 1.468B-9(c)(2)(ii) to treat the Creditor Trust Disputed Claims Reserve as a "disputed ownership fund." Accordingly, other than the portion of the Creditor Trust Assets comprising the Creditor Trust Disputed Claims Reserve, holders of Allowed Investment Claims, Allowed Convertible Note Claims and/or Allowed General Unsecured Claims, shall be treated for U.S. federal income tax purposes, (i) as direct recipients of an undivided interest in the assets transferred to the Creditor Trust and as having immediately contributed such assets to the Creditor Trust, and (ii) thereafter, as the grantors and deemed owners of the Creditor Trust, and thus, the direct owners of an undivided interest in the assets held by the Creditor Trust. All parties (including the Creditor Trustee and holders of Allowed Investment Claims, Allowed Convertible Note Claims and Allowed General Unsecured Claims) shall report consistent with the valuation of the assets transferred to the Creditor Trust as established by the Reorganized Debtors or their designee. The Creditor Trustee shall be responsible for filing information on behalf of the Creditor Trust as grantor trust pursuant to Treasury Regulation Section 1.671-4(a) or as a disputed ownership fund (as applicable).

(8)    **No Transfer of Interests in Creditor Trust**.  The beneficial interests in the Creditor Trust shall not be transferable or assignable except by will, intestate, succession, court order, or operation of law; *provided, however*, that a holder of such interests may abandon or otherwise transfer such interests back to the Creditor Trust in its sole discretion.

## 5.16  Distributions to Creditor Trust Beneficiaries

As more fully provided in the Organizational Documents, each Reorganized Debtor shall make distributions of excess funds that such Reorganized Debtor's relevant governing body have determined are distributable to its equity holder (the Creditor Trust) pursuant to its Organizational Documents. As more fully provided in the Creditor Trust Agreement, to be filed as part of the Plan Supplement, distributions by the Creditor Trustee, from the Creditor Trust Assets, shall be made to the Creditor Trust Beneficiaries (distributions to Holders of Allowed Priority Tax Claims are as provided in Section 4.01), as follows:

(a)    Holders of Class A Interests shall receive, on a *pro rata* basis, an aggregate amount equal to 10% of the Determined Distribution Amount (the "**Class A Distribution Amount**"), until such Holders have received 100% of the amount of the Allowed Class 4 Claims, without interest;

(b)    Holders of Class B Interests and Class C Interests shall share, on a *pro rata* basis, in the Distributions of the Determined Distribution Amount, less the Class A Distribution Amount. As a consequence, the Holders of Class B Interests and Class C Interests shall share 90% of

37

Deemed Distribution Amount on a *pro rata* basis, until Class A Interests have received 100% of the amount of the Allowed Class 4 Claims, without interest, at which point they shall share 100% of the Deemed Distribution Amount on a *pro rata* basis;

(c)     The Creditor Trustee shall make provision for payment of the Holders of Allowed Priority Tax Claims (other than Priority Tax Claims arising pursuant to Bankruptcy Code Section 507(a)(8)(B)), before its calculation of the Determined Distribution Amount, such that the treatment of Holders of Allowed Priority Tax Claims is reasonably anticipated.

## 5.17  Claims Incurred After the Effective Date

Claims incurred by the Debtors after the Effective Date may be paid by the Reorganized Debtors in the ordinary course of business and without application for or Court approval, subject to any agreements with such Holders of a Claim and applicable law.

## 5.18  Corporate Action

Each of the matters provided for by the Plan involving the corporate or limited liability company structure of the Debtors or the Reorganized Debtors, and any action under the Plan to be taken by of required or the Debtors or of the Reorganized Debtors, whether taken prior to or as of the Effective Date, including, without limitation: (a) the adoption and filing of the Organizational Documents for each of the Reorganized Debtors; (b) the authorization, issuance, and distribution of New Custom Golf Stock, the Op.Co. Membership Interests, and the Prop.Co. Membership Interests, and any other securities and instruments; (c) the adoption, assumption, assignment, or rejection, as applicable, of executory contracts; (d) the selection of officers or directors/managers; and (e) the entry into the Exit Facility, and the execution and delivery of the Exit Facility Documentation with respect thereto, and implementation of the Restructuring Transactions shall each be authorized and approved in all respects, without any requirement of further action by any of the Debtors' or Reorganized Debtors' boards of directors or managers, as applicable, or security holders.

The Debtors, the Reorganized Debtors, and the Disbursing Agent, as applicable, shall be authorized to execute, deliver, file, and record such documents (including the Plan Documents), contracts, instruments, releases and other agreements and take such other action as may be necessary to effectuate and further evidence the terms and conditions of the Plan without the necessity of any further Bankruptcy Court, corporate, board, or security holder approval or action. In addition, the selection of the Persons who will serve as the initial directors, officers and managers of the Reorganized Debtors as of the Effective Date shall be deemed to have occurred and be effective on and after the Effective Date without any requirement of further action by the Debtors' board of directors, board of managers, or stockholders of the applicable Debtor or Reorganized Debtor.

The authorizations and approvals contemplated by this Section 5.18 shall be effective notwithstanding any requirements under non-bankruptcy law.

38

## 5.19 Organizational Documents

On the Effective Date, the Organizational Documents of the Reorganized Debtors shall be deemed, acceptable for filing with appropriate state authorities, as necessary, and, as applicable amended and restated in substantially the forms set forth in the Plan Supplement, without any further action by the directors, stockholders or members of the Debtors or the Reorganized Debtors. The amended and restated Organizational Documents will, among other things, contain appropriate provisions prohibiting the issuance of nonvoting equity securities to the extent required by Bankruptcy Code Section 1123(a)(6). On the Effective Date, or as soon as practicable thereafter, the Debtors or the Reorganized Debtors will, if required by applicable state law, file with the Secretary of State of the appropriate jurisdiction the new, amended and restated Organizational Documents. After the Effective Date, the Reorganized Debtors may amend and/or restate their respective Organizational Documents and other constituent documents as permitted by the laws of their respective states of formation and their respective Organizational Documents.

## 5.20 Board of Directors / Managers of Reorganized Debtors

On the Effective Date, each of the Reorganized Debtors shall be managed by and under the direction of the Custom Golf Board, as may be constituted from time to time pursuant to the Organizational Documents of each of the Reorganized Debtors and applicable non-bankruptcy law. The Custom Golf Board shall have full power and authority to manage the business and affairs of the respective Reorganized Debtors.

## 5.21 Effectuating Documents

The chairman of the board of directors, president, chief financial officer, manager, or any other appropriate officer of the Debtors or, after the Effective Date, the Reorganized Debtors shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan. The secretary of the Debtors, or, after the Effective Date, of the Reorganized Debtors shall be authorized to certify or attest to any of the foregoing actions.

## 5.22 Exemption from Certain Transfer Taxes

Pursuant to Bankruptcy Code Section 1146(a), the issuance, transfer, or exchange of a security (including the New Custom Golf Stock, the Op.Co. Membership Interests, and the Prop.Co. Membership Interests), or the making or delivery of an instrument of transfer, including any transfers effected under this Plan (including the transfer of the Real Property Title Records), from the Debtors to the Reorganized Debtors or any other Person or Entity pursuant to this Plan, as applicable, may not be taxed under any law imposing a stamp tax or similar tax, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

## 5.23  Dissolution of Committee

The Committee shall be automatically dissolved on the Effective Date and, on or as soon as practicable after the Effective Date, each member (including each officer, director, employee or agent thereof) of the Committee and each Committee Professional shall be released and discharged from all rights, duties, responsibilities and obligations arising from, or related to, the Debtors, their membership on the Committee, the Plan or these Chapter 11 Cases, except with respect to any matters concerning any Administrative Expense Claims held or asserted by a Committee Professional or Committee Member.

## 5.24  Withholding and Reporting Requirements

In connection with the Plan and all instruments issued in connection therewith and distributions thereon, the Reorganized Debtors, the Disbursing Agent, and the Creditor Trustee, as applicable, shall comply with all withholding and reporting requirements imposed by any United States federal, state, local, or non-U.S. taxing authority and all distributions hereunder shall be subject to any such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Reorganized Debtors, the Disbursing Agent, and the Creditor Trustee, as applicable, shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distributions to be made under the Plan to generate sufficient funds to pay applicable withholding taxes and withholding distributions pending receipt of information necessary or appropriate to facilitate such distributions.

With respect to any Person from whom a tax identification number, certified tax identification number or other tax information required by law has not been received by the Reorganized Debtors, the Disbursing Agent or the Creditor Trustee, as applicable, within thirty (30) calendar days from the date of a request for the same (the "**Initial Request**"), the Reorganized Debtors, the Disbursing Agent, or the Creditor Trustee, as applicable, may, at its option, withhold the amount required to such Person and decline to make such distribution until the information is received. Failure of any Person to provide the information requested within six months of the Initial Request shall result in the forfeit of the affected distribution and the treatment of said distribution as Unclaimed Property, pursuant to Section 7.03.

## 5.25  Determination of Tax Filings and Taxes

For all taxable periods ending on or prior to, or including, the Effective Date, the Debtors and/or the Reorganized Debtors, shall prepare and file (or cause to be prepared and filed) on behalf of the Debtors all consolidated and or separate tax returns, reports, certificates, forms or similar statements or documents of the Debtors otherwise deems appropriate, including the filing of amended tax returns or requests for refunds.

The Reorganized Debtors, individually and/or collectively, are hereby appointed, pursuant to Bankruptcy Code Section 1123(b)(3)(B), to handle tax matters, including without limitation, the filing of all tax returns, and the handling of tax audits and proceedings, of the Debtors and the Reorganized Debtors. Without limiting the generality of the foregoing, if deemed necessary by a Debtor or a Reorganized Debtor, a Debtor or Reorganized Debtor shall (i) promptly execute or

40

cause to be executed and filed any tax returns or other tax filings, and (ii) shall execute on or prior to the Effective Date a power of attorney authorizing one or more Reorganized Debtors to correspond, sign, collect, negotiate, settle and administer tax payments and tax returns for any Debtor or any Reorganized Debtor.

Each of the Debtors shall cooperate fully with each other regarding the implementation of this Section 5.25 (including the execution of appropriate powers of attorney) and shall make available to the other as reasonably requested all information, records and documents relating to taxes governed by this Section 5.25 until the expiration of the applicable statute of limitations or extension thereof or at the conclusion of all audits, appeals or litigation with respect to such taxes.

The Debtors and/or the Reorganized Debtors shall have the right to request an expedited determination of the tax liability, if any, of the Debtors and/or the Reorganized Debtors under Bankruptcy Code Section 505(b) with respect to any tax returns filed, or to be filed, for any and all taxable periods ending after the Commencement Date through the Effective Date.

If a Debtor and/or a Reorganized Debtor receives a written notice from a taxing authority of any pending examination, claim, settlement, proposed adjustment or related matters with respect to taxes, it shall promptly notify the Reorganized Debtors in writing. The Reorganized Debtors shall have the sole right, at their expense, to control, conduct, compromise and settle any tax contest, audit or administrative or court proceeding relating to any liability for taxes of any of the Debtors and/or any of the Reorganized Debtors. With respect to any such proceeding and with respect to the preparation and filing of any tax returns of the Debtors, the Reorganized Debtors may act in their own self-interest and in the interest of their subsidiaries and affiliates, without regard to any adverse consequences to a Debtor.

To the extent permitted by law, the Debtors shall designate the Reorganized Debtors, or any one of them, as the "substitute agent" (within the meaning of Treasury Regulation Section 1.1502-77) for any of the Debtors in accordance with Treasury Regulation Section 1.1502-77, as amended or supplemented, and any comparable provision under state or local law, with respect to all taxable periods ending on or before, or including, the Effective Date.

The Reorganized Debtors shall be entitled to the entire amount of any refunds and credits (including interest thereon) with respect to or otherwise relating to any taxes of the any of the Debtors, including for any taxable period ending on or prior to, or including, the Effective Date.

## SECTION 6
## PLAN SETTLEMENT & CONSOLIDATED TREATMENT

As more fully provided in Section 13.01, the Plan is being proposed as a joint plan of reorganization for all of the Debtors. On the Effective Date only one Debtor, Custom Golf, as Reorganized Custom Golf will survive, all other Debtors will be dissolved. On the Effective Date, or as soon as practical thereafter, Op.Co. and Prop.Co. will have been formed and will hold all of the assets of the LLCs and of Westwind. Based on the foregoing, three entities will exist: Reorganized Custom Golf, Op.Co., and Prop.Co.. Reorganized Custom Golf will generally own and operate the custom golf club manufacturing and sales business; Op.Co. will operate the golf

course business; and Prop.Co. will own, market and sell the Real Property and related personal property, as deemed financial appropriate.

This Plan constitutes a compromise and settlement pursuant to Bankruptcy Rule 9019, with respect to all Claims against the Debtors and Interests in the Debtors, except to the extent of: (i) Direct Causes of Action assigned to the Creditor Trust, pursuant to the Direct Causes of Action Assignment; and (ii) WGP Causes of Action assigned to the Creditor Trust, pursuant to the WGP Causes of Action Assignment. The Plan compromises provide for the assignment of Direct Causes of Action and WGP Causes of Auction to the Creditor Trust but does not effect a release of either Direct Causes of Action or WGP Causes of Action against any Debtor or any third party. The effect of the compromise and settlement is that all Allowed Claims will share in a *waterfall* formula of the assets of all of the Debtors, and, to effectuate such sharing (a) all Real Property and personal property of the LLCs will be titled in the name of Prop.Co.; (b) all Assumed Executory Contracts and post-petition contracts of the LLCs will be titled in the name of Op.Co.; (c) all assets of Custom Golf will remain with Reorganized Custom Golf; (d) all guarantees of the Debtors of the obligations of any of the Debtors and any joint and several liability of any of the Debtors shall be eliminated; (e) each and every Claim of a Debtor held against another Debtor shall be deemed released, canceled, and terminated; and (d) each and every Claim and Interest against any Debtor shall be deemed filed against the consolidated Debtors and all Claims filed against more than one Debtor for the same liability shall be deemed one Claim against any obligation of the consolidated Debtors.

For avoidance of doubt, and notwithstanding anything to the contrary herein, all Assigned Estate Claims are preserved as they existed immediately before the Effective Date. All Causes of Action shall be accounted for on a consolidated basis. The deemed consolidation under this Plan shall not affect or impair any valid, perfected and unavoidable Lien to which the assets of any Debtors are subject in the absence of deemed consolidation under this Plan; *provided, however*, the deemed consolidation shall not cause any such Lien to secure any of Allowed Claims or Allowed Interests who assert identical Claims against or Interest in multiple Debtors shall be entitled to only a single satisfaction of such Claims or Interests.

The Disclosure Statement and the motion seeking confirmation of the Plan shall contain support for the Plan Settlement embodied in the Plan.

**SECTION 7**
**PROVISIONS GOVERNING DISTRIBUTIONS GENERALLY**

**7.01  Disbursing Agent**

Except as otherwise provided herein, all distributions under the Plan, including the distribution of the New Custom Golf Stock, the Op.Co. Membership Interests, and the Prop.Co. Membership Interests, shall be made by the Reorganized Debtors and/or the Disbursing Agent on the Effective Date or as soon as practicable thereafter. Distributions to the Creditor Trust Beneficiaries shall be made by the Creditor Trustee and/or the Disbursing Agent. To the extent the Disbursing Agent is the Reorganized Debtors or the Creditor Trustee or any affiliates thereof, the Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.

## 7.02  Method of Cash Distributions

Any Cash payment to be made pursuant to this Plan may be made by Cash, draft, check, wire transfer, or as otherwise required or provided in any relevant agreement or applicable law at the option of and in the sole discretion of the Debtors, the Reorganized Debtors or the Creditor Trustee, as applicable.

## 7.03  Delivery of Distributions

Plan Distributions shall be made at the Holder's last known address or at the address in any written notice of address change issued by a Holder.  Any notice of an address change of a Holder of a Claim, other than an Investor Claim or a Convertible Note Claim, must be made, in writing, to the Reorganized Debtors.  Any notice of an address change of Holder of an Investor Claim or a Convertible Note Claim must be made, in writing, to the Creditor Trustee.  If any Holder's Plan Distribution is returned as undeliverable, no further Plan Distributions to such Holder shall be made, unless and until the either the Reorganized Debtors or the Creditor Trustee, as applicable, is notified, in writing, of such Holder's then current address, at which time all missed Plan Distributions shall be made to such Holder without interest. Amounts in respect of undeliverable Plan Distributions made through the Disbursing Agent shall be returned to the Reorganized Debtors or Creditor Trustee, as applicable, until such Plan Distributions are claimed. All claims for undeliverable Plan Distributions must be made on or before the first anniversary of the Effective Date, after which date all Cash in respect of such forfeited Plan Distributions, including interest accrued thereon (the "**Unclaimed Property**"), if any, shall revert to the Reorganized Debtors, *provided, however*, that all Unclaimed distributions in respect of Creditor Trust Assets shall be returned to the Creditor Trust to be distributed in accordance with the terms of the Creditor Trust Agreement.

## 7.04  Failure to Negotiate Checks

Checks issued in respect of distributions under this Plan shall be null and void if not negotiated within sixty (60) calendar days after the date of issuance. The Disbursing Agent shall hold any amounts returned in respect of such non-negotiated checks. The Holder of an Allowed Claim with respect to which such check originally was issued shall make requests, in writing, for reissuance for any such check directly to the Disbursing Agent. All amounts represented by any voided check will be held until the later of one (1) year after (x) the Effective Date or (y) the date that a particular Claim is Allowed by Final Order, and all requests for reissuance by the Holder of the Allowed Claim in respect of a voided check are required to be made before such date. Thereafter, all such amounts shall be deemed to be Unclaimed Property, and all Claims in respect of void checks and the underlying distributions shall be forever barred, estopped and enjoined from assertion in any manner against the Reorganized Debtors, Creditor Trust and the Disbursing Agent, as applicable.

## 7.05  Allocation of Payments

In the case of distributions with respect to holders of Claims, the amount of any Cash and the fair market value of any other consideration received by the holder of such Claim will be allocable first to the principal amount of such Claim (as determined for federal income tax purposes) and then, to the extent of any excess, the remainder of the Claim.

**7.06  De Minimis Distributions**

At the election of the Trustee, no interim distributions of Cash from the Creditor Trust of less than twenty-five ($25.00) dollars shall be made to the Holder of any Claim on account of its Allowed Claim.

**7.07  Setoffs**

Except for any Claim that is Allowed in an amount set forth in this Plan, the Debtors, the Reorganized Debtors, or Creditor Trustee may, but shall not be required to, set off against any Claims and the payments or distributions to be made pursuant to this Plan in respect of such Claims, any and all debts, liabilities and claims of every type and nature whatsoever that the Debtors may have against the Holder of any such Claim. If the Debtors or Creditor Trustee do not setoff their claims, no waiver or release by the Debtors of any such claims shall be deemed to have occurred, and all such claims shall be reserved for and retained by the Reorganized Debtors, subject to the terms of the Plan.

**SECTION 8**
**EXECUTORY CONTRACTS, UNEXPIRED LEASES, AND OTHER AGREEMENTS**

**8.01  Assumption/Rejection**

All executory contracts and unexpired leases not expressly assumed shall be deemed rejected pursuant to the Plan. The Plan Supplement shall contain (a) a schedule of executory contracts and unexpired leases to be assumed by the Debtors, including proposed Cure Costs (the "**Assumed Contract Schedule**").  The Assumed Contract Schedule will also delineate which Reorganized Debtor will either remain as the counter party to each such executory contract or unexpired lease (with respect to Reorganized Custom Golf), or be assigned, in accordance with Section 8.03, such executory contract or unexpired lease (with respect to Op.Co. or Prop.Co.).

Counterparties to the contracts on the Assumed Contract Schedule shall have until the fourteenth (14th) day after the Effective Date to file an objection with the Bankruptcy Court with respect to the proposed Cure Costs or be forever barred from seeking any amounts exceeding the amounts on the Assumed Contract Schedule from the Debtors or the Reorganized Debtors and from filing any statutory lien against the Reorganized Debtors or their properties for such amounts. Unless there is a dispute as to Cure Costs, on the fourteenth (14th) day after the Effective Date, the executory contracts and unexpired leases identified in the Assumed Contract Schedule shall be assumed by the Debtors and vest in and be fully enforceable by the Reorganized Debtors or an Affiliate of the Reorganized Debtors, as designated by the Reorganized Debtors, in their sole discretion.  All executory contracts and unexpired leases not identified on the Assumed Contract Schedule, as may be amended, shall be deemed rejected as of the Effective Date.

The Debtors shall notify all counterparties to contracts on the Assumed Contract Schedule of the filing of such Schedule and shall provide notice of such Schedule on the Debtors' restructuring website available at https://www.donlinrecano.com/Clients/warrior/index and such notice shall be deemed good and sufficient notice for the purposes of Bankruptcy Code Section 365 and otherwise.

44

Notwithstanding the foregoing, the Debtors may alter, amend, modify or supplement the list of executory contracts or unexpired leases identified in the Assumed Contract Schedule at any time prior to the Effective Date by filing a revised Assumed Contract Schedule with the Bankruptcy Court. Counterparties to the contracts on the revised Assumed Contract Schedule shall have fourteen (14) calendar days from the Effective Date to file an objection with the Bankruptcy Court with respect to the proposed Cure Costs or be forever barred from seeking any amounts exceeding the amounts on the revised Assumed Contract Schedule from the Debtors or the Reorganized Debtors.

Any executory contract rejected by this provision of the Plan, may file a proof of claim in accordance with Section 8.06, which Claim shall be classified pursuant to the Plan, but shall not be entitled to any other or further Claim or relief from either the Debtors or the Reorganized Debtors.

## 8.02  Cure Costs

The monetary amounts by which each of the executory contracts and unexpired leases is in default and shall be satisfied, pursuant to Bankruptcy Code Section 365(b)(1), shall be the Cure Costs identified on the Assumed Contract Schedule; *provided, however*, if a counterparty to any of the executory contracts or unexpired leases identified on the Assumed Contract Schedule files with the Bankruptcy Court, and serves on the Debtors and their counsel, a written objection to the proposed Cure Cost prior to the Cure Cost Objection Deadline (as defined below), then the Cure Cost associated with such executory contract or unexpired lease will be determined as set forth below.

If an objection to a Cure Cost is timely filed with the Bankruptcy Court, then the Debtors or the Reorganized Debtors shall in good faith attempt to resolve the Cure Cost dispute. If the parties are unable to agree on a Cure Cost within ten (10) calendar days after the filing of an objection, then the Debtors or the Reorganized Debtors, as applicable, may request that the Bankruptcy Court establish the applicable Cure Cost.

The Debtors shall satisfy the Cure Costs of assumed executory contracts and unexpired leases in Cash by the latest of (i) the Effective Date (or as soon thereafter as is practicable), (ii) in the event of a dispute regarding the Cure Cost, within thirty (30) calendar days of the entry of an order of the Bankruptcy Court establishing such Cure Cost, or (iii) on such other terms as the parties to such executory contracts and unexpired leases may otherwise agree.

Notwithstanding the foregoing, in the event of a dispute regarding: (1) the ability of the Reorganized Debtors to provide "adequate assurance of future performance" (within the meaning of Bankruptcy Code Section 365) under the contract or lease to be assumed or (2) any other matter pertaining to assumption (each, an "**Assumption Dispute**"), the Cure Costs required by Bankruptcy Code Section 365(b)(1) shall be made following the entry of a Final Order resolving the Assumption Dispute and approving the assumption; *provided, however,* that in the event the Debtors or the Reorganized Debtors and the applicable non-Debtor party involved in any Assumption Dispute or any dispute regarding Cure Costs cannot otherwise consensually resolve such dispute, the Debtors or the Reorganized Debtors, as applicable, may reject the executory contract at issue pursuant to Bankruptcy Code Section 365 rather than paying the disputed Cure

45

Cost, by presenting a proposed order to the Bankruptcy Court for such rejection, without any other or further notice. In the event any executory contract is so rejected, the non-Debtor party thereto shall be entitled to file a Proof of Claim, in accordance with <u>Section 8.06</u>, which Claim shall be classified pursuant to the Plan, but shall not be entitled to any other or further Claim or relief from either the Debtors or the Reorganized Debtors.

Notwithstanding anything in the Plan to the contrary, any Proof of Claim for a rejected executory contract, shall be subject to all rights of the Debtors, the Reorganized Debtors or the Creditor Trustee, to object to such Proof of Claim, as provide in the Plan.

### 8.03  Assumed Executory Contracts and Unexpired Leases & Assignment

Each executory contract and unexpired lease that is assumed will include (a) all amendments, modifications, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affect such executory contract or unexpired lease; and (b) all executory contracts or unexpired leases and other rights appurtenant to the property, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, powers, uses, reciprocal easement agreements, vaults, tunnel or bridge agreements or franchises, and any other interests in real estate or rights *in rem* related to such premises, unless any of the foregoing agreements have been rejected pursuant to an order of the Bankruptcy Court or are the subject of a motion to reject filed on or before the Confirmation Date.

Amendments, modifications, supplements, and restatements to prepetition executory contracts and unexpired leases that have been executed by the Debtors during these Chapter 11 Cases shall not be deemed to alter the prepetition nature of the executory contract or unexpired lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

Each assumed executory contract and unexpired lease, as identified on the Assumed Contract Schedule as being assigned to either Op.Co. or Prop.Co., shall be deemed to have been assumed and assigned in accordance with Section 365 of the Bankruptcy Code, as of the Effective Date, or such date that such executory contract or unexpired lease is assumed.

### 8.04  Insurance Policies

Notwithstanding anything in this Plan to the contrary, all of the Debtors' insurance policies and any agreements, documents or instruments relating thereto, are treated as and deemed to be executory contracts under the Plan. On the Effective Date, the Debtors shall be deemed to have assumed all insurance policies and any agreements, documents, and instruments related thereto. Unless otherwise determined by the Bankruptcy Court prior to the Effective Date, or agreed to by the parties thereto prior to the Effective Date, no payments shall be required to cure any defaults (if any) of the Debtors existing as of the Effective Date with respect to each such insurance policy or agreement, and to the extent that the Bankruptcy Court determines otherwise as to any such insurance policy or agreement, the Debtors' right to seek the rejection of such insurance policy or agreement or other available relief within thirty (30) calendar days of such determination are fully reserved; *provided, however*, that the rights of any party that issues an insurance policy or agreement to object to such proposed rejection on any and all grounds are fully reserved. Nothing in the Plan, the Plan Documents, the Plan Supplement or the Confirmation Order, (a) alters,

modifies or otherwise amends the terms and conditions of (or the coverage provided by) any of the insurance policies or agreements, (b) limits the Reorganized Debtors from asserting a right or claim to the proceeds of any insurance policy or agreement that insures any Debtor, was issued to any Debtor or was assumed by the Reorganized Debtors by operation of the Plan or (c) impairs, alters, waives, releases, modifies or amends any of the Debtors' or Reorganized Debtors' legal, equitable or contractual rights, remedies, claims, counterclaims, defenses or Causes of Action in connection with any of such insurance policies or agreements.

### 8.05  Officers' and Directors' Indemnification Rights

Notwithstanding any other provisions of the Plan, other than the second paragraph of this Section 8.05, the obligations of the Debtors to indemnify their directors, officers, managers and employees who served in such capacity prior to or during these Chapter 11 Cases, against any obligations, liabilities, costs or expenses pursuant to the articles of incorporation, bylaws or other organizational documents of the Debtors, applicable state law, specific agreement (including any employment agreement), or any combination of the foregoing, shall be deemed rejected executory contracts ("**D&O Indemnification Claims**"), as of the Effective Date, without further Order of the Bankruptcy Court.  The non-Debtor party to a D&O Indemnification Claim shall be entitled to file a Proof of Claim in accordance with Section 8.06, which Claim shall be classified pursuant to the Plan, but shall not be entitled to any other or further Claim or relief from either the Debtors or the Reorganized Debtors.   Notwithstanding anything in the Plan to the contrary, any Proof of Claim for a rejected D&O Indemnification Claim, shall be subject to all rights of the Debtors, the Reorganized Debtors and/or the Creditor Trustee to object to such Proof of Claim, as provided in the Plan.

Notwithstanding the preceding paragraph, the obligations of the Debtors to indemnify the CRO, the CFO, and the Independent Board of Directors, prior to or during these Chapter 11 Cases and through the Effective Date, against any obligations, liabilities, costs or expenses pursuant to the articles of incorporation, bylaws or other organizational documents of the Debtors, applicable state law, specific agreement (including any employment agreement), or any combination of the foregoing, shall survive the Effective Date in all respects and be assumed by the Reorganized Debtors.

### 8.06  Claims Based on Rejection of Executory Contracts and Unexpired Leases

Unless otherwise provided by a Bankruptcy Court order, any Proofs of Claim asserting Claims arising from the rejection of the Debtors' executory contracts and unexpired leases pursuant to this Plan or otherwise must be filed no later than fourteen (14) calendar days after the Confirmation Order is entered.   Any Proofs of Claim arising from the rejection of the Debtors' executory contracts or unexpired leases that are not timely filed shall be disallowed automatically, forever barred from assertion, and shall not be enforceable against the Debtors or the Reorganized Debtors without the need for any objection by any Person or further notice to or action, order, or approval of the Bankruptcy Court, and any Claim arising out of the rejection of the executory contract or unexpired lease shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Bankruptcy Schedules or a Proof of Claim to the contrary. All Allowed Claims arising from the rejection of the Debtors' executory contracts and unexpired leases shall be classified as General Unsecured Claims and shall be treated in accordance with the particular provisions of this Plan for

47

such Claims; provided, however, that if the Holder of an Allowed Claim for rejection damages has an unavoidable security interest in any Collateral to secure obligations under such rejected executory contract or unexpired lease, the Allowed Claim for rejection damages shall be treated as an Other Secured Claim to the extent of the value of such Holder's interest in the Collateral, with the deficiency, if any, treated as a General Unsecured Claim.

## 8.07  Reservation of Rights

Nothing contained in this Plan shall constitute an admission by the Debtors or the Committee that any particular contract is in fact an executory contract or unexpired lease or that the Debtors have any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or the Reorganized Debtors, as applicable, shall have thirty (30) calendar days following entry of a Final Order resolving such dispute to alter and to provide appropriate treatment of such contract or lease.

## 8.08  Assignment

Any executory contract to be held by any of the Debtors or the Reorganized Debtors and assumed hereunder or otherwise in these Chapter 11 Cases, if not expressly assigned to a third party previously in these Chapter 11 Cases, will be deemed assigned to the applicable Reorganized Debtor pursuant to Bankruptcy Code Section 365. If an objection to a proposed assumption, assumption and assignment, or Cure Claim is not resolved in favor of the Debtors before the Effective Date, the applicable executory contract may be designated by the Debtors or the Reorganized Debtors for rejection within five (5) Business Days of the entry of the order of the Court resolving the matter against the Debtors. Such rejection shall be deemed effective as of the Effective Date.

## 8.09  Nonoccurrence of Effective Date

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request by the Debtors to extend the deadline for assuming or rejecting unexpired leases pursuant to Bankruptcy Code Section 365(d)(4).

**SECTION 9**
**PROCEDURES FOR RESOLVING DISPUTED,**
**CONTINGENT, AND UNLIQUIDATED CLAIMS**

## 9.01  Expunging of Certain Claims

Except as otherwise provided by a Bankruptcy Court order, all Claims marked or otherwise Scheduled as contingent, unliquidated or disputed on the Bankruptcy Schedules and for which no Proof of Claim has been timely filed, shall be deemed Disallowed Claims and such Claims shall be expunged as of the Effective Date without the necessity of filing a claim objection and without further notice to, or action, order or approval of the Bankruptcy Court.

Notwithstanding the forgoing paragraph, all Investor Claims and all Convertible Note Claims shall be deemed allowed, as provided in the Second Bar Date Order.

**9.02  Objections to Claims**

(1)  **Authority**. The Debtors, and after the Effective Date, the Reorganized Debtors or the Creditor Trustee, as applicable, shall have authority to file objections to any Claim, and to withdraw any objections to any Claim that they may file. The Debtors, and after the Effective Date, the Reorganized Debtors or the Creditor Trustee, as applicable depending on which Person brought the objection, shall have authority to settle, compromise, or litigate to judgment any objections to any Claim. Except as set forth above, after the Effective Date, the Reorganized Debtors or the Creditor Trustee, as applicable, also shall have the right to resolve any Disputed Claim outside the Bankruptcy Court under applicable governing law.

(2)  **Responsibility for Objections to Claims**.  The Debtors and the Reorganized Debtors shall have the sole and exclusive responsibility for objection to all Claims, other than Investor Claims, Convertible Note Claims, and, Claims and Interests of Excluded Parties.  The Creditor Trustee shall have sole and exclusive responsibility for objections to Investor Claims (including with respect to the determination of the fair market value of Investor Benefits), Convertible Note Claims, and, Claims and Interests of Excluded Parties.  Objections to Claims, includes the assertion of the receipt of an Investment Benefit, and the challenge to any such Claim based upon the same.

(3)  **Objection Deadline**. As soon as practicable, but no later than the Claim Objection Deadline, the Debtors, and after the Effective Date, the Reorganized Debtors or Creditor Trustee, as applicable, may file objections with the Bankruptcy Court and serve such objections on the Creditors holding the Claims to which such objections are made. Nothing contained herein, however, shall limit the right of the Reorganized Debtors or the Creditor Trustee, as applicable, to object to Claims, if any, filed or amended after the Claim Objection Deadline. The Claim Objection Deadline may be extended by the Bankruptcy Court upon motion by the Reorganized Debtors or the Creditor Trustee, as applicable.

**9.03  Estimation of Claims**

The Debtors, the Reorganized Debtors or the Creditor Trustee, as applicable, as the case may be, may at any time request that the Court estimate, subject to 28 U.S.C. Section 157, any Disputed Claim pursuant to Bankruptcy Code Section 502(e) regardless of whether the Debtors or the Reorganized Debtors have previously objected to such Claim. The Bankruptcy Court will retain jurisdiction to estimate any Claim at any time, including during proceedings concerning any objection to such Claim. In the event that the Bankruptcy Court estimates any Disputed Claim, such estimated amount may constitute either (a) the Allowed amount of such Claim, (b) the estimate to be used by the Debtors in calculating potential Plan Distributions under the Plan, or (c) a maximum limitation on such Claim, as determined by the Bankruptcy Court. In the case of Claims arising from personal injury tort or wrongful death actions, the Bankruptcy Court may estimate such Claims for the purpose of confirming the Plan. If the estimated amount constitutes a maximum limitation on such Claim, the Debtors, the Reorganized Debtors or the Creditor Trustee, as applicable, may elect to object to ultimate payment of such Claim. All of the aforementioned Claims objection, estimation and resolution procedures are cumulative and not necessarily exclusive of one another.

### 9.04   No Distributions Pending Allowance

Notwithstanding any other provision of this Plan, no payments or distributions shall be made with respect to all or any portion of a Disputed Claim unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by Final Order, and the Disputed Claim, or some portion thereof, has become an Allowed Claim.

### 9.05   Distributions After Allowance

The Disbursing Agent shall make payments and distributions to each Holder of a Disputed Claim that has become an Allowed Claim in accordance with the provisions of this Plan governing the class of Claims to which such Holder belongs. As soon as reasonably practicable after the date that the order or judgment of the Bankruptcy Court allowing all or part of any Disputed Claim becomes a Final Order, the Disbursing Agent shall distribute to the Holder of such Claim the distribution (if any) that would have been made to such Holder on the Distribution Date had such Allowed Claim been allowed on the Distribution Date.

### 9.06   Reduction of Claims

Notwithstanding the contents of the Bankruptcy Schedules, the Bankruptcy SOFAs or the Individualized Proof of Claim Form, Claims listed therein as undisputed, liquidated and not contingent shall be reduced by the amount, if any, that was paid by the Debtors before the Effective Date, including pursuant to orders of the Bankruptcy Court. To the extent such payments are not reflected in the Bankruptcy Schedules, the Bankruptcy SOFAs or the Individualized Proof of Claim Form, such Bankruptcy Schedules, Bankruptcy SOFA, or Individualized Proof of Claim Form, will be deemed amended and reduced to reflect that such payments were made. Nothing in this Plan shall preclude the Debtors from paying Claims that the Debtors were authorized to pay pursuant to any Final Order entered by the Bankruptcy Court before the Effective Date.

**SECTION 10**
**CONDITIONS PRECEDENT TO CONFIRMATION AND**
**CONSUMMATION OF THIS PLAN**

### 10.01   Conditions Precedent to Confirmation

The following are conditions precedent to the occurrence of Confirmation, each of which must be satisfied or waived:

(1)      The Bankruptcy Court shall have entered an order, in form and substance reasonably acceptable to the Debtors, the Committee and the DIP Lender, approving the Disclosure Statement as containing adequate information within the meaning of Bankruptcy Code Section 1125, and such order shall have become a Final Order;

(2)      The Plan and all documents contained in the Plan Supplement, including any exhibits, schedules, amendments, modifications or supplements thereto, shall have been filed in substantially final form and in form and substance reasonably acceptable to the Debtors and the Committee; and

50

(3)     The Confirmation Order shall include, to the fullest extent permitted by applicable law, a finding of fact that the Reorganized Debtors, the Committee, and their respective Related Persons acted in good faith within the meaning of and with respect to all of the actions described in Bankruptcy Code Section 1125(e) and are therefore not liable for the violation of any applicable law, rule, or regulation governing such actions.

## 10.02  Conditions Precedent to the Effective Date of the Plan

The following are conditions precedent to Effective Date of the Plan, each of which must be satisfied or waived in accordance with Section 10.04:

(1)     The Debtors and the Committee shall have negotiated, executed and delivered the Definitive Documentation with respect to the Plan and the Plan Supplement, in form and substance acceptable to the Debtors and the Committee and otherwise consistent with the terms of the Plan;

(2)     The Confirmation Order shall have been entered in form and substance reasonably acceptable to the Debtors, the Committee and the DIP Lender and such order shall have become a Final Order;

(3)     There shall not be in effect any (i) order entered by any court of any competent jurisdiction; (ii) order, opinion, ruling or other decision entered by any administrative or governmental entity or (iii) applicable law, staying, restraining, enjoining or otherwise prohibiting or making illegal the consummation of any of the transactions contemplated by this Plan.

## 10.03  Substantial Consummation

On the Effective Date, this Plan shall be deemed to be substantially consummated under Bankruptcy Code Sections 1101 and 1127(b).

## 10.04  Waiver of Conditions

Each of the conditions set forth in Section 10.01 or Section 10.02 hereof may be waived in whole or in part by written agreement of the Debtors with notice to the Committee. The failure to satisfy or waive any condition to Confirmation or the Effective Date may be asserted by the Debtors regardless of the circumstances giving rise to the failure of such condition to be satisfied.

## 10.05  Revocation, Withdrawal, or Non-Consummation

The Debtors reserve the right to revoke or withdraw this Plan at any time before the Confirmation Date and to file subsequent plans of reorganization. If the Debtors revoke or withdraw this Plan, or if Confirmation or Consummation of this Plan does not occur, then (i) this Plan shall be null and void in all respects; (ii) any settlement or compromise embodied in this Plan (including the fixing, allowance or limiting to an amount certain of any Claim or Interests or Class of Claims or Interests), unless otherwise agreed to by the Debtors and any counterparty to such settlement or compromise, and any document or agreement executed pursuant to this Plan, shall be deemed null and void; and (iii) nothing contained in this Plan, and no acts taken in preparation for Consummation of this Plan, shall (a) constitute or be deemed to constitute a waiver or release of any Claims by or against, or any Interests in, the Debtors or any other Person, (b) prejudice in any

manner the rights of the Debtors or any Person in any further proceedings involving the Debtors, or (c) constitute an admission of any sort by the Debtors or any other Person.

## SECTION 11
## AMENDMENTS AND MODIFICATIONS

The Debtors may alter, amend, or modify this Plan, the Plan Documents, or any Exhibits thereto under Bankruptcy Code Section 1127(a) at any time before the Confirmation Date; *provided, however*, that if any amendment, modification or supplement to this Plan (including the Plan Supplement or a modification described in this Section 11) or any Exhibit hereto or thereto is made without the prior written consent of the Committee, then the Committee shall have no obligation to support, or take any actions in support of, this Plan. After the Confirmation Date and before "substantial consummation" of this Plan, as defined in Bankruptcy Code Section 1101(2), the Debtors, the Reorganized Debtors, or the Creditor Trustee, may, under Bankruptcy Code Section 1127(b), institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in this Plan, the Disclosure Statement, or the Confirmation Order, and such matters as may be necessary to carry out the purposes and effects of this Plan, so long as such proceedings do not materially adversely affect the treatment of Holders of Claims or Interests under this Plan; *provided, however*, that prior notice of such proceedings shall be served in accordance with the Bankruptcy Rules or order of the Bankruptcy Court.

Notwithstanding the foregoing, all modifications made to the Plan after solicitation of votes on the Plan has commenced, as reflected in the Confirmation Order, as set forth on the record at the Confirmation Hearing, or as reflected in the Plan, satisfy the requirements of Bankruptcy Code Section 1127(a) and Bankruptcy Rule 3019, are not material or do not adversely affect the treatment and rights of the Holders of any Claims or Interests under the Plan who have not otherwise accepted such modifications. Accordingly, the Debtors have satisfied Bankruptcy Code Section 1127(c) and Bankruptcy Rule 3019 with respect to the Plan, as modified; and Holders of Claims or Interests that have accepted or rejected the Plan (or are deemed to have accepted or rejected the Plan) are deemed to have accepted or rejected, as the case may be, the Plan as modified on the date of the Confirmation Order, pursuant to Bankruptcy Code Section 1127(d) and Bankruptcy Rule 3019.

## SECTION 12
## RETENTION OF JURISDICTION

Under Bankruptcy Code Sections 105(a) and 1142, and notwithstanding entry of the Confirmation Order and occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, these Chapter 11 Cases and this Plan to the fullest extent permitted by law, including, among other things, jurisdiction to:

   A. allow, disallow, determine, liquidate, classify, estimate or establish the priority or Secured or unsecured status of any Claim or Interest, including the resolution of any request for payment of any Administrative Expense Claim and the resolution of any objections to the Secured or unsecured status, priority, amount or allowance of Claims or Interests;

B.      hear and determine all applications for compensation and reimbursement of expenses of Professionals under Bankruptcy Code Sections 327, 328, 330, 331, 503(b), 1103 or 1129(a)(4); *provided, however*, that from and after the Effective Date, the payment of fees and expenses of Professionals retained by the Reorganized Debtors, or the Creditor Trustee, shall be made in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court except as otherwise set forth in this Plan;

C.      hear and determine all matters with respect to the assumption or rejection of any executory contract or unexpired lease to which the Debtors are a party or with respect to which the Debtors may be liable, including, if necessary, the nature or amount of any required cure or the liquidating of any claims arising therefrom;

D.      hear and determine any and all adversary proceedings, motions, applications, and contested or litigated matters arising out of, under, or related to, these Chapter 11 Cases, the property of the Debtors, the property of the Reorganized Debtors, property of the Creditor Trust, or the Creditor Trust Assets, whether filed before or after the Effective Date;

E.      enter and enforce such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of this Plan and all contracts, instruments, releases, and other agreements or documents created in connection with this Plan, the Disclosure Statement, and/or the Confirmation Order;

F.      hear and determine disputes arising in connection with the interpretation, implementation, Consummation, or enforcement of this Plan, including disputes arising under agreements, documents or instruments executed in connection with this Plan;

G.      consider any modifications of this Plan, cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

H.      issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any entity with implementation, Consummation, or enforcement of this Plan, and/or the Confirmation Order;

I.      enter and implement such orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified, or vacated;

J.      hear and determine any matters arising in connection with or relating to this Plan, the Disclosure Statement, and/or the Confirmation Order or any other contract, instrument, release, or other agreement or document created in connection with this Plan, the Disclosure Statement, and/or the Confirmation Order;

K.      enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings entered in connection with these Chapter 11 Cases or pursuant to this Plan;

L.      recover all assets of the Debtors and property of their Estates, wherever located;

M.     hear and determine matters concerning state, local, and federal taxes in accordance with Bankruptcy Code Sections 346, 505, and 1146;

N.     hear and determine all disputes involving the existence, nature, or scope of the Debtors' discharge or any releases granted in this Plan;

O.     hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under, or not inconsistent with, provisions of the Bankruptcy Code;

P.     enter an order or final decree concluding or closing these Chapter 11 Cases; and

Q.     enforce all orders previously entered by the Bankruptcy Court.

**SECTION 13**
**EFFECT OF THIS PLAN ON CLAIMS AND INTERESTS**

**13.01  Compromise and Settlements**

Except for any Avoidance Actions (including the Assigned Estate Claims) and Causes of Action of the Debtors that are being retained by the Reorganizing Debtors pursuant to Section 5.13, pursuant to Bankruptcy Code Section 363 and Bankruptcy Rule 9019, and in consideration for the classification, distribution and other benefits provided under this Plan, the provisions of this Plan shall constitute a good faith compromise and settlement of all Claims, Interests and controversies resolved pursuant to this Plan, including, without limitation, all Claims arising before the Petition Date for each of the Debtors, whether known or unknown, foreseen or unforeseen, asserted or unasserted, arising out of, relating to or in connection with the business or affairs of, or transactions with, the Debtors. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of each of the foregoing compromises or settlements, and all other compromises and settlements provided for in this Plan, and the Bankruptcy Court's findings shall constitute its determination that such compromises and settlements are in the best interests of the Debtors, their Estates, Creditors, Holders of Interests and other parties in interest, and are fair, equitable and within the range of reasonableness.

**13.02  Satisfaction of Claims**

The rights afforded in this Plan and the treatment of all Claims and Interests herein shall be in exchange for and in complete satisfaction, discharge, and release of all Claims and Interests of any nature whatsoever against the Debtors or their Estates, assets, properties, or interests in property. Except as otherwise provided in this Plan and/or the Confirmation Order, on the Effective Date, all Claims against and Interests in the Debtors shall be satisfied, discharged, and released in full. None of the Debtors, Reorganized Debtors or their Affiliates, shall be responsible for any pre-Effective Date obligations of the Debtors, except those expressly assumed by the Debtors or the Reorganized Debtors, as applicable. Except as otherwise provided in this Plan and/or the Confirmation Order, all Persons and Entities shall be precluded and forever barred from asserting against the Debtors, Reorganized Debtors and their Affiliates, their respective successors or assigns, or their Estates, assets, properties, or interests in property any event, occurrence, condition, thing, or other or further Claims or Causes of Action based upon any act, omission, transaction, or other activity of any kind or nature that occurred or came into existence before the

54

Effective Date, whether or not the facts of or legal bases therefore were known or existed before the Effective Date.

**13.03  Term of Injunction or Stays**

Unless otherwise provided, all injunctions or stays arising under or entered during the Chapter 11 Cases under Bankruptcy Code Sections 105 or 363, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date indicated in the order providing for such injunction or stay.

**13.04  Discharge of Liabilities**

**PURSUANT TO BANKRUPTCY CODE § 1141(D), AND EXCEPT AS OTHERWISE SPECIFICALLY PROVIDED IN THIS PLAN AND/OR THE CONFIRMATION ORDER, THE PLAN DISTRIBUTIONS, RIGHTS, AND TREATMENT THAT ARE PROVIDED IN THIS PLAN SHALL BE IN COMPLETE SATISFACTION, DISCHARGE, AND RELEASE, EFFECTIVE AS OF THE EFFECTIVE DATE, OF ALL CLAIMS, INTERESTS, AND CAUSES OF ACTION OF ANY NATURE WHATSOEVER, INCLUDING ANY INTEREST ACCRUED ON CLAIMS OR INTERESTS FROM AND AFTER THE PETITION DATE, WHETHER KNOWN OR UNKNOWN, AGAINST, LIABILITIES OF, LIENS ON, OBLIGATIONS OF, RIGHTS AGAINST, AND INTERESTS IN, THE DEBTORS OR ANY OF THEIR ASSETS OR PROPERTIES, REGARDLESS OF WHETHER ANY PROPERTY SHALL HAVE BEEN DISTRIBUTED OR RETAINED PURSUANT TO THIS PLAN ON ACCOUNT OF SUCH CLAIMS AND INTERESTS, INCLUDING DEMANDS, LIABILITIES, AND CAUSES OF ACTION THAT AROSE BEFORE THE EFFECTIVE DATE, ANY LIABILITY (INCLUDING WITHDRAWAL LIABILITY) TO THE EXTENT SUCH CLAIMS OR INTERESTS RELATE TO SERVICES PERFORMED BY EMPLOYEES OF THE DEBTORS BEFORE THE EFFECTIVE DATE AND THAT ARISE FROM A TERMINATION OF EMPLOYMENT OR A TERMINATION OF ANY EMPLOYEE OR RETIREE BENEFIT PROGRAM (FORMAL OR INFORMAL), REGARDLESS OF WHETHER SUCH TERMINATION OCCURRED BEFORE OR AFTER THE EFFECTIVE DATE, ANY CONTINGENT OR NON-CONTINGENT LIABILITY ON ACCOUNT OF REPRESENTATIONS OR WARRANTIES ISSUED ON OR BEFORE THE EFFECTIVE DATE, AND ALL DEBTS OF THE KIND SPECIFIED IN BANKRUPTCY CODE §§ 502(G), 502(H), OR 502(I), IN EACH CASE WHETHER OR NOT: (A) A PROOF OF CLAIM OR INTEREST BASED UPON SUCH DEBT, RIGHT, CLAIM, OR INTEREST IS FILED OR DEEMED FILED PURSUANT TO BANKRUPTCY CODE § 501; (B) A CLAIM OR INTEREST BASED UPON SUCH CLAIM, DEBT, RIGHT, OR INTEREST IS ALLOWED PURSUANT TO BANKRUPTCY CODE § 502; OR (C) THE HOLDER OF SUCH A CLAIM OR INTEREST HAS ACCEPTED THIS PLAN.**

**SUBJECT TO THE TERMS OF THIS PLAN AND/OR THE CONFIRMATION ORDER, ANY DEFAULT BY THE DEBTORS (OTHER THAN EXCLUDED PARTIES) WITH RESPECT TO ANY CLAIM OR INTEREST THAT EXISTED IMMEDIATELY BEFORE OR ON ACCOUNT OF THE FILING OF THESE CHAPTER 11 CASES SHALL BE DEEMED SATISFIED ON THE EFFECTIVE DATE.**

55

**SUBJECT TO THE TERMS OF THIS PLAN, THE CONFIRMATION ORDER SHALL BE A JUDICIAL DETERMINATION OF THE DISCHARGE OF ALL CLAIMS AND INTERESTS SUBJECT TO THE EFFECTIVE DATE OCCURRING. SUBJECT TO THE TERMS OF THIS PLAN, THE CONFIRMATION ORDER SHALL BE A JUDICIAL DETERMINATION OF DISCHARGE OF ALL LIABILITIES OF THE DEBTORS, THEIR ESTATES, THE REORGANIZED DEBTORS AND ALL SUCCESSORS THERETO. AS PROVIDED IN BANKRUPTCY CODE § 524, SUBJECT TO THE TERMS OF THIS PLAN AND/OR THE CONFIRMATION ORDER SUCH DISCHARGE SHALL VOID ANY JUDGMENT AGAINST THE DEBTORS, THEIR ESTATES, THE REORGANIZED DEBTORS OR ANY SUCCESSORS THERETO AT ANY TIME OBTAINED TO THE EXTENT IT RELATES TO A CLAIM OR INTEREST DISCHARGED, AND OPERATES AS AN INJUNCTION AGAINST THE PROSECUTION OF ANY ACTION AGAINST THE REORGANIZED DEBTORS OR THEIR PROPERTY AND ASSETS TO THE EXTENT IT RELATES TO A DISCHARGED CLAIM OR INTEREST.**

**13.05 Releases by the Debtors, their Estates and the Reorganized Debtors**

**PURSUANT TO SECTION 1123(B) OF THE BANKRUPTCY CODE, AND EXCEPT AS OTHERWISE SPECIFICALLY PROVIDED IN THE PLAN OR THE CONFIRMATION ORDER, FOR GOOD AND VALUABLE CONSIDERATION, INCLUDING THE SERVICE OF THE PARTIES RELEASED HEREIN TO FACILITATE EXPEDITIOUS REORGANIZATION OF THE DEBTORS AND THE IMPLEMENTATION OF THE RESTRUCTURING CONTEMPLATED BY THE PLAN, ON AND AFTER THE EFFECTIVE DATE, ALL RELEASED PERSONS ARE DEEMED RELEASED AND DISCHARGED BY THE DEBTORS AND THEIR ESTATES AND THE REORGANIZED DEBTORS, FROM ANY AND ALL CLAIMS, OBLIGATIONS, RIGHTS, SUITS, DAMAGES, CAUSES OF ACTION, REMEDIES AND LIABILITIES WHATSOEVER, INCLUDING ANY DERIVATIVE CLAIMS, ASSERTED OR ASSERTABLE ON BEHALF OF THE DEBTORS OR THE REORGANIZED DEBTORS, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, EXISTING OR HEREINAFTER ARISING, IN LAW, EQUITY OR OTHERWISE, THAT THE DEBTORS, THEIR ESTATES, THE REORGANIZED DEBTORS, OR THEIR RESPECTIVE AFFILIATES WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN THEIR OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE HOLDER OF ANY CLAIM OR INTEREST OR OTHER ENTITY, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS, THE REORGANIZED DEBTORS, THESE CHAPTER 11 CASES, THE DEBTORS' RESTRUCTURING, THE DIP FACILITY, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN THE DEBTORS AND ANY RELEASED PERSONS, THE RESTRUCTURING OF CLAIMS AND INTERESTS BEFORE OR DURING THESE CHAPTER 11 CASES, THE NEGOTIATION, FORMULATION OR PREPARATION OF THE PLAN AND DISCLOSURE STATEMENT, OR RELATED AGREEMENTS, INSTRUMENTS OR OTHER DOCUMENTS, ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT,**

56

EVENT OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE CONFIRMATION DATE, OTHER THAN CLAIMS OR LIABILITIES ARISING OUT OF OR RELATING TO ANY ACT OR OMISSION OF A RELEASED PERSON THAT CONSTITUTES WILLFUL MISCONDUCT (INCLUDING FRAUD) OR GROSS NEGLIGENCE. THE FOREGOING RELEASE SHALL NOT APPLY TO ANY EXPRESS CONTRACTUAL OR FINANCIAL OBLIGATIONS OR ANY RIGHT OR OBLIGATIONS ARISING UNDER OR THAT IS PART OF THE PLAN OR ANY AGREEMENTS ENTERED INTO PURSUANT TO, IN CONNECTION WITH, OR CONTEMPLATED BY THE PLAN.

**13.06 Exculpation**

THE RELEASED PERSONS SHALL NOT BE LIABLE FOR ANY CAUSE OF ACTION ARISING IN CONNECTION WITH OR OUT OF THE ADMINISTRATION OF THESE CHAPTER 11 CASES, THE PLANNING OF THESE CHAPTER 11 CASES, THE FORMULATION, NEGOTIATION OR IMPLEMENTATION OF THIS PLAN, THE GOOD FAITH SOLICITATION OF ACCEPTANCES OF THIS PLAN IN ACCORDANCE WITH BANKRUPTCY CODE SECTION 1125(E), PURSUIT OF CONFIRMATION OF THIS PLAN, THE CONSUMMATION OF THIS PLAN, OR THE ADMINISTRATION OF THIS PLAN, EXCEPT FOR GROSS NEGLIGENCE OR WILLFUL MISCONDUCT AS DETERMINED BY A FINAL ORDER OF THE BANKRUPTCY COURT. ALL HOLDERS OF CLAIMS AND INTERESTS ARE ENJOINED FROM ASSERTING OR PROSECUTING ANY CLAIM OR CAUSE OF ACTION AGAINST ANY RELEASED PERSON FOR WHICH SUCH PARTY HAS BEEN EXCULPATED FROM LIABILITY PURSUANT TO THE PRECEDING SENTENCE.

**13.07 Recoupment**

Except as provided in this Plan and/or the Confirmation Order any Holder of a Claim or Interest shall not be entitled to recoup any Claim or Interest against any Claim, right, or Cause of Action of the Debtors or the Reorganized Debtors, as applicable, unless such Holder actually has performed such recoupment and provided notice thereof in writing to the Debtors on or before the Confirmation Date, notwithstanding any indication in any Proof of Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment.

**13.08 Release of Liens**

Except as otherwise provided in this Plan or in any contract, instrument, release, or other agreement or document created pursuant to this Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to this Plan and, in the case of a Secured Claim, satisfaction of the portion of the Secured Claim that is Allowed as of the Effective Date as set forth in this Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Debtors' Estates shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Debtors and their successors and assigns.

57

## 13.09  Good Faith

As of the Confirmation Date, the Debtors and the Committee shall be deemed to have solicited acceptances or rejections of this Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code.

## 13.10  Protection against Discriminatory Treatment

Consistent with Bankruptcy Code Section 525 and the Supremacy Clause of the United States Constitution, all Entities, including governmental units, shall not discriminate against the Reorganized Debtors or deny, revoke, suspend or refuse to renew a license, permit, charter, franchise or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Reorganized Debtors or another Entity with whom such Reorganized Debtors have been associated, solely because the Debtors have been debtors under chapter 11, have been insolvent before the commencement of these Chapter 11 Cases (or during these Chapter 11 Cases but before the Debtors are granted or denied a discharge) or have not paid a debt that is dischargeable in these Chapter 11 Cases.

## 13.11  Rights of Defendants and Avoidance Actions

All rights, if any, of a defendant to assert a Claim arising from relief granted in an Avoidance Action (including the Assigned Avoidance Actions), together with the Reorganized Debtors' and the Creditors Trustee's right to oppose such Claim are fully preserved. Any such Claim that is Allowed shall be entitled to treatment and distribution under this Plan as a General Unsecured Claim.

## SECTION 14
## MISCELLANEOUS PROVISIONS

## 14.01  Severability of Plan Provisions

If, before Confirmation, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court, at the request of the Debtors, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

## 14.02  Successors and Assigns

The rights, benefits and obligations of any Person named or referred to in this Plan, including any Holder of a Claim, shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such entity.

## 14.03  Binding Effect

This Plan shall be binding upon and inure to the benefit of the Debtors, all present and former Holders of Claims against and Interests in the Debtors, their respective successors and assigns and all other parties-in-interest in these Chapter 11 Cases. WGP Investors that have not validly exercised the WGP Opt Out Right are deemed parties-in-interest in these Chapter 11 Cases.

## 14.04  Notices

Any notice, request, or demand required or permitted to be made or provided under this Plan to or upon the Debtors, the Reorganized Debtors, the Committee, the Creditor Trustee or the Creditor Trust, shall be (i) in writing; (ii) served by (a) certified mail, return receipt requested, (b) hand delivery, (c) overnight delivery service, (d) first class mail, or (e) E-mail, and concurrently by first class mail; and (iii) deemed to have been duly given or made when actually delivered or, in the case of E-Mail transmission, when received by first class mail, addressed as follows:

> **If to the Debtors or Reorganized Debtors, as applicable**:
>
> Warrior Custom Golf
> Attn: Jeremy Rosenthal, CEO
> 15 Mason, Suite A
> Irvine, CA 92618
> E-Mail: jrosenthal@force10partners.com
>
> **With a copy to (which shall not constitute notice upon the applicable Reorganized Debtor)**:
>
> COLE SCHOTZ P.C.
> 301 Commerce Street, Ste. 1700
> Fort Worth, TX 76102
> Attn: Michael D. Warner, Esq.
> E-Mail: mwarner@coleschotz.com
>
> **If to the Committee**:
>
> COZEN O'CONNOR
> 1201 N. Market Street, Ste. 1001
> Wilmington, DE 19801
> Attn: Thomas J. Francella, Jr., Esq.
> E-Mail: tfrancella@cozen.com

59

**If to the Creditor Trust or the Creditor Trustee**:

Warrior Creditor Trust Trustee
c/o Force 10 Advisory Services LLC
20341 SW Birch St., Suite 220
Newport Beach, CA 92660
E-Mail: jrosenthal@force10partners.com

## 14.05  Term of Injunctions or Stay

Unless otherwise provided in this Plan and/or Confirmation Order, all injunctions or stays provided for in these Chapter 11 Cases under Bankruptcy Code Sections 105 or 362 or otherwise, and in existence on the Confirmation Date (excluding any injunctions or stays contained in this Plan or Confirmation Order and in any order of the Bankruptcy Court concerning preservation of any net operating losses), shall remain in full force and effect until the Effective Date. All injunctions or stays contained in this Plan and/or Confirmation Order shall remain in full force and effect in accordance with their terms.

## 14.06  No Admissions

Notwithstanding anything herein to the contrary, nothing in this Plan shall be deemed as an admission by the Debtors or the Committee with respect to any matter set forth herein, including liability on any Claim.

## 14.07  Notice of the Effective Date

Within five (5) Business Days after the Effective Date, the Debtors shall file on the docket of the Bankruptcy Court *a Notice of Effective Date* stating that (i) all conditions to the occurrence of the Effective Date have been satisfied or waived with the consent of the Requisite Majority Consenting Secured Lenders; (ii) the Effective Date has occurred and specifying the date thereof for all purposes under this Plan; and (iii) setting forth the name, address and telephone number for the Reorganized Debtors.

## 14.08  Governing Law

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of the State of Texas, without giving effect to the principles of conflicts of law thereof, shall govern the construction and implementation of this Plan and any agreements, documents, and instruments executed in connection with this Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control) as well as corporate governance matters with respect to the Debtors; *provided, however*, that corporate governance matters relating to the Debtors, the Reorganized Debtors, or their Affiliates as applicable, not organized under Texas law shall be governed by the laws of the state of organization of such entity.

### 14.09  Plan Documents

The Plan Documents are incorporated herein and are a part of this Plan as set forth in full herein.

### 14.10  Prior Orders of the Bankruptcy Court

Except to the extent explicitly stated in this Plan, all prior Orders of the Bankruptcy Court shall remain in full force and effect.

### 14.11  Conflicts among Documents

In the event of a conflict between the Disclosure Statement and this Plan, the Plan shall control. In the event of a conflict between the Plan and the Creditor Trust Agreement, the Creditor Trust Agreement will control. Notwithstanding the forgoing conflict resolution structures, absent a conflict, the Disclosure Statement, the Plan and the Creditor Trust Agreement are to be construed collectively.

### 14.12  Entire Agreement

This Plan and the Plan Documents set forth the entire agreement and understanding among the parties-in-interest relating to the subject matter hereof and supersede all prior discussions and documents.

**SECTION 15**
**CONFIRMATION REQUEST**

The Debtors and the Committee request Confirmation of this Plan under Bankruptcy Code Section 1129. If any Impaired Class does not accept this Plan pursuant to Bankruptcy Code Section 1126, the Debtors and the Committee request Confirmation pursuant to Bankruptcy Code Section 1129(b). In that event, the Debtors and the Committee reserve the right to modify this Plan to the extent (if any) that Confirmation of this Plan under Bankruptcy Code Section 1129(b) requires modification.

[Signature Pages Follow]

59217/0001-19561041v3

Dated: March 20, 2020

Westwind Manor Resort Association, Inc.
Warrior Custom Golf, Inc.
Warrior Acquisitions, LLC
Warrior Golf, LLC
Warrior ATV Golf, LLC
Warrior Golf Development, LLC
Warrior Golf Management, LLC
Warrior Golf Assets, LLC
Warrior Golf Venture, LLC
Warrior Premium Properties, LLC
Warrior Golf Equities, LLC
Warrior Golf Capital, LLC
Warrior Golf Resources, LLC
Warrior Golf Legends, LLC
Warrior Golf Holdings, LLC
Warrior Capital Management, LLC


By: _/s/ Jeremy Rosenthal_
Name: Jeremy Rosenthal
Title: Chief Restructuring Officer



The Official Committee of Unsecured
Creditors


By: _/s/ Raymond J. Kiefer_
Name: Raymond J. Kiefer, its Chairperson

**EXHIBIT "A"**

**(ADDITIONAL) EXCLUDED PARTIES**[1]

The following is a non-exclusive list of the Excluded Parties, as such term is defined in the Plan.

The Excluded Parties are subject to claims for, *inter alia*, Causes of Action and Avoidance Actions, as defined in the Plan.

With respect to Persons identified herein, Excluded Parties includes, *inter alia*: (i) any entity directly or indirectly owned or controlled by such Person, and (ii) any current or former spouse, partner, or any other relative of any such Person.

With respect to Entities identified herein, Excluded Parties includes all past and present, shareholders, members, partners, general partners, limited partners, officers, directors, employees, professionals, affiliates, subsidiaries, and successors of any such Entity.

| | |
|---|---|
| 1) | Brendan M. Flaherty |
| 2) | Dillon Flaherty |
| 3) | Devin Flaherty |
| 4) | Destiny Flaherty |
| 5) | Toni Flaherty |
| 6) | Dwight Bickerstaff |
| 7) | Aaron Mun |
| 8) | Wayne Deloney |
| 9) | Ryan Rodney |
| 10) | Trevor Tam |
| 11) | Katie Sanchez |
| 12) | Henry Peter Wheelhan, Jr. |
| 13) | Tom Porter |
| 14) | R.E. Alexander |
| 15) | Eric Taylor |
| 16) | Howard Farber |
| 17) | Russell Theisen |
| 18) | Sean McDonald |
| 19) | John Fitzmartin |
| 20) | Douglas White |
| 21) | Daniel Davis |
| 22) | Sandra Davis |
| 23) | Thomas Dean |
| 24) | Bonnie Dean |
| 25) | Brenda Severson |
| 26) | Walter Curtis Hunt |
| 27) | Leon Engelking |

---

[1] Capitalized terms used herein are as defined in the Plan to which this Exhibit A is attached.

1

28) Elvira Engelking
29) Rick Falaschetti
30) Stephen Thomas
31) [RESERVED]
32) Jessie Miller
33) [RESERVED]
34) Dwight Beckstrand
35) Anthony Ivankovich
36) A and O Family Trust
37) A and O Family LLC
38) Zavatkay Holdings, LLC
39) WGP Related Persons
40) Dot Com Asset Management, Ltd.
41) BMF Properties, LLC
42) Sterling and Marx, Inc.
43) Wholesale Golf Supply & Services, Inc.
44) Sports Collectables International, Inc.
45) Warrior Table Soccer, LLC
46) Warrior Extreme Sports, LLC
47) Warrior Golf Properties, LLC
48) Warrior Golf, LLC, a California limited liability company
49) Warrior Development, Inc.
50) IRA Resources, Inc.
51) Equity Trust Company
52) ColeyDocter, Inc.
53) Runaway Bay Golf Club, LLC
54) Alpha Adventure Ranch at Nocona, LLC
55) City of Boonville, Indiana
56) Marcus & Millichap, Inc.
57) Stepp Law Corporation
58) Morgan Lewis & Bockius LLP
59) Wunderlich Securities, Inc.
60) Marcum LLP
61) Beckstrand Law Offices, P.C.
62) Warrior Custom Storage RV, LP
63) Riverbound Storage Management, LLC
64) John Combs
65) Laura Vannessen
66) Kimberly Porter
67) TMA 17, Inc.
68) Any and all Persons or Entities that, in any fashion, participated in, *inter alia*, the marketing, sale, solicitation of Investments or the Convertible Notes

2

69)     Any and all Persons or Entities that, in any fashion participated in, *inter alia*, provided advice, guidance, legal or financial consultation, with respect to the marketing, sale, solicitation of Investments, or the Convertible Notes

70)     Any and all Persons or Entities that, in any fashion participated in, *inter alia*, provided advice, guidance, legal or financial consultation, with respect to, *inter alia*, the transactions, events and documents involved in the Failed 2017 Restructuring, including, the Senior Notes and the Pro Rata Notes

71)     Any and all Persons and Entities that were Investors in Warrior Capital Management, LLC

72)     Any and all Person and Entities that received a transfer of property of the Debtors, within the applicable statutes of limitations for avoidable transfers pursuant to, *inter alia*, Bankruptcy Code Sections 506(c), 510, 542, 543, 544, 545, 547, 548, 549, 550, 551, 552(b), 553, and/or 724

73)     Any and all Persons and Entities that participated, in any fashion, in the transactions identified in the Disclosure Statement or the Plan as being subject to potential investigation, recovery or litigation

74)     Any and all Persons or Entities that, in any fashion, participated in, *inter alia*, what are defined in the Disclosure Statement as *the internal flips*, wherein, property was acquired by an entity and subsequently transferred or intended to be transferred to a Debtor

75)     Any and all Persons or Entities that, in any fashion, received, causes to be transferred, or otherwise participated in, *inter alia*, property transfers by the Debtors as inducements or incentives to cause Investments

76)     Any and all Persons or Entities that, in any fashion participated in, *inter alia*, provided advice, guidance, legal or financial consultation, with respect to, *inter alia*, the transactions, events and documents involved in the Debtors efforts to, and considerations of *going public*

Specifically, **not** Excluded Parties are:[2]

A)  Professionals retained by the Debtors, in connection with the Chapter 11 Cases
B)  Professionals retained by the Committee, in connection with the Chapter 11 Cases
C)  The CRO
D)  The CFO
E)  Persons and Entities specifically identified in the Plan as being released or exculpated.

---

[2] The following list is not exhaustive.

**EXHIBIT 2**
**CONFIRMATION NOTICE**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |
|---|---|
| In re: | Chapter 11 |
| WESTWIND MANOR RESORT ASSOCIATION, INC., *et al.*,[3] | Case No. 19-50026 (DRJ) |
| Debtors. | Jointly Administered |

**NOTICE OF CONFIRMATION OF PLAN, PERMANENT INJUNCTION,
VARIOUS DEADLINES, EFFECTIVE DATE**

**A N D**

**DEADLINE FOR FILING ADMINISTRATIVE CLAIMS AND CLAIMS
ARISING FROM THE REJECTION OF EXECUTORY CONTRACTS
<u>AND UNEXPIRED LEASES</u>**

**PLEASE TAKE NOTICE** that on June 15, 2020, the United States Bankruptcy Court for the Southern District of Texas entered the *Findings of Fact, Conclusions of Law, and Order Confirming the Debtors' Joint Chapter 11 Plan as of March 20, 2020* (the "<u>Confirmation Order</u>"). The Confirmation Order confirmed the *Debtors' Joint Chapter 11 Plan* (as amended and modified to date, the "<u>Plan</u>"), filed by the above-captioned debtors and debtors in possession (the "<u>Debtors</u>").

**PLEASE TAKE FURTHER NOTICE** that copies of the Confirmation Order and the Plan may be obtained at the following website: https://www.donlinrecano.com/Clients/warrior/index.

**PLEASE TAKE FURTHER NOTICE** that the Effective Date of the Plan occurred on [ ], 2020;

**PLEASE TAKE FURTHER NOTICE** that the Plan contains certain **permanent injunctions,** releases, exculpations, and related provisions in **Section 13** of the Plan.

---

[3] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Westwind Manor Resort Association, Inc. (7533); Warrior ATV Golf, LLC (3420); Warrior Acquisitions, LLC (9919); Warrior Golf Development, LLC (5741); Warrior Golf Management, LLC (7882); Warrior Golf Assets, LLC (1639); Warrior Golf Venture, LLC (7752); Warrior Premium Properties, LLC (0220); Warrior Golf, LLC (4207); Warrior Custom Golf, Inc. (2941); Warrior Golf Equities, LLC (9803); Warrior Golf Capital, LLC (5713); Warrior Golf Resources, LLC (6619); Warrior Golf Legends, LLC (3099); Warrior Golf Holdings, LLC (2892); and Warrior Capital Management, LLC (8233).  The address of the Debtors' corporate headquarters is 15 Mason, Suite A, Irvine, California 92618.

**PLEASE TAKE FURTHER NOTICE** that the Confirmation Order provides, among other things, the following deadlines:

a.      **Administrative Bar Date (General). Except as otherwise provided in the Plan, any Person holding an Administrative Claim (other than a claim for Professional Compensation) shall File a request for payment of such Administrative Claim within thirty (30) days following the Effective Date, except as specifically set forth in the Plan or a Final Order. At the same time any Person Files an Administrative Claim, such Person shall also serve a copy of the Administrative Claim upon counsel for the Debtors. Any Person who fails to timely File and serve a request for payment of such Administrative Claim shall be forever barred from asserting such Administrative Claim against the Debtors, the Estates, the Reorganized Debtors, the Creditor Trustee, the Creditor Trust or any of their respective properties.**

b.      **Administrative Bar Date (Professionals). Any Person seeking an award by this Court of Professional Compensation shall File a final application with this Court for allowance of Professional Compensation for services rendered and reimbursement of expenses incurred through the Effective Date within thirty (30) days after the Effective Date. The provisions of this paragraph shall not apply to any Professional providing services pursuant to, and subject to the limits contained in, the *Order Authorizing Debtors the Retention and Compensation of Professionals Utilized in the Ordinary Course of Business* entered in the Chapter 11 Cases on June 6, 2019 [Docket No. 290].**

c.      **Bar Date for Rejection Damage Claims. All proofs of claim with respect to Claims arising from the rejection pursuant to the Plan of any executory contracts or unexpired leases, if any, must be Filed with the Bankruptcy Court no later than the later of (a) thirty (30) days after the Effective Date, and (b) thirty (30) days after the entry of an order rejecting such executory contract or unexpired lease. Any Claims arising from the rejection of executory contracts or unexpired leases that become Allowed Claims are classified and shall be treated as Class 4 in accordance with <u>Section 3</u> of the Plan. Any Claims arising from the rejection of an executory contract or unexpired lease pursuant to the Plan not Filed within the time required by this section will be forever barred from assertion against the Debtors, their Estates, the Reorganized Debtors, the Creditor Trustee, the Creditor Trust or any of their respective properties unless otherwise ordered by this Court or provided in the Plan. Notwithstanding the foregoing, a Claim for damages arising from the rejection of an executory contract or unexpired lease rejected pursuant to a different order of this Court must be Filed prior to any bar date set forth in such order.**

**PLEASE TAKE FURTHER NOTICE** that the Plan and the Confirmation Order contain other provisions that may affect your rights. You are encouraged to review the Plan and the Confirmation Order in their entirety.

Dated: _____, 2020                                        Respectfully submitted,


By:  */s/ Michael D. Warner*
     Michael D. Warner (TX Bar No. 00792304)
     Benjamin L. Wallen (TX Bar No. 24102623)
     **COLE SCHOTZ P.C.**
     301 Commerce Street, Suite 1700
     Ft. Worth, TX 76102
     (817) 810-5250
     (817) 810-5255 (fax)
     mwarner@coleschotz.com
     bwallen@coleshotz.com

     *Counsel for the Debtors*

3