# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

|  |  |
|---|---|
| In re: | Chapter 11 |
| WESTWIND MANOR RESORT ASSOCIATION, INC., *et al*.,[1] | Case No. 19-50026 (DRJ) |
| Debtors. | Jointly Administered |

## MOTION FOR APPROVAL OF COMPROMISE OF
## CONTROVERSY UNDER FEDRAL RULE OF BANKRUPTCY PROCEDURE 9019

> **If you object to the relief requested, you must respond in writing. Unless otherwise directed by the Court, you must file your response electronically at https://ecf.txsb.uscourts.gov/ within twenty-one days from the date this motion was filed. If you do not have electronic filing privileges, you must file a written objection that is actually received by the clerk within twenty-one days from the date this motion was filed. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**
>
> **A hearing will be conducted on this matter on March 8, 2023 at 9:30 am in Courtroom 400, Floor 4 515 Rusk, Houston, TX 77002. You may participate in the hearing either in person or by an audio and video connection.**
>
> **Audio communication will be by use of the Court's dial-in facility. You may access the facility at (832) 917-1510. Once connected, you will be asked to enter the conference room number. Judge Jones' conference room number is 205691. Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on Judge Jones' homepage. The meeting code is "judgejones". Click the settings icon in the upper right corner and enter your name under the personal information setting.**
>
> **Hearing appearances must be made electronically in advance of both electronic and in-person hearings. To make your appearance, click the "Electronic Appearance" link on Judge Jones' homepage. Select the case name, complete the required fields and click "Submit" to complete your appearance.**

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Westwind Manor Resort Association, Inc. (7533); Warrior ATV Golf, LLC (3420); Warrior Acquisitions, LLC (9919); Warrior Golf Development, LLC (5741); Warrior Golf Management, LLC (7882); Warrior Golf Assets, LLC (1639); Warrior Golf Venture, LLC (7752); Warrior Premium Properties, LLC (0220); Warrior Golf, LLC (4207); Warrior Custom Golf, Inc. (2941); Warrior Golf Equities, LLC (9803); Warrior Golf Capital, LLC (5713); Warrior Golf Resources, LLC (6619); Warrior Golf Legends, LLC (3099); Warrior Golf Holdings, LLC (2892); and Warrior Capital Management, LLC (8233). The address of the Debtors' corporate headquarters is 15 Mason, Suite A, Irvine, California 92618.

1

TO THE HONORABLE DAVID R. JONES, UNITED STATES BANKRUPTCY JUDGE:

Jeremy Rosenthal, in his capacity as the Creditor Trustee (the "Creditor Trustee") of the Creditor Trust (the "Creditor Trust") pursuant to the Plan (defined below) as confirmed by the Confirmation Order (defined below), for the above-referenced jointly administered cases of Westwind Manor Resort Association, Inc., *et al.* (the "Debtors"), hereby files this Motion for Approval of Compromise of Controversy Under Federal Rule of Bankruptcy Procedure 9019 (the "9019 Motion"), and would show as follows:

## I.

## RELIEF REQUESTED

1. Although not required by the Creditor Trust Agreement, the Creditor Trustee seeks approval by this Court of the Settlement Agreement and Release (the "Settlement Agreement"), a copy of which is attached hereto as Exhibit 1.

## II.

## JURISDICTION AND AUTHORITY

2. This Court has jurisdiction over this motion pursuant to 28 U.S.C. § 1334. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A) & (O). This Court has the constitutional authority to enter a final order in this matter. If it is determined that the bankruptcy judge does not have the constitutional authority to enter a final order or judgment in this matter, the Creditor Trustee consents to the entry of a final order or judgment by this Court in this matter.

### III.

### **BACKGROUND FACTS**

3. On March 4, 2019, April 4, 2019, and May 30, 2019, the following entities filed voluntary petitions for relief under chapter 11 of the United States Bankruptcy Code (collectively, the "Debtors"): Westwind Manor Resort Association, Inc; Warrior ATV Golf, LLC; Warrior Acquisitions, LLC; Warrior Golf Development, LLC; Warrior Golf Management, LLC; Warrior Golf Assets, LLC; Warrior Golf Venture, LLC; Warrior Premium Properties, LLC; Warrior Golf, LLC; Warrior Custom Golf, Inc.; Warrior Golf Equities, LLC; Warrior Golf Capital, LLC; Warrior Golf Resources, LLC; Warrior Golf Legends, LLC; Warrior Golf Holdings, LLC; and Warrior Capital Management, LLC. The Debtors' cases are pending in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Bankruptcy Court") and are jointly administered under the caption *In re Westwind Manor Resort Association, Inc., et al.* [Lead Case No. 19-50026 (DRJ)] (the "Bankruptcy Case").

4. On June 15, 2020, the Bankruptcy Court entered that certain *Findings of Fact, Conclusions of Law, and Order Confirming the Debtors' Joint Chapter 11 Plan as of March 22, 2020* [Docket No. 999] (the "Confirmation Order"), confirming the *Debtors' and Committee's First Amended Joint Plan of Reorganization* [Docket No. 787] (the "Plan"). The Effective Date of the Plan was August 5, 2020.

5. The Confirmation Order and Plan, among other things, approved the formation of the Creditor Trust and the appointment of the Creditor Trustee to administer the Creditor Trust.

6. Section 5.14 of the Plan provides, in pertinent part:

> From and after the Effective Date, the Reorganized Debtors and, with respect to the Assigned Estate Actions, the Creditor Trustee, shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise,

> release, withdraw, or litigate to judgment any Cause of Action and to decline to do any of the foregoing without further notice to or action, order, or approval of the Court.

Notwithstanding the foregoing, given the nature of the litigation claims being settled, the Creditor Trustee believes that it is appropriate to seek Court approval of the Settlement Agreement and provide parties in interest an opportunity to be heard.

7. On March 3, 2021, the Creditor Trustee filed a complaint (the "Complaint") in the Bankruptcy Court, related to the Bankruptcy Case, against Brendan M. Flaherty ("Flaherty") and various other defendants, commencing the adversary proceeding captioned *Force 10 Agency Services, LLC, Trustee of the Creditor Trust v. Brendan M. Flaherty, et al.* [Adv. No. 4:21-ap-03035 (DRJ)] (the "Adversary Proceeding").

8. In the Complaint, the Creditor Trustee asserts various claims for relief against Flaherty, including breach of fiduciary duty of loyalty, breach of fiduciary duty of care, negligence, gross negligence, conversion, and declaratory judgment regarding ownership of certain gold and silver coins (the "Gold"). As a result, the Creditor Trustee contends that it is entitled to recover damages from Flaherty as set forth in the Complaint. The Complaint is 36 pages long and includes factual allegations that span a period going back almost 20 years.

9. Flaherty filed an answer to the Complaint denying any wrong-doing or liability to the Creditor Trust. In addition, both Flaherty and the Trustee have asserted competing claims over ownership of the Gold, which is now in the possession of the Creditor Trust pursuant to previous Order of the Court. The estimated value of the 292 ounces of Gold as of January 23, 2023, is approximately $565,000 (at current spot prices).

10. Similarly, both Flaherty and the Creditor Trustee have asserted competing claims over entitlement to certain funds deposited into the registry of the Bankruptcy Court by Ryan Rodney

and/or Riverbound Storage Management, LLC on or about April 22, 2022, in the amount of $450,000.

11. In evaluating the merits of this compromise, the Trustee has conducted asset searches of Flaherty, including retaining the firm Kazlow Fields to do an asset and liability search of Flaherty, investigating the digital records seized by the FBI for corroborating or conflicting information (including reviewing balance sheets purporting to be of Flaherty contained therein), comparing the invoices for purchased gold with the Gold seized by the FBI, and reviewing the inventory of items seized by the FBI from Flaherty's home as part of the FBI's search for Warrior's assets. The results of these efforts reveal that Flaherty has very few, if any, assets that would be non-exempt and subject to execution to satisfy any judgement entered into as a result of this matter other than his asserted rights, if vindicated by this Court, to the Gold and the Interplead Funds.

12. In addition, the issues involved in this adversary proceeding are highly complex and would be expensive to litigate, involving a large number of documents and witnesses and covering decades of complex events.

13. The parties have entered into the Settlement Agreement (Attached as Exhibit "A"), which resolves the disputes between Flaherty and the Creditor Trust in all capacities, subject to the approval of the Bankruptcy Court.  The Creditor Trustee, in its business judgment, believes the settlement is in the best interest of the Creditor Trust and its beneficiaries.

## IV.

## THE PROPOSED SETTLEMENT

14. In recognition that bona fide disputes of controversy exist, the parties entered into the Settlement Agreement so that each and every aspect of the disputes and controversies can be resolved between the parties and the risk and substantial expense of litigation forever avoided.

15. The parties have executed the Settlement Agreement, but it is subject to Bankruptcy Court approval under Fed. R. Bankr. P. 9019 and the terms of the Plan and Creditor Trust.

16. A summary of the settlement terms are as follows[2]:

   a. Flaherty agrees to a Stipulated Judgement in the amount of $20.0 million in the form attached to the Settlement Agreement as Exhibit A (the "Stipulated Judgment");

   b. As a condition of the Settlement Agreement, Flaherty has provided the Creditor Trustee, on a confidential basis, with a balance sheet ("Flaherty Financial Statement"), certified under penalty of perjury as of the date furnished to the Creditor Trust, showing Flaherty's material assets and liabilities with a fair market value in excess of $100,000 that were transferred within one year prior to the filing of the Bankruptcy Case through the date of the Settlement Agreement.

   c. The Trustee has reviewed the balance sheet and it is consistent with the known assets of Flaherty that the Trustee has identified through its asset searches as a part of its due diligence in this matter.

---

[2] This description is intended only to summarize the key provisions of the Settlement Agreement for the convenience of parties in interest. It is not intended to be a comprehensive restatement of all terms included in the Settlement Agreement. Parties should refer to the Settlement Agreement for a full and complete recitation of its terms. To the extent there may be any inconsistencies between the Settlement Agreement and this motion, the Settlement Agreement controls.

d. The Creditor Trustee shall hold the Stipulated Judgment in trust and refrain from having the Stipulated Judgment entered by any court or taking any steps to enforce the Judgment unless the Creditor Trust believes in good faith that the Flaherty Financial Statement was materially false (as defined in the Settlement Agreement) at the time it was provided. If so, the Trustee may initiate an action seeking declaratory relief to determine whether the Flaherty Financial Statement was materially false in order to enforce the Stipulated Judgment.

e. Two years after the effective date of the Stipulated Judgement, (the "Judgment Termination Date"), if the Creditor Trust has not initiated an enforcement action, the Judgment shall be deemed void and unenforceable.

f. In further settlement of this dispute, Flaherty hereby agrees to withdraw any claim of ownership or other rights to and agrees that the Creditor Trust shall be deemed to be the rightful owner of the Gold in its possession and agrees to execute any documents necessary to establish the Creditor Trust's ownership of the Gold.

g. Additionally, Flaherty hereby agrees to withdraw any claim of entitlement to the Interplead Funds, confirms the Creditor Trust shall be deemed to be entitled to those funds, and agrees to execute any documents necessary to establish the Creditor Trust's right to the Interplead Funds.

h. In settlement of the disputed claims of ownership of the Gold and entitlement to the Interplead Funds in the registry of the Court, the Creditor Trust shall distribute, through his attorney, $75,000 to Flaherty within 10 days of the earlier of (1) liquidation of the Gold or (2) receipt of the Interplead Funds.

   i. As a result of this compromise, all claims for relief in its complaint in the Adversary Proceeding against Flaherty are to be dismissed with prejudice.

   j. The Parties exchange mutual general releases.

**V.**

**MERITS OF THE COMPROMISE**

**A.** **Elements Required for Approval and Standard of Review**

17. As explained above, Section 5.14 of the Plan provides that the Creditor Trust has the right to settle any causes of action that were assigned to the Creditor Trust without the need for Court approval. However, out of an abundance of caution, the Creditor Trustee has determined that, given the nature of the disputes being compromised, it is appropriate to seek Court approval and to provide parties an interest an opportunity to be heard.

18. Compromises of controversy in a bankruptcy case are judged under the criteria set out in *Protective Committee for Independent Stockholders of TMT Trailor Fairy, Inc. v. Anderson*, 390 U.S. 414 (1968). Under the criteria of *TMT Trailer*, a compromise must be "fair and equitable." *TMT Trailer*, 390 U.S. at 424; *In Re AWECO, Inc.*, 725 F.2d 293, 298 (5th Cir.), cert denied, 469 U.S. 880 (1984). "Fair and Equitable" means that (1) senior interests are entitled to full priority over junior interests; and (2) the settlement is reasonable in relation to the likely rewards of litigation. *In re Cajun Electric Power Coop,* 119 F.3d 349, 355 (5th Cir. 1997); *In re Jackson Brewing Co.,* 624 F2d 599, 602 (5th Cir. 1980).

19. Under *TMT Trailer,* a Court should consider the following factors in determining whether a settlement is fair and equitable: (1) the probability of ultimate success should the claim be litigated; (2) the complexity, expense, and likely duration of litigating the claim; (3) the difficulties of collecting a judgment rendered from such litigation; and (4) all other factors relevant

to a full and fair assessment of the wisdom of the compromise. *TMT Trailer*, 390 U.S. at 424. In assessing the fourth factor, the "wisdom of the compromise," a bankruptcy court should consider: (a) the paramount interest of creditors with proper deference to their reasonable views,[3] (b) the extent to which the proposed settlement is the product of arms-length negotiations,[4] (c) whether the proposed settlement is with an insider,[5] and (d) whether the proposed settlement promotes the integrity of the judicial system.[6]

20. A trustee bears the burden of establishing that the balance of the factors supports a finding that the compromise is fair, equitable, and in the best interest of the estate. *In re Roqumore,* 393 B.R. at 480*; see also In re Gen. Motors Corp. Pick–Up Truck Fuel Tank Prods. Liab. Litig.,* 55 F.3d 768, 785 (3d Cir. 1995); *In re A & C Props.,* 784 F.2d 1377, 1381 (9th Cir. 1986). "[T]he Trustee's burden is not high. The Trustee need only show that his decision falls within the range of reasonable litigation alternatives." *In re Roqumore,* 393 B.R. at 480 (internal citations omitted). The decision to approve a "compromise lies within the discretion of the trial judge." *Matter of Aweco, Inc.,* 725 F.2d 293, 297 (5th Cir. 1984). In exercising its discretion, the Court may give more weight to one or more of the factors than to the others. *See In re Bard,* 49 Fed.Appx. 528, 532–33 (6th Cir. 2002); *In re Adelphia Commc'ns. Corp.*, 327 B.R. 143, 160–65

---

[3] *Matter of Cajun Elec. Power Coop., Inc.,* 119 F.3d 349, 356 (5th Cir. 1997); *In re Foster Mortg. Corp.,* 68 F.3d 914, 917 (5th Cir. 1996); *In re Justice Oaks II, Ltd.,* 898 F.2d 1544, 1549 (11th Cir. 1990); *In re Flight Transp. Corp. Sec. Litig.,* 730 F.2d 1128, 1135 (8th Cir. 1984).

[4] *Matter of Cajun,* 119 F.3d at 356; *In re Foster Mortg. Corp.,* 68 F.3d at 918; *D'Amato v. Deutsche Bank,* 236 F.3d 78, 85 (2d Cir. 2001).

[5] *In re Foster Mortg. Corp.,* 68 F.3d at 919; *In re Dow Corning Corp.,* 192 B.R. 415, 422 (Bankr. E.D. Mich. 1996).

[6] *In re Kallstrom,* 298 B.R. 753, 761 (10th Cir. BAP 2003); *In re Lakeland Dev. Corp.,* 48 B.R. 85, 90 (Bankr. D. Minn. 1985).

(Bankr. S.D.N.Y. 2005) (giving certain factors "some weight," "no weight," or "moderate weight").

21. In evaluating this proposed settlement, the Creditor Trustee believes that the merits and probability of success of its claims against Flaherty is high. However, the time and expense of obtaining a judgment would also be high, and given very real difficulties in collecting any future judgement against Flaherty (other than against the Gold which is in the Trustee's possession and the Interplead Funds which are in the Bankruptcy Court's possession), the Creditor Trustee, in the exercise of his sound business judgment, believes that this settlement is in the best interest of the Creditor Trust and asks the Court to approve it.

    **B.**    **Probabilities of Ultimate Success.**

22. The Creditor Trust has asserted affirmative claims against Flaherty for breach of fiduciary duty of loyalty, breach of fiduciary duty of care, negligence, gross negligence, conversion. It is the Trustee's position that there is a high likelihood of success on the merits of those claims, which is reflected in Flaherty's agreement to a Stipulated Judgement in the amount of $20.0 million. Flaherty disagrees; however, based upon the range of potential outcomes, the Creditor Trust believes that this compromise and the Stipulated Judgement accurately reflects the risks of litigation of its affirmative claims and the potential collection on the Gold in its possession and the Interplead Funds in the Bankruptcy Court's possession.

23. However, as to issues of ownership of the Gold and entitlement to the Interplead Funds, while those are available sources for payment of a judgment if it is determined that they are Flaherty's property, the litigation over the Trust's competing claims of ownership and entitlement to the Gold and Interplead Funds, respectively, are highly disputed by Flaherty and could result in significant and expensive litigation. At present, the Creditor Trustee believes that these assets (if

they were ultimately determined to be Flaherty's property) are the only assets of significant value available to Flaherty to satisfy any future judgement.

24. At present, the Creditor Trust will receive approximately $1,015,000 in gross proceeds from the Gold and the Interplead Funds if of those assets are immediately realized upon, less the $75,000 distribution to Flaherty, for a total of approximately $940,000 before payment of any accrued fees and expenses to the Trust's counsel. The Creditor Trust believes that this compromise, together with the Stipulated Judgement, accurately reflects the risks and costs of litigating these issues, in particular given that the Creditor Trust will receive in excess of 90% of those assets.

### C. **Complexity, Expense and Likely Duration.**

25. The Trustee's claims, particularly the facts underlying the claims, are complex. Although this matter has been retained on a contingency fee by counsel, the remaining expenses (including additional discovery and expert costs that will be paid out of any recovery) and hourly fees of the Trustee and its financial advisors related to this litigation will be significant when viewed against the limited potential of any recovery in addition to the Gold and the Interplead Funds, let alone the recovery of over 90% of those assets without further significant cost. Because this litigation involves a large number of witnesses and documents spanning a long period of time, the out-of-pocket litigation costs, including, without limitation, deposition transcripts and other discovery-related costs, could be substantial.

26. The parties will need to conduct discovery on the substantive issues, designate expert witnesses, engage in substantive dispositive motions, and try the case. Although a trial in the bankruptcy court could be accomplished in a timely manner, the appeals process could be lengthy. The expense of the litigation will be significant.

27. Importantly, when weighing the cost of litigation with Flaherty against the distribution to him of $75,000, this settlement ultimately benefits those that will be paid out of the Creditor Trust because the cost of litigation (including the hourly fees of the Trustee and its advisors) will likely far outweigh the $75,000 reduction in proceeds related to the distribution to Flaherty as part of the settlement.

**D.    Difficulties of Collection.**

28. Difficulty of collection will certainly be an issue in this case for the Creditor Trustee. Flaherty, a California resident, has very limited assets.

29. The Creditor Trustee has conducted its own asset searches and engaged an outside firm to investigate and attempt to identify any non-exempt assets of Flaherty that could potentially satisfy any future judgement. The results of those searches are consistent with the information provided in the Flaherty Financial Statement.

30. The Creditor Trustee has not identified any other assets of significance potentially owned by Flaherty, other than the Gold and the Interplead Funds, that could provide a source of recovery from any future judgement. In receiving more than 90% of the known recoverable assets (if ultimately determined to be Flaherty's property), the Creditor Trustee believes that this settlement is in the best interest of the Creditor Trust and asks the Court to approve it.

**E.  Other Factors.**

31. The Creditor Trustee believes that other factors also warrant approval of the compromise, namely that the Settlement Agreement was the product of an arms-length negotiation. Although Flaherty may have previously been considered an insider, Flaherty is now a former equity owner and officer/manager of the Debtors, prepetition as set forth in the Complaint, but this litigation is being pursued by the Trustee who is independent and appointed under the Plan.

32. The Creditor Trustee, in its business judgment, believes the compromise is fair and equitable and in the best interest of the Creditor Trust and its beneficiaries. The Trustee asks that this Court approve the compromise.

## CONCLUSION

WHEREFORE, the Trustee respectfully requests that this Court enter an order granting this Motion, authorize and approve the attached Settlement Agreement, and grant such other and further relief to which they may show themselves entitled.

DATED: February 14, 2023

                **WALSTON, PC**

                By: /s/ Clifford H. Walston
                     Clifford Walston
                     State Bar No. 24037666
                     1334 Brittmoore Road
                     Suite 1603
                     Houston, Texas 77043
                     (713) 930-6000
                     cliff@walstonlegal.com

                *COUNSEL FOR CREDITOR TRUSTEE*

## Certificate of Service

I hereby certify that a true and correct copy of the foregoing instrument has been served upon all parties on this 14th day of February, 2023, via the Court's ECF/PACER system.

                */s/ Clifford H. Walston*
                Clifford H. Walston